IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| MARIA CONCEPCION VALENZUELA CERVANTEZ, *Plaintiffs*, | § § § § | |
| v. | § § | CIVIL NO. 1:22-cv-150 |
| BRYAN COLLIER, ET AL. *Defendants*. | § § § | |

---

**DEFENDANTS TEXAS DEPARTMENT OF CRIMINAL JUSTICE, TEXAS BOARD OF CRIMINAL JUSTICE, TEXAS TECH UNIVERSITY HEALTH SCIENCE CENTER, CRIS LOVE, KEN PAXTON, JODY HEFNER, CYNTHIA JUMPER, DENISE DESHIELDS, AND JOSE MANUEL VALDEZ'S MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**

---

| | |
|---|---|
| **KEN PAXTON** Attorney General of Texas **BRENT WEBSTER** First Assistant Attorney General **GRANT DORFMAN** Deputy First Assistant Attorney General **JAMES LLOYD** Deputy Attorney General for Civil Litigation | SHANNA E. MOLINARE, Chief, Law Enforcement Defense Division MICHAEL J. CALB* Assistant Attorney General Texas State Bar No. 24077883 Michael.Calb@oag.texas.gov OFFICE OF THE ATTORNEY GENERAL Law Enforcement Defense Division P.O. Box 12548 (MC 012) Austin, Texas 78711-2548 (512) 463-2080/Fax: (512) 370-9814 |

**ATTORNEYS FOR DEFENDANTS**
_____
**\* Counsel of Record**

**TABLE OF CONTENTS**

I.      STATEMENT OF THE CASE .................................................................................. 1

II.     PLAINTIFF'S ALLEGATIONS AND CLAIMS ................................................... 2

III.    STANDARD OF REVIEW .................................................................................... 6

IV.     SUMMARY OF ARGUMENT .............................................................................. 6

V.      ARGUMENT .......................................................................................................... 7

   A.   Plaintiff's official-capacity Section 1983 claims against the Employee Defendants
        and ADA claims against the Entity Defendants are barred by Eleventh Amendment
        sovereign immunity. ....................................................................................... 7

   B.   Plaintiff's requested injunction is impermissible under *Ex parte Young* ........... 8

   C.   Plaintiff lacks standing to seek her requested injunctive relief ......................... 9

   D.   Plaintiff cannot recover under the Texas Wrongful Death Statute or the
        Texas Survival Statute because she does not allege a causal connection
        between Defendants' actions and Valenzuela's death. ................................... 10

   E.   Plaintiff fails to state a Section 1983 claim against the Employee Defendants ....... 13

      1.   Plaintiff fails to allege personal involvement by the Employee Defendants ........... 13

      2.   Plaintiff does not state an Eighth Amendment failure-to-train claim ..................... 15

      3.   Plaintiff does not state a First Amendment access-to-courts claim ...................... 18

      4.   Plaintiff does not state a conspiracy claim. ......................................................... 19

   F.   The Employee Defendants are entitled to qualified immunity
        with respect to Plaintiff's individual-capacity Section 1983 claims ................... 20

   G.   Plaintiff fails to state a claim under the ADA or RA ........................................ 21

      1.   Plaintiff fails to allege that Valenzuela had a qualifying disability ...................... 22

      2.   Plaintiff fails to allege that Valenzuela was excluded from participation in,
           or denied the benefits of, services, programs, or activities for which
           the Entity Defendants are responsible. ............................................................ 23

      3.   Plaintiff fails to allege intentional discrimination. ............................................. 23

V.      CONCLUSION .................................................................................................... 24

CERTIFICATE OF SERVICE ........................................................................................ 25

## TABLE OF AUTHORITIES

Page(s)

Cases

*Air Evac EMS, Inc. v. Tex. Dep't of Ins. Div. of Workers' Comp.*,
  851 F.3d 507 (5th Cir. 2017) ................................................................................9
*Alton v. Tex. A&M Univ.*,
  168 F.3d 196 (5th Cir. 1999) .............................................................................15
*Anokwuru v. City of Houston*,
  990 F.3d 956 (5th Cir. 2021) .............................................................................16
*Arnold v. Williams*,
  979 F.3d 262 (5th Cir. 2020) .............................................................................21
*Arsenaux v. Roberts*,
  726 F.2d 1022 (5th Cir. 1982) ...........................................................................19
*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................... 6, 15
*Back v. Tex. Dep't of Crim. Justice, Corr. Institutions Div.*,
  716 F. App'x 255 (5th Cir. 2017).......................................................................24
*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................... 6, 19
*Bishop v. Karney*,
  408 F. App'x 846 (5th Cir. 2011).......................................................................20
*Briley v. Barreca*,
  No. 20-907, 2020 WL 6269715 (E.D. La. Oct. 26, 2020) .................................22
*Brown v. Bryan County*,
  219 F.3d 450 (5th Cir. 2000) .............................................................................17
*Buchanan v. Maine*,
  469 F.3d 158 (1st Cir. 2006)................................................................................8
*Cano v. Bexar Cnty., Tex.*,
  280 F. App'x 404 (5th Cir. 2008).......................................................................17
*Carswell v. Camp*,
  54 F.4th 307 (5th Cir. 2022) ..............................................................................20
*Christensen v. Mejia*,
  No. 3:15-CV-0854, 2016 WL 11258227 (N.D. Tex. Oct. 10, 2016) .................14
*City of Clinton v. Pilgrim's Pride Corp.*,
  632 F.3d 148 (5th Cir. 2010) ...............................................................................6
*CleanCOALition v. TXU Power*,
  536 F.3d 469 (5th Cir. 2008) ...............................................................................6
*Collins v. Garcia*,
  No. 3:18-cv-3299, 2020 WL 4296376 (N.D. Tex. May 12, 2020) ......................9
*Delano–Pyle v. Victoria County, Tex.*,
  302 F.3d 567 (5th Cir. 2002) ....................................................................... 22, 23
*District of Columbia v. Wesby*,
  138 S. Ct. 577 (2018) ................................................................................... 20, 21
*Doe v. Columbia-Brazoria Indep. Sch. Dist. by & through Bd. of Trs.*,
  855 F.3d 681 (5th Cir. 2017) .............................................................................21

*Domino v. TDCJ*,
  239 F.3d 752 (5th Cir. 2001) ...................................................................................17
*Estate of Davis ex rel. McCully v. City of N. Richland Hills*,
  406 F.3d 375 (5th Cir. 2005) ............................................................................ 15, 17
*Ex parte Young*,
  209 U.S. 123 (1908) .............................................................................................8
*Flores v. Smith*,
  No. 9:11-cv-205, 2012 WL 1946137 (E.D. Tex. May 30, 2012) ..............................19
*Friends of the Earth, Inc. v. Laidlaw Environ. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) .............................................................................................9
*Garrett v. Thaler*,
  560 F. App'x. 375 (5th Cir. 2014)........................................................................22
*Gilani v. Univ. of Tex. Sw. Med. Ctr.*,
  No. 3:21-cv-1461, 2023 WL 2518811, n.5 (N.D. Tex. Mar. 13, 2023) ......................8
*Hainze v. Richards*,
  207 F.3d 795 (5th Cir. 2000) ...............................................................................21
*Hale v. King*,
  642 F.3d 492 (5th Cir. 2011) ...............................................................................22
*Harkless v. Brazoria Cnty., Tex.*,
  No. 3:14-cv-329, 2016 WL 1702595 (S.D. Tex. Apr. 28, 2016)..............................23
*Henderson v. Harris Cnty., Texas*,
  51 F.4th 125 (5th Cir. 2022) ...............................................................................16
*Howery v. Allstate Ins. Co.*,
  243 F.3d 912 (5th Cir. 2001) .................................................................................6
*Huang v. Huang*,
  846 F. App'x 224 (5th Cir. 2021) ...........................................................................8
*In re Labbatt Food Serv., LP*,
  279 S.W.3d 640 (Tex. 2009) ................................................................................10
*Johnson v. Dallas Indep. Sch. Dist.*,
  38 F.3d 198 (5th Cir. 1994) .................................................................................13
*Jones v. Greninger*,
  188 F.3d 322 (5th Cir. 1999) ...............................................................................18
*Joseph v. Bartlett*,
  981 F.3d 319 (5th Cir. 2020) ...............................................................................20
*Kahng v. City of Houston*,
  845 F. Supp. 2d 787 (S.D. Tex. Apr. 24, 2007) .....................................................13
*Kapoor v. Estate of Klovenski*,
  No. 14-11-118-cv, 2012 WL 8017139 (Tex. App.—Houston [14th Dist. Feb. 16, 2022])...............12
*Kemp v. Holder*,
  610 F.3d 231 (5th Cir. 2010) ...............................................................................21
*Kovacic v. Villarreal*,
  628 F.3d 209 (5th Cir. 2010) ...............................................................................20
*Kramer v. Lewisville Memorial Hosp.*,
  858 S.W.2d 397 (Tex. 1993) ........................................................................... 10, 11
*Lewis v. Casey*,
  518 U.S. 343 (1996) ...................................................................................... 18, 19
*Melton v. Dallas Area Rapid Transit*,
  391 F.3d 669 (5th Cir. 2004) ...............................................................................22

*Meyers ex rel. Benzig v. Texas,*
  410 F.3d 236 (5th Cir. 2005) ..................................................................................8
*Miraglia v. Bd. of Supervisors of La. State Museum,*
  901 F.3d 565 (5th Cir. 2018) ................................................................................23
*Mitchell v. Forsyth,*
  472 U.S. 511 (1985) ............................................................................................20
*Montano v. Orange Cty., Tex.,*
  842 F.3d 865 (5th Cir. 2016) ......................................................................... 11, 13
*Mouille v. City of Live Oak, Tex.,*
  977 F.2d 924 (5th Cir. 1992) ................................................................................14
*Orr v. Copeland,*
  844 F.3d 484 (5th Cir. 2016) ...............................................................................21
*Park Place Hosp. v. Estate of Milo,*
  909 S.W.2d 508 (Tex. 1995) ................................................................................11
*Pennhurst State Sch. & Hosp. v. Halderman,*
  465 U.S. 89 (1984) ................................................................................................7
*Perryman v. Wilson,*
  No. 4:19-cv-199, 2020 WL 1159387 (N.D. Tex. Mar. 10, 2020) .......................14
*Pickens v. Austin,*
  2005 WL 8157348 (W.D. Tex. Mar. 21, 2005) ....................................................11
*Pierce v. Texas Dept. of Crim. Justice, Inst. Div.,*
  37 F.3d 1146 (5th Cir. 1994) ...............................................................................15
*Pitts v. Director, TDCJ-CID,*
  No. 6:18-cv-280, 2018 WL 7364647 (E.D. Tex. Sept. 28, 2018) .......................18
*Pluet v. Frasier,*
  355 F.3d 381 (5th Cir. 2004) ......................................................................... 10, 11
*Plumley v. Landmark Chevrolet, Inc.,*
  122 F.3d 308 (5th Cir. 1997) ......................................................................... 9, 10
*Porter v. Epps,*
  659 F.3d 440 (5th Cir. 2011) ...............................................................................17
*Potharaju v. Jaising Maritime, LTD.,*
  193 F. Supp.2d 913 (E.D. Tex. 2002) ..................................................................10
*Rizzo v. Goode,*
  423 U.S. 362 (1976) ............................................................................................14
*Rodgers v. Lancaster Police & Fire Dep't,*
  819 F.3d 205 (5th Cir. 2016) ...............................................................................11
*Rowan Court Subdiv. 2013 Ltd. P'ship v. La. Housing Corp.,*
  749 F. App'x 234 (5th Cir. 2018) ...........................................................................9
*Ruiz v. Price,*
  84 F. App'x 393 (5th Cir. 2003) .............................................................................7
*Saenz v. City of El Paso,*
  637 F. App'x 828 (5th Cir. 2016) .........................................................................18
*Shaw v. Villanueva,*
  918 F.3d 414 (5th Cir. 2019) ...............................................................................19
*Slade v. City of Marshall,*
  814 F.3d 263 (5th Cir. 2016) ...............................................................................10
*Stringer v. Whitley,*
  942 F.3d 715 (5th Cir. 2019) .................................................................................9

*Talib v. Gilley,*
   138 F.3d 211 (5th Cir. 1998) ......................................................................................7

*Thompson v. Steele,*
   709 F.2d 381 (5th Cir. 1983) ....................................................................................13

*U.S. Dept. of Labor v. Triplett,*
   494 U.S. 715 (1990) ..................................................................................................10

*United States v. Georgia,*
   546 U.S. 151 (2006) ....................................................................................................8

*Will v. Mich. Dept. of State Police,*
   491 U.S. 58 (1989) ......................................................................................................7

*Windham v. Harris Cty., Tex.,*
   875 F.3d 229 (5th Cir. 2017) ....................................................................................21

## Statutes

29 U.S.C. § 794(a) ...........................................................................................................21

42 U.S.C. § 1983 ................................................................................................2, 7, 13, 15

42 U.S.C. § 1988 ................................................................................................................5

42 U.S.C. § 1988(a) ...................................................................................................11, 22

42 U.S.C. § 12102 ...........................................................................................................22

42 U.S.C. § 12132 ...........................................................................................................21

42 U.S.C. § 12202 .............................................................................................................8

Tex. Civ. Prac. & Rem. Code § 71.002 ..........................................................................10

Tex. Civ. Prac. & Rem. Code §§ 71.001 ........................................................................10

Tex. Civ. Prac. & Rem. Code §§ 71.021 ........................................................................10

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION**

| | | |
|---|---|---|
| MARIA CONCEPCION VALENZUELA CERVANTEZ,<br> *Plaintiffs,*<br><br>v.<br><br>BRYAN COLLIER, ET AL.<br> *Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL NO. 1:22-cv-150 |

---

**DEFENDANTS TEXAS DEPARTMENT OF CRIMINAL JUSTICE, TEXAS BOARD OF CRIMINAL JUSTICE, TEXAS TECH UNIVERSITY HEALTH SCIENCE CENTER, CRIS LOVE, KEN PAXTON, JODY HEFNER, CYNTHIA JUMPER, DENISE DESHIELDS, AND JOSE MANUEL VALDEZ'S MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**

---

Defendants Texas Department of Criminal Justice ("TDCJ"), Texas Board of Criminal Justice ("TBCJ"), Texas Tech University Health Science Center ("TTUHSC"), Cris Love ("Love"), Ken Paxton ("Paxton"), Jody Hefner ("Hefner"), Dr. Cynthia Jumper ("Jumper"), Dr. Denise DeShields ("DeShields"), and Jose Manuel Valdez ("Valdez") (together, "Defendants"), through the Office of the Attorney General of Texas, file this motion to dismiss Plaintiff's Second Amended Complaint (ECF No. 50), as supplemented by her Rule 7(a) Reply (ECF No. 54), pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).[1]

## I. STATEMENT OF THE CASE

Plaintiff Maria Concepcion Valenzuela Cervantez ("Plaintiff"), the mother of deceased former TDCJ inmate Ruben Arturo Valenzuela ("Valenzuela"), filed this lawsuit on behalf of herself and Valenzuela's estate in the 32nd Judicial District Court of Mitchell, Texas.  ECF No. 1. In sum, Plaintiff

---

[1] Defendants Darrell Frith ("Frith"), Greg McGuire ("McGuire"), Manuel Enriquez, Jr. ("Enriquez"), Joe Harp ("Harp"), and Greg Bastic ("Bastic")—in their individual capacities only—have filed an answer to Plaintiff's excessive use of force claims.  ECF No. 71.  To the extent Plaintiff intends to sue those defendants in their official capacities and/or assert claims against them other than excessive use of force, all of the bases for dismissal asserted herein should be construed as applying to them, too.

alleged that various state entities and employees were complicit in causing her son's death and/or impeding the investigation into the cause of that death.  *Id.*  Plaintiff asserted claims for monetary and injunctive relief under 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), and Texas common law.  *Id.*  The case was then removed to federal court, where Plaintiff filed a First Amended Complaint asserting virtually identical claims.  ECF No. 5.

Following removal, Plaintiff spent several months attempting to serve the 27 named defendants.  Several of those defendants, including Love and Paxton, filed motions to dismiss.  ECF Nos. 14-15, 23, 38-40.  While those motions were pending, Plaintiff filed a motion to amend her complaint.  ECF No. 16.  The Court granted Plaintiff's motion and ordered that, in addition to her Second Amended Complaint—ECF No. 50 ("SAC")—Plaintiff must file a Rule 7(a) Reply clarifying her First Amendment claims and explaining how those claims overcome defendants' entitlement to qualified immunity.  ECF Nos. 49, 51.  In light of that amendment, the Court denied all pending motions to dismiss.  ECF No. 50, 53, 58.[2]

After Plaintiff filed her Rule 7(a) Reply (ECF No. 54), several defendants renewed or re-urged their motions to dismiss.  ECF Nos. 55-57.  When Plaintiff failed to respond to those motions, the Court entered an Order to Show Cause requiring Plaintiff to explain that failure or face sanctions including dismissal for failure to prosecute.  ECF No. 64.  Plaintiff finally filed responses on the Court's extended deadline.  ECF Nos. 66-68.  On October 11, 2023, the Court dismissed seven defendants who had not yet been served.  ECF No. 69.  With the Court's permission, Defendants now file this omnibus motion to dismiss.  ECF Nos. 54, 62.

## II.     PLAINTIFF'S ALLEGATIONS AND CLAIMS

Valenzuela entered TDCJ custody on May 3, 2012.  SAC at ¶ 31.  For at least a year before his

---

[2] In denying Love's motion to dismiss, the Court ruled that Love had waived sovereign immunity.  ECF No. 49.  Love contests that ruling and reasserts her entitlement to sovereign immunity herein.

death on January 13, 2021, Valenzuela was housed at the TDCJ Wallace Unit in Colorado City, Texas. *Id.* at ¶ 32.  Plaintiff's alleged account of the events leading up to Valenzuela's death is as follows.

On January 5, 2021, Valenzuela was engaged in a physical altercation with another inmate but did not sustain any major injuries.  *Id.* at ¶ 34.  Following a medical evaluation, he was released to security and an offender protection investigation was initiated.  *Id.* at ¶ 35.  Sometime in the next two days, Valenzuela fought with his former cellmate and suffered "a busted nose and lip, and . . . minor bruises and a bloody nose."  *Id.* at ¶ 36.  Following the fight, Valenzuela returned to his cell and began "to drink a large amount of alcohol."  *Id.* at ¶ 37.  On or about January 8, 2021, Valenzuela was escorted to the unit's E wing, which contains segregated housing (formerly known as administrative segregation).  *Id.* at ¶¶ 38, 78.  On the way to E-wing, in what Plaintiff describes as a "blind spot" not subject to surveillance, unidentified correctional staff allegedly "beat [Valenzuela] while he was handcuffed."  *Id.* at ¶ 39.

Valenzuela was seen by medical staff three times on January 8, 2021.  First, at 7:51 am, Valenzuela was seen by medical for psychiatric symptoms, where he admitted to alcohol use and reported having homicidal ideations.  *Id.* at ¶ 40.  Then, at 9:56 am, Valenzuela was again examined by medical staff, who reported that he did not exhibit any signs of mental illness requiring professional help, and that he was not a risk to himself or others.  *Id.* at ¶ 41.  Finally, at 12:48 pm, Valenzuela was seen by two TTUSHC nurses, who completed a wound protocol.  *Id.* at ¶ 42.  According to Plaintiff, their note "falsely state[d] that [Valenzuela] was injured at midnight on January 8, 2021, resulting from an altercation with another offender."  *Id.*

In the early morning of January 13, 2021, Valenzuela "began crying, loudly arguing with God, and begging for help."  *Id.* at ¶ 45.  Plaintiff alleges that, "[i]n a sadistic attempt to quiet him, Frith repeatedly entered [Valenzuela's] cell and beat him uncontestedly [sic]."  *Id.*[3]  At 5:45 am, Castillo

---

[3] Later in her complaint, Plaintiff alleges that Frith's uses of force occurred not on the night before his death,

submitted a clinic note stating that Valenzuela had refused seizure medication but ultimately agreed to take it after being convinced of its importance. *Id.* at ¶ 46. At 1:41 pm, "[Valenzuela was placed in administrative segregation awaiting a mental health evaluation for homicidal thoughts and a bed placement in Crisis Management." *Id.* at ¶ 47. Once in that cell, he "was reportedly seen naked, putting his head in the toilet, smearing feces in the cell, yelling at people who were not there, yelling that he wanted to die, and not responding to officer commands." *Id.* In response, unidentified officers sprayed him with a chemical agent and then a 5-man team—consisting of Frith, McGuire, Bastic, Harp, and Enriquez—entered Valenzuela's cell, where they allegedly kicked him, punched him, slammed his head, and choked him while he was handcuffed, before extracting him from his cell and taking him to a shower to rise off the chemical agent. *Id.* ¶¶ 48, 51. The incident was videotaped, but allegedly Defendant Valdez, who operated the camera, pointed it at the ground "to obstruct later legal action by the Valenzuela family." *Id.* ¶ 47.

Medical notes immediately following this incident indicated that Valenzuela had refused to follow commands, been sprayed with a chemical agent, and been extracted by a five-man team, but suffered no visible injuries other than a bloody nose. *Id.* at ¶¶ 49-51. Plaintiff alleges that these medical notes were falsified, but offers no basis for that contention. *Id.* at ¶ 51. At 3:30 pm on January 13, 2021, a doctor ordered several medications for Valenzuela. *Id.* at ¶ 53. At 8:05 pm, nurses observed Valenzuela have a syncope episode and fall face forward into the concrete floor. *Id.* at ¶ 55. Security reports indicated that Valenzuela had seizure-like activity before going unconscious. *Id.* When EMS arrived at 8:30 pm, Valenzuela had no traceable heart rhythm and was pronounced dead. *Id.*

Following Valenzuela's death, TDCJ's Office of the Inspector General ("OIG") conducted an investigation and concluded that no action was warranted. *Id.* at ¶ 60. The Tarrant County Medical

---

but rather "throughout the night and early morning of January 7th and 8th." FAC at ¶ 78. This inconsistency is one of many in Plaintiff's confused timeline but does not alter the arguments for dismissal asserted herein.

Examiner ("TCME")'s office conducted an autopsy and determined that Valenzuela's death was from natural causes. *Id.* at ¶ 61. Plaintiff alleges that both the OIG and the TCME misrepresented the facts and altered their findings to cover up for TDCJ and TTUHSC staff, but she does not provide any basis for this contention. *Id.* at ¶¶ 60-61. Plaintiff further alleges, without any factual basis, that Love and Paxton conspired with TDCJ and TTUHSC staff to cover up Valenzuela's true cause of death, thereby impeding her access to the courts. *Id.* at ¶ 62; Rule 7(a) Reply at 3-4.

    Based on these allegations, Plaintiff asserts the following claims against Defendants:

1. Eighth Amendment claim against Valdez for his alleged failure to properly videotape the use of force on January 13, 2021 (*id.* at ¶ 64);

2. Eighth Amendment claims against Hefner for allegedly failing to train, supervise, and discipline correctional officers in the proper use of force.  (*id.* at ¶ 65);

3. Eighth Amendment claims against Love, Jumper, and DeShields for allegedly failing to train and supervise medical and mental health staff in properly recognizing, treating, and reporting excessive uses of force (*id.* at ¶ 68);

4. Eighth Amendment and state law claims against Love for allegedly failing to prevent, monitor, and protect inmates from harm (*id.* at ¶¶ 70-113);

5. First Amendment claims against Love and Paxton for allegedly impeding Plaintiff's access to the courts (Rule 7(a) Reply at 3-4);

6. Conspiracy claims against the Employee Defendants for allegedly conspiring to cover up the true cause of Valenzuela's injuries and death (*id.* at ¶¶ 119-124, 124; Rule 7(a) Reply at 3);

7. ADA and RA claims against TDCJ, TTUHSC, and TBCJ for allegedly failing to train officers and/or follow policies concerning mental health crisis intervention (*id.* at ¶¶ 114-116). [4]

    Unlike her earlier pleadings, Plaintiff's SAC does not assert any state law tort claims against Defendants.  Rather, she invokes 42 U.S.C. § 1988, which allows application of the Texas Wrongful Death Act Statute and the Texas Survival Statute to federal claims.  SAC at ¶¶ 126-128.  To redress both her and Valenzuela's alleged injuries, she seeks compensatory and punitive damages, as well as an injunction requiring that medical staff take pictures following uses of force.  SAC at ¶ 129, p. 33.

---

[4] Defendants need not and do not respond to Plaintiff's blank equal protection claim.  SAC at ¶ 171.

### III.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) permits dismissal for lack of subject matter jurisdiction.  In determining whether jurisdiction exists, a court "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum."  *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."  *CleanCOALition v. TXU Power*, 536 F.3d 469, 473 (5th Cir. 2008).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for failure to state a claim upon which relief may be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152-53 (5th Cir. 2010).  "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. 662 at 678 (citing *Twombly*, 550 U.S. at 556).  Thus, while the complaint need not contain "detailed factual allegations," it must go beyond mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.

### IV.    SUMMARY OF ARGUMENT

Defendants assert multiple, overlapping bases for dismissal.  *First*, Plaintiff's official-capacity Section 1983 claims against Love, Paxton, Hefner, Jumper, DeShields, and Valdez (the "Employee Defendants") and ADA claims against TDCJ, TBCJ, and TTUHSC (the "Entity Defendants") are barred by Eleventh Amendment immunity.  *Second*, Plaintiff's requested injunctive relief is not available under the *Ex parte Young* exception to Eleventh Amendment immunity.  *Third,* Plaintiff lacks standing to seek her requested injunctive relief.  *Fourth*, Plaintiff cannot recover under the Texas Wrongful

Death Statute or the Texas Survival Statute because she does not allege a causal connection between Defendants' actions and Valenzuela's death. *Fifth*, Plaintiff fails to state a constitutional claim against the Employee Defendants. *Sixth*, the Employee Defendants are entitled to qualified immunity. *Finally*, Plaintiff fails to claim an ADA or RA claim against the Entity Defendants.

## V.     ARGUMENT

### A. Plaintiff's official-capacity Section 1983 claims against the Employee Defendants and ADA claims against the Entity Defendants are barred by Eleventh Amendment sovereign immunity.

Eleventh Amendment sovereign immunity bars suits against the state or any of its instrumentalities unless immunity is waved by the State or by Congress. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984). TDCJ, TBCJ, and TTUHSC are state instrumentalities protected by Eleventh Amendment immunity. *See Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998) (TDCJ); *Ruiz v. Price*, 84 F. App'x 393, 395 (5th Cir. 2003) (TBCJ); *U.S. v. Texas Tech Univ.*, 171 F.4d 279, 288-89 (TTUHSC). Eleventh Amendment immunity also bars suits against state employees sued in their official capacities, because such suits are considered suits against the state. *See Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989) ("[S]uit against a state official in his or her official capacity . . . is no different from a suit against the State itself.").

It is unclear from Plaintiff's SAC whether she intends to sue the Employee Defendants under Section 1983 in their official capacities in addition to their individual capacities. *Compare* SAC at ¶ 2, *with id.* at ¶¶ 10, 12, 14-15, 18-24. To the extent that she does, the Employee Defendants are entitled to Eleventh Amendment immunity. *See Will*, 491 U.S. at 71 (explaining that neither the State of Texas nor Congress has waived immunity with respect to claims brought under 42 U.S.C. § 1983). [5]

---

[5] While the voluntary removal a case to federal court waives Eleventh Amendment immunity from suit, that waiver does not apply to governmental parties who did not join in, or consent to, the removal. *See, e.g. Huang v. Huang*, 846 F. App'x 224, 230 (5th Cir. 2021). Thus, with the exception of Love (who removed the case), Defendants retain their immunity from suit. Moreover, all Defendants—including Love—retain their Eleventh Amendment immunity from *liability*, which survives even after voluntary removal to federal court. *See Gilani v.*

Plaintiff's ADA claims against the Entity Defendants are similarly barred by the Eleventh Amendment.  While the ADA states Congress's intent to abrogate state sovereign immunity (*see* 42 U.S.C. § 12202), the question of whether Congress had the power to give effect to that intent requires a case-by-case assessment.  *See United States v. Georgia*, 546 U.S. 151, 154, 157-59 (2006).  In *Georgia*, the Supreme Court established a three-part test for addressing whether Title II of the ADA (the section giving rise to liability for government entities) validly abrogates sovereign immunity in a given case. *Id.* at 159.  A court must determine "(1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid."  *Id.*

Here, the Court need not look past the first stage of the *Georgia* analysis because Plaintiff has not alleged a violation of Title II.  *See* Section V.G., *infra*; *Buchanan v. Maine*, 469 F.3d 158, 172-73 (1st Cir. 2006) ("Under *Georgia*, the court must determine in the first instance, on a claim-by-claim basis, which aspects of the State's alleged conduct violated Title II. If the State's conduct does not violate Title II, the court does not proceed to the next step in the analysis.").

**B. Plaintiff's requested injunction is impermissible under *Ex parte Young*.**

In *Ex parte Young*, the Supreme Court set forth a narrow exception to Eleventh Amendment immunity, allowing for prospective injunctive relief through official-capacity actions.  209 U.S. 123, 159-60 (1908).  For that exception to apply, a party's claims must be based on an "ongoing violation of federal law."  *Air Evac EMS, Inc. v. Tex. Dep't of Ins. Div. of Workers' Comp.*, 851 F.3d 507, 512 (5th Cir. 2017).  "Continuing damages from a past wrong do not constitute an ongoing violation for the

---

*Univ. of Tex. Sw. Med. Ctr.*, No. 3:21-cv-1461, 2023 WL 2518811, at *2, n.5 (N.D. Tex. Mar. 13, 2023) ("Defendants waived immunity from suit by removing this case to federal court; however, removal does not waive immunity from liability.") (citing *Meyers ex rel. Benzig v. Texas*, 410 F.3d 236, 255 (5th Cir. 2005)).

purposes of an *Ex parte Young*." *Rowan Court Subdiv. 2013 Ltd. P'ship v. La. Housing Corp.*, 749 F. App'x 234, 237 (5th Cir. 2018). Here, Because Plaintiff's complaint seeks redress exclusively for past actions allegedly connected with Valenzuela's death, she cannot invoke *Ex parte Young* to get past Eleventh Amendment immunity. *See, e.g.*, *Collins v. Garcia*, No. 3:18-cv-3299, 2020 WL 4296376, at *4 (N.D. Tex. May 12, 2020) ("[T]he *Ex parte Young* exception does not apply because [plaintiff's] claims are based on past alleged violations, not ongoing violations of federal law."), *rec. adopted*, 4284680 (N.D. Tex. July 27, 2020).

### C. Plaintiff lacks standing to seek her requested injunctive relief.

"To satisfy Article III's standing requirements, a plaintiff must show (1) he has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Environ. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). "[P]laintiffs seeking injunctive . . . can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury." *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019). In other words, "[t]o obtain standing for injunctive relief, a plaintiff must show that there is reason to believe that he would directly benefit from the equitable relief sought." *Plumley v. Landmark Chevrolet, Inc.*, 122 F.3d 308, 312 (5th Cir. 1997).

Here, Plaintiff seeks an injunction requiring that medical staff take pictures following uses of force. SAC at ¶ 129. However, because Valenzuela is deceased and Plaintiff is not herself incarcerated, neither of them could plausibly "directly benefit" from obtaining this relief. As such, Plaintiff lacks standing to seek injunctive relief either on her own or Mr. Valenzuela's behalf. *Id.*[6]

---

[6] Plaintiff also lacks standing to obtain any relief on behalf of Joseph Ben-David Chipps ("Chipps"), Valenzuela's former cellmate, because she does not allege any injury in fact to her or Valenzuela from TDCJ's alleged failure to respond to Chipps' grievance. *See* FAC at ¶ 64; *U.S. Dept. of Labor v. Triplett*, 494 U.S. 715, 721

**D. Plaintiff cannot recover under the Texas Wrongful Death Statute or the Texas Survival Statute because she does not allege a causal connection between Defendants' actions and Valenzuela's death.**

The Texas Wrongful Death Statute (Tex. Civ. Prac. & Rem. Code §§ 71.001–.012) "create[s] a cause of action to allow a deceased tort victim's surviving parents, children, and spouse to recover damages for their losses from the victim's death." *In re Labbatt Food Serv.*, LP, 279 S.W.3d 640, 644 (Tex. 2009). Surviving heirs are placed "in the exact 'legal shoes' of the decedent, and they are subject to the same defenses to which the decedent's claims would have been subject." *Id.* Liability under the Wrongful Death Act may be predicated only on 'an injury that causes an individual's death.'" *Kramer v. Lewisville Memorial Hosp.*, 858 S.W.2d 397, 403 (Tex. 1993) (quoting Tex. Civ. Prac. & Rem. Code § 71.002(b)); *see also Slade v. City of Marshall*, 814 F.3d 263, 264 (5th Cir. 2016) ("[A] plaintiff seeking to recover under Texas's wrongful death statute must demonstrate that the defendant's wrongful actions more likely than not caused the decedent's death—not just that they reduced the decedent's chance of survival by some lesser degree.").

The Texas Survival Statute (Tex. Civ. Prac. & Rem. Code §§ 71.021–.022) preserves a claim for the estate rather than creating a new cause of action for those surviving the decedent. *Pluet v. Frasier*, 355 F.3d 381, 384 (5th Cir. 2004). It "allows the decedent's heirs, legal representatives, and estate to bring suit for personal injuries the decedent suffered before his death." *Potharaju v. Jaising Maritime, LTD.*, 193 F. Supp.2d 913, 917 (E.D. Tex. 2002). Like a claim under the Wrongful Death Statute, a claim under the Survivorship Statute bars recovery where the defendant's conduct deprived the victim of only a 50% or less chance of avoiding death. *Kramer*, 858 S.W.2d at 400, 404–07.

The Fifth Circuit has held that, pursuant to 42 U.S.C. § 1988(a), federal civil rights actions incorporate Texas's Wrongful Death and Survival Statutes as remedies. *See Rodgers v. Lancaster Police*

---

(1990) (explaining that a litigant "must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties.").

*& Fire Dep't*, 819 F.3d 205, 208-09 (5th Cir. 2016); *Pluet v. Frasier*, 355 F.3d 381, 383–84 (5th Cir. 2004). To state a Section 1983 claim under the Texas Wrongful Death Statute and/or Texas Survival Statute, a decedent's surviving heir must prove (1) a constitutional violation; and (2) a causal connection between the violation and the death of the decedent. *See Montano v. Orange Cty., Tex.*, 842 F.3d 865, 879-80, 882 (5th Cir. 2016). Similarly, surviving heirs suing under the ADA or RA must establish, in addition to an ADA/RA violation, that the violation was causally connected to the decedent's death. *See Pickens v. Austin*, 2005 WL 8157348, at *6-7 (W.D. Tex. Mar. 21, 2005).[7]   To meet the causation element, surviving heirs must demonstrate that the defendants' acts or omissions were a "substantial factor in bringing about the [death] and without which the [death] would not have occurred." *Montano*, 842 F.3d at 882 (citing *Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 511 (Tex. 1995)).

In this case, Plaintiff attributes the death of her son directly to the alleged excessive use of force by Frith, McGuire, Bastic, Harp, and Enriquez on January 13, 2021.  SAC at ¶ 47.  While she complains about actions taken by Defendants both before or after that use of force, she does not allege a plausible causal connection between any of those actions and Valenzuela's death.

Valdez.  Plaintiff only alleges that Valdez operated the camera during the use of force and "intentionally pointed it at the ground to obstruct later legal action by the Valenzuela family." *Id.* There is no alleged or plausible link between this alleged conduct and Valenzuela's death.

Paxton.  Plaintiff alleges that Paxton covered up the true cause of Valenzuela's death and hindered her access to the courts (*id.* at ¶ 121; Rule 7(a) Reply at 3-4) but does not allege that Paxton took any action before Valenzuela's death, much less any action that caused his death.

Love.  In addition to conspiring with Paxton and others to cover up Valenzuela's death,

---

[7] Neither the ADA nor the RA explicitly allow for recovery by heirs of a deceased person.  Thus, while the Fifth Circuit has not explicitly addressed this question, any recovery by Plaintiff under the ADA/RA would only be possible under the Wrongful Death Statute and/or Survival Statute, both of which limit recovery to conduct which caused the death of the decedent. *See Kramer*, 858 S.W.2d at 400, 403–07; *Pluet*, 355 U.S. at 383 ("[S]tate common law is used to fill gaps in the administration of civil rights suits.").

Plaintiff alleges that Love failed to train and supervise medical and mental health staff in properly recognizing, treating, and reporting excessive uses of force.  SAC at ¶ 68.  Plaintiff further alleges that Love failed to prevent, monitor, and protect inmates from harm.  *Id.* ¶¶ 70-113.  However, Plaintiff does not offer any specific facts linking Love's actions to Valenzuela's death.  Her vague, conclusory allegation that Love's generalized inaction "cause[d] [Valenzuela]'s constitutional injury" (*id.* at ¶ 113) is insufficient to establish causation.  *See Kapoor v. Estate of Klovenski*, No. 14-11-118-cv, 2012 WL 8017139, at *2 (Tex. App.—Houston [14th Dist. Feb. 16, 2022]) (dismissing wrongful death and survival claims under Section 1983 because they were premised on vague, speculative, and conclusory allegations of causation between the defendant's actions and the decedent's death).

Hefner.  In addition to conspiring with Paxton, Love, and others to cover up Valenzuela's death, Plaintiff alleges that Hefner, the Wallace Unit Warden at the time of Valenzuela's death, failed to train, supervise, and discipline correctional officers in the proper use of force.  SAC at ¶ 65.  As with Love, however, Plaintiff offers no specific facts causally linking Hefner's actions or inactions to Valenzuela's death, and her conclusory allegation that Hefner "caused the constitutional violations" (*id.*) is insufficient.  *See Kapoor*, 2012 WL 8017139, at *2.

Jumper & DeShields.  In addition to conspiring with Paxton, Love, Hefner, and others to cover up Valenzuela's death, Plaintiff alleges that Jumper and DeShields failed to train and supervise medical and mental health staff in properly recognizing, treating, and reporting excessive uses of force.  *Id.* at ¶ 68.  Plaintiff does not explain, however, how Jumper and DeShields's alleged inaction was a "substantial factor" in causing Valenzuela's death, much less that Valenzuela would have survived but for that inaction.  *Montano*, 842 F.3d at 882.

The Entity Defendants.  Plaintiff alleges that the Entity Defendants "discriminated against [Valenzuela] by reason of his mental health disability" by failing to train, supervise and discipline correctional officers and health care providers on mental health disabilities.  SAC at ¶ 114.  While

Plaintiff alleges that this discrimination violated the ADA and RA, she does not offer any facts indicating that it caused Valenzuela's death.

*   *   *   *   *

Because Plaintiff fails to allege a plausible, non-conclusory causal link between Defendants' actions and Valenzuela's death, her claims are not cognizable under the Texas Wrongful Death Statute or the Texas Survival Statute. And since Plaintiff's Section 1983 and ADA/RA claims rely on application of those statutes, her failure to allege causation warrants dismissal of her complaint for failure to state a claim. *See, e.g., Kahng v. City of Houston*, 845 F. Supp. 2d 787, 792 (S.D. Tex. Apr. 24, 2007) (dismissing wrongful death Section 1983 claim where the plaintiff failed to allege facts establishing a causal link between the defendant's actions and the decedent's death).[8]

### E.  Plaintiff fails to state a Section 1983 claim against the Employee Defendants.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege a right secured by the Constitution and a violation of that right by one or more state actors. *See Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 200 (5th Cir. 1994). Plaintiff fails to allege any such violation by the Employee Defendants, warranting dismissal under Federal Rule of Civil Procedure 12(b)(6).

### 1.  Plaintiff fails to allege personal involvement by the Employee Defendants.

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). In order to satisfy this element, plaintiffs must allege that each defendant (1) "affirmatively participate[d] in acts that cause constitutional deprivations" or (2) "implement[ed] unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992); *see also Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976)

---

[8] Plaintiff's only claim which arguably does not depend on application of the Texas Wrongful Death Act and/or the Texas Survival Statute is her First Amendment claim alleging that the Employee Defendants impeded *her* access to the courts. However, as described below, that claim suffers from other pleading deficiencies warranting dismissal. *Section* V.E.3., *infra*.

(holding that there must be an affirmative link between injury and conduct of defendant).  Courts will not hesitate to dismiss complaints containing only conclusory allegations of personal involvement unsupported by specific facts.  *See, e.g., Perryman v. Wilson*, No. 4:19-cv-199, 2020 WL 1159387, at *7-8 (N.D. Tex. Mar. 10, 2020); *Christensen v. Mejia*, No. 3:15-CV-0854, 2016 WL 11258227, at *5 (N.D. Tex. Oct. 10, 2016), *rec. adopted*, 2017 WL 2838120 (N.D. Tex. July 3, 2017).

Here, Plaintiff does not offer any non-conclusory facts indicating that the Employee Defendants personally participated in the alleged constitutional violations giving rise to this suit, or that they implemented unconstitutional policies that causally resulted in her or Valenzuela's injuries.

Valdez:  Plaintiff's sole allegation against Valdez is that he pointed his video camera at the ground during the January 13, 2021 use of force "to obstruct later legal action by the Valenzuela family."  SAC at ¶ 47.  Even if this were true, it is insufficient to show personal involvement because Plaintiff does not allege any injuries to her or Valenzuela directly attributable to Valdez's actions.

Hefner, Love, Jumper, DeShields, and Paxton.  Despite some conclusory allegations of personal involvement by these Defendants, it is obvious from reading Plaintiff's SAC as a whole that she seeks to hold them individually liable not for any affirmative action they *personally* took, but rather by virtue of their supervisory roles as Wallace Unit Warden (Hefner), Attorney General of Texas (Paxton), TDCJ's Inspector General (Love), TTUHSC's Vice President of Health Policy and Special Health Initiatives (Jumper), and TTUHSC's Executive Director of Managed Care (DeShields).  *See* SAC at ¶ 11 ("As warden, Hefner was obligated to perform advanced managerial correctional and criminal justice administration work at the Wallace unit."), ¶ 12 ("[As] head of the office of Office of Inspector General . . . Love was obligated to . . . monitor investigative and audit techniques, and regulations in order to make recommendations of appropriate action to the TBCJ."), ¶ 14 ("Jumper . . . is responsible for ensuring that TTUHSC staff are properly trained and educated in effectively helping inmates experiencing a mental health crisis."), ¶ 15 ("DeShields . . . is . . . responsible for

training and educating medical staff on how to properly identify and report correctional staff illegal use of excessive force."), ¶ 18 ("[As] Attorney General of Texas . . . [Paxton] is responsible for enforcement of federal laws" and "examining alleged violations of federal laws.").

The law is clear, however, that supervisory officials cannot be held liable under Section 1983 "for the actions of subordinates . . . on any theory of vicarious liability." *Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994) ("Vicarious liability does not apply to [Section] 1983 claims."); *Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct"). To state a claim under Section 1983, a plaintiff "must plead that each Government-official defendant, through his own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 663. Plaintiff's failure to do so in this case warrants dismissal for failure to state a claim.

### 2. Plaintiff does not state an Eighth Amendment failure-to-train claim.

To state an Eighth Amendment failure-to-train claim against a supervisory official, a plaintiff must allege facts demonstrating "(1) [that] the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) [that] the failure to train or supervise amounts to deliberate indifference." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). Plaintiff fails to successfully plead any of these required elements.

To satisfy the first element, a plaintiff's pleadings must identify the particular respect in which the defendant's training or supervision of his subordinates was either inadequate or deficient. *Henderson v. Harris Cnty., Texas*, 51 F.4th 125, 130 (5th Cir. 2022); *see also Anokwuru v. City of Houston*, 990 F.3d 956, 965 (5th Cir. 2021) ("[A] plaintiff must allege with specificity how a particular training program is defective."). Conclusory assertions regarding the existence of an inadequate policy or problematic custom do not satisfy this requirement. *Henderson*, 51 F.4th at 130.

Here, Plaintiff alleges that Hefner failed to properly train and supervise TDCJ officers concerning "the proper use of force" and "situations involving emotionally disturbed persons and in the proper means of detaining or protecting such persons from harming themselves or others." SAC at ¶ 65. Plaintiff further alleges that Love "failed to train his staff within TDCJ to prevent, monitor and protect inmates from harm." *Id.* at ¶ 113. Finally, Plaintiff further alleges that Love, Jumper, and DeShields failed to train and TTUHSC mental healthcare staff "in properly recognizing, documenting, treating, and reporting excessive force by correctional staff against inmates, especially those inmates experiencing a mental health crisis." *Id.* at ¶ 65. Plaintiff fails, however, to identify any *specific* inadequacy with TDCJ or TTUHSC's training procedures or any *specific* instance of Hefner, Love, Jumper, or DeShields failure to supervise their subordinates. Therefore, Plaintiff's failure-to-train claim, supported only on conclusory allegations of training and supervision deficiencies, must be dismissed. *See Henderson*, 51 F.4th at 130 (dismissing failure-to-train claim supported only by conclusory allegation that Harris County failed to provide its officers with any training on the constitutional use of tasers).

Plaintiff also fails to allege a causal link between Hefner, Love, Jumper, or DeShields' failure to train their subordinates and a violation of her or Valenzuela's constitutional rights. With respect to Hefner and Love, Plaintiff offers no facts indicating that the January 13, 2021 use of force on Valenzuela would not have occurred if the officers involved had been properly trained. In fact, she alleges that Frith, McGuire, Bostic, Harp, and Valdez acted "maliciously, sadistically, and in bad faith" (SAC at ¶ 64), strongly implying that their behavior would have been unaffected by additional training. Similarly, with respect to Jumper and DeShields, Plaintiff does not explain how inadequate training of TTUHSC mental healthcare providers contributed to a violation of her or Valenzuela's rights.

16

Finally, Plaintiff fails to adequately plead deliberate indifference, which is "an extremely high standard to meet." *Domino v. TDCJ*, 239 F.3d 752, 756 (5th Cir. 2001). The Fifth Circuit has elaborated on what is required to show deliberate indifference in the failure-to-protect context:

> Deliberate indifference is a stringent standard of fault, requiring proof that a [state] actor disregarded a known or obvious consequence of his action. To establish that a state actor disregarded a known or obvious consequence of his actions, there must be actual or constructive notice that a particular omission in their training program causes employees to violate citizens' constitutional rights and the actor nevertheless chooses to retain that program. A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference, because without notice that a course of training is deficient *in a particular respect*, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights. Without cabining failure -to-train claims in this manner, a standard less stringent than deliberate indifference would be employed, and a failure-to-train claim would result in de facto *respondeat superior* liability.

*Porter v. Epps*, 659 F.3d 440, 446-47 (5th Cir. 2011) (internal quotations, citations, and ellipses omitted) (emphasis added); *see also Brown v. Bryan County*, 219 F.3d 450, 459 (5th Cir. 2000) (explaining that "mere negligence in failing to train" is insufficient for liability).

Plaintiff provides no relevant facts from which the Court could infer "a pattern of similar constitutional violations by untrained employees" giving Hefner, Love, Jumper, or DeShields "notice that a course of training is deficient in a particular respect." *Porter*, 659 F.3d at 446. Instead, Plaintiff simply provides a list of 39 instances in which TDCJ inmates died in custody. SAC at ¶¶ 71-110. However, these inmates died from various causes, none of which were related to a use of force (*id.*), and thus their deaths could not plausibly provide notice of deficient training. *See Cano v. Bexar Cnty., Tex.*, 280 F. App'x 404, 407 (5th Cir. 2008) (holding, in excessive use of force case, that plaintiff's references to incidents that did not involve the use of force were irrelevant to establishing a pattern); *Estate of Davis*, 406 F.3d at 383 ("Prior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question.").

The Fifth Circuit's decision in *Saenz v. City of El Paso*, another wrongful death case, is instructive. 637 F. App'x 828 (5th Cir. 2016). In *Saenz,* the plaintiff alleged that the El Paso Police

Department's failure to properly train officers resulted in her son's fatal shooting. *Id.* at 830. To show a pattern of constitutional violations, the plaintiff listed twenty-one prior incidents in which El Paso police officers had fatally shot individuals *Id.* at 832. The court held that this list "did not allow the court to draw the reasonable inference that any of these events were anything more than isolated incidents." *Id.* "Without further context surrounding the circumstances," the court held, "the allegations of prior shootings do not plausibly suggest a pattern of abuses to which the City was deliberately indifferent." So too, here. Without more, the fact that inmates have died in TDCJ custody did not provide notice of constitutional violations by untrained employees such that Hefner, Love, Jumper, or DeShields could be found liable for failure to train.

### 3.  Plaintiff does not state a First Amendment access-to-courts claim.

The First Amendment requires that individuals be afforded a reasonable opportunity to file nonfrivolous legal claims with the courts. *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). To state a First Amendment access-to-courts claim, a plaintiff must allege that the denial of access resulted in an "actual injury" such as the inability to meet a filing deadline or present a claim. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). Conclusory allegations of actual injury are insufficient; rather, a plaintiff must "identify, specifically, how his right to access the court has been 'curtailed' or how he was harmed by an alleged violation of his right to access the court." *Pitts v. Director, TDCJ-CID*, No. 6:18-cv-280, 2018 WL 7364647, at *6 (E.D. Tex. Sept. 28, 2018), *rec. adopted*, 2019 WL 699283 (E.D. Tex. Feb. 19, 2019).

Here, Plaintiff alleges that the Employee Defendants impeded her and Valenzuela's access to courts by concealing information, falsifying findings, and withholding reports. SAC at ¶¶ 120-124. As a threshold matter, Plaintiff's claims regarding *Valenzuela's* access to the courts are not cognizable under the Texas Wrongful Death Statute or Texas Survival statute because there is no plausible causal link between that lack of access and his death. *See* Section V.D., *supra*. To the extent Plaintiff claims

that her own access to the courts has been impeded by the Employee Defendants' actions, that claim fails because she does not articulate any resulting actual injury to contemplated or existing litigation.

The closest Plaintiff comes to asserting actual injury is in her Rule 7(a) Reply, where she alleges that "the actions of [the Employee Defendants] have frustrated and will continue to frustrate Plaintiff's litigation process because these actions intended to cover-up [Valenzuela]'s true cause of death complicate arriving at justice exponentially by causing doubt where there would otherwise be none." Rule 7(a) Reply at 4. This allegation is still insufficient, however, because the mere potential to "complicate arriving at justice" or "cause doubt" is far too opaque and speculative to constitute actual injury. *See Lewis*, 518 U.S. at 346; *Flores v. Smith*, No. 9:11-cv-205, 2012 WL 1946137, at *4 (E.D. Tex. May 30, 2012) (dismissing access-to-court claim as frivolous because the plaintiff's "allegations regarding harm do not raise above speculation"); *see also Twombly*, 550 U.S. at 555 (to survive dismissal, factual allegations must rise "above the speculative level.").

### 4. Plaintiff does not state a conspiracy claim.

To state a conspiracy claim under Section 1983, a plaintiff must allege facts indicating (1) "the existence of a conspiracy involving state action" and (2) "a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019). "Mere conclusory allegations of conspiracy cannot, absent reference to material facts, survive a motion to dismiss." *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982). Rather, a plaintiff must provide "specific allegation[s] of fact tending to show a prior agreement has been made." *Id.* at 1023-24.

Here, Plaintiff fails to meet either of the required elements for a Section 1983 conspiracy claim. *First*, Plaintiff's allegations of the existence of a conspiracy are entirely conclusory. *See* SAC at ¶ 124 ("The defendants named in this section all functioned off a long standing and unspoken agreement and policy by which investigators, health care providers, and correctional staff intentionally misdocument serious incidents of excessive force which caused inmate death."); ("Love . . . conspired

to cover up the try origin of [Valenzuela]'s injuries"), ¶ 119 ("Paxton . . . also attempted to cover up [Valenzuela]'s death"), ¶ 123 ("[The Employee Defendants have conspired with each other to withhold information").[9]  *Second*, as described immediately above, there has been no deprivation of either Plaintiff or Valenzuela's civil rights.  Accordingly, Plaintiff's conspiracy claim must be dismissed.

**F. The Employee Defendants are entitled to qualified immunity with respect to Plaintiff's individual-capacity Section 1983 claims.[10]**

Qualified immunity shields government officials sued in their individual capacities from both suit and liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  Once the qualified immunity defense has been asserted, the burden shifts to the plaintiff to show that it does not bar recovery. *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010).  At the pleading stage, a plaintiff must allege sufficient facts to show that (1) the defendant violated a federal statutory or constitutional right; and (2) the violated right was clearly established under prevailing law so that the defendant's actions were not objectively reasonable. *Bishop v. Karney*, 408 F. App'x 846, 848 (5th Cir. 2011). To establish that a right is clearly established, the plaintiff must cite precedent in which "an officer acting under similar circumstances . . . was held to have violated the [Constitution or other federal law]." *Joseph v. Bartlett*, 981 F.3d 319, 325 (5th Cir. 2020) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018)).

A plaintiff seeking to overcome qualified immunity must plead specific facts that will enable the court to reasonably infer that the defendant violated the statutory or constitutional right in question and that that right was clearly established. *Arnold v. Williams*, 979 F.3d 262 (5th Cir. 2020).

---

[9] Plaintiff argues in her Rule 7(a) reply that the existence of a conspiracy is evidenced by the fact that several of the Employee Defendants "documented conflicting reasons as to the true cause of [Valenzuela]'s death."  Rule 7(a) Reply at 3.  That argument is nonsensical; if anything, the Employee Defendants' conflicting accounts of the cause of Valenzuela's death demonstrates the *absence* of any conspiratorial agreement between them.

[10] The Fifth Circuit recently held that, "[w]hen defendants assert qualified immunity in a motion to dismiss, the district court may not defer ruling on that assertion."  *Carswell v. Camp*, 54 F.4th 307, 312 (5th Cir. 2022).  "The rule is that 'a defendant's entitlement to qualified immunity should be determined at the earliest possible stage of the litigation'—full stop." *Id.* (internal quotation omitted).

"Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation are all insufficient to overcome [qualified] immunity." *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016).  The burden is on the plaintiff to cite precedent which sets out the contours of the right in question through a high degree of factual specificity. *District of Columbia v. Wesby*, 138 S. Ct. 577, 589–90 (2018).

Here, Plaintiff has not cleared the first hurdle of this inquiry because she fails to allege any constitutional violation.  *See* Section V.E, *supra*.  Thus, Defendants' qualified immunity remains intact.  But even assuming *arguendo* that Plaintiff has adequately pled a constitutional violation, she cannot meet her burden of citing caselaw establishing the contours of the rights in question.

### G.  Plaintiff fails to state a claim under the ADA or RA.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Windham v. Harris Cty., Tex.*, 875 F.3d 229, 234 (5th Cir. 2017) (quoting 42 U.S.C. § 12132).  Similarly, "Section 504 of the [RA] provides that '[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]'" *Doe v. Columbia-Brazoria Indep. Sch. Dist. by & through Bd. of Trs.*, 855 F.3d 681, 690 (5th Cir. 2017) (quoting 29 U.S.C. § 794(a)).  With regard to public entities, Congress intended that Title II "work in the same manner as Section 504," and jurisprudence interpreting either statute is generally applicable to both.  *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000). *See also Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010) (explaining that the ADA and the RA are judged under the same legal standards, and that the same remedies are available under both Acts).

In order to establish a prima facie case of discrimination under Title II of ADA (or its RA

equivalent), plaintiffs must demonstrate "(1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability." *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004).  This third prong is heightened when the plaintiff seeks money damages, requiring proof of intentional discrimination. *Delano–Pyle v. Victoria County, Tex.*, 302 F.3d 567, 574 (5th Cir. 2002).  Here, by way of the Texas Wrongful Death Statute and Texas Survival Statute, Plaintiff seeks to recover damages for the Entity Defendants' alleged discrimination of Valenzuela.  SAC at ¶¶ 114-16.  However, her allegations fail to meet any of the required elements for liability under the ADA or RA.

### 1.   Plaintiff fails to allege that Valenzuela had a qualifying disability.

The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).  Determining whether someone meets this definition requires an individualized assessment. *Garrett v. Thaler*, 560 F. App'x. 375, 383 (5th Cir. 2014).  Plaintiff does not allege that Valenzuela suffered from any specific physical or mental impairment whatsoever, much less one which *substantially* limited his major life activities.  She alleges that Valenzuela experienced a "severe mental health crisis" on the day of his death (SAC at ¶ 35), but does not contend that it interfered with any specific functionality.   As such, Plaintiff fails to allege a qualifying disability.  *See Hale v. King*, 642 F.3d 492, 500-01 (5th Cir. 2011) (dismissing ADA and RA claims where plaintiff "ailed to allege that his conditions substantially limited him in his performance of a major life activity."); *see, also Briley v. Barreca*, No. 20-907, 2020 WL 6269715, at *5 (E.D. La. Oct. 26, 2020) (finding that a single "psychotic episode" did not render plaintiff disabled under the ADA).

### 2. Plaintiff fails to allege that Valenzuela was excluded from participation in, or denied the benefits of, services, programs, or activities for which the Entity Defendants are responsible.

Assuming *arguendo* that Valenzuela suffered from a qualifying disability, Plaintiff fails to identify any specific service, program, or activity that he was excluded from or denied the benefits of. Plaintiff alleges, without further elaboration, that Valenzuela was denied "the benefits of the services, programs, and activities to which he was entitled as a person with a mental health disability, including but not limited to the right to be free of discriminatory or disparate treatment by virtue of his mental disability, and to due process of the law." SAC at ¶ 114. However, neither "the right to be free of discriminatory and disparate treatment" nor "due process of law" are services, programs, or activities offered by the Entity Defendants. Plaintiff's failure to identify any specific service, program, or activity that Valenzuela was excluded from or denied the benefits of the benefits of is dispositive of her claim. *See Harkless v. Brazoria Cnty., Tex.*, No. 3:14-cv-329, 2016 WL 1702595, at *7 (S.D. Tex. Apr. 28, 2016) (dismissing ADA claim where plaintiff "[did] not specifically delineate the 'benefit' he alleges that the County denied to him because of his disability.").

### 3. Plaintiff fails to allege intentional discrimination.

Because Plaintiff seeks monetary damages and not injunctive relief, she must offer facts demonstrating not only discrimination on the basis of disability, but *intentional* discrimination on the basis of disability. *See Delano–Pyle*, 302 F.3d at 574. While courts have not specifically defined intentional discrimination in this context, the Fifth Circuit requires "something more than 'deliberate indifference' to show intent." *Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 575 (5th Cir. 2018). Plaintiff fails to meet her pleading burden on this element. Her allegation that the Entity Defendants "discriminated against [Valenzuela] by reason of his mental health disability" is entirely conclusory and is supported only by equally conclusory complaints about the quality of mental health care available to TDCJ inmates. SAC at ¶ 114. Even if those complaints were legitimate (which they

are not), they would not suffice to show intentional discrimination giving rise to liability under the ADA or RA. *See Back v. Tex. Dep't of Crim. Justice, Corr. Institutions Div.*, 716 F. App'x 255, 258 (5th Cir. 2017) (dismissing ADA claim where inmate "alleged no specific facts that would give rise to a reasonable inference that [TDCJ] intentionally discriminated against him because of any disability.")

## V.    CONCLUSION

For the reasons set forth above, Defendants request that the Court dismiss all claims against them pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**JAMES LLOYD**
Deputy Attorney General for Civil Litigation

**SHANNA E. MOLINARE**
Assistant Attorney General
Chief, Law Enforcement Defense Division

*/s/ Michael J. Calb*
**MICHAEL J. CALB**
Assistant Attorney General
Texas State Bar No. 24126986
Michael.Calb@oag.texas.gov

Law Enforcement Defense Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-2080 / Fax (512) 370-9814

**ATTORNEY FOR DEFENDANTS**

24

## CERTIFICATE OF SERVICE

I, **Michael J. Calb**, Assistant Attorney General of Texas, certify that a copy of the above and foregoing has been served on all counsel of record via the Electronic Case Files System for the Northern District of Texas on October 24, 2023.

/s/ Michael J. Calb
**MICHAEL J. CALB**
Assistant Attorney General