**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**ABILENE DIVISION**

| | | |
|---|---|---|
| **MARIA CONCEPCION VALENZUELA CERVANTEZ,** *Plaintiffs*, | § § § | |
| **v.** | § | **CIVIL NO. 1:22-cv-150** |
| **BRYAN COLLIER, ET AL.** *Defendants.* | § § § | |

## APPENDIX IN SUPPORT OF DEENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Darrell Frith, Greg McGuire, Manuel Enriquez Jr., Joe Harp, and Greg Bastic (collectively, Defendants"), through the Office of the Attorney General of Texas, and in accordance with Northern District Local Rule 56.6, file this appendix in support of their motion for summary judgment. Defendants' appendix contains the following summary judgment evidence:

| **Page(s)** | **Evidence** |
|---|---|
| 1-34 | Texas Department of Criminal Justice ("TDCJ") Emergency Action Center records related to Ruben Arturo Valenzuela ("Valenzuela") |
| 35-203 | TDCJ use of force report for incident on 1/13/2021 involving Valenzuela, with use of force photographs |
| 204 | TDCJ use of force video for incident on 1/13/2021 involving Valenzuela<br><br>Per Local Rule 56.6, a copy of the envelope containing the video has been included as a separate numbered page, and the video itself will be mailed to chambers. |
| 205-206 | ** University of Texas Medical Branch, Correctional Managed Care ("UTMB-CMC") morbidity and mortality review worksheet related to Valenzuela's death |
| 207-209 | ** UTMB-CMC death summary for Valenzuela |
| 210-246 | ** Tarrant County Medical Examiner's final autopsy report for Valenzuela |
| 247-443 | ** TDCJ Office of the Inspector General ("OIG") report regarding Valenzuela |
| 444-538 | ** Expert declaration of Dr. Benjamin Leeah |

| | |
|---|---|
| 539 | TDCJ no records affidavit for use of force on morning of 1/13/2021 |

Defendants are moving to file all documents marked with "**" under seal because they include and/or discuss Valenzuela's medical records and other documents which are confidential under the Health Insurance Portability and Accountability Act (HIPAA).

Respectfully submitted,

KEN PAXTON
Attorney General of Teas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

SHANNA E. MOLINARE
Division Chief
Law Enforcement Defense Division

*/s/ Michael J. Calb*
**MICHAEL J. CALB**
Assistant Attorney General
Attorney-In-Charge
Texas State Bar No. 24077883
Michael.Calb@oag.texas.gov

Law Enforcement Defense Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-2080

COUNSEL FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I, Michael J. Calb, Assistant Attorney General of Texas, certify that a correct copy of the foregoing has been served on all counsel of record via the Court's electronic filing system on February 12, 2025.

*/s/ Michael J. Calb*
**MICHAEL J. CALB**
Assistant Attorney General

DECLARATION OF LINDA COLE

"I am over 21 years of age, of sound mind, capable of making this declaration, and personally acquainted with the facts herein stated.

I am the custodian of records for the Emergency Action Center, a part of the Texas Department of Criminal Justice (TDCJ) located in Huntsville, Texas. Attached are true and correct copies of ***any/all records relating to inmate Valenzuela, Ruben Arturo TDCJ #01785292 from January 01, 2021 to January 31, 2021***, which are kept by the TDCJ in the regular course of its business activity. The entries of such records were made as a regularly conducted activity and a regular practice of the TDCJ, and were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters.

My name is Linda Cole and I am an employee of the TDCJ, a governmental agency. I am executing this declaration as part of my assigned duties and responsibilities. I declare under penalty of perjury that the foregoing is true and correct."

Executed in Walker County, State of Texas, on the 3rd day of February, 2025.

**Linda Cole**
Program Supervisor I
Emergency Action Center
Texas Department of Criminal Justice

EA0200/EA02 TEXAS DEPARTMENT OF CRIMINAL JUSTICE 2024/06/13
00374 /5337/INMTCICS EMERGENCY ACTION CENTER SYSTEM 12:49:43
00721-01-21 INCIDENT REPORT PAGE 1

PREPARED BY (USERID/NAME/DATE/TIME):
TD00056 DARRELL FRITH WL 01/13/2021 19:09
AUTHORIZED BY(TITLE/LAST, FIRST MI)
SENIOR WARDEN HEFNER,JODY
INCIDENT OCCURRED: 01/13/2021 TIME: 13:46 AT: WL SECUR LVL: 002 RGN: 5
DATE UN/FA AWARE: 01/13/2021 TIME: 14:28
REPORTED ON: 01/13/2021 TIME: 16:24 BY: WL SECUR LVL: 002 RGN: 5
OF: MA003380121 TYPE OF INCIDENT: USE OF COP AND CHEMICAL AGENTS
LOCALE: CELL (RESTRICTIVE HOUSING)
SPECIFIC LOCATION: RESTRICTIVE HOUSING 3 CELL
INITIAL INCIDENT COMMANDER (TITLE/LAST, FIRST MI): (IF APPLICABLE)
CAPTAIN FRITH,DARRELL
FINAL INCIDENT COMMANDER (TITLE/LAST, FIRST MI): (IF COMMAND TRANSFERRED)

RESPONSE TEAM: X A X B C D E N/A RACIAL: N
OIG NOTIFIED:
OIG PERSONNEL NOTIFIED:

================ LIST OFFENDER(S) INVOLVED: Y ================

TDCJ: 01785292 SID: 08395782 NAME: VALENZUELA,RUBEN ARTURO
CUST: G4 RACE: H GENDER: M AGE: 26 HGT: 503 WGT: 199
STG: MX SUSPECTED: CONFIRMED: Y EX:
ROLE: A INJURY: N CHEM INJURY: N DECONTAMINATED: Y MEDICAL EXAM: Y
TREATMENT: N
TRANSFER BY: TO:
ALLEDGED SEX ASSAULT: N EVIDENCE KIT: REP PROVIDED:
REP:
PRONOUNCED DECEASED: NO

================ LIST EMP(S)/OTH(S) INVOLVED: Y ================

PERSON TYPE:TDC SSN:[redacted] LIT:N
TITLE/NAME (LAST, FIRST MI):
CAPT OF CORR OFF FRITH,DARRELL H
RACE: W GENDER: M AGE: 40 INJURED: N MEDICAL EXAM: Y ROLE: O
C.R.I.S.P. OFFERED: Y
ALLEDGED SEX ASSAULT: N EVIDENCE KIT: REP PROVIDED:
REP:
PERSON TYPE:TDC SSN:[redacted] LIT:N
TITLE/NAME (LAST, FIRST MI):
CORR OFFICER IV HARP,JOE B
RACE: W GENDER: M AGE: 36 INJURED: Y MEDICAL EXAM: Y ROLE: O
C.R.I.S.P. OFFERED: Y
ALLEDGED SEX ASSAULT: N EVIDENCE KIT: REP PROVIDED:
REP:
PERSON TYPE:TDC SSN:[redacted] LIT:N
TITLE/NAME (LAST, FIRST MI):
CORR OFFICER V SKIPWORTH,JAMES P
RACE: W GENDER: M AGE: 51 INJURED: N MEDICAL EXAM: Y ROLE: O
C.R.I.S.P. OFFERED: Y

------------------------- CONTINUED ON NEXT PAGE -------------------------

ALLEDGED SEX ASSAULT: N EVIDENCE KIT: REP PROVIDED:
REP:
PERSON TYPE:TDC SSN: [redacted] LIT:N
TITLE/NAME (LAST, FIRST MI):
CORR OFF III BOSTIC,GREG A
RACE: H GENDER: M AGE: 20 INJURED: Y MEDICAL EXAM: Y ROLE: O
P.R.I.S.P. OFFERED: Y
ALLEDGED SEX ASSAULT: N EVIDENCE KIT: REP PROVIDED:
REP:
PERSON TYPE:TDC SSN: [redacted] LIT:N
TITLE/NAME (LAST, FIRST MI):
CORR OFFICER IV MCGUIRE,ROBERT L
RACE: W GENDER: M AGE: 32 INJURED: Y MEDICAL EXAM: Y ROLE: O
P.R.I.S.P. OFFERED: Y
ALLEDGED SEX ASSAULT: N EVIDENCE KIT: REP PROVIDED:
REP:
PERSON TYPE:TDC SSN: [redacted] LIT:N
TITLE/NAME (LAST, FIRST MI):
CORR OFFICER IV ENRIQUEZ,MANUEL
RACE: H GENDER: M AGE: 24 INJURED: Y MEDICAL EXAM: Y ROLE: O
P.R.I.S.P. OFFERED: Y
ALLEDGED SEX ASSAULT: N EVIDENCE KIT: REP PROVIDED:
REP:
PERSON TYPE:TDC SSN: [redacted] LIT:N
TITLE/NAME (LAST, FIRST MI):
CORR OFFICER V MARTINEZ,HARRY W
RACE: H GENDER: M AGE: 29 INJURED: N MEDICAL EXAM: Y ROLE: O
P.R.I.S.P. OFFERED: Y
ALLEDGED SEX ASSAULT: N EVIDENCE KIT: REP PROVIDED:
REP:

================ CHEMICAL AGENTS USED: Y ================

TYPE AMOUNT DESCRIPTION (OF CHEMICAL AGENTS)
13 03.50 AEROSOL COP CONE OC(OUNCES)
12 06.40 AEROSOL MK-9/FOGGER OC (OUNCES)
REASON FOR USE: I ATTEMPTING SUICIDE OR SELF-MUTILATION
EXTRACTION TEAM AUTHORIZED (Y/N): Y
CHEMICAL AGENTS AUTHORIZED BY (TITLE/LAST, FIRST MI):
SENIOR WARDEN HEFNER,JODY

================ WEAPONS/CONTRABAND FOUND: N ================

================ SECURITY RESOURCES USED: N ================

================ DID A LOCKDOWN OCCUR: N ================

================ NARRATIVE: ================

------------------------ CONTINUED ON NEXT PAGE ------------------------

ON 1/13/2021 AT APPROXIMATELY 1348 HOURS INMATE VALENZUELA, RUBEN # 1835292 WAS ON CDO STATUS WAITING FOR A BED TO OPEN AT THE MONTFORD UNIT. OFFICER SKIPWORTH, JAMES WAS OBSERVING THE INMATE WHEN THE INMATE WRAPPED HIS HANDS AROUND THE TOILET AND PLACED HIS FACE IN THE TOILET IN AN ATTEMPT TO DROWN HIMSELF. OFFICER SKIPWORTH ORDERED THE INMATE TO STOP WHAT HE WAS DOING AND THE INMATE REFUSED. INMATE VALENZUELA COLLAPSED TO HIS CELL FLOOR AND BEGAN COUGHING UP WATER, INMATE VALENZUELA IMMEDIATELY STUCK HIS FACE BACK INTO THE WATER AND COLLAPSED COUGHED UP WATER AND THEN DID IT AGAIN. OFFICER SKIPWORTH ORDERED THE INMATE SEVERAL TIMES TO STOP TRYING TO HARM HIMSELF AND WARNED HIM CHEMICAL AGENTS WOULD BE ADMINISTERED. OFFICER SKIPWORTH CALLED CAPTAIN FRITH INTO RESTRICTIVE HOUSING AND CAPTAIN FRITH OBSERVED THE INMATE ATTEMPTING TO DROWN HIMSELF IN THE TOILET. THE INMATE BREIFLY STOPPED PUTTING HIS FACE IN THE TOILET AND BEGAN RUBBING HIS WRIST ON A PEICE OF METAL ON THE ELECTRICAL BOX THAT HE HAD PULLED OFF IN AN ATTEMPT TO CUT HIS WRIST. OFFICER SKIPWORTH ORDERED THE INMATE TO STOP ATTEMPTING TO HARM HIMSELF AND THE INMATE REFUSED, OFFICER SKIPWORTH ADMINISTERED A BURST OF COP CHEMICAL AGENTS TOWARDS THE INMATE IN AN ATTEMPT TO GAIN COMPLIANCE FROM THE INMATE. LVN CASTILLIO STATED SHE NEEDED TO SEE THE INMATE IN MEDICAL TO FURTHER ASSESS THE INMATE. CAPTAIN FRITH ORDERED THE INMATE TO COME TO THE CELL DOOR AND TO SUBMIT TO HAND RESTRAINTS AND THE INMATE REFUSED STATING "NO, I'M NOT GOING." THE INMATE BEGAN TO ATTEMPT TO DROWN HIMSELF AGAIN BY STICKING HIS FACE IN TOILET AND SUCKING IN WATER UNTIL HE PASSED OUT. HE GOT UP COUGHING WATER AND THEN DID IT AGAIN AND CONTINUED TO DO SO. CAPTAIN FRITH GAINED CLEARANCE FROM SENIOR WARDEN HEFNER FOR THE USE OF 5 MAN TEAM AND ADDITIONAL CHEMICAL AGENTS. CAPTAIN FRITH ORDERED THE INMATE 2 MORE TIMES TO COME TO THE CELL DOOR AND TO SUBMIT TO HAND RESTRAINTS SO HE COULD BE ESCORTED TO MEDICAL FOR A FURTHER MENTAL HEALTH ASSESSMENT AND WARNED ADDITIONAL CHEMICAL AGENTS WOULD BE USED IF HE FAILED TO COMPLY. THE INMATE REFUSED ALL ORDERS GIVEN AND CAPTAIN FRITH ADMINISTERED A BURST OF MK9 COP TOWARDS THE INMATE IN AN ATTEMPT TO GAIN COMPLIANCE. THE CHEMICAL AGENTS HAD NO EFFECT ON THE INMATE AND HE CONTINUED TO REFUSE ALL ORDERS GIVEN AND CONTINUED TO PLACE HIS FACE IN THE TOILET UNTIL HE PASSED OUT OVER AND OVER AGAIN. CAPTAIN FRITH ORDERED THE INMATE AGAIN TO SUBMIT TO RESTRAINTS AND WARNED CHEMICAL AGENTS WOULD BE USED IF HE FAILED TO COMPLY. THE INMATE REFUSED ORDERS AGAIN AND YELLED "NO, I'M NOT GOING," CPT. FRITH ADMINISTERED A SECOND BURST OF MK9 TOWARDS THE INMATE AND WAITED FOR THE CHEMICAL AGENTS TO TAKE EFFECT. THE CHEMICAL AGENTS HAD NO EFFECT ON THE INMATE, CAPTAIN FRITH ORDERED THE INMATE TO SUBMIT TO RESTRAINTS AGAIN AND WARNED THAT A 5 MAN FOCED CELL MOVE TEAM WOULD BE USED TO GAIN COMPLIANCE. THE INMATE REFUSED AGAIN, CPT. FRITH OPENED THE CELL DOOR AND THE 5 MAN TEAM ENTERED THE CELL. THE INMATE BEGAN TO FIGHT WITH THE TEAM BY HITTING, KICKING AND ATTEMPTING TO BITE THEM WHILE THEY ATTEMPTED TO PUT HAND RESTRAINTS ON THE INMATE. THE INMATE WAS ESCORTED TO THE RESTRICTIVE HOUSING SHOWER AREA DUE TO HIS AGGRESSIVE BEHAVIOR AND LVN CASTILLO CONDUCTED A CELL SIDE PHYSICAL AND NOTED NO INJURIES DUE TO THE UOF. THE INMATE REFUSED TO ANSWER HER QUESTIONS AND WOULD NOT LET HER CONDUCT A PHYSICAL ASSESSMENT AND DENIED ANY INJURIES DUE TO THE UOF. CPT. FRITH ATTEMPTED TO TAKE PHOTOS OF THE INMATE HOWEVER HE CONTINUED TO MOVE AROUND NOT ALLOWING

---------------------------- CONTINUED ON NEXT PAGE ---------------------------

THE PHOTOS TO BE TAKEN. THE INMATES CELL WAS CLEANED AND THE METAL PIECE ON THE WALL WAS FIXED, INMATE WAS ESCORTED BACK INTO HIS CELL AND WAS GIVEN ORDERS NOT TO HARM HIMSELF. ONCE BACK IN THE CELL CPT FRITH INSTRUCTED THE INMATE ON IN CELL DECONTAMINATION PROCEDURES AND READ THE UOF 2 TO THE INMATE. DUE TO THE INMATES STATUS ON CDO HE DID NOT RECEIVE A COPY OF THE UOF 2. CPT. FRITH TERMINATED THE UOF, MEDICAL STAFF DID STATE IF HE BEGAN TO ACT OUT AGAIN A SEDATIVE COULD BE USED, AT THIS TIME THE INMATE IS BEING COMPLIANT AND A SEDATIVE IS NOT NEEDED. ALL STAFF WERE SEEN AT THE WALLACE UNIT MEDICAL DEPARTMENT OFFICER HARP WAS NOTED WITH A .5 CM SCRATCH TO HIS RIGHT 1ST KNUCKLE ABOVE THE 2ND DIGIT. OFFICER BOSTIC WAS NOTED WITH 2 SUPERFICIAL SCRATCHS TO THE TOP OF HIS RIGHT. OFFICER MCGUIRE HAD RIGHT HAND SWELLING AND BRUISING, REDNESS TO BOTH ARMS AND LEFT KNEE SORENESS. OFFICER ENRIQUEZ WAS NOTED WITH REDNESS, MINIMAL SWELLING TO HIS RIGHT ELBOW, MULTIPLE ABRASIONS TO BOTH ARMS AND SWELLING TO HIS RIGHT ELBOW. THE INMATE WILL REMAIN IN CDO UNTIL A BED IS MADE AVAILABLE AT THE MONTFORD UNIT CRISIS MANGEMENT. CPT FRITH CONTACTED THE EMERGENCY ACTION CENTER AND WAS ISSUED INCIDENT NUMBER I-00721-01-21 FOR THE USE OF COP AND CHEMICAL AGENTS BY AMANDA ROBBINS. ANY UPDATES WILL BE FORWARDED TO THE EMERGENCY ACTION CENTER.

```
CSEA1400/CSEA14        TEXAS DEPARTMENT OF CRIMINAL JUSTICE          2024/06/13
SS00374 /5337/INMTCICS    EMERGENCY ACTION CENTER SYSTEM               12:49:48
                                  INCIDENT LOG
I-00721-01-21            ADDED BY: RA00186  ON: 01-13-2021 16:27
DATE/TIME REPORTED TO EAC 01 / 13 / 2021   16 : 24 LATE/COMPUTER DOWN(Y/N)?: _
REPORTED UNIT/FACILITY:
WL   WALLACE                       SECURITY LEVEL: 002      REGION: 5
INCIDENT UNIT/FACILITY:
WL   WALLACE                       SECURITY LEVEL: 002      REGION: 5
CALLER RANK/TITLE: CAPT
 LAST: FRITH                          FIRST: X                       MI: X
LOCATION OF INCIDENT ON UNIT/FACILITY
  96  CELL (RESTRICTIVE HOUSING)
                           INCIDENT DESCRIPTION:
45C,46    VALENZULA, RUBEN 1785252 ATTEMPTED TO DROWN BY STICKING HIS HEAD INSI
DE THE TOILET, TRIED TO CUT WITH A PIECE OF METAL HIS WRIST, A TOTAL OF 3.5 OZ
OF COP WAS USED TO NO AVAIL. THE WARDEN AUTH. A TOTAL OF 6.4 OZ OF OC WAS USED
TO NO AVAIL AND THE TEAM GAINED COMPL. SEEN BY MEDICAL, NO INJURIES, AND INSTRU
CTED ON DECON. STAFF SEEN BY MEDICAL SCRATCHES TO OFFICER BLASTIC, HEART, ENQUI
REZ, NO TREATMENT ABOVE FIRST AID. DID NOT SUICIDAL.   AMANDA ROBBINS TOOK CALL
LOG LAST UPDATED: RM00169  MARCIA RIGGINS                  01/14/2021 09:24
VOID/EXPUNGE CODE: __

F1=HELP F2=REFRESH F3=PREV F6=PROCESS F12=MENU
```

PREPARED BY (USERID/NAME/DATE/TIME):
HJ00448 JAMES MINNIX WL 01/14/2021 01:16
AUTHORIZED BY(TITLE/LAST, FIRST MI)
LIEUTENANT MINNIX,JAMES M
INCIDENT OCCURRED: 01/13/2021 TIME: 20:05 AT: WL SECUR LVL: 002 RGN: 5
DATE UN/FA AWARE: 01/13/2021 TIME: 20:05
REPORTED ON: 01/13/2021 TIME: 23:44 BY: WL SECUR LVL: 002 RGN: 5
OF: TYPE OF INCIDENT: INMATE DEATH
LOCALE: CELL (RESTRICTIVE HOUSING)
SPECIFIC LOCATION: RESTICTIVE HOUSING CELL TRANS-03
INITIAL INCIDENT COMMANDER (TITLE/LAST, FIRST MI): (IF APPLICABLE)
LIEUTENANT MINNIX,JAMES M
FINAL INCIDENT COMMANDER (TITLE/LAST, FIRST MI): (IF COMMAND TRANSFERRED)
LIEUTENANT MINNIX,JAMES M
RESPONSE TEAM: X A X B C D E N/A RACIAL: N
OIG NOTIFIED: 01/13/2021 20:50
OIG PERSONNEL NOTIFIED:UNDERWOOD,DAVID

================ LIST OFFENDER(S) INVOLVED: Y ================

TDCJ: 01785292 SID: 08395782 NAME: VALENZUELA,RUBEN ARTURO
CUST: G4 RACE: H GENDER: M AGE: 26 HGT: 503 WGT: 199
STG: MX SUSPECTED: CONFIRMED: Y EX:
ROLE: U INJURY: N CHEM INJURY: N DECONTAMINATED: N MEDICAL EXAM: Y
TREATMENT: N
TRANSFER BY: TO:
ALLEDGED SEX ASSAULT: N EVIDENCE KIT: REP PROVIDED:
REP:
PRONOUNCED DECEASED DATE: 01/13/2021 TIME: 21:45
BY: JUDGE WILLIAMS,JAMES
PRELIMINARY CAUSE: UNKNOWN
DEATH COUNTY: 168 MITCHELL
NOTIFIED:CONTRACTED FUNERAL HOME: Y JP:Y NEXT OF KIN (NOK):Y
NOK (LAST, FIRST MI): VALENZUELA,MARIA
DATE NOK NOTIFIED: 01/13/2021 TIME: 23:11 NOK WILL CLAIM BODY:Y
NOK RELATIONSHIP: MO MOTHER

================ LIST EMP(S)/OTH(S) INVOLVED: Y ================

PERSON TYPE:TDC SSN: [redacted] LIT:N
TITLE/NAME (LAST, FIRST MI):
LIEUTENANT OF CORR OFF MINNIX,JAMES M
RACE: W GENDER: M AGE: 44 INJURED: N MEDICAL EXAM: N ROLE: U
C.R.I.S.P. OFFERED: Y
ALLEDGED SEX ASSAULT: N EVIDENCE KIT: N REP PROVIDED: N
REP:
PERSON TYPE:TDC SSN: [redacted] LIT:N
TITLE/NAME (LAST, FIRST MI):
CORR OFFICER V GOMEZ,MAURICE J
RACE: H GENDER: M AGE: 32 INJURED: N MEDICAL EXAM: N ROLE: N
C.R.I.S.P. OFFERED: N

---------------------------- CONTINUED ON NEXT PAGE ----------------------------

ALLEDGED SEX ASSAULT: N EVIDENCE KIT: N REP PROVIDED: N
REP:
PERSON TYPE:TDC SSN:[redacted] LIT:N
TITLE/NAME (LAST, FIRST MI):
CORR OFFICER V HALFORD,LOUIS M
RACE: B GENDER: M AGE: 67 INJURED: N MEDICAL EXAM: N ROLE: N
C.R.I.S.P. OFFERED: Y
ALLEDGED SEX ASSAULT: N EVIDENCE KIT: N REP PROVIDED: N
REP:
PERSON TYPE:TDC SSN:[redacted] LIT:N
TITLE/NAME (LAST, FIRST MI):
SERGEANT OF CORR OFF BIGEMBE,APOLLO
RACE: B GENDER: M AGE: 57 INJURED: N MEDICAL EXAM: N ROLE: N
C.R.I.S.P. OFFERED: N
ALLEDGED SEX ASSAULT: N EVIDENCE KIT: N REP PROVIDED: N
REP:
PERSON TYPE:TDC SSN:[redacted] LIT:N
TITLE/NAME (LAST, FIRST MI):
SERGEANT OF CORR OFF DEANDA,MICHAEL A
RACE: H GENDER: M AGE: 25 INJURED: N MEDICAL EXAM: N ROLE: N
C.R.I.S.P. OFFERED: N
ALLEDGED SEX ASSAULT: N EVIDENCE KIT: N REP PROVIDED: N
REP:
PERSON TYPE:TDC SSN:[redacted] LIT:N
TITLE/NAME (LAST, FIRST MI):
CORR OFF III GARCIA,GABRIEL
RACE: H GENDER: M AGE: 21 INJURED: N MEDICAL EXAM: N ROLE: N
C.R.I.S.P. OFFERED: N
ALLEDGED SEX ASSAULT: N EVIDENCE KIT: N REP PROVIDED: N
REP:

================ CHEMICAL AGENTS USED: N ================

================ WEAPONS/CONTRABAND FOUND: N ================

================ SECURITY RESOURCES USED: Y ================

CODE: SECURITY RESOURCE DESCRIPTION:
05 VIDEO SURVEILLANCE
06 HEARTBEAT DETECTION SYSTEMS
OTHER:
SUMMARY OF HOW THE INDICATED RESOURCE(S) WAS RELEVANT TO THE INCIDENT:
LIFE SAVING MEASURES

================ DID A LOCKDOWN OCCUR: N ================

================ NARRATIVE: ================

ON 01/13/2021 AT APPROXIMATELY 2005 LIEUTENANT MINNIX, JAMES INITIATED

-------------------------- CONTINUED ON NEXT PAGE --------------------------

THE INCIDENT COMMAND SYSTEM (ICS) DUE TO AN UNRESPONSIVE INMATE IN RESTRICTIVE HOUSING CELL TRANS-03. INMATE VALENZUELA, RUBEN TDCJ# 0.785292 WAS BEING OBSERVED IN CDO BY COV HALIFORD, LOUIS. INMATE VALENZUELA FELL IN THE CELL FACE FIRST. LT MINNIX ARRIVED IN RESTRICTIVE HOUSING AND FOUND SAID INMATE FACE DOWN ON THE FLOOR. SAID INMATE WAS UNRESPONSIVE WITH BLOOD COMING FROM HIS FACIAL AREA. LT MINNIX ALONG WITH COV GOMEZ ENTERED THE CELL AND FOR SAFTY REASONS PLACED INMATE IN HAND RESTRAINTS TO RENDER HIM AID. IT WAS THEN DISCOVERED THAT SAID INMATE WAS NOT BREATHING. RESTRAINTS WERE REMOVED AND INMATE WAS PLACED ON HIS BACK AND LT. MINNIX STARTED CPR. COIII GABRIEL ARRIVED AND SWITCHED WITH LT. MINNIX AND COUNTINUED CPR. MITCHELL COUNTY EMS WERE NOTIFIED. LT. MINNIX AND COIII GARCIA COUNTINUED CPR. COIII GOMEZ, MAURICE ARRIVED WITH THE LIFE SAVING RESPONSE KIT AND THE TWO WAY BREATHING MASK. COIII GOMEZ THEN ENETERED INTO THE CPR ROATION WITH LT. MINNIX AS COIII GARCIA PERFOREMED RESCUE BREATHS. COV HALIFORD THEN RELEIEVED COIII GARCIA AND TOOK OVER RESCUE BREATHS AS LT. MINNIX AND COV GOMEZ COUNTINUED CPR. AED ARRIVED AND WASPLACE ON SAID INMATE. AED ADVISED NO SHOCK AND TO CONTINUE CPR WHICH WAS DONE. MITCHELL COUNTY EMS PERSONELL ARRIVED AT THE SCENE AND TOOK OVER LIFE SAVING MEASURES. THE EMTS ASSESTED SAID INMATE AND EMT REGIONAL SUPERVISOR REDWINE, EAMBI STATED THAT THE INMATE HAD NO PULSE, NO BREATH AND THAT SHE WAS STOPPING LIFESAVING MEASURES AT THIS TIME (2039) OFFICER CASTILLO, ANTHONY COVERED THE INMATE WITH A SHEET AND SECURED THE CELL AND AREA UNTIL THE ARRIVAL OF OIG. OIG UNDERWOOD, DAVID WAS NOTIFIED AT 2050 HOURS. JUDGE WILLIAMS, JAMES ARRIVED ON THE UNIT AND PRONOUCED SAID INMATE DECEASSED AT 2145 HOURS. CARNES FUNERAL HOME WAGNER, HOLLY WAS NOTIFIED AT 2312. INMATE'S MOTHER VALENZUELA, MARIA WAS NOTIFIED AT 2[illegible]1 HOURS AND STATED THAT SHE WOULD CALIM THE BODY. OIG UNDERWWOD ARRIVED AT THE WALLACE UNIT AT 2230 HOURS. ALL STAFF INVOLVED WERE OFFERED CRISP BUT DECLINED. REGIONAL CHAPLIN DAY WAS NOTIFIED AT 2[illegible]45 HOURS. UPDATES WILL FOLLOW AS THEY BECOME AVAILABLE AND AS NEEDED.

*************************************************************************

UPDATE INCIDENT REQUEST

1-00749-01-21
REQUEST BY: RA00191 AUTUMN RAULSTON 01/14/2021 04:57:
4[illegible] REQUESTED CHANGES:
NOK WILL CLAIM THE BODY, CHANGING TO YES

```
SEA1400/CSEA14          TEXAS DEPARTMENT OF CRIMINAL JUSTICE          2024/06/13
S00374 /5337/INMTCICS     EMERGENCY ACTION CENTER SYSTEM                12:49:59
                                  INCIDENT LOG
-00749-01-21              ADDED BY: MJ00448   ON: 01-13-2021 23:53
ATE/TIME REPORTED TO EAC 01 / 13 / 2021    23 : 44 LATE/COMPUTER DOWN(Y/N)?: _
EPORTED UNIT/FACILITY:
   WALLACE                             SECURITY LEVEL: 002      REGION: 5
NCIDENT UNIT/FACILITY:
   WALLACE                             SECURITY LEVEL: 002      REGION: 5
ALLER RANK/TITLE: LIEUTENANT
 LAST: MINNIX                             FIRST: JAMES                  MI: M
OCATION OF INCIDENT ON UNIT/FACILITY
  96  CELL (RESTRICTIVE HOUSING)
                           INCIDENT DESCRIPTION:
NMATE VALENZUELA, RUBEN TDCJ # 01785292 ASSIGNED TO TRAN-03 CELL ON CDO.  WHIL
 BEING WATCHED INMATE FELL FACE FIRST ON THE CELL FLOOR.  ICS WAS INTITIACTED
ND STAFF RESPONDED AND DISCOVERED INMATE UNRESPONSIVE.  LIFE SAVING MEASURES B
AN.  MITCHELL COUNTY EMTS ARRIVED AND ASSEST INMATE AND DETERMINED THAT HE EX
RED. OIG NOTIFEIED ALONG WITH JUDGE  JAMES WILLIAMS WHO PRONOUCED INMATE DECE
AED AT 2145.  SELF ISSUED BY JAMES MINNIX
OG LAST UPDATED: SMI9739  SANDRA MIGURA                     01/14/2021 08:38
OID/EXPUNGE CODE: __

=HELP F2=REFRESH F3=PREV F6=PROCESS F12=MENU
```

*JA*

**Date:** January 26, 2021
**Administrative Incident Review**
**Wallace Unit: I-00749-01-21**
**Regional Director's Comments:**

**Synopsis of incident:** On January 13, 2021 at 2005 hours. CDO Officer Halford, Louis COV was speaking with Inmate Valenzuela at his cell. While he was speaking with him, the inmate slipped on the water that was on the cell floor causing him to hit his face first on the concrete floor. Officer Halford described the inmate doing sit ups in his cell then jumped up to began doing push-ups when he slipped striking his face as he was going down into a push up position. Lt. James Minnix was just at the door speaking with him as well and immediately responded back to the cell and tried to get the inmate to respond. Lt. James Minnix initiated ICS. Once additional staff arrived, he opened the cell door. Inmate Valenzuela was nonresponsive and unconscious. Lt. Minnix imitated life saving measures. CPR was administered with chest compressions. Officer Garcia relieved Lt. Minnix and started chest compressions. At 2008 hours Lt. Minnix notified Central to call 911. Lt. Minnix asked for the life saving response kit to be brought on the scene. Lt. Minnix started chest compressions again and instructed Officer Garcia to give rescue breaths. Lt. Minnix asked for the AED, applied it to Inmate Valenzuela and it stated no shock advised and he continued with CPR. EMS arrived at the Wallace Unit at 2030 hours. EMS checked for a pulse and assessed the inmate. Bambi Redwine an EMT Supervisor stated the inmate didnt have a pulse, was not breathing, no heart rate and life saving measures would not continue. Justice of the Peace Judge James Williams pronounced Inmate Valenzuela deceased at 2145 hours. Chaplain Day notified the family of Inmate Valenzuela's death. Chaplain Day attempted to contact Maria Valenzuela, mother and was not able to. Chaplain Day then tried with Iberia Valenzuela, sister at 2311 and was successful, the family stated they would claim the body.

**All the appropriate notifications were made**

**Employee Action/Inaction:** Employee action/inaction was not a factor in this incident

**Corrective Action:** No employee corrective action required.

**Comments:** The Wallace Unit Correctional Staff responded swiftly and within Agency policy and procedures when advised of the Inmate Death. The Inmate was provided with medical attention.

[signature] 1-28-2021

**REGIONAL DIRECTOR'S SIGNATURE** **DATE**
FOR REGION V DIRECTOR

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE

P.O. Box 99 • Huntsville, Texas 77342-0099

Bryan Collier
Executive Director

## TEXAS DEPARTMENT OF CRIMINAL JUSTICE
### Administrative Incident Review

JAN 2021 REGION V DIRECTOR'S OFFICE

Incident Number: I-00749-01-21
Unit: Wallace Unit
Date: 01/13/2021

**TO:** Emergency Action Center

**Thru:** Mr. David Blackwell
Director II
Region V

**Subject:** Inmate Death

**Persons Involved:** Inmate Involved: Valenzuela, Ruben TDCJ # 01785292 is a 26-year-old Hispanic male in L3/G4 custody, who has served 9 years 2 months and 14 days on a 12 year sentence for Aggravated Assault with Deadly Weapon, out of El Paso County. On August 3, 2020 Inmate Valenzuela was confirmed as Mexciles. He has no Security Precaution Designators. Inmate Valenzuela was housed in transient cell #3 (single-man cell) pending transfer to the John T. Montford unit for Crisis Management.

**Summary:** On January 13, 2021 and at 2005 hrs. Constant Direct Observation (CDO) Officer Halford, Louis Correctional Officer (CO) V was speaking with Inmate Valenzuela at his cell. While he was speaking with him, the inmate slipped on the water that was on his cell floor causing him to hit face first on the concrete floor. Officer Halford described the inmate doing sit ups in his cell then jumped up to began doing push-ups when he slipped striking his face as he was going down into a push up position. Lieutenant (Lt.) James Minnix was just at his door speaking with him as well and immediately responded back to the cell and tried to get the inmate to respond. Lt. Minnix initiated the Incident Command System (ICS). As additional staff were called for he opened the cell door with restrictive housing officer CO V Gomez, Mauricio and Officer Halford who were present. The inmate was non responsive and unconscious. Lt. Minnix initiated life saving measures, Cardiopulmonary Resuscitation (CPR) by administering chest compressions. CO III Garcia, Gabriel relieved Lt. Minnix and started chest compressions. Sergeant (Sgt.) Bigembe, Apollo arrived with video camera and started recording. At 2008 hours Lieutenant Minnix notified Central Control via radio to call 911. Lt. Minnix then relieved Officer Garcia and started chest compressions. Officer Garcia then relieved Lt. Minnix for a second time to administer chest compressions. Lt. Minnix asked for the life-saving response kit to be brought on scene. Lt. Minnix received the one-way breathing mask and gave it to Officer Garcia. Lt. Minnix started chest compression and instructed Officer Garcia to give rescue breaths. Lt. Minnix then instructed Officer Halford to relieve Officer Garcia and give rescue breaths. Sgt. Deanda, Michael arrived and gave a brief narration. Officer Gomez relieved Lt. Minnix as Officer Halford continued rescue breaths. Lt. Minnix relieved Officer Gomez and started chest compression as Officer Halford continued with rescue

breaths. Lt. Minnix asked for the Automated External Defibrillator (AED). Lt. Minnix applied the AED pads to Inmate Valenzuela and turned on the AED. The AED analysis and stated no shock advised and continue CPR. Lt. Minnix continued with chest compression and Officer Halford continued with recuse breaths. Officer Gomez then relieved Lt. Minnix and continued chest compressions. The AED analysis and stated no shock advised and continue CPR. Mitchell County EMS arrived on the Wallace Unit at 2030 hours and was escorted to restrictive housing transient #3 cell. EMS personnel checked for a pulse and assessed the inmate. Bambi Redwine, EMT Paramedic Supervisor, stated the inmate had no pulse, was not breathing, no heart rate and life-saving measures would not continue. The Emergency Room (ER) physician was called and he confirmed to call the life saving measures. Justice of the Peace James William was notified at 2115 hours. Judge Williams arrived on the Wallace Unit and was escorted to restrictive housing where he pronounced Inmate Valenzuela deceased at 2145 hours.

Office of Inspector General (OIG) David Underwood was notified at 2050 hrs. OIG Underwood along with OIG Jarett Knowles arrived on the Wallace Unit at 2230 hours and was escorted to restrictive housing transient #3 cell. OIG investigators took photos of Inmate Valenzuela and his cell. OIG Underwood cleared the scene and body and authorized the transport of Inmate Valenzuela's remain and an autopsy.

Region V Chaplain William Day was notified of Inmate Valenzuela's death at approximately 2214 hours. Chaplain Day attempted to contact next of kin, Maria Valenzuela, mother, but was unable to. Chaplain Day was able to make contact with Iberia Valenzuela, sister, at 2311 hours and notified her of Inmate Valenzuela's death. Family did state they would claim the body.

Holly Wagner, Carnes Funeral Home, was contacted at 2312 hours for the transport of Inmate Valenzuela. Carnes Funeral Home (E. Cisneros) arrived on the Wallace Unit at 0050 hours and departed with Inmate Valenzuela.

Senior Warden Hefner was notified at 2010 hours and reported to the unit. Justice of the Peace, James Williams was notified at approximately 2115 hours, who then pronounced Inmate Valenzuela deceased at approximately 2145 hours. The Office of Inspector General Investigator David underwood was notified at approximately 2050 hours. The Emergency Action Center was contacted after hours at 2344 hours and incident number I-00749-01-20 was issued for Inmate Death.

The Wallace Unit Administration offered all staff involved in the incident Crisis Response Intervention Support Program (CRISP).

**Employee Action/Inaction:** Staff response was appropriate; there was not any staff inaction that would be a cause of this incident.

**Corrective Action Taken:** There will be no corrective action taken at this time.

**Attachments:**

1. Timeline of Events
2. EAC
3. Staff Statements
4. Inmate Statements
5. Inmate Travel Card

6. Inmate Transport Order Form
7. Inmate Autopsy Order
8. Clinical Notes
9. OIG Investigator's Report of Custodial Death
10. Count Sheet
11. Building Schedule
12. Pictures
13. Classification Profile
14. Staff Training WL
15. Shift Rosters
16. Region V Chaplain Notification/Letter to Family

ADMINISTRATIVE REVIEW:

I. Warden's/Administrative Supervisor's Comments:

OIG was notified and reported to the unit did not render an opinion on the cause of death. Unit medical and EMS did not offer an opinion on the preliminary cause of death.

Inmate Valenzuela was in Restrictive Housing 3 cell on Constant Direct Observation (CDO). He was placed in the status on January 8, 2021 for threats of harm to himself and threats of harm to others. According to Wallace Unit medical earlier in the day he was #3 on the list to transfer to the Montford Unit.

All actions taken were consistent with agency policy and procedures.

a) Employee actions/inactions do not appear to be a factor in this incident. At present time there does not appear to be a need for remedial training. Staffing levels at the time of the incident were adequate. The location of the incident is not considered a blind spot but the addition of video cameras in the area would help to investigate incidents of this nature when they occur.

Jody Hefner, Senior Warden

**"80 John" Wallace Unit**

Texas Department of Criminal Justice

Criminal Institutions Division

II. Regional Director/Department Head Comments:

---

Mr. David Blackwell

**Region V Director**

Texas Department of Criminal Justice

Criminal Institutions Division

# Wallace Unit
# I-00749-01-21
# Valenzuela, Ruben #01785292

2005 Officer Halford (CDO) speaking with inmate Valenzuela, Inmate is exercising and falls face first, is unresponsive. Notifies for Assistance, Lt. Minnix is in restrictive housing. Life saving measures are initiated.

2008 Lt. Minnix notifies central control to call 911

2010 Warden Hefner is notified

2030 Mitchell County arrives to unit and escorted to Restrictive housing. Inmate is assessed and EMT Bambi Redwine advice inmate has no heart rate, breathing and no pulse and life saving measures will not continue.

2050 OIG David Underwood is notified

2115 Justice of the Peace Judge James Williams notified

2145 Judge Williams pronounced inmate deceased

2214 Region V Chaplain Day notified

2230 OIG arrives on unit. Escorted to area, photos taken and clears the scene and release of body

2311 Chaplain Day speaks with next of kin, Iberia Valenzuela, sister. Family will claim body

2312 Carnes Funeral Home was contacted

2344 EAC was notified

0050 Mr. E. Carnes (Carnes Funeral Home) arrives on unit

0130 Carnes Funeral Service departs unit with body

```
SEA0200/EA02          TEXAS DEPARTMENT OF CRIMINAL JUSTICE              2021/01/14
1J00448 /9713/INMTCICS      EMERGENCY ACTION CENTER SYSTEM              01:16:27
-00749-01-21                        INCIDENT REPORT                      PAGE    1
REPARED BY (USERID/NAME/DATE/TIME):
 MJ00448  JAMES MINNIX                          WL            01/14/2021 01:16
UTHORIZED BY(TITLE/LAST, FIRST MI)
 LIEUTENANT                      MINNIX,JAMES M
NCIDENT OCCURRED: 01/13/2021 TIME: 20:05 AT: WL  SECUR LVL: 002 RGN: 5
ATE UN/FA AWARE: 01/13/2021 TIME: 20:05
EPORTED ON: 01/13/2021 TIME: 23:44  BY: WL  SECUR LVL: 002  RGN: 5
UOF:              TYPE OF INCIDENT: INMATE DEATH
OCALE: CELL (SECURITY DETENTION)
PECIFIC LOCATION: RESTICTIVE HOUSING CELL TRANS-03
NITIAL INCIDENT COMMANDER (TITLE/LAST, FIRST MI): (IF APPLICABLE)
 LIEUTENANT                      MINNIX,JAMES M
INAL INCIDENT COMMANDER (TITLE/LAST, FIRST MI): (IF COMMAND TRANSFERRED)
 LIEUTENANT                      MINNIX,JAMES M
ESPONSE TEAM: X A    X B     C      D      E      N/A   RACIAL: N
IG NOTIFIED: 01/13/2021 20:50
IG PERSONNEL NOTIFIED:UNDERWOOD,DAVID

================ LIST OFFENDER(S) INVOLVED:  Y  ================

DCJ: 01785292 SID: 08395782 NAME: VALENZUELA,RUBEN ARTURO
 CUST: G4 RACE: H GENDER: M AGE: 26 HGT: 503 WGT: 199
 STG: MX       SUSPECTED:   CONFIRMED: Y EX:
 ROLE: U INJURY: N CHEM INJURY: N DECONTAMINATED: N MEDICAL EXAM: Y
 TREATMENT: N
 TRANSFER BY:      TO:
 ALLEDGED SEX ASSAULT: N EVIDENCE KIT:   REP PROVIDED:
  REP:
 PRONOUNCED DECEASED DATE: 01/13/2021 TIME: 21:45
  BY: JUDGE                      WILLIAMS,JAMES
  PRELIMINARY CAUSE: UNKNOWN
  DEATH COUNTY: 168 MITCHELL
  NOTIFIED:CONTRACTED FUNERAL HOME:  Y JP:Y NEXT OF KIN (NOK):Y
   NOK (LAST, FIRST MI): VALENZUELA,MARIA
   DATE NOK NOTIFIED: 01/13/2021 TIME: 23:11  NOK WILL CLAIM BODY:N
   NOK RELATIONSHIP: MO     MOTHER

================ LIST EMP(S)/OTH(S) INVOLVED:  Y  ================

PERSON TYPE:TDC SSN:[redacted] LIT:N
 TITLE/NAME (LAST, FIRST MI):
 LIEUTENANT OF CORR OFF     MINNIX,JAMES M
 RACE: W GENDER: M AGE: 44 INJURED: N MEDICAL EXAM: N ROLE: U
 C.R.I.S.P. OFFERED: Y
 ALLEDGED SEX ASSAULT: N EVIDENCE KIT: N REP PROVIDED: N
  REP:
PERSON TYPE:TDC SSN:[redacted] LIT:N
 TITLE/NAME (LAST, FIRST MI):
 CORR OFFICER V              GOMEZ,MAURICE J
 RACE: H GENDER: M AGE: 32 INJURED: N MEDICAL EXAM: N ROLE: N
 C.R.I.S.P. OFFERED: N
```

--------------------------- CONTINUED ON NEXT PAGE ---------------------------

ALLEDGED SEX ASSAULT: N EVIDENCE KIT: N REP PROVIDED: N
REP:
ERSON TYPE:TDC SSN:[redacted] LIT:N
TITLE/NAME (LAST, FIRST MI):
CORR OFFICER V HALFORD,LOUIS M
RACE: B GENDER: M AGE: 67 INJURED: N MEDICAL EXAM: N ROLE: N
C.R.I.S.P. OFFERED: Y
ALLEDGED SEX ASSAULT: N EVIDENCE KIT: N REP PROVIDED: N
REP:
ERSON TYPE:TDC SSN:[redacted] LIT:N
TITLE/NAME (LAST, FIRST MI):
SERGEANT OF CORR OFF BIGEMBE,APOLLO
RACE: B GENDER: M AGE: 57 INJURED: N MEDICAL EXAM: N ROLE: N
C.R.I.S.P. OFFERED: N
ALLEDGED SEX ASSAULT: N EVIDENCE KIT: N REP PROVIDED: N
REP:
ERSON TYPE:TDC SSN:[redacted] LIT:N
TITLE/NAME (LAST, FIRST MI):
SERGEANT OF CORR OFF DEANDA,MICHAEL A
RACE: H GENDER: M AGE: 25 INJURED: N MEDICAL EXAM: N ROLE: N
C.R.I.S.P. OFFERED: N
ALLEDGED SEX ASSAULT: N EVIDENCE KIT: N REP PROVIDED: N
REP:
ERSON TYPE:TDC SSN:[redacted] LIT:N
TITLE/NAME (LAST, FIRST MI):
CORR OFF III GARCIA,GABRIEL
RACE: H GENDER: M AGE: 21 INJURED: N MEDICAL EXAM: N ROLE: N
C.R.I.S.P. OFFERED: N
ALLEDGED SEX ASSAULT: N EVIDENCE KIT: N REP PROVIDED: N
REP:

================ CHEMICAL AGENTS USED: N ================

================ WEAPONS/CONTRABAND FOUND: N ================

================ SECURITY RESOURCES USED: Y ================

:ODE: SECURITY RESOURCE DESCRIPTION:
)5 VIDEO SURVEILLANCE
)6 HEARTBEAT DETECTION SYSTEMS
)THER:
SUMMARY OF HOW THE INDICATED RESOURCE(S) WAS RELEVANT TO THE INCIDENT:
LIFE SAVING MEASURES

================ DID A LOCKDOWN OCCUR: N ================

================ NARRATIVE: ================

ON 01/13/2021 AT APPROXIMATELY 2005 LIEUTENANT MINNIX, JAMES INITIATED

-------------------------- CONTINUED ON NEXT PAGE --------------------------

'HE INCIDENT COMMAND SYSTEM (ICS) DUE TO AN UNRESPONSIVE INMATE IN
:ESTRICTIVE HOUSING CELL TRANS-03. INMATE VALENZUELA, RUBEN TDCJ#
)1785292 WAS BEING OBSERVED IN CDO BY COV HALIFORD, LOUIS. INMATE
'ALENZUELA FELL IN THE CELL FACE FIRST. LT MINNIX ARRIVED IN
:ESTRICTIVE HOUSING AND FOUND SAID INMATE FACE DOWN ON THE FLOOR.
'AID INMATE WAS UNRESPONSIVE WITH BLOOD COMING FROM HIS FACIAL AREA.
TMINNIX ALONG WITH COV GOMEZ ENTERED THE CELL AND FOR SAFTY REASONS
PLACED INMATE IN HAND RESTRAINTS TO RENDER HIM AID. IT WAS THEN
DISCOVERED THAT SAID INMATE WAS NOT BREATHING. RESTRAINTS WERE
'EMOVED AND INMATE WAS PLACED ON HIS BACK AND LT. MINNIX STARTED CPR.
OIII GABRIEL ARRIVED AND SWITCHED WITH LT. MINNIX AND COUNTINUED
PR. MITCHELL COUNTY EMS WERE NOTIFIED. LT. MINNIX AND COIII
'ARCIA COUNTINUED CPR. COIII GOMEZ, MAURICE ARRIVED WITH THE
.IFE SAVING RESPONSE KIT AND THE TWO WAY BREATHING MASK. COIII
.OMEZ THEN ENETERED INTO THE CPR ROATION WITH LT. MINNIX AS COIII
:ARCIA PERFOREMED RESCUE BREATHS. COV HALIFORD THEN RELEIEVED COIII
ARCIA AND TOOK OVER RESCUE BREATHS AS LT. MINNIX AND COV GOMEZ
OUNTINUED CPR. AED ARRIVED AND WASPLACE ON SAID INMATE. AED ADVISED
IO SHOCK AND TO CONTINUE CPR WHICH WAS DONE. MITCHELL COUNTY EMS
ERSONELL ARRIVED AT THE SCENE AND TOOK OVER LIFE SAVING MEASURES.
.HE EMTS ASSESTED SAID INMATE AND EMT REGIONAL SUPERVISOR REDWINE,
BAMBI STATED THAT THE INMATE HAD NO PULSE, NO BREATH AND THAT SHE WAS
TOPPING LIFESAVING MEASURES AT THIS TIME (2039) OFFICER CASTILLO,
.NTHONY COVERED THE INMATE WITH A SHEET AND SECURED THE CELL AND AREA
NTIL THE ARRIVAL OF OIG. OIG UNDERWOOD, DAVID WAS NOTIFIED AT 2050
IOURS. JUDGE WILLIAMS, JAMES ARRIVED ON THE UNIT AND PRONOUCED SAID
NMATE DECEASSED AT 2145 HOURS. CARNES FUNERAL HOME WAGNER, HOLLY WAS
IOTIFIED AT 2312. INMATE'S MOTHER VALENZUELA, MARIA WAS NOTIFIED AT
'311 HOURS AND STATED THAT SHE WOULD CALIM THE BODY. OIG UNDERWWOD
.RRIVED AT THE WALLACE UNIT AT 2230 HOURS. ALL STAFF INVOLVED WERE
)FFERED CRISP BUT DECLINED. REGIONAL CHAPLIN DAY WAS NOTIFIED AT
'045 HOURS. UPDATES WILL FOLLOW AS THEY BECOME AVAILABLE AND AS
IEEDED.

TEXAS DEPARTMENT OF CRIMINAL JUSTICE

CORRECTIONAL INSTITUTIONS DIVISION

Inter-office Communications

---

To: Captain D. Frith

From: Lt. James Minnix

Date: 01/13/2021

Subject: I-00749-01-21

---

On 01/13/2021 I Lieutenant Minnix, James arrived in Restrictive Housing Trans-03 cell where I was informed by COV Haliford, Louis that inmate Valenzuela, Ruben # 01785292 who he was observing due to the inmate being on CDO had fallen face first onto the cell floor. I noticed that as inmate Valenzuela was lying on the floor, blood was coming from his facial area. I immediately initiated the Incident Command System (ICS) and as I was there with COV Hailford and COV Gomez, Maurice, I made the command decision to enter the cell so that aid could be rendered to him. When we entered the cell due to safety concerns I placed hand restraints on Inmate Valenzuela. After restraints were applied we rolled inmate Valenzuela over and it appeared that inmate Valenzuela was not breathing. I then removed the hand restraints and then began CPR. COIII Garcia, Gabriel, COV Castillo, Anthony, Sgt. Bigembe, Apollo had arrived and then COIII Garcia entered into a rotation of conducting CPR on inmate Valenzuela as Sgt Bigembe began documentation with the video camera. CO V Gomez arrived with the lifesaving response kit and the two way breathing mask and COIII Garcia then began to apply rescue breaths as I conducted chest compressions. COV Gomez then enter into the CPR rotation and COV Haliford, Louis then relieved COII Garcia and took over giving rescue breaths. During this time notification to Warden J. Hefner was conducted by Sgt. M. Deanda at 2010hours and a call for EMS was conducted at 2008 hours. The AED arrived and was placed on Inmate Valenzuela and the AED advised no shock was needed to continue CPR. At approximately 2030 hours Mitchell County EMS arrived and responded to the cell and took over life saving measures. EMTs assessed Inmate Valenzuela and EMT Regional Supervisor Bambi Redwine stated that the inmate had no pulse and no breath and that she was terminating CPR as Inmate Valenzuela had expired. Sgt. Bigembe terminated the video camera and COV Castillo placed a sheet over Inmate Valenzuela and secured the cell door and maintained security over the area awaiting for the arrival of OIG. OIG Underwood, David was notified 2050. RN Cogburn, Beverly arrived on

the facility at 2100 hours. Judge James Williams arrived on the unit at 2135 and pronounced the inmate deceased at 2145 hours. OIG arrived on the facility at 2230 hours. Notifications to the Regional Chaplin Day was conducted at 2045 hours, Carnes Funeral Home Holly Wagner at 2325 hours. Inmate Valenzuela's next of kin Maria Valenzuela, his mother was notified at 2311 and stated that she would claim the body. EAC was conducted and Coroner E. Ciseros arrived on the Wallace unit at 0050 hours to remove the body. All staff involved were officer CRISP but all declined.

Lt. J. Minnix

Texas Department of Criminal Justice

# Inter-Office Communications

To LT Minnix Date 1-14-21

From CO II L. Harford Subject AS Stated

I WAS WAtching Offender VAlenzuela in Restrictive Housing Cell 3! SAid offender's STATUS WAS CDO (Constant Direct Observation)

Offender VAlenzuela did A few setups And then Jumped up And it seemed He WAS getting into Position to do setups. He slipped And His Knees Buckled And He Hit the Floor Face First. I told officer Gomez (Assigned to Restrictive Housing) that we needed to call For Assistance. This All Started Around 8:05 pm. LT. Minnix Responded in About 15 seconds. LT Minnix called offender VAlenzuela Several times to try to Get Him to Respond. I Failed to mention As soon As the offender Hit the Floor, He went into what Seem to Be A seizure LT Minnix And officer Gomez entered the cell And I was left Behind with the GAS in CAse SAid offender put officers IN A threatening position. Officer Gomez put Hand Restraints on offender VAlenzuela And it Appeared that He WAS Resisting. Hand Restraints were Removed when LT Minnix SAid the offender WAS Not Responsive. EMS WAS CAlled, And Life SAving Suit WAS brought to cell 3! LT Minnix immediately started Giving Chest compression. I took the 2 wAy And gave the breaths. LT Minnix WAS Relieved occasionally by officer Gomez! ~~Life~~ CPR WAS Continued until EMS Arrived Around 8:30pm! EMS Did Not Get Any Response. Judge Williams WArden Cueto, Nurse Coburn, And CApt Silva came in Around 8:50pm And Pronounced SAid offender HAD Expired

DEFS' MSJ APPX. 022

☆SO-4

CERVANTEZ_00022

Texas Department of Criminal Justice

# Inter-Office Communications

To Whom it may concern Date 01-13-2021

From Maurice J. Gomez COS Subject As Stated

I officer Maurice J. Gomez was working as the Restrictive Housing officer, when officer Louis Halford COS informed me that the inmate that was in Tra 03 cell in Constant Direct Observation had fell. I attempted to initiate the Incident Command System and central hesitated to respond. Lieutenant James Minnix Immediately responded and initiated ICS requesting additional staff and a video camera at approximately 2005 hours. Lt. Minnix and I officer Gomez went into Tra 03 cell and placed ~~offender~~ inmate Valenzuela in hand restraints as a safety precaution. Lt. Minnix and I turned ~~offender~~ inmate Valenzuela over and I officer Gomez observed that ~~offender~~ inmate Valenzuela's lips were blue. Lt. Minnix removed the hand restraints and immediately began chest compressions. Additional staff responded and I officer Gomez went and retrieved the one-way breathing mask and I handed it to officer Halford. I officer Gomez observed ~~Sgt~~ Sergeant Apollo Bigembe as the video camera operator so I gave a narration of what had occured. ~~Lt. Minnix~~ Sgt. Bigembe stated that he needed another video camera due to the first camera not having a memory card. I officer Gomez went to line control to retrieve another video camera. I officer Gomez observed that Lt. Minnix was the only one doing chest compressions so I officer Gomez went into the cell to assist him with chest compressions, while officer Halford continued to administer breaths. Sergeant Michael DeAnda responded with the AED and I retrieved it from him and took out the pads. I officer Gomez handed Lt. Minnix the pads and he applied them on inmate Valenzuela's chest. I officer Gomez turned on the AED and handed it to Lt. Minnix. The AED stated that no shock would be required and to continue CPR. Lt. Minnix and I officer Gomez continued chest compressions and officer Halford continued breaths. EMS arrived and placed another machine on [illegible] ... that he was deceased. Maurice Gomez [illegible] 1-13-2021

Texas Department of Criminal Justice

## Inter-Office Communications

To ______________________ Date 1-13-21

From Garcia Subject ______________________

I responded as soon they called for additional Staff
at 8:05
When I arrived Lt Minnex was doing Chest Compression
and I took over and started doing chest compression and Sgt
deanda gave me the Mask to do rescue breaths as
Lt Minnex was doing chest compression then I Switch with Louis Halford
CO V as he took over doing the rescue breaths

Texas Department of Criminal Justice

# Inter-Office Communications

To ______________________ Date 01.15.21

From Sgt. BIGEMBE Subject As Stated

At approximately 8:05PM, Lt. Minnix, James, initiated ICS requesting for additional staff and video camera. Sgt. Bigembe, as camera operator and Sgt. DeAnda, Michael, responded. Upon entering the restrictive housing, we went directly to TRA-03. At this time, Inmate VALENZUELA, RUBEN, TDCJ# 1785292 was laying on the floor in prone position. LT. Minnix and Officer GOMEZ, Maurice, CO5, entered in the cell, applied hand restraints but noticed that the inmate was unresponsive. Then, Lt. Minnix took off the hand restraints, turned the inmate aside and began CPR. Both, Lt. Minnix and officer GOMEZ took turns in administering CPR. While I, Sgt. Bigembe was recording, Sgt. DeAnda began narration and Officer HALFORD, Louis, CO5 was administering one-way breathing mask. When officer GARCIA, Gabriel, CO3 arrived, he began helping the above officers to do CPR. At one time, Officer Gomez did narration. When Warden HEPNER, came in, Lt. Minnix, Officers Gomez and Garcia were administering CPR while AED was applied.
At approximately 8:30PM, EMS came in, applied the Check-pose machine. Five minutes later, EMS supervisor, pronounced inmate has expired

Sgt. Bigembe, Apollo
[signature]

DEFS' MSJ APPX. 025

CERVANTEZ_00025

☆SO-4

Texas Department of Criminal Justice

# Inter-Office Communications

To ______________________ Date 01/13/2021

From Sgt. DeAnda, Michael Subject ______________________

On 01/13/2021 at around 8:00pm, ICS was called in Restrictive Housing for an unresponsive Inmate. I arrived to Restrictive housing to find Inmate Valenzuela, Ruben TDCJ No. 1785292 laying face down unresponsive in TRA-03 cell in Restrictive Housing. Lt. Minnix, James and officer Gomez Jr., Maurice COV entered the cell to peform life saving measures. Lt. Minnex Started Chest compression. Sgt. Bigembe, Apollo came with the video camera and I Started the narration. I then called central Control to call for EMS and for them to get ahold of Warden Hefner, Jody So I could notify him of the Situation. Lt. Minnix, Officer Gomez and officer Garcia, Gabriel COIII took turns doing chest compressions while Officer Holford, Louis COV did rescue breaths. ~~EMS~~ AED arrived and Lt. Minnix applied the Pads and turned it on. No shocks were advised for the duration of the incedent. EMS arrived at around 8:30pm and assessed Inmate Valenzuela and couldn't find a pulse.

Texas Department of Criminal Justice

# Inter-Office Communications

To ______________________ Date 01-13-2021

From Sgt. N. Alebiosu. Subject Valenzuela, Ruben #1785292

At 2005 hours Lieutenant James Minnix Initiate incident Command System ICS from Restrictive Housing On the inmate Valenzuela ~~Ruben~~ Ruben. On my arrival in Scene, Lt minnix was already on CPR on the inmate while Sergeant Apollo Bisemba was on the video Camera. I left the Scene and report at the back Gate to receive the EMS. On arrival of EMS at the ~~back~~ gate, I Sgt N. Alebiosu Escorted the EMS to Restrictive Housing, EMS went into the Cell to Check on the inmate, I Sgt. N. Alebiosu resume back to my normal duties.

Thanks

☆SO-4

Texas Department of Criminal Justice

# Inter-Office Communications

To ______________________ Date 01-13-2021

From M Grahm COV Subject As Stated

On 01-13-2021 I officer Grahm, Misty COV
was working Central Control when Lt. James
Minnix Initiated the Incident Command System at 2005
in restive Housing stating that there was a unresponsive
inmate and that he needed additional staff and
a video camera. At 2008 I was told by Sgt
Michael Deanda to call 911, the 911 operater said
they would send a ambulence Immediately to our
location. At 2030 Ems got to the backgate of the
Wallace unit. At 2050 Lt Minnix had me call
OIG-after hours, than at 2214 Lt Frith had me
call Regional Chaplain Day. At 2312 Lt Minnix
had me call Carnes Funeral Home.

☆SO-4

Texas Department of Criminal Justice

# Inter-Office Communications

To Whom it may Concern Date 1/13/21

From Anthony Castillo Subject As Stated

I Officer A.Castillo COV responded with additional Staff, as I arrived life saving Procedures had already been started EMS then took over and Continued CPR EMS determined that the inmate had passed. I then Placed a Sheet over the body and secured the cell. I watched over the inmates body until OIG arrived to conduct there investigation. I then resumed my normal duties.

About 8:00 p.m I heard Halford call Gomez saying that he needs assistance due to the direct observation. Gomez went running immediatly to assist Halford. They called for Lt. Minnix, he came running and they went in to the cell to see about cell 3 (the direct observation) and he was deceased immediatlye. It all happened really fast. Lt. Minnix, Gomez and Halford did everything in their power to help him.

Peter Hall

Peter Hall
# 2227277

The person in 3 cell was tripping out the officers tried to stop him he was yelling and ~~trying~~ trying drown himself in the toilet and they kept telling him to stop untill they had to spray him I Do not believe the officers did anything wrong they did what was neccessary.

[signature]

DaShawn Holmes #2161404 1,13,21

Name: VALENZUELA,RUBEN ARTURO TDCJ #: 1785292 SID #: 08395782

Offense of Record: AGG ASSLT W/DWPN

Sentence Length: 12Y 00M 00D County of Conviction: EL PASO

| | |
|---|---|
| Race: | H |
| Complexion | LGT |
| Height: | 5'03" |
| Weight: | 190 |
| Hair Color: | BLK |
| Eye Color: | BRO |
| Date of Birth: | 1994-11-08 |
| Sex: | M |
| SMT: | SC RF ARM, SC HEAD, TAT UL ARM, TAT R ANKL, SC CHEST |





1785292 VALENZUELA,RUBEN ARTURO

Card Created: 2018-02-13

AD-03.29 (rev. 9)
Attachment A

# Texas Department of Criminal Justice
# TRANSPORT AUTHORIZATION FOR OFFENDER REMAINS

*Instructions: If death occurs at the unit, the warden shall sign this form authorizing the transport of the remains. If death occurs somewhere other than at the unit, the warden shall sign and deliver the form by the most expedient means to appropriate medical staff at the location of the death.*

**The undersigned authorizes and directs the coordinating funeral home and its agents or staff to make the removal of the remains of** Valenzuela, Ruben *(Print Offender Name)* **from** Wallace unit, *(Print Unit/Location)* **who died on** 1|13|2021, *(Date of Death)* **and to hold until further notification from the warden regarding an order for an autopsy.**

**If a certified medical physician determines that an offender's death is from natural causes, the offender's family shall be provided the opportunity to object to an autopsy.**

[signature]
Signature of Warden/Designee

Jody Hefner
Printed Name

Medical Physician's/Registered Nurse's Signature

Printed Name

Address of Physician/Registered Nurse:

AD-03.29 (rev. 9)
Attachment C

# Texas Department of Criminal Justice
# AUTOPSY ORDER

In accordance with Texas Government Code § 501.055, the following order shall serve as authorization to perform an autopsy on the body of the deceased offender identified below.

Offender Name: Valenzuela, Ruben (Print name) TDCJ #: 1785292

Date of Birth: 11/8/1994 Race: H. Sex: [X] Male [ ] Female

Offender Pronounced dead at 945 PM (Print time - include am or pm) on January 13, 2021 (Print date - month, day, year).

Location of Death: [✓] Unit Wallace (Print unit name) [ ] Other ______ (Print location).

Acting in my capacity as an authorized official of the Texas Department of Criminal Justice, I hereby order and decree that an autopsy be performed on the body of the above described offender. The autopsy shall be performed to determine the cause of death of the offender who died of natural causes while attended by a physician or registered nurse.

The autopsy shall include a determination of the cause of death and toxicological examinations of the urine, blood, and other bodily matter as deemed necessary to determine whether alcohol or drugs are present in the body, and if so, in what types and quantities. I further order that the autopsy be performed by the UTMB autopsy service physicians or associates.

It is understood that due care shall be taken to avoid unnecessary disfigurement of the body.

Further, the offender's body shall be transported to Tarrant County Medical Examiner (location of autopsy) by a representative or associate of Carnes Funeral Home Funeral Home, located in Houston, Texas. Upon completion of the autopsy, the body shall be relinquished to a representative of the delivering funeral home who can be reached at 713-273-6283 (phone number) for transport.

Please forward copy of preliminary findings and reports to:

TDCJ Death Records Coordinator
University of Texas Medical Branch
262 FM 3478 Suite B
Huntsville, TX 77320-3323
936-439-1341 (phone) 936-439-1350 (fax)

[signature]
Warden or Designee

County Mitchell

City Colorado City, Texas, Zip Code 79512

DEFS' MSJ APPX. 034

CERVANTEZ_00034

AFFIDAVIT

THE STATE OF **TEXAS** §

COUNTY OF **WALKER** §

BEFORE ME, the undersigned authority, on this day personally appeared Frances Hill, who, being by me duly sworn, deposed as follows:

My name is Frances Hill and I am an employee of the Texas Department of Criminal Justice (TDCJ), a governmental agency. I am over 21 years of age, of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated.

I am the custodian of records for the Administrative Monitor for the Use of Force/Behavioral Intervention Department, a part of the TDCJ located in Huntsville, Texas. Attached are true and correct copies of ***Ruben Arturo Valenzuela, TDCJ #01785292, Cause Number 122CV00150, Behavioral Intervention / Use of Force records for the time period from June 2019 to present, the following attached is the Behavioral Intervention / Use of Force report 04768-06-19 and 00338-01-21*** , which are kept by the TDCJ in the regular course of its business activity. The entries of such records were made as a regularly conducted activity and a regular practice of the TDCJ, and were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters.

I declare under penalty of perjury that the foregoing is true and correct.

"Further Affiant sayeth not."

**Frances Hill**
Administrative Monitor
Behavioral Intervention Department
Texas Department of Criminal Justice

SWORN TO AND SUBSCRIBED BEFORE ME, the undersigned notary public, on the 18th day of July, 2023.

NOTARY PUBLIC, STATE OF TEXAS

Shay Retzlaff
Notary's Printed Name

My Commission Expires:
February 24, 2027

SHAY K. RETZLAFF
Notary Public-State of Texas
Notary ID #13418839-6
Commission Exp. FEB. 24, 2027
Notary without Bond

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report
### *Administrative Review*

Unit (*Name and Alpha Code*) Wallace WL OIG # ____

**Report Number:** M – 00338-01-21 **EAC Incident Number** I- 00721-01-21 (If applicable)

***LEVELS OF REVIEW*** ***Pursuant to the TDCJ Use of Force Plan, the above-referenced UOF Report shall be independently reviewed and assessed by some, or all, of the following. Based on their review, noteworthy comments and recommendations are provided.***

**IV. ADMINISTRATIVE MONITOR'S REVIEW**

a. Date received: 2/10/21 Received late from unit? ☐ YES ☒ NO

Is report complete? ☒ YES ☐ NO

If "NO", what is missing?

b. Are staff actions consistent with the TDCJ *Use of Force Plan*? ☐ YES ☒ NO

If No, were violations identified by unit? ☒ YES ☐ NO Addressed by unit? ☒ YES ☐ NO

If No, were violations identified by region? ☐ YES ☐ NO Addressed by region? ☐ YES ☐ NO

c. Are staff actions consistent with TDCJ Policies and Procedures? ☐ YES ☒ NO

If No, ✓ which applies: ☐ Procedural violation and/or ☐ Possible excessive force

If No, list violations: Photos and escort procedures

If No, were violations identified by unit? ☒ YES ☐ NO Addressed by unit? ☒ YES ☐ NO

If No, were violations identified by region? ☐ YES ☐ NO Addressed by region? ☐ YES ☐ NO

d. Was force justified? ☒ YES ☐ NO

e. Check if report was referred to the OIG at Admin. Monitor level and referral email is included. ☐

Has the OIG opened investigation? ☐ YES ☐ NO Has the OIG deferred back to unit? ☐ YES ☐ NO

f. Refer to OGC? ☐ YES ☒ NO

g. Additional comments (*if any*):

I/M Valenzuela #1785292 attempted to self mutilat himself/ Chemical agents utilized/ No injuries to Inmate/ No injuries to Staff/ Corrections made.

**Reviewed by:** Casandy Hill, Admin. Asst. IV [signature] 4/10/21

Printed Name/Title Signature/Date Review Completed

**V. GENERAL COUNSEL**

**Date Received for Review:** ____

**Reviewed by:** ____ ____________________

Printed Name/Title Signature/Date Review Completed

**VI. ADMINISTRATIVE MONITOR'S FINAL REVIEW**

**Date Report Closed to File:** 4/10/21

**Reviewed by:** Casandy Hill, Admin. Asst. IV [signature] 4/10/21

Printed Name/Title Signature/Date Review Completed

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report

***Administrative Review***

| | |
|---|---|
| Unit (*Name and Alpha Code*) Wallace WL | OIG # 2100000380 |
| **Report Number:** M – 00338-01-21 | **EAC Incident Number** I- 00721-01-21 (If applicable) |

***LEVELS OF REVIEW** Pursuant to the TDCJ Use of Force Plan, the above-referenced UOF Report shall be independently reviewed and assessed by some, or all, of the following. Based on their review, noteworthy comments and recommendations are provided.*

**III. REGIONAL COORDINATOR'S REVIEW**

a. Date received: **1/25/21** Received late from unit? ☐ YES ☒ NO

Is report complete? ☒ YES ☐ NO

If "NO", what is missing?

_____

b. Are staff actions consistent with the TDCJ *Use of Force Plan*? ☒ YES ☐ NO

c. Are staff actions consistent with TDCJ Policies and Procedures? ☒ YES ☐ NO

If No, ✓ which applies: ☐ Procedural violation and/or ☐ Possible excessive force

If No, list violations: _____

If No, were violations identified by unit? ☐ YES ☐ NO Addressed by unit? ☐ YES ☐ NO

d. Was force justified? ☒ YES ☐ NO

e. Check if report was referred to the OIG at regional level and referral email is included. ☐

Has the OIG deferred back to unit? ☐ YES ☐ NO

f. Provide a brief summary as to why force was used:

The inmate was in CDO status and was trying to kill himself by drowing himself in his toilet. The inmate was given multiple order to stop. The inmate refused. The floor officer used his can of COP in order to get the inmate to stop to no avail. The CPT Frith gives the inmate multiple orders to stop. The inmate refused. Two burst of MK9 is given to get the inmate to comply but to no avail. The inmate is give more orders to stop or a 5 man team will enter the cell. The inmate refuses. The 5 man team enters the cell in order to gain control of the inmate and apply the leg and hand restraints. The inmate is placed in the shower. A medical screening is conducted and is cleared by medical. Photos are taken. The inmate is placed back in his cell the restraints are removed the team exits the cell and the cell door is secured..

g. Additional comments (*if any*):

**Reviewed by:** Kenneth Eatinger / Sergeant  
Printed Name/Title

[signature] 2/2/21  
Signature/Date Review Completed

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report

***Administrative Review***

Unit (*Name and Alpha Code*) Wallace WL OIG # 2100000380

**Report Number:** M – 00338-01-21 **EAC Incident Number** I- 00721-01-21 (If applicable)

***LEVELS OF REVIEW Pursuant to the TDCJ Use of Force Plan, the above-referenced UOF Report shall be independently reviewed and assessed by some, or all, of the following. Based on their review, noteworthy comments and recommendations are provided.***

### I. UNIT COORDINATOR'S REVIEW

a. Date received: 1/22/21 Reported late: ☐ YES ☒ NO

b. Is video viewable? ☒ YES ☐ NO ☐ NO video

Is CD or DVD with photographs viewable? ☒ YES ☐ NO ☐ NO CD with photos

c. Is report complete? ☒ YES ☐ NO

If "NO", what is missing?

**Compiled by:**

Jody Hefner, Warden 1-23-21

Printed Name/Rank or Title Signature/Date Review Completed

### II. UNIT WARDEN'S REVIEW

a. Were fact-finding inquiries initiated? ☒ YES ☐ NO If Yes, how many? 5

b. Are staff actions consistent with the TDCJ *Use of Force Plan*? ☐ YES ☒ NO

c. Are staff actions consistent with TDCJ Policies and Procedures? ☐ YES ☒ NO

If No, ✓ which applies: ☒ Procedural violation and/or ☐ Possible excessive force

If No, list violations: Possible violation of PD-22 25f.

d. Was force justified? ☒ YES ☐ NO

e. Have any employees been disciplined? ☐ YES ☒ NO If Yes, how many? ____
PERS185 included with report? ☐ YES ☐ NO If No, has employee hearing been scheduled? ☐ YES ☐ NO

f. Check if report was referred to the OIG at unit level and referral email is included. ☐

g. Additional comments (*if any*):

At the time of this report being completed on 1-23-21 there is justification to warrant a more in depth review. Fact findings are being recommended on the 5 participants to include the supervisor in charge. The initial review of this report resulted in possible violations related to the TDCJ Use of Force Plan.The fact findings imposed will clarify/justify any other possible violations/use of force compliance that may have occurred.

**Reviewed by:** Jody Hefner Warden 1/23/21

Printed Name/Title Signature/Date Review Completed

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report

### *Document Checklist*

| | |
|---|---|
| Unit *(Name and Alpha Code)*: Wallace WL | |
| Report Number: M-00338-01-21 | Incident Number (*if applicable*): I-00721-01-21 |

**I. INSTRUCTIONS**

***Instructions to Warden:***

- ***Review the entire Use of Force Report and ensure all required documentation is included, completed correctly, and submitted by the appropriate person(s);***
- ***If any documentation is lacking in any way, take measures to have the responsible person(s) correct it;***
- ***Ensure each original form has the UOF Report Number highlighted using a yellow highlighter that does not obscure the highlighted text when photo-copied;***
- ***Check the appropriate box and attach the following documents hereunder in the order listed below; and***
- ***Provide an explanation for all 'NO' responses.***

**II. ATTACHMENTS**

| YES | NO | DOCUMENT | IF 'NO' EXPLAIN WHY: |
|---|---|---|---|
| ☒ | ☐ | **UOF-9**, "Employee Use of Force Fact Finding Inquiry" | |
| ☒ (crossed out) CH | ☒ | **PERS 185**, "Employee Reprimand Form" | Not needed CH |
| ☒ (crossed out) | ☒ | **UOF-OIG Referral**, "Notice of Referral to the Office of the Inspector General" | Not needed |
| ☒ | ☐ | **UOF-6**, "Supervisor Summary" | |
| ☒ | ☐ | **UOF-1**, "Employee Participant Statement(s)" | |
| ☒ | ☐ | **UOF-2**, "Offender Participant Statement(s)" | |
| ☒ | ☐ | **UOF-3**, "Witness Statements" *Employee(s)* | |
| ☐ | ☒ | *Offender(s)* | See Group Refusal |
| ☒ | ☐ | **UOF-4**, "Offender Group Refusal" | |
| ☒ | ☐ | **UOF-5**, "Employee and Offender Use of Force Injury Report" | |
| ☒ | ☐ | *CD or DVD with photographs included* | |
| ☐ | ☒ | **UOF-7**, "Quality Improvement Review" | Not Required |
| ☒ | ☐ | **I-210**, "Offender Offense Report" ***(copy)*** | |
| ☒ | ☐ | **Initial email notification** of incident ***(copy)*** | |
| ☒ | ☐ | **Video recording** | |

**NOTE: Each UOF-8, "Continuation Page" shall be placed behind the appropriate form.**

***Reviewed by:***

Oliver Vasquez
Printed Name

Major
Rank or Title

[signature]
Signature

1/20/21
Date

UOF-10 (2017)

**DEFS' MSJ APPX. 039**

**CERVANTEZ_00039**

# OFFICIAL INVESTIGATION

**Subject:** Fact Finding Use of Force (M-00338-01-21/I-00721-01-21)

**Allegation:**

On January 13, 2021 a Use of Force (M-00338-01-21/I-00721-01-21) involving the utilization of a five man extraction team concerning Inmate Valenzuela, Ruben #1785292 (H/M/26/G4/L3) due to procedural violations involving staff and Inmate Valenzuela. Fact Finding was initiated on January 25, 2021 involving McGuire, Robert CO IV, Officer Enriquez, Manuel CO IV, Officer Harp, Joe CO IV, Officer Martinez, Harry CO V, Officer Bostic CO III, Greg and Captain Frith, Darrell.

**Summary:**

On January 13, 2021 Inmate Valenzuela (Restrictive Housing #3) was in Constant Direct Observation (CDO) awaiting to be transferred to the Montford Unit. Correctional Officer (CO) V Skipworth, James was the CDO Officer assigned. Office Skipworth noticed Inmate Valenzuela stick his head in his toilet in the assigned housing area attempting to drown himself. Officer Skipworth gave orders to Inmate Valenzuela to stop. Officer Skipworth then knocked on Captain (Capt.) Frith, Darrell office door located which is located within the restrictive housing area. Capt. Frith entered the area and observed the inmate sticking his head in the toilet attempting to drown himself. Capt. Frith ordered the inmate to stop which he complied. Inmate Valenzuela then went to rubbing his wrist on a piece of metal plate (top corner bent) located inside the cell by the wall/toilet area. Officer Skipworth ordered the inmate to stop or chemical agents would be used. Inmate Stopped attempting to himself on his wrist and then went to attempt to drown himself in the toilet. Orders were then given by Capt. Frith and Officer Skipworth to stop and explained chemical agents would be used. Inmate Valenzuela refused orders and chemical agents was administered by Officer Skipworth. Chemical agents had no effect. Capt. Frith initiated the Incident Command System (ICS) requesting additional staff, medical staff and a video camera operator. Officer Harp, Joe, CO IV, arrived with video camera. Capt. Frith conducted a narration, the inmate was not in view due to the layout and design of the cell in Restrictive Housing. Officer Harp was at the entrance of Capt. Frith office door opened. Licensed Vocational Nurse (LVN) Castillo, Sandy arrived and was briefed by Capt. Frith. LVN Castillo stated the inmate would need to be taken to the unit infirmary. Officer McGuire and ordered the inmate to comply with application of hand restraints so he could be escorted to the unit infirmary and explained if he refused chemical agents could be used. Officer Bostic, Greg was on scene and was going to be the escort officer with Officer McGuire. Inmate Valenzuela refused to comply with orders and attempted to drown himself in the toilet. Capt. Frith then ordered Inmate Valenzuela to comply with application of hand restraints and explained chemical agents

would be administered to no avail. Capt. Frith then contacted Senior Warden Hefner, Jody for authorization for a use of force cell move team. During gaining authorization Officer McGuire is giving orders to inmate Valenzuela to comply with applications of hand restraints. Capt. Frith receives authorization to utilize a cell force move team and chemical agents. Officer McGuire notifies Capt. Frith the inmate has placed his head in the toilet. Capt. Frith orders Inmate Valenzuela to submit to hand restraints, be assessed by medical staff and explained the use of chemical agents. Capt. Frith then administers a burst of chemical agents to Inmate Valenzuela to gain compliance. Inmate Valenzuela refused. Capt. Frith orders Inmate Valenzuela to comply with hand restrains so he can be seen by medical and explained consequence sf chemical agents to gain compliance. Inmate Valenzuela refused. Capt. Frith briefed camera that Sergeant (SGT) Valdez, Jose was going to relieve Officer Harp as video camera operator. Capt. Frith orders the inmate to comply to hand restraints and Inmate Valenzuela refuses. Capt. Frith orders the inmate to submit to a hand restraint or chemical agents would be used. Inmate Valenzuela refuses and Capt. Frith administers another burst of chemical agents to gain compliance to no avail. Capt. Frith gives several orders to submit to hand restraints and consequences that chemical agents would be used to gain compliance. Inmate Valenzuela refuses to comply. Capt. Frith identified team members: 1 man) Officer McGuire, COIV, 2 man) Officer Enriquez, Manuel CO IV, 3 man) Officer Harp CO IV, 4 man) Officer Bostic, CO III and 5 man) Officer Martinez, Harry CO V. Capt. Frith orders Inmate Valenzuela to comply with application of hand restraints and explains consequences that chemical agents and the force move team will be utilized to gain compliance. Inmate Valenzuela refuses. Capt. Frith repeats orders and consequences to inmate Valenzuela and refuses. Capt. Frith opens the cell door and the team enter the cell. Inmate is instructed to not resist. Officer McGuire and Officer Enriquez observe the inmate by the toilet area and pull him away. In doing so Inmate Valenzuela is attempting to bite staff and strike and headbutt Officer McGuire and Officer Enriquez as he is trying to go back to the toilet area. Officer McGuire punches Inmate Valenzuela in both hand for a total of four punches due to the inmate attempting to go back to the toilet area and grabbing and not allowing hand restraints to be placed. Inmate Valenzuela attempted to bite Officer McGuire; Officer McGuire then punches Inmate Valenzuela in his face three times and inmate stops attempting to bite him. Inmate Valenzuela continues to grab toilet area and resist application of hand restraints and resisting staff. Officer Enriquez strike Inmate Valenzuela twice in the upper body due to his actions of trying to bite and strike staff this is noted when the leg restraints are being repositioned. Officer Harp observes Inmate Valenzuela trying to bit staff, Officer Harp attempts to place hand restraints but cannot due to Inmate Valenzuela's actions of biting staff, resting and grabbing the toilet area. Officer Harp then strikes Inmate Valenzuela in the rib area 3-4 times due to his actions of resisting staff and not complying. Officer Bostic entered the cell and sees the inmate attempting to bit staff as they were trying to place Inmate Valenzuela in hand restraints. Officer Bostic holds inmate's legs so Officer Martinez can place the leg restraints. Officer Bostic holds inmates legs as staff is still trying to place hand restraints on Inmate Valenzuela. Officer Martinez applies leg restraints on Inmate Valenzuela. Officer Martinez then assist Officer Harp and Officer Enriquez in securing the inmate in hand restraints. Inmate Valenzuela is seen attempting to bite staff and still not refusing to submit to hand restraints. Office Martinez then strikes Inmate Valenzuela twice in the

upper body (shoulder area) from where he is positioned for inmate to stop biting staff and himself as he is trying to grab his arms and turn him away from him. Inmate Valenzuela is being instructed to not resist staff and place his hands behind his back to no avail. Capt. Frith observed Officer Bostic leg get caught in Inmate Valenzuela legs along with the leg restraints. Capt. Frith instructed for the leg restraints to be removed so Officer Bostic could untangle his leg and prevent any injuries to Officer Bostic as they are attempting to turn Inmate Valenzuela to his stomach. . Leg restraints were re-applied by Officer Bostic. Staff was able to secure him with minimum amount needed to get the inmate secured. Capt. Frith then calls for a gurney and states inmate is in restraints. LVN Castillo conducted a cell side physical due to inmate behavior and actions. LVN Castillo asked the inmate if he had any injuries. Inmate Valenzuela did not respond to LVN Castillo, she noted no injuries. Capt. Frith informed Inmate Valenzuela he would be assisted to his feet by the force cell move team and taken to the shower. Inmate Valenzuela was then rolled to his side by force cell move team members so he could be assisted to his feet. Officer Martinez and Officer Enriquez were the team members who took Inmate Valenzuela to the shower and dragged him into the shower and secured the shower door. Capt. Frith tells Inmate Valenzuela that medical will do an assessment of him and if he attempt to assault her additional force would be used. LVN Castillo asked the inmate if he has any injuries from the use of force. Inmate replies "No Ma'am." LVN Castillo states the inmate is reporting no injuries to the use of force. Capt. Frith take photos of Inmate Valenzuela. Inmate Valenzuela does not comply to have photos taken of him. Inmate Valenzuela then walks into the shower, and asks for water and then starts speaking in Spanish asking for water. Officer Enriquez (Qualified Spanish interpreter) then talks to him in Spanish and tell him to come and have the hand restraints removed so he could shower and photos be taken of him. Inmate Valenzuela complies. Inmate Valenzuela states he does not want to take photos and does not want to shower. Officer Enriquez then attempts to get him to take photos and Inmate is refusing. Capt. Frith instructs Officer Enriquez to tell Inmate Valenzuela he will be escorted back to the cell and if he does not comply chemical agents will be utilized. Officer Enriquez explains he will be escorted to his cell. Capt. Frith orders Inmate Valenzuela to be escorted to the cell and use of chemical agents will be used. Capt. Frith informs Officer Enrique to instruct Inmate Valenzuela he will go to his cell, will receive water and explains if he does not chemical agents will be used. Inmate Valenzuela then complies with orders and instructions. While waiting to be escorted the cell is being cleared and cleaned. The metal piece is placed back in position. Team members then escort the inmate and assist Inmate Valenzuela to a prone position. Hand/Leg restraints are removed, team members exit the cell and cell door is secured. Capt. Frith then reads inmate participation report. Capt. Frith then gives decontamination procedures to Inmate Valenzuela and terminates use of force.

Officer McGuire was interviewed and he stated he was assigned as one-man on a five man extraction team due to Offender Valenzuela not wanting to comply with orders to submit hand restraints and stop attempting to harm himself. Chemical agents had been utilized and the usage did not work. Captain Frith gave orders and warnings to Inmate Valenzuela. He refused and Capt. Frith unsecured the door. Officer McGuire stated Inmate Valenzuela was at the toilet with his head submerged in the water. He used the

shield to push him away from the toilet and onto the floor. Inmate Valenzuela began fighting the team and keep grabbing at the toilet. Once he grabbed the toilet, Officer McGuire stated he could not pull his arms to get him to let go, so he struck the inmate four times to his hands to get him to let go. Once Inmate Valenzuela let go of the toilet, he did not hit his hands anymore. Officer McGuire stated he continue to attempt to get Inmates Valenzuela's hands behind his back but he kept resisting. He stated Inmate Valenzuela began attempting to bite staff. When Inmate Valenzuela attempted to bite him, he punched him three times in the facial area to prevent him from biting him. Inmate Valenzuela would not stop trying to bite him and other staff members, so he used a pressure point to his temple area to get him to stop. Inmate Valenzuela stopped attempting to bite but continued to resist staff by not allowing them to place hand restraints on him. He stated the team was able to put him in hand and leg restraints. He was escorted out of the cell and place in the shower area. Officer McGuire stated he did receive minor injuries due to the Use of force and stated he only punched the Inmate to prevent from receiving anymore or serious injuries.

Officer Manuel Enriquez COIV stated he was assigned as two-man on a five man extraction team. He stated when the team was utilized, went in behind Officer McGuire and the Inmate was pushed to the floor. He stated the Inmate kept fighting, trying to hold on to the toilet and attempting to bite staff. He stated he could not really tell what everyone was doing. He stated he kept grabbing the Inmates arms in an attempt to place them behind his back for placement of hand restraints. He stated the Inmate kept resisting and causing him to lose grip. Officer Enriquez stated he noticed Inmate Valenzuela was attempting to bite him and other staff. Officer Enriquez then struck him with an open hand to the back to gain his compliance and to stop him from biting him. He stated he did not need to strike the Inmate anymore but the Inmate did continue to resist. The team was able to place hand and leg restraints on the Inmate. Officer Enriquez stated he assisted Inmate Valenzuela in standing up but refused to walk. Inmate Valenzuela refused orders to walk, he and Officer Martinez held up Inmate Valenzuela. Officer Enriquez stated the area was small, so he and Officer Martinez lifted him up by his arms and carried him to the shower area. Inmate Valenzuela was secured in the shower area as they cleared out his cell. Officer Enriquez stated Inmate Valenzuela complied with the rest of the procedures and no more force was needed.

Officer Joe Harp COIV stated he was assigned as three-man on a five man extraction team. He stated when he went into the cell with the team, Inmate Valenzuela was resisting and fighting the team. Officer Harp was trying to gain control of the Inmate's arms to place hand restraints on him but he kept resisting. Officer Harp stated Inmate Valenzuela grabbed ahold of the toilet and would not let go. Officer Harp stated he struck his arm with a closed fist twice to attempt to gain his compliance to release the toilet. When the Inmate did not let go, he attempted to strike his arm again but he let go and Officer Harp stated he hit the Inmate's rib area. Officer Harp stated he stopped the strikes when he let go. Officer Harp stated Inmate Valenzuela kept resisting and trying to bite the team. He concentrated on trying to restrain his hands, he could not see what the other staff was doing. Officer Harp stated the team was finally able to place hand and leg restraints on the Inmate.

Officer Harry Martinez COV stated Inmate Valenzuela began fighting the team when the team entered the cell. Inmate Valenzuela would comply with orders and resisted the team. Officer Martinez attempted to gain control of the Inmate's legs to assist in placement of leg restraints but he was resisting by using his legs to push himself towards the toilet. Officer Martinez stated he kept losing his grip of his legs. He noticed Inmate Valenzuela was trying to bite staff. Officer Martinez stated he gave two strikes to the inmate's upper body to get him to stop trying to bite. Inmate Valenzuela stopped temporally trying to bite. He stated he then grabbed his left leg again. Officer Martinez was able to straighten out his legs with assistants and Officer Martinez applied the leg restraints as Inmate Valenzuela continued to resist staff. Officer Martinez stated he assisted in holding down the Inmate's upper body. Inmate Valenzuela continued fighting staff. Once Inmate Valenzuela was placed in hand restraints, Officer Martinez stated he started calming down. Officer Martinez stated he only used the force necessary to gain the Inmate's compliance to stop trying to harm himself or others. Once the Inmate stopped resisting he no long utilized any force. Officer Martinez stated Inmate Valenzuela was assisted to his feet and he refused orders to walk out of the cell. Officer Martinez stated the Inmate stiffened his body at the cell doorway and he lifted his body up to keep him standing due to no room in the area to be assisted by other team members. He and Officer Enriquez lifted him up and carried him to the shower area. The door was secured. Inmate Valenzuela became compliant and no further force was utilized.

Officer Greg Bostic COIII stated he was four man on the extraction team and when the team was utilized, he was trying to assist in placing leg restraints on Inmate Valenzuela. Officer Bostic stated Inmate Valenzuela was resisting by fighting the team, attempting to pull himself toward the toilet and trying to bite staff. Officer Bostic stated when he would take control of the Inmate's leg, he would resist. Once the leg restraints were applied, Officer Bostic stated he held on to the Inmate's legs due to him still resisting the placement of hand restraints. Officer Bostic stated so much was going on during the use of force but his did notice Inmate Valenzuela trying to bite staff and continuously holding on to the toilet. He could not tell who was doing what because he was concentrating on the Inmate's legs. Once the Inmate became compliant, he let go of his legs so that the team members could assist him to his feet. Officer Bostic stated he never hit the Inmate and utilized force needed to hold the Inmate's legs.

Captain Darrell Frith stated he utilized chemical agents and a five man extraction team in attempt to gain Inmate Valenzuela's compliance to stop hurting himself and submit to hand restraints. Capt. Frith stated when the team entered the cell, Inmate Valenzuela was resisting by trying to fight the team. The Inmate attempted to bite staff and continued to try to pull himself toward the toilet so he could put his head in it. Capt. Frith stated he continued to give the Inmate orders to comply and he continued to refuse. Capt. Frith stated once the team was able to restraint the Inmate, the team did not use any unnecessary force. The team used appropriate force to be able to stop him from seriously hurting himself and any team member.

**Findings:**

After review of video footage and statements and interviews the following was noted:

Officer McGuire did strike Inmate Valenzuela several times throughout the Use of Force. He utilized four strikes to get the Inmate to let go of the toilet when pulling his arms did not work. Officer McGuire did strike the Inmate three time to the facial area and used a pressure point to prevent from getting bit by the Inmate. Officer McGuire utilized the force necessary needed to gain the compliance of the Inmate. Officer McGuire stopped force once the Inmate complied and was no longer needed. Team members did receive minor injuries but did what was necessary in preventing serious injuries to themselves and the inmate. There were no findings of misconduct or excessive force used by Officer McGuire during the Use of Force. Formal Employee Disciplinary will not be recommended.

Officer Enriquez did strike Inmate Valenzuela with an open hand to the back throughout the Use of Force. He utilized strike in order for the Inmate to stop attempting to bite him. Officer Enriquez utilized the force necessary needed to gain the compliance of the Inmate. Officer Enriquez stopped force once the Inmate complied and was no longer needed. Team members did receive minor injuries but did what was necessary in preventing serious injuries to themselves and the inmate. There were no findings of excessive force used by Officer Enriquez during the Use of Force. Officer Enriquez did violate the proper procedures in lifting an Inmate refusing to cooperate during an escort procedure in accordance to the Use of Force Plan. This was an unintentional act by the Officer but in accordance to the progressive disciplinary and guidance from the agency's Use of Force Office, a Letter of Instruction will be sufficient to prevent future acts of possible violations by the Officer.

Officer Harp did strike Inmate Valenzuela several times throughout the Use of Force. He utilized two strikes to get the Inmate to let go of the toilet when pulling his arms did not work. Officer Harp did strike the Inmate in the rib area after missing his arm when the Inmate moved it. Officer Harp utilized the force necessary needed to gain the compliance of the Inmate. Officer Harp stopped force once the Inmate complied and was no longer needed. Team members did receive minor injuries but did what was necessary in preventing serious injuries to themselves and the inmate. There were no findings of misconduct or excessive force used by Officer Harp during the Use of Force. Formal Employee Disciplinary will not be recommended.

Officer Martinez did strike Inmate Valenzuela twice with closed fist to the upper body during the Use of Force. He utilized strikes in order for the Inmate to stop attempting to bite. Officer Martinez utilized the force necessary needed to gain the compliance of the Inmate. Officer Martinez stopped force once the Inmate complied and was no longer needed. Team members did receive minor injuries but did what was necessary in preventing serious injuries to themselves and the inmate. There were no findings of excessive force used by Officer Martinez during the Use of Force. Officer Martinez did violate the proper procedures in lifting an Inmate refusing to cooperate during an escort

procedure in accordance to the Use of Force Plan. This was an unintentional act by the Officer but in accordance to the progressive disciplinary and guidance from the agency's Use of Force Office, a Letter of Instruction will be sufficient to prevent future acts of possible violations by the Officer.

Once the Use of Force packet and video documentation was reviewed, it was found that Captain Frith took digital photo of the Inmate with no clothes on or anything covering him. Capt. Frith should have taken all reasonable steps to avoid nude photographs, for example placing a towel in front of offender's private body parts. Capt. Frith failed to cover the Inmate before taking the photos. Capt. Frith will receive a Letter of Instruction for the Use of Force Plan violation.

**Investigation Conducted by:**

Major Oliver Vasquez

TEXAS DEPARTMENT OF CRIMINAL JUSTICE
CORRECTIONAL INSTITUTIONS DIVISION

**INTER-OFFICE COMMUNICATION**

TO: Major Vasquez

Date: 1/13/21

FROM: Greg Bostic

Subject: As Stated

I was 4 man on the team, and when we went in on the inmate all I did was first help get the leg restraints on. officer martinez had the leg restraints and was trying to put them on but the inmate was resisting by not staying still, the inmate was going as far as trying to bite staff's hands. I held the inmates legs that way martinez could get the leg restraints. once they were put on I helped get the hand restraints on by getting the inmates arm to his back. The inmate was still making hard by fighting to keep his arm infront of him. I never had to strike the inmate due to me being by his feet, The inmate did not attempt to bite my hans.

**TEXAS DEPARTMENT OF CRIMINAL JUSTICE**
**CORRECTIONAL INSTITUTIONS DIVISION**

**INTER-OFFICE COMMUNICATION**

**TO:** Major ~~Vat~~ Vasquez **Date:** 1-25-21

**FROM:** McGuire COIV **Subject:** Valenzuela, Ruben

---

On 1-13-21 at 148 pm I officer Robert. McGuire COIV during the use of force on offender Valenzuela, Ruben did strike the offender on each hand 2 times because the offender Was holding onto the Toilet and would not Release. upon the 2nd strike to each hand the offender did release The toilet upon Releasing the toilet The offender began Trying to head but ~~at~~ RM and bite Me in the Thighs I did Strike the offender in the face 3 times. upon my 3rd strike the offender did stop Attempting to bite me or head but me. However the offender did continue to Resist staff and ~~Att~~ RM Pull himself back up on the Toilet.
There was insuficient space for myself to Assist in carrying The offender out of the cell.

R McGuire COIV

TEXAS DEPARTMENT OF CRIMINAL JUSTICE
CORRECTIONAL INSTITUTIONS DIVISION

## INTER-OFFICE COMMUNICATION

TO: Major Vasquez

Date: 1.25.21

FROM: EnriQuez CO 4

Subject: Valenzuela / Fact Finding

On 1.13.21 at 1:45 pm i was working overtime in the Afternoon and I responded to the incident command System. I was told by captain Frith that he needed me in the 5 man team as 2 man. we then were ordered to enter the cell and inmate Valenzuela was in his cell attemp to drown himself. officer Mcguire CO4 was 1 man and we both stopped inmate From his actions and attempted to place hand restraints offender Valenzuela then attempted to bite us and Strike us with his arms so we had to use Force to contain his actions I struck the offende in his upper body to gain compliance and we were able to place offender in hand restraints. we were then ordered by captain Frith to escort the offender to the Shower cell to proceed in the decontamination proce. and the offender ~~walked with us on his own will we contained~~ refused to walk to the Shower So myself and officer Martinez CO5 assisted said offender to. the shower Area. He was evaluated by medical and the offender Stated he had no injuries. The next process was to take pictures and the offender was being aggresive again, i then asked captain Frith if i can attempt to translate his orders in Spanish and we were then very Succesfull. offender valenzuela was then calm and the process was continued. we then escorted valenzuela back to the cell and ICS was terminated

M. Enriquez [signature]

1.25.21

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
# CORRECTIONAL INSTITUTIONS DIVISION

## INTER-OFFICE COMMUNICATION

TO: Major Vasquez

Date: 1-25-21

FROM: J. Harp COIV

Subject: ~~A3 Valenzuela~~ Fact Finding

On 1-13-21, I responded to Restrictive Housing for an ICS at approx. 1:48 pm. When I arrived I was the video camera operator until I was relieved by Sgt. Jose Valdez so I could participate on the Five Man team. On the team I was the #3 man, so my job was to apply the hand restraints to the inmate. Once we entered the cell, I attempted to apply the restraints but Inmate Valenzuela had a firm grip on the toilet, I tried to pull his hands off, but couldn't so I struck his arm to get him to release. I had struck his arm twice and went to strike again in order for him to let go. When I was trying to strike the arm, he moved it quickly and I ended up striking his rib cage. Once he released the toilet I stopped my attempts and focused on getting the restraints on him. I assisted Inmate Valenzuela to his feet but was unaware that he was not walking on his own.

[signature]
1-25-21

**TEXAS DEPARTMENT OF CRIMINAL JUSTICE**
**CORRECTIONAL INSTITUTIONS DIVISION**

## INTER-OFFICE COMMUNICATION

**TO:** MAJOR VASQUEZ **Date:** 1-25-2021

**FROM:** officer H. marther **Subject:** As stated

On 1-13-2021 I officer Harry Marther was assigned to Restrictive Housing. I was assigned to the Five man team because offender valenzuela, Ruben refused to submit to Hand Restraints. I was assigned to five man. while trying to restrain the offender when we went in offender was ~~t~~rying to bite ~~the~~ and hit the five man team to put his head back in the toilet to drawn himself. I strock the offender two times in the upper body to turn offenders body away from me wear I didnt get bit. offendor quit biting in my direction so I had no need to strike the offendor anymore. hand and leg restraints were finally applied to the offender after several attempts due to him trying to bite and assault staff - offender was then ~~[illegible]~~ helped by officer enriquez and I to the shower because he refused to walk. Due to there not being enough room we ~~were~~ were not able to assist him properly to the shower, so we held his upper body to keep him in the standing position

// [signature] 1-25-2021

TEXAS DEPARTMENT OF CRIMINAL JUSTICE

CORRECTIONAL INSTITUTIONS DIVISION

Inter-office Communications

---

To: Warden Edmundo Cueto

From: CPT. D. Frith

Date: 1/25/2021

Subject: As Stated

---

On 1/13/2021 I, Captain Darrell Frith was in my office which is attached to Restrictive Housing. Officer James Skipworth CO V was assigned as the Constant and Direct Observation Officer in Restrictive Housing, he knocked on my door and asked me to come into Restrictive Housing. I entered Restrictive Housing and observed Inmate Valenzuela attempting to cut his wrist on a metal plate that he had bent out on the wall. Myself and Officer Skipworth ordered the Inmate to stop trying to cut his wrist and he complied, he then wrapped his arms around the bottom of the toilet, placed his face in the water and shifted his body weight so that all of his body weight was over his upper torso and face and continued to hold his face in the water sucking in the water until he fell over. He coughed up water and was choking, he immediately got up and started doing it again. To prevent the Inmate from causing harm to himself Officer Skipworth administered a burst of chemical agents towards the inmate. I initiated ICS and requested medical, additional staff and video camera to Restrictive Housing. The chemical agents had no effect on the inmate and he continued to attempt to drown himself. I continued to order the Inmate to stop trying to harm himself and he continued to refuse. LVN Castillo arrived to Restrictive Housing and I asked her if she wanted to see him cell side and she said no that he needed to be seen in medical for further assessment. I ordered the Inmate several more times to submit to hand restraints and he continued to refuse. I gained authorization for the use of a 5 man cell extraction team and additional chemical agents by Senior Warden Hefner. I ordered the Inmate several times to come to the cell door and to submit to hand restraints and warned him that additional chemical agents would be used to gain compliance and he stated "no, sir." I administered a burst of MK9 LE 10 chemical agents towards the inmate hitting him in the upper torso. The chemical agents had no effect on the inmate and he continued to refuse to come to the cell door to submit to hand restraints. Inmate Valenzuela continued to stick his face in the water in attempt to drown himself. I ordered the Inmate several more times to stop trying to harm himself and come to his cell door and submit to hand restraints and he continued to

refuse. I administered a second burst of chemical agents towards the inmate and gave ordered him to come to the cell door again and he refused. The chemical agents had no effect on the inmate and he continued to attempt to drown himself and refusing orders. I gave a final order to the inmate and warned him that a 5 man team would be used to gain compliance, the inmate stated "no, sir" once again. I opened the cell door and the 5 man team entered the cell, I stood at the cell door and was walking back and forth to the camera to update the camera. The Inmate was fighting with the team, trying to push them off I witnessed the inmate attempt to bite the team members and while he was struggling with the staff I saw him hit his head on the toilet. I saw the inmate grabbing at staff and refusing to submit to hand restraints, I never saw any staff members hit the inmate but heard what appeared to be strikes while going back and forth to the camera. The inmate was placed in restraints and the inmate was picked up and taken to the shower. While this occurred I was talking to LVN Castillo and when I turned around I noticed that the Officers were dragging the inmate. I went to address this, however it was too late and the inmate was already in the shower area. I ordered the inmate to allow medical to conduct an assessment on him and if he tried to assault her additional force would be used. The inmate stated "yes, sir" and LVN Castillo conducted an assessment on the Inmate and noted no injuries. She then asked the inmate if he had any injuries and he stated "no, ma'am." I entered the cell and removed the UOF equipment that had fell off of the 5-man team and pushed the metal plate back in. The inmate was then escorted from the shower and placed back into 3 cell were the 5 man team assisted him into the prone position. I ordered the inmate to remain in the prone position until the restraints were removed and the cell door was secured. The inmate stated "yes, sir" The 5 man team then removed the restraints and exited the cell. I closed the cell door, read the UOF-2 to the inmate and instructed him on in cell decontamination. I then terminated the UOF.

Cpt. [signature]

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report

### *Employee Use of Force Fact Finding Inquiry*

Unit *(Name and Alpha Code)*: Wallace Unit WL

Report Number: M-00338-01-21 Incident Number *(if applicable)*: I-00721-01-21

***Instructions to Assistant Warden (or designee):***

- *Complete Sections I and II;*
- *If employees or offenders were interviewed, list them in Section II. There is no requirement to call all those, or limit yourself to just those, named in the Report.*
  - *➤New or additional information must be supported by written statements on an interoffice communication (IOC).*
- *If facts are evident you may determine there is no necessity to conduct interviews; if so, proceed to Section III; and*
- *Provide a summary of findings and recommendations in Section III for the Reprimanding Authority to review.*

***Instructions to Reprimanding Authority:***

- *Note your evaluation of the employee's conduct and action taken, if any, in Section IV.*

**I. EMPLOYEE PARTICIPANT OR WITNESS**

| Printed Last | First | MI | Rank or Title |
|---|---|---|---|
| Frith | Darrell | | Captain |

**II. FACT FINDING INQUIRY**

a. Fact Finding Inquiry began on *(date)*: 1/25/2021 and ended on *(date)*: 2/18/2021

b. **EMPLOYEE(S)** interviewed *(please print)*:

| Last | First | MI | Rank |
|---|---|---|---|
| Enriquez | Manuel | | COIV |
| Harp | Joe | | COIV |
| Martinez | Harry | | COV |

c. **OFFENDER(S)** interviewed *(please print)*:

| Last | First | MI | TDCJ# | Custody |
|---|---|---|---|---|
| | | | | |
| | | | | |

**III. SUMMARY AND FINDINGS**

a. Summary of inquiry:

See attached Summary.

b. Findings: Based on interviews , it appears the employee's actions were:

☐ Appropriate; ☒ Inappropriate *(➤ **Determined to be 'aggravated'?*** ☐ YES ☒ NO),

... as evidenced by: ☐ Alleged violation of departmental rules/regulations *(Specify)*:

☒ Other *(Specify)*: Use of Force Plan

c. Recommendations: ☐ No action taken ☐ Refer to the OIG for investigation ☐ Employee Hearing pursuant to PD-22

☒ Other *(Specify)*: Letter of Instruction

d. Assistant Warden *(or designee)* conducting inquiry: Oliver Vasquez Major [signature] 2/18/21

Printed Name/Rank or Title Signature/Date

**IV. FINAL OUTCOME**

a. Evaluation: I have found the employee's actions were: ☐ Appropriate ☒ Inappropriate *(**Determined to be 'aggravated'?*** ☐ YES ☒ NO) -or-

☐ I am unable to determine based on evidence presented

b. Action: ☐ No action taken ☐ Refer to the OIG for investigation *(UOF-OIG Referral Attached)* ☒ Other *(Specify)*: LOI

☐ Employee Hearing to be scheduled *Attach copy of employee's UOF statement ONLY to a PERS 325 and a copy of this UOF-9 and forward to the unit human resources representative to notify the employee of hearing.*

*➤ **Once hearing is held pursuant to PD-22, attach copy of PERS 185 to original UOF-9.***

c. Reprimanding Authority: Jody Hefner Warden [signature] 2-23-21

Printed Name/Rank or Title Signature/Date

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report

### *Employee Use of Force Fact Finding Inquiry*

Unit *(Name and Alpha Code)*: Wallace Unit WL

Report Number: M-00338-01-21 Incident Number *(if applicable)*: I-00721-01-21

***Instructions to Assistant Warden (or designee):***

- *Complete Sections I and II;*
- *If employees or offenders were interviewed, list them in Section II. There is no requirement to call all those, or limit yourself to just those, named in the Report.*
  - *➢New or additional information must be supported by written statements on an interoffice communication (IOC).*
- *If facts are evident you may determine there is no necessity to conduct interviews; if so, proceed to Section III; and*
- *Provide a summary of findings and recommendations in Section III for the Reprimanding Authority to review.*

***Instructions to Reprimanding Authority:***

- *Note your evaluation of the employee's conduct and action taken, if any, in Section IV.*

**I. EMPLOYEE PARTICIPANT OR WITNESS**

| Printed Last | First | MI | Rank or Title |
|---|---|---|---|
| Frith | Darrell | | Captain |

**II. FACT FINDING INQUIRY**

a. Fact Finding Inquiry began on *(date)*: 1/25/2021 and ended on *(date)*: 2/18/2021

b. EMPLOYEE(S) interviewed *(please print)*:

| Last | First | MI | Rank |
|---|---|---|---|
| Bostic | | | COIII |
| | | | |
| | | | |

c. OFFENDER(S) interviewed *(please print)*:

| Last | First | MI | TDCJ# | Custody |
|---|---|---|---|---|
| | | | | |
| | | | | |

**III. SUMMARY AND FINDINGS**

a. Summary of inquiry:

See attached Summary.

b. Findings: Based on interviews , it appears the employee's actions were:

☐ Appropriate; ☒ Inappropriate (*➢ Determined to be 'aggravated'?* ☐ YES ☒ NO),

... as evidenced by: ☐ Alleged violation of departmental rules/regulations *(Specify)*:

☒ Other *(Specify)*: Use of Force Plan

c. Recommendations: ☐ No action taken ☐ Refer to the OIG for investigation ☐ Employee Hearing pursuant to PD-22

☒ Other *(Specify)*: Letter of Instruction

d. Assistant Warden *(or designee)* conducting inquiry: Oliver Vasquez Major [signature] 2/18/21

Printed Name/Rank or Title Signature/Date

**IV. FINAL OUTCOME**

a. Evaluation: I have found the employee's actions were: ☐ Appropriate ☒ Inappropriate *(Determined to be 'aggravated'?* ☐ YES ☒ NO) -

or-

☐ I am unable to determine based on evidence presented

b. Action: ☐ No action taken ☐ Refer to the OIG for investigation *(UOF-OIG Referral Attached)* ☒ Other *(Specify)*: LOI

☐ Employee Hearing to be scheduled *Attach copy of employee's UOF statement ONLY to a PERS 325 and a copy of this UOF-9 and forward to the unit human resources representative to notify the employee of hearing.*

*➢ Once hearing is held pursuant to PD-22, attach copy of PERS 185 to original UOF-9.*

c. Reprimanding Authority: Jody Hefner Warden [signature] 2-23-21

Printed Name/Rank or Title Signature/Date

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE

P.O. Box 99 Huntsville, Texas 77342-0099

**To:** **Captain Darrell Frith**

**From:** **Warden J. Hefner**

**Date:** **02/18/2021**

**Subject:** **Letter of Instruction**

This Letter of Instruction is designed to encourage positive behavioral change and to improve employee performance. This letter will serve as an informal action to correct behavior before pursuing more formal guidelines as outlined in PD-22.

Purpose of this Letter: On January 13, 2021 a Use of Force (M-00338-01-21/I-00721-01-21) involving the utilization of chemical agents and a five man extraction team concerning Inmate Valenzuela, Ruben #1785292. Once the Use of Force packet and video documentation was reviewed, it was found that Captain Darrell Frith took digital photo of the Inmate with no clothes on or anything covering him. Capt. Frith should have taken all reasonable steps to avoid nude photographs, for example placing a towel in front of offender's private body parts. Capt. Frith failed to cover the Inmate before taking the photos in accordance to the Use of Force Plan.

Agency policy states: All reasonable steps shall be exercised to avoid nude photographs, for example placing a towel in front of offender's private body parts.

You are hereby instructed that you must follow Agency policy as stated and failure to do so may subject you to further employee disciplinary in accordance with PD-22.

Your signature acknowledges that you have read and understand this direction and that you also understand that a copy of this document will be placed in your working personnel file.

Captain Darrell Frith [signature] — 2/23/2021

OFFICERS NAME: — DATE:

Warden J. Hefner [signature] — 2-23-21

SUPERVISORS NAME: — DATE:

(10) If the offender is to be transported off of the unit, recording may be terminated once the offender is placed in the transport vehicle and its doors are secured.

(11) Staff shall state on camera the reason for terminating recording.

2. Still Photographs

a. All injuries shall be documented by photographs. Photographs shall be taken in accordance with AD-03.47, "Taking Photographs Following an Injury or Use of Force Incident."

b. Security staff shall take a minimum of two photographs, full front and back, of each offender participant in a use of force.

(1) Once licensed medical staff has completed the medical screening, security staff shall take photographs of each offender participant's injuries. This shall be done prior to the bandaging of the injured area, however, shall not interfere with emergency medical treatment by attending licensed medical staff.

(2) If possible, required photographs shall be taken at the time participants are taken for medical screenings.

(3) When licensed medical staff is not on-site, photographs shall be taken immediately following the use of force.

(4) If a use of force involves seven or more offenders who are not injured, videotaping a full front and back view of each offender shall be accomplished in lieu of the still photograph procedure.

c. In taking photographs, an offender's undergarments shall not be removed unless it is necessary to photograph an injury. All reasonable steps shall be exercised to avoid nude photographs, for example placing a towel in front of offender's private body parts. In the case of female offenders, the breasts shall be covered before photographing unless the injury was to this body area.

d. No force shall be used to obtain photographs for the purpose of reporting a use of force. If an offender refuses to stand or pose for photographs, the photographs shall be taken of the offender in the current position and location.

**DEFS' MSJ APPX. 057**

**CERVANTEZ_00057**

# OFFICIAL INVESTIGATION

**Subject:** Fact Finding Use of Force (M-00338-01-21/I-00721-01-21)

**Allegation:**

On January 13, 2021 a Use of Force (M-00338-01-21/I-00721-01-21) involving the utilization of a five man extraction team concerning Inmate Valenzuela, Ruben #1785292 (H/M/26/G4/L3) due to procedural violations involving staff and Inmate Valenzuela. Fact Finding was initiated on January 25, 2021 involving McGuire, Robert CO IV, Officer Enriquez, Manuel CO IV, Officer Harp, Joe CO IV, Officer Martinez, Harry CO V, Officer Bostic CO III, Greg and Captain Frith, Darrell.

**Summary:**

On January 13, 2021 Inmate Valenzuela (Restrictive Housing #3) was in Constant Direct Observation (CDO) awaiting to be transferred to the Montford Unit. Correctional Officer (CO) V Skipworth, James was the CDO Officer assigned. Office Skipworth noticed Inmate Valenzuela stick his head in his toilet in the assigned housing area attempting to drown himself. Officer Skipworth gave orders to Inmate Valenzuela to stop. Officer Skipworth then knocked on Captain (Capt.) Frith, Darrell office door located which is located within the restrictive housing area. Capt. Frith entered the area and observed the inmate sticking his head in the toilet attempting to drown himself. Capt. Frith ordered the inmate to stop which he complied. Inmate Valenzuela then went to rubbing his wrist on a piece of metal plate (top corner bent) located inside the cell by the wall/toilet area. Officer Skipworth ordered the inmate to stop or chemical agents would be used. Inmate Stopped attempting to himself on his wrist and then went to attempt to drown himself in the toilet. Orders were then given by Capt. Frith and Officer Skipworth to stop and explained chemical agents would be used. Inmate Valenzuela refused orders and chemical agents was administered by Officer Skipworth. Chemical agents had no effect. Capt. Frith initiated the Incident Command System (ICS) requesting additional staff, medical staff and a video camera operator. Officer Harp, Joe, CO IV, arrived with video camera. Capt. Frith conducted a narration, the inmate was not in view due to the layout and design of the cell in Restrictive Housing. Officer Harp was at the entrance of Capt. Frith office door opened. Licensed Vocational Nurse (LVN) Castillo, Sandy arrived and was briefed by Capt. Frith. LVN Castillo stated the inmate would need to be taken to the unit infirmary. Officer McGuire and ordered the inmate to comply with application of hand restraints so he could be escorted to the unit infirmary and explained if he refused chemical agents could be used. Officer Bostic, Greg was on scene and was going to be the escort officer with Officer McGuire. Inmate Valenzuela refused to comply with orders and attempted to drown himself in the toilet. Capt. Frith then ordered Inmate Valenzuela to comply with application of hand restraints and explained chemical agents

would be administered to no avail. Capt. Frith then contacted Senior Warden Hefner, Jody for authorization for a use of force cell move team. During gaining authorization Officer McGuire is giving orders to inmate Valenzuela to comply with applications of hand restraints. Capt. Frith receives authorization to utilize a cell force move team and chemical agents. Officer McGuire notifies Capt. Frith the inmate has placed his head in the toilet. Capt. Frith orders Inmate Valenzuela to submit to hand restraints, be assessed by medical staff and explained the use of chemical agents. Capt. Frith then administers a burst of chemical agents to Inmate Valenzuela to gain compliance. Inmate Valenzuela refused. Capt. Frith orders Inmate Valenzuela to comply with hand restrains so he can be seen by medical and explained consequence sf chemical agents to gain compliance. Inmate Valenzuela refused. Capt. Frith briefed camera that Sergeant (SGT) Valdez, Jose was going to relieve Officer Harp as video camera operator. Capt. Frith orders the inmate to comply to hand restraints and Inmate Valenzuela refuses. Capt. Frith orders the inmate to submit to a hand restraint or chemical agents would be used. Inmate Valenzuela refuses and Capt. Frith administers another burst of chemical agents to gain compliance to no avail. Capt. Frith gives several orders to submit to hand restraints and consequences that chemical agents would be used to gain compliance. Inmate Valenzuela refuses to comply. Capt. Frith identified team members: 1 man) Officer McGuire, COIV, 2 man) Officer Enriquez, Manuel CO IV, 3 man) Officer Harp CO IV, 4 man) Officer Bostic, CO III and 5 man) Officer Martinez, Harry CO V. Capt. Frith orders Inmate Valenzuela to comply with application of hand restraints and explains consequences that chemical agents and the force move team will be utilized to gain compliance. Inmate Valenzuela refuses. Capt. Frith repeats orders and consequences to inmate Valenzuela and refuses. Capt. Frith opens the cell door and the team enter the cell. Inmate is instructed to not resist. Officer McGuire and Officer Enriquez observe the inmate by the toilet area and pull him away. In doing so Inmate Valenzuela is attempting to bite staff and strike and headbutt Officer McGuire and Officer Enriquez as he is trying to go back to the toilet area. Officer McGuire punches Inmate Valenzuela in both hand for a total of four punches due to the inmate attempting to go back to the toilet area and grabbing and not allowing hand restraints to be placed. Inmate Valenzuela attempted to bite Officer McGuire; Officer McGuire then punches Inmate Valenzuela in his face three times and inmate stops attempting to bite him. Inmate Valenzuela continues to grab toilet area and resist application of hand restraints and resisting staff. Officer Enriquez strike Inmate Valenzuela twice in the upper body due to his actions of trying to bite and strike staff this is noted when the leg restraints are being repositioned. Officer Harp observes Inmate Valenzuela trying to bit staff, Officer Harp attempts to place hand restraints but cannot due to Inmate Valenzuela's actions of biting staff, resting and grabbing the toilet area. Officer Harp then strikes Inmate Valenzuela in the rib area 3-4 times due to his actions of resisting staff and not complying. Officer Bostic entered the cell and sees the inmate attempting to bit staff as they were trying to place Inmate Valenzuela in hand restraints. Officer Bostic holds inmate's legs so Officer Martinez can place the leg restraints. Officer Bostic holds inmates legs as staff is still trying to place hand restraints on Inmate Valenzuela. Officer Martinez applies leg restraints on Inmate Valenzuela. Officer Martinez then assist Officer Harp and Officer Enriquez in securing the inmate in hand restraints. Inmate Valenzuela is seen attempting to bite staff and still not refusing to submit to hand restraints. Office Martinez then strikes Inmate Valenzuela twice in the

upper body (shoulder area) from where he is positioned for inmate to stop biting staff and himself as he is trying to grab his arms and turn him away from him. Inmate Valenzuela is being instructed to not resist staff and place his hands behind his back to no avail. Capt. Frith observed Officer Bostic leg get caught in Inmate Valenzuela legs along with the leg restraints. Capt. Frith instructed for the leg restraints to be removed so Officer Bostic could untangle his leg and prevent any injuries to Officer Bostic as they are attempting to turn Inmate Valenzuela to his stomach. . Leg restraints were re-applied by Officer Bostic. Staff was able to secure him with minimum amount needed to get the inmate secured. Capt. Frith then calls for a gurney and states inmate is in restraints. LVN Castillo conducted a cell side physical due to inmate behavior and actions. LVN Castillo asked the inmate if he had any injuries. Inmate Valenzuela did not respond to LVN Castillo, she noted no injuries. Capt. Frith informed Inmate Valenzuela he would be assisted to his feet by the force cell move team and taken to the shower. Inmate Valenzuela was then rolled to his side by force cell move team members so he could be assisted to his feet. Officer Martinez and Officer Enriquez were the team members who took Inmate Valenzuela to the shower and dragged him into the shower and secured the shower door. Capt. Frith tells Inmate Valenzuela that medical will do an assessment of him and if he attempt to assault her additional force would be used. LVN Castillo asked the inmate if he has any injuries from the use of force. Inmate replies "No Ma'am." LVN Castillo states the inmate is reporting no injuries to the use of force. Capt. Frith take photos of Inmate Valenzuela. Inmate Valenzuela does not comply to have photos taken of him. Inmate Valenzuela then walks into the shower, and asks for water and then starts speaking in Spanish asking for water. Officer Enriquez (Qualified Spanish interpreter) then talks to him in Spanish and tell him to come and have the hand restraints removed so he could shower and photos be taken of him. Inmate Valenzuela complies. Inmate Valenzuela states he does not want to take photos and does not want to shower. Officer Enriquez then attempts to get him to take photos and Inmate is refusing. Capt. Frith instructs Officer Enriquez to tell Inmate Valenzuela he will be escorted back to the cell and if he does not comply chemical agents will be utilized. Officer Enriquez explains he will be escorted to his cell. Capt. Frith orders Inmate Valenzuela to be escorted to the cell and use of chemical agents will be used. Capt. Frith informs Officer Enrique to instruct Inmate Valenzuela he will go to his cell, will receive water and explains if he does not chemical agents will be used. Inmate Valenzuela then complies with orders and instructions. While waiting to be escorted the cell is being cleared and cleaned. The metal piece is placed back in position. Team members then escort the inmate and assist Inmate Valenzuela to a prone position. Hand/Leg restraints are removed, team members exit the cell and cell door is secured. Capt. Frith then reads inmate participation report. Capt. Frith then gives decontamination procedures to Inmate Valenzuela and terminates use of force.

Officer McGuire was interviewed and he stated he was assigned as one-man on a five man extraction team due to Offender Valenzuela not wanting to comply with orders to submit hand restraints and stop attempting to harm himself. Chemical agents had been utilized and the usage did not work. Captain Frith gave orders and warnings to Inmate Valenzuela. He refused and Capt. Frith unsecured the door. Officer McGuire stated Inmate Valenzuela was at the toilet with his head submerged in the water. He used the

shield to push him away from the toilet and onto the floor. Inmate Valenzuela began fighting the team and keep grabbing at the toilet. Once he grabbed the toilet, Officer McGuire stated he could not pull his arms to get him to let go, so he struck the inmate four times to his hands to get him to let go. Once Inmate Valenzuela let go of the toilet, he did not hit his hands anymore. Officer McGuire stated he continue to attempt to get Inmates Valenzuela's hands behind his back but he kept resisting. He stated Inmate Valenzuela began attempting to bite staff. When Inmate Valenzuela attempted to bite him, he punched him three times in the facial area to prevent him from biting him. Inmate Valenzuela would not stop trying to bite him and other staff members, so he used a pressure point to his temple area to get him to stop. Inmate Valenzuela stopped attempting to bite but continued to resist staff by not allowing them to place hand restraints on him. He stated the team was able to put him in hand and leg restraints. He was escorted out of the cell and place in the shower area. Officer McGuire stated he did receive minor injuries due to the Use of force and stated he only punched the Inmate to prevent from receiving anymore or serious injuries.

Officer Manuel Enriquez COIV stated he was assigned as two-man on a five man extraction team. He stated when the team was utilized, went in behind Officer McGuire and the Inmate was pushed to the floor. He stated the Inmate kept fighting, trying to hold on to the toilet and attempting to bite staff. He stated he could not really tell what everyone was doing. He stated he kept grabbing the Inmates arms in an attempt to place them behind his back for placement of hand restraints. He stated the Inmate kept resisting and causing him to lose grip. Officer Enriquez stated he noticed Inmate Valenzuela was attempting to bite him and other staff. Officer Enriquez then struck him with an open hand to the back to gain his compliance and to stop him from biting him. He stated he did not need to strike the Inmate anymore but the Inmate did continue to resist. The team was able to place hand and leg restraints on the Inmate. Officer Enriquez stated he assisted Inmate Valenzuela in standing up but refused to walk. Inmate Valenzuela refused orders to walk, he and Officer Martinez held up Inmate Valenzuela. Officer Enriquez stated the area was small, so he and Officer Martinez lifted him up by his arms and carried him to the shower area. Inmate Valenzuela was secured in the shower area as they cleared out his cell. Officer Enriquez stated Inmate Valenzuela complied with the rest of the procedures and no more force was needed.

Officer Joe Harp COIV stated he was assigned as three-man on a five man extraction team. He stated when he went into the cell with the team, Inmate Valenzuela was resisting and fighting the team. Officer Harp was trying to gain control of the Inmate's arms to place hand restraints on him but he kept resisting. Officer Harp stated Inmate Valenzuela grabbed ahold of the toilet and would not let go. Officer Harp stated he struck his arm with a closed fist twice to attempt to gain his compliance to release the toilet. When the Inmate did not let go, he attempted to strike his arm again but he let go and Officer Harp stated he hit the Inmate's rib area. Officer Harp stated he stopped the strikes when he let go. Officer Harp stated Inmate Valenzuela kept resisting and trying to bite the team. He concentrated on trying to restrain his hands, he could not see what the other staff was doing. Officer Harp stated the team was finally able to place hand and leg restraints on the Inmate.

Officer Harry Martinez COV stated Inmate Valenzuela began fighting the team when the team entered the cell. Inmate Valenzuela would comply with orders and resisted the team. Officer Martinez attempted to gain control of the Inmate's legs to assist in placement of leg restraints but he was resisting by using his legs to push himself towards the toilet. Officer Martinez stated he kept losing his grip of his legs. He noticed Inmate Valenzuela was trying to bite staff. Officer Martinez stated he gave two strikes to the inmate's upper body to get him to stop trying to bite. Inmate Valenzuela stopped temporally trying to bite. He stated he then grabbed his left leg again. Officer Martinez was able to straighten out his legs with assistants and Officer Martinez applied the leg restraints as Inmate Valenzuela continued to resist staff. Officer Martinez stated he assisted in holding down the Inmate's upper body. Inmate Valenzuela continued fighting staff. Once Inmate Valenzuela was placed in hand restraints, Officer Martinez stated he started calming down. Officer Martinez stated he only used the force necessary to gain the Inmate's compliance to stop trying to harm himself or others. Once the Inmate stopped resisting he no long utilized any force. Officer Martinez stated Inmate Valenzuela was assisted to his feet and he refused orders to walk out of the cell. Officer Martinez stated the Inmate stiffened his body at the cell doorway and he lifted his body up to keep him standing due to no room in the area to be assisted by other team members. He and Officer Enriquez lifted him up and carried him to the shower area. The door was secured. Inmate Valenzuela became compliant and no further force was utilized.

Officer Greg Bostic COIII stated he was four man on the extraction team and when the team was utilized, he was trying to assist in placing leg restraints on Inmate Valenzuela. Officer Bostic stated Inmate Valenzuela was resisting by fighting the team, attempting to pull himself toward the toilet and trying to bite staff. Officer Bostic stated when he would take control of the Inmate's leg, he would resist. Once the leg restraints were applied, Officer Bostic stated he held on to the Inmate's legs due to him still resisting the placement of hand restraints. Officer Bostic stated so much was going on during the use of force but his did notice Inmate Valenzuela trying to bite staff and continuously holding on to the toilet. He could not tell who was doing what because he was concentrating on the Inmate's legs. Once the Inmate became compliant, he let go of his legs so that the team members could assist him to his feet. Officer Bostic stated he never hit the Inmate and utilized force needed to hold the Inmate's legs.

Captain Darrell Frith stated he utilized chemical agents and a five man extraction team in attempt to gain Inmate Valenzuela's compliance to stop hurting himself and submit to hand restraints. Capt. Frith stated when the team entered the cell, Inmate Valenzuela was resisting by trying to fight the team. The Inmate attempted to bite staff and continued to try to pull himself toward the toilet so he could put his head in it. Capt. Frith stated he continued to give the Inmate orders to comply and he continued to refuse. Capt. Frith stated once the team was able to restraint the Inmate, the team did not use any unnecessary force. The team used appropriate force to be able to stop him from seriously hurting himself and any team member.

**Findings:**

After review of video footage and statements and interviews the following was noted:

Officer McGuire did strike Inmate Valenzuela several times throughout the Use of Force. He utilized four strikes to get the Inmate to let go of the toilet when pulling his arms did not work. Officer McGuire did strike the Inmate three time to the facial area and used a pressure point to prevent from getting bit by the Inmate. Officer McGuire utilized the force necessary needed to gain the compliance of the Inmate. Officer McGuire stopped force once the Inmate complied and was no longer needed. Team members did receive minor injuries but did what was necessary in preventing serious injuries to themselves and the inmate. There were no findings of misconduct or excessive force used by Officer McGuire during the Use of Force. Formal Employee Disciplinary will not be recommended.

Officer Enriquez did strike Inmate Valenzuela with an open hand to the back throughout the Use of Force. He utilized strike in order for the Inmate to stop attempting to bite him. Officer Enriquez utilized the force necessary needed to gain the compliance of the Inmate. Officer Enriquez stopped force once the Inmate complied and was no longer needed. Team members did receive minor injuries but did what was necessary in preventing serious injuries to themselves and the inmate. There were no findings of excessive force used by Officer Enriquez during the Use of Force. Officer Enriquez did violate the proper procedures in lifting an Inmate refusing to cooperate during an escort procedure in accordance to the Use of Force Plan. This was an unintentional act by the Officer but in accordance to the progressive disciplinary and guidance from the agency's Use of Force Office, a Letter of Instruction will be sufficient to prevent future acts of possible violations by the Officer.

Officer Harp did strike Inmate Valenzuela several times throughout the Use of Force. He utilized two strikes to get the Inmate to let go of the toilet when pulling his arms did not work. Officer Harp did strike the Inmate in the rib area after missing his arm when the Inmate moved it. Officer Harp utilized the force necessary needed to gain the compliance of the Inmate. Officer Harp stopped force once the Inmate complied and was no longer needed. Team members did receive minor injuries but did what was necessary in preventing serious injuries to themselves and the inmate. There were no findings of misconduct or excessive force used by Officer Harp during the Use of Force. Formal Employee Disciplinary will not be recommended.

Officer Martinez did strike Inmate Valenzuela twice with closed fist to the upper body during the Use of Force. He utilized strikes in order for the Inmate to stop attempting to bite. Officer Martinez utilized the force necessary needed to gain the compliance of the Inmate. Officer Martinez stopped force once the Inmate complied and was no longer needed. Team members did receive minor injuries but did what was necessary in preventing serious injuries to themselves and the inmate. There were no findings of excessive force used by Officer Martinez during the Use of Force. Officer Martinez did violate the proper procedures in lifting an Inmate refusing to cooperate during an escort

procedure in accordance to the Use of Force Plan. This was an unintentional act by the Officer but in accordance to the progressive disciplinary and guidance from the agency's Use of Force Office, a Letter of Instruction will be sufficient to prevent future acts of possible violations by the Officer.

Once the Use of Force packet and video documentation was reviewed, it was found that Captain Frith took digital photo of the Inmate with no clothes on or anything covering him. Capt. Frith should have taken all reasonable steps to avoid nude photographs, for example placing a towel in front of offender's private body parts. Capt. Frith failed to cover the Inmate before taking the photos. Capt. Frith will receive a Letter of Instruction for the Use of Force Plan violation.

**Investigation Conducted by:**

Major Oliver Vasquez

TEXAS DEPARTMENT OF CRIMINAL JUSTICE
CORRECTIONAL INSTITUTIONS DIVISION

## INTER-OFFICE COMMUNICATION

TO: Major Vasquez

Date: 1/13/21

FROM: Greg Bostic

Subject: As Stated

I was 4 man on the team, and when we went in on the inmate all I did was first help get the leg restraints on. officer martinez had the leg restraints and was trying to put them on but the inmate was resisting by not staying still. The inmate was going as far as trying to bite staff's hand's. I held the inmates legs that way martinez could get the leg restraints. once they were put on I helped get the hand restraints on by getting the inmates arm to his back. The inmate was still making hard by fighting to keep his arm infront of him. I never had to strike the inmate due to me being by his feet, The inmate did not attempt to bite my hand.

TEXAS DEPARTMENT OF CRIMINAL JUSTICE
CORRECTIONAL INSTITUTIONS DIVISION

**INTER-OFFICE COMMUNICATION**

TO: Major ~~Vat~~ Vasquez

Date: 1-25-21

FROM: McGuire COIV

Subject: Valenzuela, Ruben

On 1-13-21 at 148pm I officer Robert. McGuire COIV during the use of force on offender Valenzuela, Ruben did strike the offender on each hand 2times because the offender was holding onto the toilet and would not Release. upon the 2nd strike to each hand the offender did release the toilet upon Releasing the toilet The offender began Trying to head but ~~at~~ RM and bite Me in the Thighs I did Strike the offender in the face 3times. upon my 3rd strike the offender did stop Attempting to bite me or head but me. However the offender did continue to Resist staff and ~~Att~~ RM pull himself back up on the Toilet.

There was insuficient space for myself to Assist in carrying the offender out of the cell.

R McGuire COIV

TEXAS DEPARTMENT OF CRIMINAL JUSTICE
CORRECTIONAL INSTITUTIONS DIVISION

## INTER-OFFICE COMMUNICATION

TO: Major Vasquez

Date: 1-25-21

FROM: Enriquez CO 4

Subject: Valenzuela / Fact Finding

On 1-13-21 at 1:45pm i was working overtime in the Afternoon and I responded to the incident command system. I was told by captain Frith that he needed me in the 5 man team as 2 man. we then were ordered to enter the cell and inmate Valenzuela was in his cell attempt. to drown himself. officer Mcguire CO4 was 1 man and we both stopped inmate from his actions and attempted to place hand restraints. offender Valenzuela then attempted to bite us and strike us with his arms so we had to use force to contain his actions. I struck the offender in his upper body to gain compliance and we were able to place offender in hand restraints. we were then ordered by captain Frith to escort the offender to the shower cell to proceed in the decontamination process and the offender ~~walked with us on his own will we contained~~ refused to walk to the shower so myself and officer Martinez CO 5 assisted said offender to the shower area. He was evaluated by medical and the offender stated he had no injuries. The next process was to take pictures and the offender was being aggresive again, i then asked captain Frith if i can attempt to translate his orders in Spanish and we were then very succesfull. offender Valenzuela was then calm and the process was continued. we then escorted Valenzuela back to the cell and ICS was terminated

M. Enriquez

1-25-21

TEXAS DEPARTMENT OF CRIMINAL JUSTICE
CORRECTIONAL INSTITUTIONS DIVISION

# INTER-OFFICE COMMUNICATION

TO: Major Vasquez

Date: 1-25-21

FROM: J. Harp COIV

Subject: ~~A.H. Stated~~ Valenzuela Fact Finding

On 1-13-21, I responded to Restrictive Housing for an ICS at approx. 1:48 pm. When I arrived I was the video camera operator until I was relieved by Sgt. Jose Valdez so I could participate on the Five Man team. On the team I was the #3 man, so my job was to apply the hand restraints to the inmate. Once we entered the cell, I attempted to apply the restraints but Inmate Valenzuela had a firm grip on the toilet, I tried to pull his hands off, but couldn't so I struck his arm to get him to release. I had struck his arm twice and went to strike again in order for him to let go. When I was trying to strike the arm, he moved it quickly and I ended up striking his rib cage. Once he released the toilet I stopped my attempts and focused on getting the restraints on him. I assisted Inmate Valenzuela to his feet but was unaware that he was not walking on his own.

[signature]
1-25-21

TEXAS DEPARTMENT OF CRIMINAL JUSTICE
CORRECTIONAL INSTITUTIONS DIVISION

## INTER-OFFICE COMMUNICATION

TO: MAJOR VASQUEZ

Date: 1-25-2021

FROM: officer H. marthen

Subject: As stated

On 1-13-2021 I officer Harry Marthen was assigned to Restrictive Housing. I was assigned to the five man team because offender valenzuela, Ruben refused to submit to Hand Restraints. I was assigned to five man. while trying to restrain the offender when we went in offender was trying to bite ~~the~~ and hit the five man team to put his head back in the toilet to drown himself. I struck the offender two times in the upper body to turn offenders body away from me wear I didnt get bit. offender quit biting in my direction so I had no need to strike the offender anymore. hand and leg restraints were finally applied to the offender after several attempts due to him trying to bite and assault staff. offender was then ~~[illegible]~~ helped by officer enriquez and I to the shower because he refused to walk. Due to there not being enough room we ~~were~~ were not able to assist him properly to the shower. So we held his upper body to keep him in the standing position

H M [signature] 1-25-2021

TEXAS DEPARTMENT OF CRIMINAL JUSTICE

CORRECTIONAL INSTITUTIONS DIVISION

Inter-office Communications

---

To: Warden Edmundo Cueto

From: CPT. D. Frith

Date: 1/25/2021

Subject: As Stated

---

On 1/13/2021 I, Captain Darrell Frith was in my office which is attached to Restrictive Housing. Officer James Skipworth CO V was assigned as the Constant and Direct Observation Officer in Restrictive Housing, he knocked on my door and asked me to come into Restrictive Housing. I entered Restrictive Housing and observed Inmate Valenzuela attempting to cut his wrist on a metal plate that he had bent out on the wall. Myself and Officer Skipworth ordered the Inmate to stop trying to cut his wrist and he complied, he then wrapped his arms around the bottom of the toilet, placed his face in the water and shifted his body weight so that all of his body weight was over his upper torso and face and continued to hold his face in the water sucking in the water until he fell over. He coughed up water and was choking, he immediately got up and started doing it again. To prevent the Inmate from causing harm to himself Officer Skipworth administered a burst of chemical agents towards the inmate. I initiated ICS and requested medical, additional staff and video camera to Restrictive Housing. The chemical agents had no effect on the inmate and he continued to attempt to drown himself. I continued to order the Inmate to stop trying to harm himself and he continued to refuse. LVN Castillo arrived to Restrictive Housing and I asked her if she wanted to see him cell side and she said no that he needed to be seen in medical for further assessment. I ordered the Inmate several more times to submit to hand restraints and he continued to refuse. I gained authorization for the use of a 5 man cell extraction team and additional chemical agents by Senior Warden Hefner. I ordered the Inmate several times to come to the cell door and to submit to hand restraints and warned him that additional chemical agents would be used to gain compliance and he stated "no, sir." I administered a burst of MK9 LE 10 chemical agents towards the inmate hitting him in the upper torso. The chemical agents had no effect on the inmate and he continued to refuse to come to the cell door to submit to hand restraints. Inmate Valenzuela continued to stick his face in the water in attempt to drown himself. I ordered the Inmate several more times to stop trying to harm himself and come to his cell door and submit to hand restraints and he continued to

refuse. I administered a second burst of chemical agents towards the inmate and gave ordered him to come to the cell door again and he refused. The chemical agents had no effect on the inmate and he continued to attempt to drown himself and refusing orders. I gave a final order to the inmate and warned him that a 5 man team would be used to gain compliance, the inmate stated "no, sir" once again. I opened the cell door and the 5 man team entered the cell, I stood at the cell door and was walking back and forth to the camera to update the camera. The Inmate was fighting with the team, trying to push them off I witnessed the inmate attempt to bite the team members and while he was struggling with the staff I saw him hit his head on the toilet. I saw the inmate grabbing at staff and refusing to submit to hand restraints, I never saw any staff members hit the inmate but heard what appeared to be strikes while going back and forth to the camera. The inmate was placed in restraints and the inmate was picked up and taken to the shower. While this occurred I was talking to LVN Castillo and when I turned around I noticed that the Officers were dragging the inmate. I went to address this, however it was too late and the inmate was already in the shower area. I ordered the inmate to allow medical to conduct an assessment on him and if he tried to assault her additional force would be used. The inmate stated "yes, sir" and LVN Castillo conducted an assessment on the Inmate and noted no injuries. She then asked the inmate if he had any injuries and he stated "no, ma'am." I entered the cell and removed the UOF equipment that had fell off of the 5-man team and pushed the metal plate back in. The inmate was then escorted from the shower and placed back into 3 cell were the 5 man team assisted him into the prone position. I ordered the inmate to remain in the prone position until the restraints were removed and the cell door was secured. The inmate stated "yes, sir" The 5 man team then removed the restraints and exited the cell. I closed the cell door, read the UOF-2 to the inmate and instructed him on in cell decontamination. I then terminated the UOF.

Cpt. [signature]

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report

### *Employee Use of Force Fact Finding Inquiry*

Unit *(Name and Alpha Code)*: Wallace Unit WL

Report Number: M-00338-01-21 Incident Number (*if applicable*): I-00721-01-21

***Instructions to Assistant Warden (or designee):***

- *Complete Sections I and II;*
- *If employees or offenders were interviewed, list them in Section II. There is no requirement to call all those, or limit yourself to just those, named in the Report.*
  - *➢New or additional information must be supported by written statements on an interoffice communication (IOC).*
- *If facts are evident you may determine there is no necessity to conduct interviews; if so, proceed to Section III; and*
- *Provide a summary of findings and recommendations in Section III for the Reprimanding Authority to review.*

***Instructions to Reprimanding Authority:***

- *Note your evaluation of the employee's conduct and action taken, if any, in Section IV.*

## I. EMPLOYEE PARTICIPANT OR WITNESS

| Printed Last | First | MI | Rank or Title |
|---|---|---|---|
| Enriquez | Manuel | | COIV |

## II. FACT FINDING INQUIRY

a. Fact Finding Inquiry began on *(date)*: 1/25/2021 and ended on *(date)*: 2/18/2021

b. EMPLOYEE(S) interviewed *(please print)*:

| Last | First | MI | Rank |
|---|---|---|---|
| Martinez | Harry | | COV |
| Harp | Joe | | COIV |
| McGuire | Robert | | COIV |

c. OFFENDER(S) interviewed *(please print)*:

| Last | First | MI | TDCJ# | Custody |
|---|---|---|---|---|
| | | | | |
| | | | | |

## III. SUMMARY AND FINDINGS

a. Summary of inquiry:

See attached Summary.

b. Findings: Based on interviews , it appears the employee's actions were:

☐ Appropriate; ☒ Inappropriate (*➢ **Determined to be 'aggravated'?*** ☐ YES ☒ NO),

... as evidenced by: ☐ Alleged violation of departmental rules/regulations *(Specify)*:

☒ Other *(Specify)*: Use of Force Plan

c. Recommendations: ☐ No action taken ☐ Refer to the OIG for investigation ☐ Employee Hearing pursuant to PD-22

☒ Other *(Specify)*: Letter of Instruction

d. Assistant Warden *(or designee)* conducting inquiry: Oliver Vasquez Major — Printed Name/Rank or Title

Major OL V[signature] 2/18/21 — Signature/Date

## IV. FINAL OUTCOME

a. Evaluation: I have found the employee's actions were: ☐ Appropriate ☒ Inappropriate ***(Determined to be 'aggravated'?*** ☐ YES ☒ NO) -or-

☐ I am unable to determine based on evidence presented

b. Action: ☐ No action taken ☐ Refer to the OIG for investigation *(UOF-OIG Referral Attached)* ☒ Other *(Specify)*: LOI

☐ Employee Hearing to be scheduled *Attach copy of employee's UOF statement ONLY to a PERS 325 and a copy of this UOF-9 and forward to the unit human resources representative to notify the employee of hearing.*

➢ ***Once hearing is held pursuant to PD-22, attach copy of PERS 185 to original UOF-9.***

c. Reprimanding Authority: Jody Hefner Warden — Printed Name/Rank or Title

[signature] 2-23-21 — Signature/Date

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report

### *Employee Use of Force Fact Finding Inquiry*

Unit *(Name and Alpha Code)*: Wallace Unit WL

Report Number: M-00338-01-21 Incident Number (*if applicable*): I-00721-01-21

***Instructions to Assistant Warden (or designee):***

- *Complete Sections I and II;*
- *If employees or offenders were interviewed, list them in Section II. There is no requirement to call all those, or limit yourself to just those, named in the Report.*
  - *➤New or additional information must be supported by written statements on an interoffice communication (IOC).*
- *If facts are evident you may determine there is no necessity to conduct interviews; if so, proceed to Section III; and*
- *Provide a summary of findings and recommendations in Section III for the Reprimanding Authority to review.*

***Instructions to Reprimanding Authority:***

- *Note your evaluation of the employee's conduct and action taken, if any, in Section IV.*

## I. EMPLOYEE PARTICIPANT OR WITNESS

| Printed Last | First | MI | Rank or Title |
|---|---|---|---|
| Enriquez | Manuel | | COIV |

## II. FACT FINDING INQUIRY

a. Fact Finding Inquiry began on *(date)*: 1/25/2021 and ended on *(date)*: 2/18/2021

b. EMPLOYEE(S) interviewed *(please print)*:

| Last | First | MI | Rank |
|---|---|---|---|
| Bostic | Greg | | COIII |
| Frith | Darrell | | Captain |
| | | | |

c. OFFENDER(S) interviewed *(please print)*:

| Last | First | MI | TDCJ# | Custody |
|---|---|---|---|---|
| | | | | |
| | | | | |

## III. SUMMARY AND FINDINGS

a. Summary of inquiry:

See attached Summary.

b. Findings: Based on interviews , it appears the employee's actions were:

☐ Appropriate; ☒ Inappropriate *(➤ Determined to be 'aggravated'?* ☐ YES ☒ NO),

... as evidenced by: ☐ Alleged violation of departmental rules/regulations *(Specify)*:

☒ Other *(Specify)*: Use of Force Plan

c. Recommendations: ☐ No action taken ☐ Refer to the OIG for investigation ☐ Employee Hearing pursuant to PD-22

☒ Other *(Specify)*: Letter of Instruction

d. Assistant Warden *(or designee)* conducting inquiry: Oliver Vasquez Major [signature] 2/18/21

Printed Name/Rank or Title Signature/Date

## IV. FINAL OUTCOME

a. Evaluation: I have found the employee's actions were: ☐ Appropriate ☒ Inappropriate ***(Determined to be 'aggravated'?*** ☐ YES ☒ NO) -or-

☐ I am unable to determine based on evidence presented

b. Action: ☐ No action taken ☐ Refer to the OIG for investigation *(UOF-OIG Referral Attached)* ☒ Other *(Specify)*: LOI

☐ Employee Hearing to be scheduled *Attach copy of employee's UOF statement ONLY to a PERS 325 and a copy of this UOF-9 and forward to the unit human resources representative to notify the employee of hearing.*

➤ ***Once hearing is held pursuant to PD-22, attach copy of PERS 185 to original UOF-9.***

c. Reprimanding Authority: Jody Hefner Warden [signature] 2-23-21

Printed Name/Rank or Title Signature/Date

**DEFS' MSJ APPX. 073**

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE

P.O. Box 99 Huntsville, Texas 77342-0099

**To:** **Manuel Enriquez CO IV**

**From:** **Warden J. Hefner**

**Date:** **02/18/2021**

**Subject:** **Letter of Instruction**

This Letter of Instruction is designed to encourage positive behavioral change and to improve employee performance. This letter will serve as an informal action to correct behavior before pursuing more formal guidelines as outlined in PD-22.

Purpose of this Letter: On January 13, 2021 a Use of Force (M-00338-01-21/I-00721-01-21) occurred involving the utilization of chemical agents and a five man extraction team concerning Inmate Valenzuela, Ruben #1785292.
Once the Use of Force packet and video documentation was reviewed, it was found that Officer Manuel Enriquez CO IV did violate the proper procedures in lifting and carrying an Inmate refusing to cooperate during an escort procedure in accordance to the Use of Force Plan.

Agency policy states: If an Inmate refuses to walk, an Inmate shall not be dragged except in emergency situations. A hospital gurney or wheelchair may be used to transport the Inmate, or the Inmate shall be carried by a sufficient number of security staff, in order to prevent injury to the Inmate.

You are hereby instructed that you must follow Agency policy as stated and failure to do so may subject you to further employee disciplinary in accordance with PD-22.

Your signature acknowledges that you have read and understand this direction and that you also understand that a copy of this document will be placed in your working personnel file.

[signature] 2-23-21

EMPLOYEE SIGNATURE DATE:

[signature] 2-23-21

SUPERVISORS SIGNATURE DATE:

offender refuses to cooperate in any of these procedures, only the amount of force necessary to gain compliance with the order shall be used, unless precluded by medical orders.

4. If refusing to walk, an offender shall not be dragged except in emergency situations. A hospital gurney or wheelchair may be used to transport the offender, or the offender shall be carried by a sufficient number of security staff, in order to prevent injury to the offender.

5. If an offender takes control of the cell door food slot, no force shall be attempted until a security supervisor and video camera are present.

6. If an offender climbs a recreation yard fence, dayroom bars, or other similar fixtures and refuses to come down, extreme caution shall be used in the removal of the offender.

D. Physical Restraint

In instances where physical restraint becomes necessary, the following shall be considered:

1. If it becomes necessary to place an offender on the floor, security staff may restrain the offender by placing their hands or upper body, in a non-weight-bearing manner, over the offender's prone body.

2. Security staff shall not elbow, knee, or sit on the offender, and the offender's legs shall not be crossed or bent towards the buttocks.

3. Without applying pressure to the neck, the offender's head may be controlled by holding it to one side.

4. Excessive pressure shall not be applied to the offender's back, chest, or stomach.

5. The offender shall be placed on the side and into a sitting position as soon as possible.

6. The security supervisor shall ensure the offender is continuously monitored to identify breathing difficulties, loss of consciousness, or other medical concerns and seek immediate medical treatment if necessary.

E. Mechanical Restraint

1. Appropriate restraints shall be applied during a use of force or whenever it appears an offender may become violent or disruptive, unless an offender's

**DEFS' MSJ APPX. 075**

**CERVANTEZ_00075**

# OFFICIAL INVESTIGATION

**Subject:** Fact Finding Use of Force (M-00338-01-21/I-00721-01-21)

**Allegation:**

On January 13, 2021 a Use of Force (M-00338-01-21/I-00721-01-21) involving the utilization of a five man extraction team concerning Inmate Valenzuela, Ruben #1785292 (H/M/26/G4/L3) due to procedural violations involving staff and Inmate Valenzuela. Fact Finding was initiated on January 25, 2021 involving McGuire, Robert CO IV, Officer Enriquez, Manuel CO IV, Officer Harp, Joe CO IV, Officer Martinez, Harry CO V, Officer Bostic CO III, Greg and Captain Frith, Darrell.

**Summary:**

On January 13, 2021 Inmate Valenzuela (Restrictive Housing #3) was in Constant Direct Observation (CDO) awaiting to be transferred to the Montford Unit. Correctional Officer (CO) V Skipworth, James was the CDO Officer assigned. Office Skipworth noticed Inmate Valenzuela stick his head in his toilet in the assigned housing area attempting to drown himself. Officer Skipworth gave orders to Inmate Valenzuela to stop. Officer Skipworth then knocked on Captain (Capt.) Frith, Darrell office door located which is located within the restrictive housing area. Capt. Frith entered the area and observed the inmate sticking his head in the toilet attempting to drown himself. Capt. Frith ordered the inmate to stop which he complied. Inmate Valenzuela then went to rubbing his wrist on a piece of metal plate (top corner bent) located inside the cell by the wall/toilet area. Officer Skipworth ordered the inmate to stop or chemical agents would be used. Inmate Stopped attempting to himself on his wrist and then went to attempt to drown himself in the toilet. Orders were then given by Capt. Frith and Officer Skipworth to stop and explained chemical agents would be used. Inmate Valenzuela refused orders and chemical agents was administered by Officer Skipworth. Chemical agents had no effect. Capt. Frith initiated the Incident Command System (ICS) requesting additional staff, medical staff and a video camera operator. Officer Harp, Joe, CO IV, arrived with video camera. Capt. Frith conducted a narration, the inmate was not in view due to the layout and design of the cell in Restrictive Housing. Officer Harp was at the entrance of Capt. Frith office door opened. Licensed Vocational Nurse (LVN) Castillo, Sandy arrived and was briefed by Capt. Frith. LVN Castillo stated the inmate would need to be taken to the unit infirmary. Officer McGuire and ordered the inmate to comply with application of hand restraints so he could be escorted to the unit infirmary and explained if he refused chemical agents could be used. Officer Bostic, Greg was on scene and was going to be the escort officer with Officer McGuire. Inmate Valenzuela refused to comply with orders and attempted to drown himself in the toilet. Capt. Frith then ordered Inmate Valenzuela to comply with application of hand restraints and explained chemical agents

would be administered to no avail. Capt. Frith then contacted Senior Warden Hefner, Jody for authorization for a use of force cell move team. During gaining authorization Officer McGuire is giving orders to inmate Valenzuela to comply with applications of hand restraints. Capt. Frith receives authorization to utilize a cell force move team and chemical agents. Officer McGuire notifies Capt. Frith the inmate has placed his head in the toilet. Capt. Frith orders Inmate Valenzuela to submit to hand restraints, be assessed by medical staff and explained the use of chemical agents. Capt. Frith then administers a burst of chemical agents to Inmate Valenzuela to gain compliance. Inmate Valenzuela refused. Capt. Frith orders Inmate Valenzuela to comply with hand restrains so he can be seen by medical and explained consequence sf chemical agents to gain compliance. Inmate Valenzuela refused. Capt. Frith briefed camera that Sergeant (SGT) Valdez, Jose was going to relieve Officer Harp as video camera operator. Capt. Frith orders the inmate to comply to hand restraints and Inmate Valenzuela refuses. Capt. Frith orders the inmate to submit to a hand restraint or chemical agents would be used. Inmate Valenzuela refuses and Capt. Frith administers another burst of chemical agents to gain compliance to no avail. Capt. Frith gives several orders to submit to hand restraints and consequences that chemical agents would be used to gain compliance. Inmate Valenzuela refuses to comply. Capt. Frith identified team members: 1 man) Officer McGuire, COIV, 2 man) Officer Enriquez, Manuel CO IV, 3 man) Officer Harp CO IV, 4 man) Officer Bostic, CO III and 5 man) Officer Martinez, Harry CO V. Capt. Frith orders Inmate Valenzuela to comply with application of hand restraints and explains consequences that chemical agents and the force move team will be utilized to gain compliance. Inmate Valenzuela refuses. Capt. Frith repeats orders and consequences to inmate Valenzuela and refuses. Capt. Frith opens the cell door and the team enter the cell. Inmate is instructed to not resist. Officer McGuire and Officer Enriquez observe the inmate by the toilet area and pull him away. In doing so Inmate Valenzuela is attempting to bite staff and strike and headbutt Officer McGuire and Officer Enriquez as he is trying to go back to the toilet area. Officer McGuire punches Inmate Valenzuela in both hand for a total of four punches due to the inmate attempting to go back to the toilet area and grabbing and not allowing hand restraints to be placed. Inmate Valenzuela attempted to bite Officer McGuire; Officer McGuire then punches Inmate Valenzuela in his face three times and inmate stops attempting to bite him. Inmate Valenzuela continues to grab toilet area and resist application of hand restraints and resisting staff. Officer Enriquez strike Inmate Valenzuela twice in the upper body due to his actions of trying to bite and strike staff this is noted when the leg restraints are being repositioned. Officer Harp observes Inmate Valenzuela trying to bit staff, Officer Harp attempts to place hand restraints but cannot due to Inmate Valenzuela's actions of biting staff, resting and grabbing the toilet area. Officer Harp then strikes Inmate Valenzuela in the rib area 3-4 times due to his actions of resisting staff and not complying. Officer Bostic entered the cell and sees the inmate attempting to bit staff as they were trying to place Inmate Valenzuela in hand restraints. Officer Bostic holds inmate's legs so Officer Martinez can place the leg restraints. Officer Bostic holds inmates legs as staff is still trying to place hand restraints on Inmate Valenzuela. Officer Martinez applies leg restraints on Inmate Valenzuela. Officer Martinez then assist Officer Harp and Officer Enriquez in securing the inmate in hand restraints. Inmate Valenzuela is seen attempting to bite staff and still not refusing to submit to hand restraints. Office Martinez then strikes Inmate Valenzuela twice in the

upper body (shoulder area) from where he is positioned for inmate to stop biting staff and himself as he is trying to grab his arms and turn him away from him. Inmate Valenzuela is being instructed to not resist staff and place his hands behind his back to no avail. Capt. Frith observed Officer Bostic leg get caught in Inmate Valenzuela legs along with the leg restraints. Capt. Frith instructed for the leg restraints to be removed so Officer Bostic could untangle his leg and prevent any injuries to Officer Bostic as they are attempting to turn Inmate Valenzuela to his stomach. . Leg restraints were re-applied by Officer Bostic. Staff was able to secure him with minimum amount needed to get the inmate secured. Capt. Frith then calls for a gurney and states inmate is in restraints. LVN Castillo conducted a cell side physical due to inmate behavior and actions. LVN Castillo asked the inmate if he had any injuries. Inmate Valenzuela did not respond to LVN Castillo, she noted no injuries. Capt. Frith informed Inmate Valenzuela he would be assisted to his feet by the force cell move team and taken to the shower. Inmate Valenzuela was then rolled to his side by force cell move team members so he could be assisted to his feet. Officer Martinez and Officer Enriquez were the team members who took Inmate Valenzuela to the shower and dragged him into the shower and secured the shower door. Capt. Frith tells Inmate Valenzuela that medical will do an assessment of him and if he attempt to assault her additional force would be used. LVN Castillo asked the inmate if he has any injuries from the use of force. Inmate replies "No Ma'am." LVN Castillo states the inmate is reporting no injuries to the use of force. Capt. Frith take photos of Inmate Valenzuela. Inmate Valenzuela does not comply to have photos taken of him. Inmate Valenzuela then walks into the shower, and asks for water and then starts speaking in Spanish asking for water. Officer Enriquez (Qualified Spanish interpreter) then talks to him in Spanish and tell him to come and have the hand restraints removed so he could shower and photos be taken of him. Inmate Valenzuela complies. Inmate Valenzuela states he does not want to take photos and does not want to shower. Officer Enriquez then attempts to get him to take photos and Inmate is refusing. Capt. Frith instructs Officer Enriquez to tell Inmate Valenzuela he will be escorted back to the cell and if he does not comply chemical agents will be utilized. Officer Enriquez explains he will be escorted to his cell. Capt. Frith orders Inmate Valenzuela to be escorted to the cell and use of chemical agents will be used. Capt. Frith informs Officer Enrique to instruct Inmate Valenzuela he will go to his cell, will receive water and explains if he does not chemical agents will be used. Inmate Valenzuela then complies with orders and instructions. While waiting to be escorted the cell is being cleared and cleaned. The metal piece is placed back in position. Team members then escort the inmate and assist Inmate Valenzuela to a prone position. Hand/Leg restraints are removed, team members exit the cell and cell door is secured. Capt. Frith then reads inmate participation report. Capt. Frith then gives decontamination procedures to Inmate Valenzuela and terminates use of force.

Officer McGuire was interviewed and he stated he was assigned as one-man on a five man extraction team due to Offender Valenzuela not wanting to comply with orders to submit hand restraints and stop attempting to harm himself. Chemical agents had been utilized and the usage did not work. Captain Frith gave orders and warnings to Inmate Valenzuela. He refused and Capt. Frith unsecured the door. Officer McGuire stated Inmate Valenzuela was at the toilet with his head submerged in the water. He used the

shield to push him away from the toilet and onto the floor. Inmate Valenzuela began fighting the team and keep grabbing at the toilet. Once he grabbed the toilet, Officer McGuire stated he could not pull his arms to get him to let go, so he struck the inmate four times to his hands to get him to let go. Once Inmate Valenzuela let go of the toilet, he did not hit his hands anymore. Officer McGuire stated he continue to attempt to get Inmates Valenzuela's hands behind his back but he kept resisting. He stated Inmate Valenzuela began attempting to bite staff. When Inmate Valenzuela attempted to bite him, he punched him three times in the facial area to prevent him from biting him. Inmate Valenzuela would not stop trying to bite him and other staff members, so he used a pressure point to his temple area to get him to stop. Inmate Valenzuela stopped attempting to bite but continued to resist staff by not allowing them to place hand restraints on him. He stated the team was able to put him in hand and leg restraints. He was escorted out of the cell and place in the shower area. Officer McGuire stated he did receive minor injuries due to the Use of force and stated he only punched the Inmate to prevent from receiving anymore or serious injuries.

Officer Manuel Enriquez COIV stated he was assigned as two-man on a five man extraction team. He stated when the team was utilized, went in behind Officer McGuire and the Inmate was pushed to the floor. He stated the Inmate kept fighting, trying to hold on to the toilet and attempting to bite staff. He stated he could not really tell what everyone was doing. He stated he kept grabbing the Inmates arms in an attempt to place them behind his back for placement of hand restraints. He stated the Inmate kept resisting and causing him to lose grip. Officer Enriquez stated he noticed Inmate Valenzuela was attempting to bite him and other staff. Officer Enriquez then struck him with an open hand to the back to gain his compliance and to stop him from biting him. He stated he did not need to strike the Inmate anymore but the Inmate did continue to resist. The team was able to place hand and leg restraints on the Inmate. Officer Enriquez stated he assisted Inmate Valenzuela in standing up but refused to walk. Inmate Valenzuela refused orders to walk, he and Officer Martinez held up Inmate Valenzuela. Officer Enriquez stated the area was small, so he and Officer Martinez lifted him up by his arms and carried him to the shower area. Inmate Valenzuela was secured in the shower area as they cleared out his cell. Officer Enriquez stated Inmate Valenzuela complied with the rest of the procedures and no more force was needed.

Officer Joe Harp COIV stated he was assigned as three-man on a five man extraction team. He stated when he went into the cell with the team, Inmate Valenzuela was resisting and fighting the team. Officer Harp was trying to gain control of the Inmate's arms to place hand restraints on him but he kept resisting. Officer Harp stated Inmate Valenzuela grabbed ahold of the toilet and would not let go. Officer Harp stated he struck his arm with a closed fist twice to attempt to gain his compliance to release the toilet. When the Inmate did not let go, he attempted to strike his arm again but he let go and Officer Harp stated he hit the Inmate's rib area. Officer Harp stated he stopped the strikes when he let go. Officer Harp stated Inmate Valenzuela kept resisting and trying to bite the team. He concentrated on trying to restrain his hands, he could not see what the other staff was doing. Officer Harp stated the team was finally able to place hand and leg restraints on the Inmate.

Officer Harry Martinez COV stated Inmate Valenzuela began fighting the team when the team entered the cell. Inmate Valenzuela would comply with orders and resisted the team. Officer Martinez attempted to gain control of the Inmate's legs to assist in placement of leg restraints but he was resisting by using his legs to push himself towards the toilet. Officer Martinez stated he kept losing his grip of his legs. He noticed Inmate Valenzuela was trying to bite staff. Officer Martinez stated he gave two strikes to the inmate's upper body to get him to stop trying to bite. Inmate Valenzuela stopped temporally trying to bite. He stated he then grabbed his left leg again. Officer Martinez was able to straighten out his legs with assistants and Officer Martinez applied the leg restraints as Inmate Valenzuela continued to resist staff. Officer Martinez stated he assisted in holding down the Inmate's upper body. Inmate Valenzuela continued fighting staff. Once Inmate Valenzuela was placed in hand restraints, Officer Martinez stated he started calming down. Officer Martinez stated he only used the force necessary to gain the Inmate's compliance to stop trying to harm himself or others. Once the Inmate stopped resisting he no long utilized any force. Officer Martinez stated Inmate Valenzuela was assisted to his feet and he refused orders to walk out of the cell. Officer Martinez stated the Inmate stiffened his body at the cell doorway and he lifted his body up to keep him standing due to no room in the area to be assisted by other team members. He and Officer Enriquez lifted him up and carried him to the shower area. The door was secured. Inmate Valenzuela became compliant and no further force was utilized.

Officer Greg Bostic COIII stated he was four man on the extraction team and when the team was utilized, he was trying to assist in placing leg restraints on Inmate Valenzuela. Officer Bostic stated Inmate Valenzuela was resisting by fighting the team, attempting to pull himself toward the toilet and trying to bite staff. Officer Bostic stated when he would take control of the Inmate's leg, he would resist. Once the leg restraints were applied, Officer Bostic stated he held on to the Inmate's legs due to him still resisting the placement of hand restraints. Officer Bostic stated so much was going on during the use of force but his did notice Inmate Valenzuela trying to bite staff and continuously holding on to the toilet. He could not tell who was doing what because he was concentrating on the Inmate's legs. Once the Inmate became compliant, he let go of his legs so that the team members could assist him to his feet. Officer Bostic stated he never hit the Inmate and utilized force needed to hold the Inmate's legs.

Captain Darrell Frith stated he utilized chemical agents and a five man extraction team in attempt to gain Inmate Valenzuela's compliance to stop hurting himself and submit to hand restraints. Capt. Frith stated when the team entered the cell, Inmate Valenzuela was resisting by trying to fight the team. The Inmate attempted to bite staff and continued to try to pull himself toward the toilet so he could put his head in it. Capt. Frith stated he continued to give the Inmate orders to comply and he continued to refuse. Capt. Frith stated once the team was able to restraint the Inmate, the team did not use any unnecessary force. The team used appropriate force to be able to stop him from seriously hurting himself and any team member.

**Findings:**

After review of video footage and statements and interviews the following was noted:

Officer McGuire did strike Inmate Valenzuela several times throughout the Use of Force. He utilized four strikes to get the Inmate to let go of the toilet when pulling his arms did not work. Officer McGuire did strike the Inmate three time to the facial area and used a pressure point to prevent from getting bit by the Inmate. Officer McGuire utilized the force necessary needed to gain the compliance of the Inmate. Officer McGuire stopped force once the Inmate complied and was no longer needed. Team members did receive minor injuries but did what was necessary in preventing serious injuries to themselves and the inmate. There were no findings of misconduct or excessive force used by Officer McGuire during the Use of Force. Formal Employee Disciplinary will not be recommended.

Officer Enriquez did strike Inmate Valenzuela with an open hand to the back throughout the Use of Force. He utilized strike in order for the Inmate to stop attempting to bite him. Officer Enriquez utilized the force necessary needed to gain the compliance of the Inmate. Officer Enriquez stopped force once the Inmate complied and was no longer needed. Team members did receive minor injuries but did what was necessary in preventing serious injuries to themselves and the inmate. There were no findings of excessive force used by Officer Enriquez during the Use of Force. Officer Enriquez did violate the proper procedures in lifting an Inmate refusing to cooperate during an escort procedure in accordance to the Use of Force Plan. This was an unintentional act by the Officer but in accordance to the progressive disciplinary and guidance from the agency's Use of Force Office, a Letter of Instruction will be sufficient to prevent future acts of possible violations by the Officer.

Officer Harp did strike Inmate Valenzuela several times throughout the Use of Force. He utilized two strikes to get the Inmate to let go of the toilet when pulling his arms did not work. Officer Harp did strike the Inmate in the rib area after missing his arm when the Inmate moved it. Officer Harp utilized the force necessary needed to gain the compliance of the Inmate. Officer Harp stopped force once the Inmate complied and was no longer needed. Team members did receive minor injuries but did what was necessary in preventing serious injuries to themselves and the inmate. There were no findings of misconduct or excessive force used by Officer Harp during the Use of Force. Formal Employee Disciplinary will not be recommended.

Officer Martinez did strike Inmate Valenzuela twice with closed fist to the upper body during the Use of Force. He utilized strikes in order for the Inmate to stop attempting to bite. Officer Martinez utilized the force necessary needed to gain the compliance of the Inmate. Officer Martinez stopped force once the Inmate complied and was no longer needed. Team members did receive minor injuries but did what was necessary in preventing serious injuries to themselves and the inmate. There were no findings of excessive force used by Officer Martinez during the Use of Force. Officer Martinez did violate the proper procedures in lifting an Inmate refusing to cooperate during an escort

procedure in accordance to the Use of Force Plan. This was an unintentional act by the Officer but in accordance to the progressive disciplinary and guidance from the agency's Use of Force Office, a Letter of Instruction will be sufficient to prevent future acts of possible violations by the Officer.

Once the Use of Force packet and video documentation was reviewed, it was found that Captain Frith took digital photo of the Inmate with no clothes on or anything covering him. Capt. Frith should have taken all reasonable steps to avoid nude photographs, for example placing a towel in front of offender's private body parts. Capt. Frith failed to cover the Inmate before taking the photos. Capt. Frith will receive a Letter of Instruction for the Use of Force Plan violation.

**Investigation Conducted by:**

Major Oliver Vasquez

TEXAS DEPARTMENT OF CRIMINAL JUSTICE
CORRECTIONAL INSTITUTIONS DIVISION

## INTER-OFFICE COMMUNICATION

TO: Maser vasquez

Date: 1/13/21

FROM: Greg Bostic

Subject: As Stated

I was 4 man on the team, and when we went in on the inmate all I did was first help get the leg restraints on. officer martinez had the leg restraints and was trying to put them on but the inmate was resisting by not staying still, the inmate was going as far as trying to bite staff's hand's. I held the inmates legs that way martinez could get the leg restraints. once they were put on I helped get the hand restraints on by getting the inmates arm to his back. The inmate was still making hard by fighting to keep his arm infront of him. I never had to strike the inmate due to me being by his feet, The inmate did not attempt to bite my hand.

**TEXAS DEPARTMENT OF CRIMINAL JUSTICE**
**CORRECTIONAL INSTITUTIONS DIVISION**

## INTER-OFFICE COMMUNICATION

**TO:** Major ~~Vat~~ Vasquez

**Date:** 1-25-21

**FROM:** McGuire COIV

**Subject:** Valenzuela, Ruben

On 1-13-21 at 148 pm I officer Robert. McGuire COIV during the use of force on offender Valenzuela, Ruben did strike the offender on each hand 2 times because the offender Was holding onto the Toilet and would not Release. upon the 2nd strike to each hand the offender did release The toilet upon Releasing the toilet The offender began Trying to head but ~~at~~ RM and bite Me in the Thighs I did strike the offender in the face 3 times. upon my 3rd strike the offender did stop Attempting to bite me or head but me. However the offender did continue to Resist staff and ~~Att~~ RM pull himself back up on the Toilet.
There was insuficient spce for myself to Assist in carrying The offender out of the cell.

R McGuire COIV

TEXAS DEPARTMENT OF CRIMINAL JUSTICE
CORRECTIONAL INSTITUTIONS DIVISION

## INTER-OFFICE COMMUNICATION

TO: Major Vasquez

Date: 1-25-21

FROM: Enriquez CO 4

Subject: Valenzuela / Fact Finding

On 1-13-21 at 1:45 pm i was working overtime in the Afternoon and I responded to the incident command System. I was told by captain Frith that he needed me in the 5 man team as 2 man. we then were ordered to enter the cell and inmate Valenzuela was in his cell attemp to drown himself. officer Mcguire CO4 was 1 man and we both stopped inmate from his actions and attempted to place hand restraints, offender Valenzuela then attempted to bite us and strike us with his arms so we had to use force to contain his actions I struck the offende in his upper body to gain compliance and we were able to place offender in hand restraints. we were then ordered by captain Frith to escort the offender to the shower cell to proceed in the decontamination proce. and the offender ~~walked with us on his own will we contained~~ refused to walk to the shower so myself and officer Martinez CO 5 assisted said offender to. the shower Area. He was evaluated by medical and the offender stated he had no injuries. The next process was to take pictures and the offender was being aggresive again, i then asked captain Frith if i can attempt to translate his orders in Spanish and we were then very succesfull. offender valenzuela was then calm and the process was continued. we then escorted valenzuela back to the cell and ICS was terminated

M. Enriquez 1-25-21

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
# CORRECTIONAL INSTITUTIONS DIVISION

## INTER-OFFICE COMMUNICATION

**TO:** Major Vasquez

**Date:** 1-25-21

**FROM:** J. [illegible] CO IV

**Subject:** ~~A. Valenzuela Stated~~ Fact Finding

On 1-13-21, I responded to Restrictive Housing for an ICS at approx. 1:48 pm. When I arrived I was the video camera operator until I was relieved by Sgt. Jose Valdez so I could participate on the Five Man team. On the team I was the #3 man, so my job was to apply the hand restraints to the inmate. Once we entered the cell, I attempted to apply the restraints but Inmate Valenzuela had a firm grip on the toilet, I tried to pull his hands off, but couldn't so I struck his arm to get him to release. I had struck his arm twice and went to strike again in order for him to let go. When I was trying to strike the arm, he moved it quickly and I ended up striking his rib cage. Once he released the toilet I stopped my attempts and focused on getting the restraints on him. I assisted Inmate Valenzuela to his feet but was unaware that he was not walking on his own.

[signature]
1-25-21

**TEXAS DEPARTMENT OF CRIMINAL JUSTICE**
**CORRECTIONAL INSTITUTIONS DIVISION**

## INTER-OFFICE COMMUNICATION

---

**TO:** MAJOR VASQUEZ  **Date:** 1-25-2021

**FROM:** officer H. marthen  **Subject:** Assaulted

---

On 1-13-2021 I officer Harry Marthen was assigned to Restrictive Housing. I was assigned to the Five man team because offender valenzuela, Ruben refused to submit to Hand Restraints. I was assigned to five man. while trying to restrain the offender when we went in offender was trying to bite the and hit the five man team to put his head back in the toilet to drown himself. I struck the offender two times in the upper body to turn offenders body away from me wear I didnt get bit. offender quit biting in my direction so I had no need to strike the offender anymore. hand and leg restraints were finally applied to the offender after several attempts due to him trying to bite and assault staff - offender was then helped by officer enriquez and I to the shower because he refused to walk. Due to there not being enough room we were not able to assist him properly to the shower. So we held his upper body to keep him in the standing position

H [signature] 1-25-2021

TEXAS DEPARTMENT OF CRIMINAL JUSTICE

CORRECTIONAL INSTITUTIONS DIVISION

Inter-office Communications

---

To: Warden Edmundo Cueto

From: CPT. D. Frith

Date: 1/25/2021

Subject: As Stated

---

On 1/13/2021 I, Captain Darrell Frith was in my office which is attached to Restrictive Housing. Officer James Skipworth CO V was assigned as the Constant and Direct Observation Officer in Restrictive Housing, he knocked on my door and asked me to come into Restrictive Housing. I entered Restrictive Housing and observed Inmate Valenzuela attempting to cut his wrist on a metal plate that he had bent out on the wall. Myself and Officer Skipworth ordered the Inmate to stop trying to cut his wrist and he complied, he then wrapped his arms around the bottom of the toilet, placed his face in the water and shifted his body weight so that all of his body weight was over his upper torso and face and continued to hold his face in the water sucking in the water until he fell over. He coughed up water and was choking, he immediately got up and started doing it again. To prevent the Inmate from causing harm to himself Officer Skipworth administered a burst of chemical agents towards the inmate. I initiated ICS and requested medical, additional staff and video camera to Restrictive Housing. The chemical agents had no effect on the inmate and he continued to attempt to drown himself. I continued to order the Inmate to stop trying to harm himself and he continued to refuse. LVN Castillo arrived to Restrictive Housing and I asked her if she wanted to see him cell side and she said no that he needed to be seen in medical for further assessment. I ordered the Inmate several more times to submit to hand restraints and he continued to refuse. I gained authorization for the use of a 5 man cell extraction team and additional chemical agents by Senior Warden Hefner. I ordered the Inmate several times to come to the cell door and to submit to hand restraints and warned him that additional chemical agents would be used to gain compliance and he stated "no, sir." I administered a burst of MK9 LE 10 chemical agents towards the inmate hitting him in the upper torso. The chemical agents had no effect on the inmate and he continued to refuse to come to the cell door to submit to hand restraints. Inmate Valenzuela continued to stick his face in the water in attempt to drown himself. I ordered the Inmate several more times to stop trying to harm himself and come to his cell door and submit to hand restraints and he continued to

refuse. I administered a second burst of chemical agents towards the inmate and gave ordered him to come to the cell door again and he refused. The chemical agents had no effect on the inmate and he continued to attempt to drown himself and refusing orders. I gave a final order to the inmate and warned him that a 5 man team would be used to gain compliance, the inmate stated "no, sir" once again. I opened the cell door and the 5 man team entered the cell, I stood at the cell door and was walking back and forth to the camera to update the camera. The Inmate was fighting with the team, trying to push them off I witnessed the inmate attempt to bite the team members and while he was struggling with the staff I saw him hit his head on the toilet. I saw the inmate grabbing at staff and refusing to submit to hand restraints, I never saw any staff members hit the inmate but heard what appeared to be strikes while going back and forth to the camera. The inmate was placed in restraints and the inmate was picked up and taken to the shower. While this occurred I was talking to LVN Castillo and when I turned around I noticed that the Officers were dragging the inmate. I went to address this, however it was too late and the inmate was already in the shower area. I ordered the inmate to allow medical to conduct an assessment on him and if he tried to assault her additional force would be used. The inmate stated "yes, sir" and LVN Castillo conducted an assessment on the Inmate and noted no injuries. She then asked the inmate if he had any injuries and he stated "no, ma'am." I entered the cell and removed the UOF equipment that had fell off of the 5-man team and pushed the metal plate back in. The inmate was then escorted from the shower and placed back into 3 cell were the 5 man team assisted him into the prone position. I ordered the inmate to remain in the prone position until the restraints were removed and the cell door was secured. The inmate stated "yes, sir" The 5 man team then removed the restraints and exited the cell. I closed the cell door, read the UOF-2 to the inmate and instructed him on in cell decontamination. I then terminated the UOF.

Cpt. [signature]

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report

### *Employee Use of Force Fact Finding Inquiry*

Unit *(Name and Alpha Code)*: Wallace Unit WL

Report Number: M-00338-01-21 Incident Number (*if applicable*): I-00721-01-21

***Instructions to Assistant Warden (or designee):***

- *Complete Sections I and II;*
- *If employees or offenders were interviewed, list them in Section II. There is no requirement to call all those, or limit yourself to just those, named in the Report.*
  - *➢New or additional information must be supported by written statements on an interoffice communication (IOC).*
- *If facts are evident you may determine there is no necessity to conduct interviews; if so, proceed to Section III; and*
- *Provide a summary of findings and recommendations in Section III for the Reprimanding Authority to review.*

***Instructions to Reprimanding Authority:***

- *Note your evaluation of the employee's conduct and action taken, if any, in Section IV.*

## I. EMPLOYEE PARTICIPANT OR WITNESS

| Printed Last | First | MI | Rank or Title |
|---|---|---|---|
| Martinez | Harry | | COV |

## II. FACT FINDING INQUIRY

a. Fact Finding Inquiry began on *(date)*: 1/25/2021 and ended on *(date)*: 2/18/2021

b. EMPLOYEE(S) interviewed *(please print)*:

| Last | First | MI | Rank |
|---|---|---|---|
| Enriquez | Manuel | | COIV |
| Harp | Joe | | COIV |
| McGuire | Robert | | COIV |

c. OFFENDER(S) interviewed *(please print)*:

| Last | First | MI | TDCJ# | Custody |
|---|---|---|---|---|
| | | | | |
| | | | | |

## III. SUMMARY AND FINDINGS

a. Summary of inquiry:

See attached Summary.

b. Findings: Based on interviews and video documentation, it appears the employee's actions were:

☐ Appropriate; ☒ Inappropriate (*➢ Determined to be 'aggravated'?* ☐ YES ☒ NO),

... as evidenced by: ☐ Alleged violation of departmental rules/regulations *(Specify)*:

☒ Other *(Specify)*: Use of Force Plan

c. Recommendations: ☐ No action taken ☐ Refer to the OIG for investigation ☐ Employee Hearing pursuant to PD-22

☒ Other *(Specify)*: Letter of Instruction

d. Assistant Warden *(or designee)* conducting inquiry: Oliver Vasquez Major [signature] 2/18/21

Printed Name/Rank or Title Signature/Date

## IV. FINAL OUTCOME

a. Evaluation: I have found the employee's actions were: ☐ Appropriate ☒ Inappropriate ***(Determined to be 'aggravated'?*** ☐ YES ☒ NO) -or-

☐ I am unable to determine based on evidence presented

b. Action: ☐ No action taken ☐ Refer to the OIG for investigation *(UOF-OIG Referral Attached)* ☒ Other *(Specify)*: LOT

☐ Employee Hearing to be scheduled *Attach copy of employee's UOF statement ONLY to a PERS 325 and a copy of this UOF-9 and forward to the unit human resources representative to notify the employee of hearing.*

➢ ***Once hearing is held pursuant to PD-22, attach copy of PERS 185 to original UOF-9.***

c. Reprimanding Authority: Jody Hefner Warden [signature] 2-23-21

Printed Name/Rank or Title Signature/Date

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report

### *Employee Use of Force Fact Finding Inquiry*

Unit *(Name and Alpha Code)*: Wallace Unit WL

Report Number: M-00338-01-21 Incident Number (*if applicable*): I-00721-01-21

***Instructions to Assistant Warden (or designee):***

- *Complete Sections I and II;*
- *If employees or offenders were interviewed, list them in Section II. There is no requirement to call all those, or limit yourself to just those, named in the Report.*
  - *New or additional information must be supported by written statements on an interoffice communication (IOC).*
- *If facts are evident you may determine there is no necessity to conduct interviews; if so, proceed to Section III; and*
- *Provide a summary of findings and recommendations in Section III for the Reprimanding Authority to review.*

***Instructions to Reprimanding Authority:***

- *Note your evaluation of the employee's conduct and action taken, if any, in Section IV.*

## I. EMPLOYEE PARTICIPANT OR WITNESS

| Printed Last | First | MI | Rank or Title |
|---|---|---|---|
| Martinez | Harry | | COV |

## II. FACT FINDING INQUIRY

a. Fact Finding Inquiry began on *(date)*: 1/25/2021 and ended on *(date)*: 2/18/2021

b. **EMPLOYEE(S)** interviewed *(please print)*:

| Last | First | MI | Rank |
|---|---|---|---|
| Bostic | Greg | | COIII |
| Frith | Darrell | | Captain |
| | | | |

c. **OFFENDER(S)** interviewed *(please print)*:

| Last | First | MI | TDCJ# | Custody |
|---|---|---|---|---|
| | | | | |
| | | | | |

## III. SUMMARY AND FINDINGS

a. Summary of inquiry:

See attached Summary.

b. Findings: Based on interviews , it appears the employee's actions were:

☐ Appropriate; ☒ Inappropriate (➢ ***Determined to be 'aggravated'?*** ☐ YES ☒ NO),

... as evidenced by: ☐ Alleged violation of departmental rules/regulations *(Specify)*:

☒ Other *(Specify)*: Use of Force Plan

c. Recommendations: ☐ No action taken ☐ Refer to the OIG for investigation ☐ Employee Hearing pursuant to PD-22

☒ Other *(Specify)*: Letter of Instruction

d. Assistant Warden *(or designee)* conducting inquiry: Oliver Vasquez Major [signature] 2/18/21

Printed Name/Rank or Title — Signature/Date

## IV. FINAL OUTCOME

a. Evaluation: I have found the employee's actions were: ☐ Appropriate ☒ Inappropriate (***Determined to be 'aggravated'?*** ☐ YES ☒ NO) -or-

☐ I am unable to determine based on evidence presented

b. Action: ☐ No action taken ☐ Refer to the OIG for investigation *(UOF-OIG Referral Attached)* ☒ Other *(Specify)*: LOI

☐ Employee Hearing to be scheduled *Attach copy of employee's UOF statement ONLY to a PERS 325 and a copy of this UOF-9 and forward to the unit human resources representative to notify the employee of hearing.*

➢ ***Once hearing is held pursuant to PD-22, attach copy of PERS 185 to original UOF-9.***

c. Reprimanding Authority: Jody Hefner Warden [signature] 2-23-21

Printed Name/Rank or Title — Signature/Date

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE

P.O. Box 99 Huntsville, Texas 77342-0099

**To:** **Harry Martinez CO V**

**From:** **Warden J. Hefner**

**Date:** **02/18/2021**

**Subject:** **Letter of Instruction**

This Letter of Instruction is designed to encourage positive behavioral change and to improve employee performance. This letter will serve as an informal action to correct behavior before pursuing more formal guidelines as outlined in PD-22.

Purpose of this Letter: On January 13, 2021 a Use of Force (M-00338-01-21/I-00721-01-21) occurred involving the utilization of chemical agents and a five man extraction team concerning Inmate Valenzuela, Ruben #1785292.
Once the Use of Force packet and video documentation was reviewed, it was found that Officer Harry Martinez CO V did violate the proper procedures in lifting and carrying an Inmate refusing to cooperate during an escort procedure in accordance to the Use of Force Plan.

Agency policy states: If an Inmate refuses to walk, an Inmate shall not be dragged except in emergency situations. A hospital gurney or wheelchair may be used to transport the Inmate, or the Inmate shall be carried by a sufficient number of security staff, in order to prevent injury to the Inmate.

You are hereby instructed that you must follow Agency policy as stated and failure to do so may subject you to further employee disciplinary in accordance with PD-22.

Your signature acknowledges that you have read and understand this direction and that you also understand that a copy of this document will be placed in your working personnel file.

Harry Martinez
EMPLOYEE SIGNATURE

2-23-21
DATE:

J. Hef
SUPERVISORS SIGNATURE

2-23-21
DATE:

offender refuses to cooperate in any of these procedures, only the amount of force necessary to gain compliance with the order shall be used, unless precluded by medical orders.

4. If refusing to walk, an offender shall not be dragged except in emergency situations. A hospital gurney or wheelchair may be used to transport the offender, or the offender shall be carried by a sufficient number of security staff, in order to prevent injury to the offender.

5. If an offender takes control of the cell door food slot, no force shall be attempted until a security supervisor and video camera are present.

6. If an offender climbs a recreation yard fence, dayroom bars, or other similar fixtures and refuses to come down, extreme caution shall be used in the removal of the offender.

D. Physical Restraint

In instances where physical restraint becomes necessary, the following shall be considered:

1. If it becomes necessary to place an offender on the floor, security staff may restrain the offender by placing their hands or upper body, in a non-weight-bearing manner, over the offender's prone body.

2. Security staff shall not elbow, knee, or sit on the offender, and the offender's legs shall not be crossed or bent towards the buttocks.

3. Without applying pressure to the neck, the offender's head may be controlled by holding it to one side.

4. Excessive pressure shall not be applied to the offender's back, chest, or stomach.

5. The offender shall be placed on the side and into a sitting position as soon as possible.

6. The security supervisor shall ensure the offender is continuously monitored to identify breathing difficulties, loss of consciousness, or other medical concerns and seek immediate medical treatment if necessary.

E. Mechanical Restraint

1. Appropriate restraints shall be applied during a use of force or whenever it appears an offender may become violent or disruptive, unless an offender's

## OFFICIAL INVESTIGATION

**Subject:** Fact Finding Use of Force (M-00338-01-21/I-00721-01-21)

**Allegation:**

On January 13, 2021 a Use of Force (M-00338-01-21/I-00721-01-21) involving the utilization of a five man extraction team concerning Inmate Valenzuela, Ruben #1785292 (H/M/26/G4/L3) due to procedural violations involving staff and Inmate Valenzuela. Fact Finding was initiated on January 25, 2021 involving McGuire, Robert CO IV, Officer Enriquez, Manuel CO IV, Officer Harp, Joe CO IV, Officer Martinez, Harry CO V, Officer Bostic CO III, Greg and Captain Frith, Darrell.

**Summary:**

On January 13, 2021 Inmate Valenzuela (Restrictive Housing #3) was in Constant Direct Observation (CDO) awaiting to be transferred to the Montford Unit. Correctional Officer (CO) V Skipworth, James was the CDO Officer assigned. Office Skipworth noticed Inmate Valenzuela stick his head in his toilet in the assigned housing area attempting to drown himself. Officer Skipworth gave orders to Inmate Valenzuela to stop. Officer Skipworth then knocked on Captain (Capt.) Frith, Darrell office door located which is located within the restrictive housing area. Capt. Frith entered the area and observed the inmate sticking his head in the toilet attempting to drown himself. Capt. Frith ordered the inmate to stop which he complied. Inmate Valenzuela then went to rubbing his wrist on a piece of metal plate (top corner bent) located inside the cell by the wall/toilet area. Officer Skipworth ordered the inmate to stop or chemical agents would be used. Inmate Stopped attempting to himself on his wrist and then went to attempt to drown himself in the toilet. Orders were then given by Capt. Frith and Officer Skipworth to stop and explained chemical agents would be used. Inmate Valenzuela refused orders and chemical agents was administered by Officer Skipworth. Chemical agents had no effect. Capt. Frith initiated the Incident Command System (ICS) requesting additional staff, medical staff and a video camera operator. Officer Harp, Joe, CO IV, arrived with video camera. Capt. Frith conducted a narration, the inmate was not in view due to the layout and design of the cell in Restrictive Housing. Officer Harp was at the entrance of Capt. Frith office door opened. Licensed Vocational Nurse (LVN) Castillo, Sandy arrived and was briefed by Capt. Frith. LVN Castillo stated the inmate would need to be taken to the unit infirmary. Officer McGuire and ordered the inmate to comply with application of hand restraints so he could be escorted to the unit infirmary and explained if he refused chemical agents could be used. Officer Bostic, Greg was on scene and was going to be the escort officer with Officer McGuire. Inmate Valenzuela refused to comply with orders and attempted to drown himself in the toilet. Capt. Frith then ordered Inmate Valenzuela to comply with application of hand restraints and explained chemical agents

would be administered to no avail. Capt. Frith then contacted Senior Warden Hefner, Jody for authorization for a use of force cell move team. During gaining authorization Officer McGuire is giving orders to inmate Valenzuela to comply with applications of hand restraints. Capt. Frith receives authorization to utilize a cell force move team and chemical agents. Officer McGuire notifies Capt. Frith the inmate has placed his head in the toilet. Capt. Frith orders Inmate Valenzuela to submit to hand restraints, be assessed by medical staff and explained the use of chemical agents. Capt. Frith then administers a burst of chemical agents to Inmate Valenzuela to gain compliance. Inmate Valenzuela refused. Capt. Frith orders Inmate Valenzuela to comply with hand restrains so he can be seen by medical and explained consequence sf chemical agents to gain compliance. Inmate Valenzuela refused. Capt. Frith briefed camera that Sergeant (SGT) Valdez, Jose was going to relieve Officer Harp as video camera operator. Capt. Frith orders the inmate to comply to hand restraints and Inmate Valenzuela refuses. Capt. Frith orders the inmate to submit to a hand restraint or chemical agents would be used. Inmate Valenzuela refuses and Capt. Frith administers another burst of chemical agents to gain compliance to no avail. Capt. Frith gives several orders to submit to hand restraints and consequences that chemical agents would be used to gain compliance. Inmate Valenzuela refuses to comply. Capt. Frith identified team members: 1 man) Officer McGuire, COIV, 2 man) Officer Enriquez, Manuel CO IV, 3 man) Officer Harp CO IV, 4 man) Officer Bostic, CO III and 5 man) Officer Martinez, Harry CO V. Capt. Frith orders Inmate Valenzuela to comply with application of hand restraints and explains consequences that chemical agents and the force move team will be utilized to gain compliance. Inmate Valenzuela refuses. Capt. Frith repeats orders and consequences to inmate Valenzuela and refuses. Capt. Frith opens the cell door and the team enter the cell. Inmate is instructed to not resist. Officer McGuire and Officer Enriquez observe the inmate by the toilet area and pull him away. In doing so Inmate Valenzuela is attempting to bite staff and strike and headbutt Officer McGuire and Officer Enriquez as he is trying to go back to the toilet area. Officer McGuire punches Inmate Valenzuela in both hand for a total of four punches due to the inmate attempting to go back to the toilet area and grabbing and not allowing hand restraints to be placed. Inmate Valenzuela attempted to bite Officer McGuire; Officer McGuire then punches Inmate Valenzuela in his face three times and inmate stops attempting to bite him. Inmate Valenzuela continues to grab toilet area and resist application of hand restraints and resisting staff. Officer Enriquez strike Inmate Valenzuela twice in the upper body due to his actions of trying to bite and strike staff this is noted when the leg restraints are being repositioned. Officer Harp observes Inmate Valenzuela trying to bit staff, Officer Harp attempts to place hand restraints but cannot due to Inmate Valenzuela's actions of biting staff, resting and grabbing the toilet area. Officer Harp then strikes Inmate Valenzuela in the rib area 3-4 times due to his actions of resisting staff and not complying. Officer Bostic entered the cell and sees the inmate attempting to bit staff as they were trying to place Inmate Valenzuela in hand restraints. Officer Bostic holds inmate's legs so Officer Martinez can place the leg restraints. Officer Bostic holds inmates legs as staff is still trying to place hand restraints on Inmate Valenzuela. Officer Martinez applies leg restraints on Inmate Valenzuela. Officer Martinez then assist Officer Harp and Officer Enriquez in securing the inmate in hand restraints. Inmate Valenzuela is seen attempting to bite staff and still not refusing to submit to hand restraints. Office Martinez then strikes Inmate Valenzuela twice in the

upper body (shoulder area) from where he is positioned for inmate to stop biting staff and himself as he is trying to grab his arms and turn him away from him. Inmate Valenzuela is being instructed to not resist staff and place his hands behind his back to no avail. Capt. Frith observed Officer Bostic leg get caught in Inmate Valenzuela legs along with the leg restraints. Capt. Frith instructed for the leg restraints to be removed so Officer Bostic could untangle his leg and prevent any injuries to Officer Bostic as they are attempting to turn Inmate Valenzuela to his stomach. . Leg restraints were re-applied by Officer Bostic. Staff was able to secure him with minimum amount needed to get the inmate secured. Capt. Frith then calls for a gurney and states inmate is in restraints. LVN Castillo conducted a cell side physical due to inmate behavior and actions. LVN Castillo asked the inmate if he had any injuries. Inmate Valenzuela did not respond to LVN Castillo, she noted no injuries. Capt. Frith informed Inmate Valenzuela he would be assisted to his feet by the force cell move team and taken to the shower. Inmate Valenzuela was then rolled to his side by force cell move team members so he could be assisted to his feet. Officer Martinez and Officer Enriquez were the team members who took Inmate Valenzuela to the shower and dragged him into the shower and secured the shower door. Capt. Frith tells Inmate Valenzuela that medical will do an assessment of him and if he attempt to assault her additional force would be used. LVN Castillo asked the inmate if he has any injuries from the use of force. Inmate replies "No Ma'am." LVN Castillo states the inmate is reporting no injuries to the use of force. Capt. Frith take photos of Inmate Valenzuela. Inmate Valenzuela does not comply to have photos taken of him. Inmate Valenzuela then walks into the shower, and asks for water and then starts speaking in Spanish asking for water. Officer Enriquez (Qualified Spanish interpreter) then talks to him in Spanish and tell him to come and have the hand restraints removed so he could shower and photos be taken of him. Inmate Valenzuela complies. Inmate Valenzuela states he does not want to take photos and does not want to shower. Officer Enriquez then attempts to get him to take photos and Inmate is refusing. Capt. Frith instructs Officer Enriquez to tell Inmate Valenzuela he will be escorted back to the cell and if he does not comply chemical agents will be utilized. Officer Enriquez explains he will be escorted to his cell. Capt. Frith orders Inmate Valenzuela to be escorted to the cell and use of chemical agents will be used. Capt. Frith informs Officer Enrique to instruct Inmate Valenzuela he will go to his cell, will receive water and explains if he does not chemical agents will be used. Inmate Valenzuela then complies with orders and instructions. While waiting to be escorted the cell is being cleared and cleaned. The metal piece is placed back in position. Team members then escort the inmate and assist Inmate Valenzuela to a prone position. Hand/Leg restraints are removed, team members exit the cell and cell door is secured. Capt. Frith then reads inmate participation report. Capt. Frith then gives decontamination procedures to Inmate Valenzuela and terminates use of force.

Officer McGuire was interviewed and he stated he was assigned as one-man on a five man extraction team due to Offender Valenzuela not wanting to comply with orders to submit hand restraints and stop attempting to harm himself. Chemical agents had been utilized and the usage did not work. Captain Frith gave orders and warnings to Inmate Valenzuela. He refused and Capt. Frith unsecured the door. Officer McGuire stated Inmate Valenzuela was at the toilet with his head submerged in the water. He used the

shield to push him away from the toilet and onto the floor. Inmate Valenzuela began fighting the team and keep grabbing at the toilet. Once he grabbed the toilet, Officer McGuire stated he could not pull his arms to get him to let go, so he struck the inmate four times to his hands to get him to let go. Once Inmate Valenzuela let go of the toilet, he did not hit his hands anymore. Officer McGuire stated he continue to attempt to get Inmates Valenzuela's hands behind his back but he kept resisting. He stated Inmate Valenzuela began attempting to bite staff. When Inmate Valenzuela attempted to bite him, he punched him three times in the facial area to prevent him from biting him. Inmate Valenzuela would not stop trying to bite him and other staff members, so he used a pressure point to his temple area to get him to stop. Inmate Valenzuela stopped attempting to bite but continued to resist staff by not allowing them to place hand restraints on him. He stated the team was able to put him in hand and leg restraints. He was escorted out of the cell and place in the shower area. Officer McGuire stated he did receive minor injuries due to the Use of force and stated he only punched the Inmate to prevent from receiving anymore or serious injuries.

Officer Manuel Enriquez COIV stated he was assigned as two-man on a five man extraction team. He stated when the team was utilized, went in behind Officer McGuire and the Inmate was pushed to the floor. He stated the Inmate kept fighting, trying to hold on to the toilet and attempting to bite staff. He stated he could not really tell what everyone was doing. He stated he kept grabbing the Inmates arms in an attempt to place them behind his back for placement of hand restraints. He stated the Inmate kept resisting and causing him to lose grip. Officer Enriquez stated he noticed Inmate Valenzuela was attempting to bite him and other staff. Officer Enriquez then struck him with an open hand to the back to gain his compliance and to stop him from biting him. He stated he did not need to strike the Inmate anymore but the Inmate did continue to resist. The team was able to place hand and leg restraints on the Inmate. Officer Enriquez stated he assisted Inmate Valenzuela in standing up but refused to walk. Inmate Valenzuela refused orders to walk, he and Officer Martinez held up Inmate Valenzuela. Officer Enriquez stated the area was small, so he and Officer Martinez lifted him up by his arms and carried him to the shower area. Inmate Valenzuela was secured in the shower area as they cleared out his cell. Officer Enriquez stated Inmate Valenzuela complied with the rest of the procedures and no more force was needed.

Officer Joe Harp COIV stated he was assigned as three-man on a five man extraction team. He stated when he went into the cell with the team, Inmate Valenzuela was resisting and fighting the team. Officer Harp was trying to gain control of the Inmate's arms to place hand restraints on him but he kept resisting. Officer Harp stated Inmate Valenzuela grabbed ahold of the toilet and would not let go. Officer Harp stated he struck his arm with a closed fist twice to attempt to gain his compliance to release the toilet. When the Inmate did not let go, he attempted to strike his arm again but he let go and Officer Harp stated he hit the Inmate's rib area. Officer Harp stated he stopped the strikes when he let go. Officer Harp stated Inmate Valenzuela kept resisting and trying to bite the team. He concentrated on trying to restrain his hands, he could not see what the other staff was doing. Officer Harp stated the team was finally able to place hand and leg restraints on the Inmate.

Officer Harry Martinez COV stated Inmate Valenzuela began fighting the team when the team entered the cell. Inmate Valenzuela would comply with orders and resisted the team. Officer Martinez attempted to gain control of the Inmate's legs to assist in placement of leg restraints but he was resisting by using his legs to push himself towards the toilet. Officer Martinez stated he kept losing his grip of his legs. He noticed Inmate Valenzuela was trying to bite staff. Officer Martinez stated he gave two strikes to the inmate's upper body to get him to stop trying to bite. Inmate Valenzuela stopped temporally trying to bite. He stated he then grabbed his left leg again. Officer Martinez was able to straighten out his legs with assistants and Officer Martinez applied the leg restraints as Inmate Valenzuela continued to resist staff. Officer Martinez stated he assisted in holding down the Inmate's upper body. Inmate Valenzuela continued fighting staff. Once Inmate Valenzuela was placed in hand restraints, Officer Martinez stated he started calming down. Officer Martinez stated he only used the force necessary to gain the Inmate's compliance to stop trying to harm himself or others. Once the Inmate stopped resisting he no long utilized any force. Officer Martinez stated Inmate Valenzuela was assisted to his feet and he refused orders to walk out of the cell. Officer Martinez stated the Inmate stiffened his body at the cell doorway and he lifted his body up to keep him standing due to no room in the area to be assisted by other team members. He and Officer Enriquez lifted him up and carried him to the shower area. The door was secured. Inmate Valenzuela became compliant and no further force was utilized.

Officer Greg Bostic COIII stated he was four man on the extraction team and when the team was utilized, he was trying to assist in placing leg restraints on Inmate Valenzuela. Officer Bostic stated Inmate Valenzuela was resisting by fighting the team, attempting to pull himself toward the toilet and trying to bite staff. Officer Bostic stated when he would take control of the Inmate's leg, he would resist. Once the leg restraints were applied, Officer Bostic stated he held on to the Inmate's legs due to him still resisting the placement of hand restraints. Officer Bostic stated so much was going on during the use of force but his did notice Inmate Valenzuela trying to bite staff and continuously holding on to the toilet. He could not tell who was doing what because he was concentrating on the Inmate's legs. Once the Inmate became compliant, he let go of his legs so that the team members could assist him to his feet. Officer Bostic stated he never hit the Inmate and utilized force needed to hold the Inmate's legs.

Captain Darrell Frith stated he utilized chemical agents and a five man extraction team in attempt to gain Inmate Valenzuela's compliance to stop hurting himself and submit to hand restraints. Capt. Frith stated when the team entered the cell, Inmate Valenzuela was resisting by trying to fight the team. The Inmate attempted to bite staff and continued to try to pull himself toward the toilet so he could put his head in it. Capt. Frith stated he continued to give the Inmate orders to comply and he continued to refuse. Capt. Frith stated once the team was able to restraint the Inmate, the team did not use any unnecessary force. The team used appropriate force to be able to stop him from seriously hurting himself and any team member.

**Findings:**

After review of video footage and statements and interviews the following was noted:

Officer McGuire did strike Inmate Valenzuela several times throughout the Use of Force. He utilized four strikes to get the Inmate to let go of the toilet when pulling his arms did not work. Officer McGuire did strike the Inmate three time to the facial area and used a pressure point to prevent from getting bit by the Inmate. Officer McGuire utilized the force necessary needed to gain the compliance of the Inmate. Officer McGuire stopped force once the Inmate complied and was no longer needed. Team members did receive minor injuries but did what was necessary in preventing serious injuries to themselves and the inmate. There were no findings of misconduct or excessive force used by Officer McGuire during the Use of Force. Formal Employee Disciplinary will not be recommended.

Officer Enriquez did strike Inmate Valenzuela with an open hand to the back throughout the Use of Force. He utilized strike in order for the Inmate to stop attempting to bite him. Officer Enriquez utilized the force necessary needed to gain the compliance of the Inmate. Officer Enriquez stopped force once the Inmate complied and was no longer needed. Team members did receive minor injuries but did what was necessary in preventing serious injuries to themselves and the inmate. There were no findings of excessive force used by Officer Enriquez during the Use of Force. Officer Enriquez did violate the proper procedures in lifting an Inmate refusing to cooperate during an escort procedure in accordance to the Use of Force Plan. This was an unintentional act by the Officer but in accordance to the progressive disciplinary and guidance from the agency's Use of Force Office, a Letter of Instruction will be sufficient to prevent future acts of possible violations by the Officer.

Officer Harp did strike Inmate Valenzuela several times throughout the Use of Force. He utilized two strikes to get the Inmate to let go of the toilet when pulling his arms did not work. Officer Harp did strike the Inmate in the rib area after missing his arm when the Inmate moved it. Officer Harp utilized the force necessary needed to gain the compliance of the Inmate. Officer Harp stopped force once the Inmate complied and was no longer needed. Team members did receive minor injuries but did what was necessary in preventing serious injuries to themselves and the inmate. There were no findings of misconduct or excessive force used by Officer Harp during the Use of Force. Formal Employee Disciplinary will not be recommended.

Officer Martinez did strike Inmate Valenzuela twice with closed fist to the upper body during the Use of Force. He utilized strikes in order for the Inmate to stop attempting to bite. Officer Martinez utilized the force necessary needed to gain the compliance of the Inmate. Officer Martinez stopped force once the Inmate complied and was no longer needed. Team members did receive minor injuries but did what was necessary in preventing serious injuries to themselves and the inmate. There were no findings of excessive force used by Officer Martinez during the Use of Force. Officer Martinez did violate the proper procedures in lifting an Inmate refusing to cooperate during an escort

procedure in accordance to the Use of Force Plan. This was an unintentional act by the Officer but in accordance to the progressive disciplinary and guidance from the agency's Use of Force Office, a Letter of Instruction will be sufficient to prevent future acts of possible violations by the Officer.

Once the Use of Force packet and video documentation was reviewed, it was found that Captain Frith took digital photo of the Inmate with no clothes on or anything covering him. Capt. Frith should have taken all reasonable steps to avoid nude photographs, for example placing a towel in front of offender's private body parts. Capt. Frith failed to cover the Inmate before taking the photos. Capt. Frith will receive a Letter of Instruction for the Use of Force Plan violation.

**Investigation Conducted by:**

OV

Major Oliver Vasquez

TEXAS DEPARTMENT OF CRIMINAL JUSTICE
CORRECTIONAL INSTITUTIONS DIVISION

## INTER-OFFICE COMMUNICATION

TO: MAJOR VASQUEZ

Date: 1/13/21

FROM: Greg Bostic

Subject: As Stated

I was 4 man on the team, and when we went in on the inmate all I did was first help get the leg restraints on. officer martinez had the leg restraints and was trying to put them on but the inmate was resisting by not staying still, The inmate was going as far as trying to bite staff's hand's. I held the inmates legs that way martinez could get the leg restraints. once they were put on I helped get the hand restraints on by getting the inmates arm to his back. The inmate was still making hard by fighting to keep his arm infront of him. I never had to strike the inmate due to me being by his feet, The inmate did not attempt to bite my hand.

TEXAS DEPARTMENT OF CRIMINAL JUSTICE
CORRECTIONAL INSTITUTIONS DIVISION

# INTER-OFFICE COMMUNICATION

TO: Major ~~Vat~~ Vasquez

FROM: McGuire COIV

Date: 1-25-21

Subject: Valenzuela, Ruben

On 1-13-21 at 148 pm I officer Robert. McGuire COIV during the use of force on offender Valenzuela, Ruben did strike the offender on each hand 2 times because the offender Was holding onto the Toilet and would not Release. upon the 2nd strike to each hand the offender did release The toilet upon Releasing the toilet The offender began Trying to head butt ~~at~~ RM and bite Me in the Thighs I did Strike the offender in the face 3 times. upon my 3rd strike the offender did stop Attempting to bite me or head butt me. However the offender did continue to Resist staff and ~~Att~~ RM pull himself back up on the Toilet.

There was insuficient space for myself to Assist in carrying The offender out of the cell.

RM McGuire COIV

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
# CORRECTIONAL INSTITUTIONS DIVISION

## INTER-OFFICE COMMUNICATION

TO: Major Vasquez

Date: 1-25-21

FROM: Enriquez CO 4

Subject: Valenzuela / Fact Finding

On 1-13-21 at 1:45 pm i was working overtime in the Afternoon and I responded to the incident command System. I was told by captain Frith that he needed me in the 5 man team as 2 man. we then were ordered to enter the cell and inmate Valenzuela was in his cell attemp to drown himself. officer Mcguire CO4 was 1 man and we both stopped inmate from his actions and attempted to place hand restraints, offender Valenzuela then attempted to bite us and Strike us with his arms so we had to use force to contain his actions, I struck the offende in his upper body to gain compliance and we were able to place offender in hand restraints. we were then ordered by captain Frith to escort the offender to the Shower cell to proceed in the decontamination proce. and the offender ~~walked with us on his own will we contained~~ refused to walk to the Shower so myself and officer Martinez CO 5 assisted said offender to the Shower Area, He was evaluated by medical and the offender Stated he had no injuries. The next process was to take pictures and the offender was being aggresive again, i then asked captain Frith if i can attempt to translate his orders in Spanish and we were then very succesfull. offender valenzuela was then calm and the process was continued. we then escorted valenzuela back to the cell and ICS was terminated

M. Enriquez [signature] 1-25-21

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
# CORRECTIONAL INSTITUTIONS DIVISION

## INTER-OFFICE COMMUNICATION

TO: Major Vasquez

FROM: J. Harp COIV

Date: 1-25-21

Subject: ~~A# Valenzuela~~ Fact Finding

On 1-13-21, I responded to Restrictive Housing for an ICS at approx. 1:48 pm. When I arrived I was the video camera operator until I was relieved by Sgt. Jose Valdez so I could participate on the Five Man team. On the team I was the #3 man, so my job was to apply the hand restraints to the inmate. Once we entered the cell, I attempted to apply the restraints but Inmate Valenzuela had a firm grip on the toilet, I tried to pull his hands off, but couldn't so I struck his arm to get him to release. I had struck his arm twice and went to strike again in order for him to let go. When I was trying to strike the arm, he moved it quickly and I ended up striking his rib cage. Once he released the toilet I stopped my attempts and focused on getting the restraints on him. I assisted Inmate Valenzuela to his feet but, was unaware that he was not walking on his own.

[signature]
1-25-21

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
# CORRECTIONAL INSTITUTIONS DIVISION

## INTER-OFFICE COMMUNICATION

TO: MAJOR VASQUEZ

Date: 1-25-2021

FROM: officer H. marther

Subject: AS Stated

On 1-13-2021 I officer Harry marther was assigned to Restrictive Housing, I was assigned to the Five man team because offender Valenzuela, Ruben refused to submit to Hand Restraints. I was assigned to five man. while trying to restrain the offender when we went in offender was trying to bite and hit the five man team to put his head back in the toilet to drown himself. I struck the offender two times In the upper body to turn offenders body away from me wear I didnt get bit. offender quit biting in my direction so I had no need to strike the offender anymore. hand and leg restraints were finally applied to the offender after several attempts due to him trying to bite and assault staff - offender was then helped by officer enriquez and I to the shower because he refused to walk. Due to there not being enough room we were not able to assist him properly to the shower, so we held his upper body to keep him in the standing position

H [signature] 1-25-2021

DEFS' MSJ APPX. 105

CERVANTEZ_00105

TEXAS DEPARTMENT OF CRIMINAL JUSTICE

CORRECTIONAL INSTITUTIONS DIVISION

Inter-office Communications

---

To: Warden Edmundo Cueto

From: CPT. D. Frith

Date: 1/25/2021

Subject: As Stated

---

On 1/13/2021 I, Captain Darrell Frith was in my office which is attached to Restrictive Housing. Officer James Skipworth CO V was assigned as the Constant and Direct Observation Officer in Restrictive Housing, he knocked on my door and asked me to come into Restrictive Housing. I entered Restrictive Housing and observed Inmate Valenzuela attempting to cut his wrist on a metal plate that he had bent out on the wall. Myself and Officer Skipworth ordered the Inmate to stop trying to cut his wrist and he complied, he then wrapped his arms around the bottom of the toilet, placed his face in the water and shifted his body weight so that all of his body weight was over his upper torso and face and continued to hold his face in the water sucking in the water until he fell over. He coughed up water and was choking, he immediately got up and started doing it again. To prevent the Inmate from causing harm to himself Officer Skipworth administered a burst of chemical agents towards the inmate. I initiated ICS and requested medical, additional staff and video camera to Restrictive Housing. The chemical agents had no effect on the inmate and he continued to attempt to drown himself. I continued to order the Inmate to stop trying to harm himself and he continued to refuse. LVN Castillo arrived to Restrictive Housing and I asked her if she wanted to see him cell side and she said no that he needed to be seen in medical for further assessment. I ordered the Inmate several more times to submit to hand restraints and he continued to refuse. I gained authorization for the use of a 5 man cell extraction team and additional chemical agents by Senior Warden Hefner. I ordered the Inmate several times to come to the cell door and to submit to hand restraints and warned him that additional chemical agents would be used to gain compliance and he stated "no, sir." I administered a burst of MK9 LE 10 chemical agents towards the inmate hitting him in the upper torso. The chemical agents had no effect on the inmate and he continued to refuse to come to the cell door to submit to hand restraints. Inmate Valenzuela continued to stick his face in the water in attempt to drown himself. I ordered the Inmate several more times to stop trying to harm himself and come to his cell door and submit to hand restraints and he continued to

refuse. I administered a second burst of chemical agents towards the inmate and gave ordered him to come to the cell door again and he refused. The chemical agents had no effect on the inmate and he continued to attempt to drown himself and refusing orders. I gave a final order to the inmate and warned him that a 5 man team would be used to gain compliance, the inmate stated "no, sir" once again. I opened the cell door and the 5 man team entered the cell, I stood at the cell door and was walking back and forth to the camera to update the camera. The Inmate was fighting with the team, trying to push them off I witnessed the inmate attempt to bite the team members and while he was struggling with the staff I saw him hit his head on the toilet. I saw the inmate grabbing at staff and refusing to submit to hand restraints, I never saw any staff members hit the inmate but heard what appeared to be strikes while going back and forth to the camera. The inmate was placed in restraints and the inmate was picked up and taken to the shower. While this occurred I was talking to LVN Castillo and when I turned around I noticed that the Officers were dragging the inmate. I went to address this, however it was too late and the inmate was already in the shower area. I ordered the inmate to allow medical to conduct an assessment on him and if he tried to assault her additional force would be used. The inmate stated "yes, sir" and LVN Castillo conducted an assessment on the Inmate and noted no injuries. She then asked the inmate if he had any injuries and he stated "no, ma'am." I entered the cell and removed the UOF equipment that had fell off of the 5-man team and pushed the metal plate back in. The inmate was then escorted from the shower and placed back into 3 cell were the 5 man team assisted him into the prone position. I ordered the inmate to remain in the prone position until the restraints were removed and the cell door was secured. The inmate stated "yes, sir" The 5 man team then removed the restraints and exited the cell. I closed the cell door, read the UOF-2 to the inmate and instructed him on in cell decontamination. I then terminated the UOF.

Cpt. [signature]

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report

### *Employee Use of Force Fact Finding Inquiry*

Unit *(Name and Alpha Code)*: Wallace Unit WL

Report Number: M-00338-01-21 Incident Number *(if applicable)*: I-00721-01-21

***Instructions to Assistant Warden (or designee):***

- *Complete Sections I and II;*
- *If employees or offenders were interviewed, list them in Section II. There is no requirement to call all those, or limit yourself to just those, named in the Report.*
  - *➢New or additional information must be supported by written statements on an interoffice communication (IOC).*
- *If facts are evident you may determine there is no necessity to conduct interviews; if so, proceed to Section III; and*
- *Provide a summary of findings and recommendations in Section III for the Reprimanding Authority to review.*

***Instructions to Reprimanding Authority:***

- *Note your evaluation of the employee's conduct and action taken, if any, in Section IV.*

## I. EMPLOYEE PARTICIPANT OR WITNESS

| Harp | Joe | | COIV |
|---|---|---|---|
| Printed Last | First | MI | Rank or Title |

## II. FACT FINDING INQUIRY

a. Fact Finding Inquiry began on *(date)*: 1/25/2021 and ended on *(date)*: 2/18/2021

b. EMPLOYEE(S) interviewed *(please print)*:

| Last | | First | | MI | | Rank | |
|---|---|---|---|---|---|---|---|
| Last | Enriquez | First | Manuel | MI | | Rank | COIV |
| Last | McGuire | First | Robert | MI | | Rank | COIV |
| Last | Martinez | First | Harry | MI | | Rank | COV |

c. OFFENDER(S) interviewed *(please print)*:

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Last | | First | | MI | | TDCJ# | | Custody | |
| Last | | First | | MI | | TDCJ# | | Custody | |

## III. SUMMARY AND FINDINGS

a. Summary of inquiry:

See attached Summary.

b. Findings: Based on interviews , it appears the employee's actions were:

☒ Appropriate; ☐ Inappropriate *(➢ Determined to be 'aggravated'?* ☐ YES ☐ NO),

... as evidenced by: ☐ Alleged violation of departmental rules/regulations *(Specify)*:

☐ Other *(Specify)*:

c. Recommendations: ☒ No action taken ☐ Refer to the OIG for investigation ☐ Employee Hearing pursuant to PD-22

☐ Other *(Specify)*:

d. Assistant Warden *(or designee)* conducting inquiry: Oliver Vasquez Major [signature] 2/18/21

Printed Name/Rank or Title Signature/Date

## IV. FINAL OUTCOME

a. Evaluation: I have found the employee's actions were: ☒ Appropriate ☐ Inappropriate ***(Determined to be 'aggravated'?*** ☐ YES ☐ NO) -

-or-

☐ I am unable to determine based on evidence presented

b. Action: ☒ No action taken ☐ Refer to the OIG for investigation *(UOF-OIG Referral Attached)* ☐ Other *(Specify)*:

☐ Employee Hearing to be scheduled *Attach copy of employee's UOF statement ONLY to a PERS 325 and a copy of this UOF-9 and forward to the unit human representative to notify the employee of hearing.*

***➢ Once hearing is held pursuant to PD-22, attach copy of PERS 185 to original UOF-9.***

c. Reprimanding Authority: Jody Hefner Warden [signature] 2-23-21

Printed Name/Rank or Title Signature/Date

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report

### *Employee Use of Force Fact Finding Inquiry*

Unit *(Name and Alpha Code)*: Wallace Unit WL

Report Number: M-00338-01-21 Incident Number (*if applicable*): I-00721-01-21

***Instructions to Assistant Warden (or designee):***

- *Complete Sections I and II;*
- *If employees or offenders were interviewed, list them in Section II. There is no requirement to call all those, or limit yourself to just those, named in the Report.*
  - *➢New or additional information must be supported by written statements on an interoffice communication (IOC).*
- *If facts are evident you may determine there is no necessity to conduct interviews; if so, proceed to Section III; and*
- *Provide a summary of findings and recommendations in Section III for the Reprimanding Authority to review.*

***Instructions to Reprimanding Authority:***

- *Note your evaluation of the employee's conduct and action taken, if any, in Section IV.*

## I. EMPLOYEE PARTICIPANT OR WITNESS

| Printed Last | First | MI | Rank or Title |
|---|---|---|---|
| Harp | Joe | | COIV |

## II. FACT FINDING INQUIRY

a. Fact Finding Inquiry began on *(date)*: 1/25/2021 and ended on *(date)*: 2/19/2021

b. EMPLOYEE(S) interviewed *(please print)*:

| Last | First | MI | Rank |
|---|---|---|---|
| Bostic | Greg | | COIII |
| Frith | Darrell | | Captain |
| | | | |

c. OFFENDER(S) interviewed *(please print)*:

| Last | First | MI | TDCJ# | Custody |
|---|---|---|---|---|
| | | | | |
| | | | | |

## III. SUMMARY AND FINDINGS

a. Summary of inquiry:

See attached Summary.

b. Findings: Based on interviews , it appears the employee's actions were:

☒ Appropriate; ☐ Inappropriate (*➢ Determined to be 'aggravated'?* ☐ YES ☐ NO),

... as evidenced by: ☐ Alleged violation of departmental rules/regulations *(Specify)*:

☐ Other *(Specify)*:

c. Recommendations: ☒ No action taken ☐ Refer to the OIG for investigation ☐ Employee Hearing pursuant to PD-22

☐ Other *(Specify)*:

d. Assistant Warden *(or designee)* conducting inquiry: Oliver Vasquez Major [signature] 2/18/21

Printed Name/Rank or Title — Signature/Date

## IV. FINAL OUTCOME

a. Evaluation: I have found the employee's actions were: ☒ Appropriate ☐ Inappropriate ***(Determined to be 'aggravated'?*** ☐ YES ☐ NO) -

-or-

☐ I am unable to determine based on evidence presented

b. Action: ☒ No action taken ☐ Refer to the OIG for investigation *(UOF-OIG Referral Attached)* ☐ Other *(Specify)*:

☐ Employee Hearing to be scheduled *Attach copy of employee's UOF statement ONLY to a PERS 325 and a copy of this UOF-9 and forward to the unit human representative to notify the employee of hearing.*

➢ ***Once hearing is held pursuant to PD-22, attach copy of PERS 185 to original UOF-9***

c. Reprimanding Authority: Jody Hefner Warden [signature] 2-23-21

Printed Name/Rank or Title — Signature/Date

# OFFICIAL INVESTIGATION

**Subject:** Fact Finding Use of Force (M-00338-01-21/I-00721-01-21)

**Allegation:**

On January 13, 2021 a Use of Force (M-00338-01-21/I-00721-01-21) involving the utilization of a five man extraction team concerning Inmate Valenzuela, Ruben #1785292 (H/M/26/G4/L3) due to procedural violations involving staff and Inmate Valenzuela. Fact Finding was initiated on January 25, 2021 involving McGuire, Robert CO IV, Officer Enriquez, Manuel CO IV, Officer Harp, Joe CO IV, Officer Martinez, Harry CO V, Officer Bostic CO III, Greg and Captain Frith, Darrell.

**Summary:**

On January 13, 2021 Inmate Valenzuela (Restrictive Housing #3) was in Constant Direct Observation (CDO) awaiting to be transferred to the Montford Unit. Correctional Officer (CO) V Skipworth, James was the CDO Officer assigned. Office Skipworth noticed Inmate Valenzuela stick his head in his toilet in the assigned housing area attempting to drown himself. Officer Skipworth gave orders to Inmate Valenzuela to stop. Officer Skipworth then knocked on Captain (Capt.) Frith, Darrell office door located which is located within the restrictive housing area. Capt. Frith entered the area and observed the inmate sticking his head in the toilet attempting to drown himself. Capt. Frith ordered the inmate to stop which he complied. Inmate Valenzuela then went to rubbing his wrist on a piece of metal plate (top corner bent) located inside the cell by the wall/toilet area. Officer Skipworth ordered the inmate to stop or chemical agents would be used. Inmate Stopped attempting to himself on his wrist and then went to attempt to drown himself in the toilet. Orders were then given by Capt. Frith and Officer Skipworth to stop and explained chemical agents would be used. Inmate Valenzuela refused orders and chemical agents was administered by Officer Skipworth. Chemical agents had no effect. Capt. Frith initiated the Incident Command System (ICS) requesting additional staff, medical staff and a video camera operator. Officer Harp, Joe, CO IV, arrived with video camera. Capt. Frith conducted a narration, the inmate was not in view due to the layout and design of the cell in Restrictive Housing. Officer Harp was at the entrance of Capt. Frith office door opened. Licensed Vocational Nurse (LVN) Castillo, Sandy arrived and was briefed by Capt. Frith. LVN Castillo stated the inmate would need to be taken to the unit infirmary. Officer McGuire and ordered the inmate to comply with application of hand restraints so he could be escorted to the unit infirmary and explained if he refused chemical agents could be used. Officer Bostic, Greg was on scene and was going to be the escort officer with Officer McGuire. Inmate Valenzuela refused to comply with orders and attempted to drown himself in the toilet. Capt. Frith then ordered Inmate Valenzuela to comply with application of hand restraints and explained chemical agents

would be administered to no avail. Capt. Frith then contacted Senior Warden Hefner, Jody for authorization for a use of force cell move team. During gaining authorization Officer McGuire is giving orders to inmate Valenzuela to comply with applications of hand restraints. Capt. Frith receives authorization to utilize a cell force move team and chemical agents. Officer McGuire notifies Capt. Frith the inmate has placed his head in the toilet. Capt. Frith orders Inmate Valenzuela to submit to hand restraints, be assessed by medical staff and explained the use of chemical agents. Capt. Frith then administers a burst of chemical agents to Inmate Valenzuela to gain compliance. Inmate Valenzuela refused. Capt. Frith orders Inmate Valenzuela to comply with hand restrains so he can be seen by medical and explained consequence sf chemical agents to gain compliance. Inmate Valenzuela refused. Capt. Frith briefed camera that Sergeant (SGT) Valdez, Jose was going to relieve Officer Harp as video camera operator. Capt. Frith orders the inmate to comply to hand restraints and Inmate Valenzuela refuses. Capt. Frith orders the inmate to submit to a hand restraint or chemical agents would be used. Inmate Valenzuela refuses and Capt. Frith administers another burst of chemical agents to gain compliance to no avail. Capt. Frith gives several orders to submit to hand restraints and consequences that chemical agents would be used to gain compliance. Inmate Valenzuela refuses to comply. Capt. Frith identified team members: 1 man) Officer McGuire, COIV, 2 man) Officer Enriquez, Manuel CO IV, 3 man) Officer Harp CO IV, 4 man) Officer Bostic, CO III and 5 man) Officer Martinez, Harry CO V. Capt. Frith orders Inmate Valenzuela to comply with application of hand restraints and explains consequences that chemical agents and the force move team will be utilized to gain compliance. Inmate Valenzuela refuses. Capt. Frith repeats orders and consequences to inmate Valenzuela and refuses. Capt. Frith opens the cell door and the team enter the cell. Inmate is instructed to not resist. Officer McGuire and Officer Enriquez observe the inmate by the toilet area and pull him away. In doing so Inmate Valenzuela is attempting to bite staff and strike and headbutt Officer McGuire and Officer Enriquez as he is trying to go back to the toilet area. Officer McGuire punches Inmate Valenzuela in both hand for a total of four punches due to the inmate attempting to go back to the toilet area and grabbing and not allowing hand restraints to be placed. Inmate Valenzuela attempted to bite Officer McGuire; Officer McGuire then punches Inmate Valenzuela in his face three times and inmate stops attempting to bite him. Inmate Valenzuela continues to grab toilet area and resist application of hand restraints and resisting staff. Officer Enriquez strike Inmate Valenzuela twice in the upper body due to his actions of trying to bite and strike staff this is noted when the leg restraints are being repositioned. Officer Harp observes Inmate Valenzuela trying to bit staff, Officer Harp attempts to place hand restraints but cannot due to Inmate Valenzuela's actions of biting staff, resting and grabbing the toilet area. Officer Harp then strikes Inmate Valenzuela in the rib area 3-4 times due to his actions of resisting staff and not complying. Officer Bostic entered the cell and sees the inmate attempting to bit staff as they were trying to place Inmate Valenzuela in hand restraints. Officer Bostic holds inmate's legs so Officer Martinez can place the leg restraints. Officer Bostic holds inmates legs as staff is still trying to place hand restraints on Inmate Valenzuela. Officer Martinez applies leg restraints on Inmate Valenzuela. Officer Martinez then assist Officer Harp and Officer Enriquez in securing the inmate in hand restraints. Inmate Valenzuela is seen attempting to bite staff and still not refusing to submit to hand restraints. Office Martinez then strikes Inmate Valenzuela twice in the

upper body (shoulder area) from where he is positioned for inmate to stop biting staff and himself as he is trying to grab his arms and turn him away from him. Inmate Valenzuela is being instructed to not resist staff and place his hands behind his back to no avail. Capt. Frith observed Officer Bostic leg get caught in Inmate Valenzuela legs along with the leg restraints. Capt. Frith instructed for the leg restraints to be removed so Officer Bostic could untangle his leg and prevent any injuries to Officer Bostic as they are attempting to turn Inmate Valenzuela to his stomach. . Leg restraints were re-applied by Officer Bostic. Staff was able to secure him with minimum amount needed to get the inmate secured. Capt. Frith then calls for a gurney and states inmate is in restraints. LVN Castillo conducted a cell side physical due to inmate behavior and actions. LVN Castillo asked the inmate if he had any injuries. Inmate Valenzuela did not respond to LVN Castillo, she noted no injuries. Capt. Frith informed Inmate Valenzuela he would be assisted to his feet by the force cell move team and taken to the shower. Inmate Valenzuela was then rolled to his side by force cell move team members so he could be assisted to his feet. Officer Martinez and Officer Enriquez were the team members who took Inmate Valenzuela to the shower and dragged him into the shower and secured the shower door. Capt. Frith tells Inmate Valenzuela that medical will do an assessment of him and if he attempt to assault her additional force would be used. LVN Castillo asked the inmate if he has any injuries from the use of force. Inmate replies "No Ma'am." LVN Castillo states the inmate is reporting no injuries to the use of force. Capt. Frith take photos of Inmate Valenzuela. Inmate Valenzuela does not comply to have photos taken of him. Inmate Valenzuela then walks into the shower, and asks for water and then starts speaking in Spanish asking for water. Officer Enriquez (Qualified Spanish interpreter) then talks to him in Spanish and tell him to come and have the hand restraints removed so he could shower and photos be taken of him. Inmate Valenzuela complies. Inmate Valenzuela states he does not want to take photos and does not want to shower. Officer Enriquez then attempts to get him to take photos and Inmate is refusing. Capt. Frith instructs Officer Enriquez to tell Inmate Valenzuela he will be escorted back to the cell and if he does not comply chemical agents will be utilized. Officer Enriquez explains he will be escorted to his cell. Capt. Frith orders Inmate Valenzuela to be escorted to the cell and use of chemical agents will be used. Capt. Frith informs Officer Enrique to instruct Inmate Valenzuela he will go to his cell, will receive water and explains if he does not chemical agents will be used. Inmate Valenzuela then complies with orders and instructions. While waiting to be escorted the cell is being cleared and cleaned. The metal piece is placed back in position. Team members then escort the inmate and assist Inmate Valenzuela to a prone position. Hand/Leg restraints are removed, team members exit the cell and cell door is secured. Capt. Frith then reads inmate participation report. Capt. Frith then gives decontamination procedures to Inmate Valenzuela and terminates use of force.

Officer McGuire was interviewed and he stated he was assigned as one-man on a five man extraction team due to Offender Valenzuela not wanting to comply with orders to submit hand restraints and stop attempting to harm himself. Chemical agents had been utilized and the usage did not work. Captain Frith gave orders and warnings to Inmate Valenzuela. He refused and Capt. Frith unsecured the door. Officer McGuire stated Inmate Valenzuela was at the toilet with his head submerged in the water. He used the

shield to push him away from the toilet and onto the floor. Inmate Valenzuela began fighting the team and keep grabbing at the toilet. Once he grabbed the toilet, Officer McGuire stated he could not pull his arms to get him to let go, so he struck the inmate four times to his hands to get him to let go. Once Inmate Valenzuela let go of the toilet, he did not hit his hands anymore. Officer McGuire stated he continue to attempt to get Inmates Valenzuela's hands behind his back but he kept resisting. He stated Inmate Valenzuela began attempting to bite staff. When Inmate Valenzuela attempted to bite him, he punched him three times in the facial area to prevent him from biting him. Inmate Valenzuela would not stop trying to bite him and other staff members, so he used a pressure point to his temple area to get him to stop. Inmate Valenzuela stopped attempting to bite but continued to resist staff by not allowing them to place hand restraints on him. He stated the team was able to put him in hand and leg restraints. He was escorted out of the cell and place in the shower area. Officer McGuire stated he did receive minor injuries due to the Use of force and stated he only punched the Inmate to prevent from receiving anymore or serious injuries.

Officer Manuel Enriquez COIV stated he was assigned as two-man on a five man extraction team. He stated when the team was utilized, went in behind Officer McGuire and the Inmate was pushed to the floor. He stated the Inmate kept fighting, trying to hold on to the toilet and attempting to bite staff. He stated he could not really tell what everyone was doing. He stated he kept grabbing the Inmates arms in an attempt to place them behind his back for placement of hand restraints. He stated the Inmate kept resisting and causing him to lose grip. Officer Enriquez stated he noticed Inmate Valenzuela was attempting to bite him and other staff. Officer Enriquez then struck him with an open hand to the back to gain his compliance and to stop him from biting him. He stated he did not need to strike the Inmate anymore but the Inmate did continue to resist. The team was able to place hand and leg restraints on the Inmate. Officer Enriquez stated he assisted Inmate Valenzuela in standing up but refused to walk. Inmate Valenzuela refused orders to walk, he and Officer Martinez held up Inmate Valenzuela. Officer Enriquez stated the area was small, so he and Officer Martinez lifted him up by his arms and carried him to the shower area. Inmate Valenzuela was secured in the shower area as they cleared out his cell. Officer Enriquez stated Inmate Valenzuela complied with the rest of the procedures and no more force was needed.

Officer Joe Harp COIV stated he was assigned as three-man on a five man extraction team. He stated when he went into the cell with the team, Inmate Valenzuela was resisting and fighting the team. Officer Harp was trying to gain control of the Inmate's arms to place hand restraints on him but he kept resisting. Officer Harp stated Inmate Valenzuela grabbed ahold of the toilet and would not let go. Officer Harp stated he struck his arm with a closed fist twice to attempt to gain his compliance to release the toilet. When the Inmate did not let go, he attempted to strike his arm again but he let go and Officer Harp stated he hit the Inmate's rib area. Officer Harp stated he stopped the strikes when he let go. Officer Harp stated Inmate Valenzuela kept resisting and trying to bite the team. He concentrated on trying to restrain his hands, he could not see what the other staff was doing. Officer Harp stated the team was finally able to place hand and leg restraints on the Inmate.

Officer Harry Martinez COV stated Inmate Valenzuela began fighting the team when the team entered the cell. Inmate Valenzuela would comply with orders and resisted the team. Officer Martinez attempted to gain control of the Inmate's legs to assist in placement of leg restraints but he was resisting by using his legs to push himself towards the toilet. Officer Martinez stated he kept losing his grip of his legs. He noticed Inmate Valenzuela was trying to bite staff. Officer Martinez stated he gave two strikes to the inmate's upper body to get him to stop trying to bite. Inmate Valenzuela stopped temporally trying to bite. He stated he then grabbed his left leg again. Officer Martinez was able to straighten out his legs with assistants and Officer Martinez applied the leg restraints as Inmate Valenzuela continued to resist staff. Officer Martinez stated he assisted in holding down the Inmate's upper body. Inmate Valenzuela continued fighting staff. Once Inmate Valenzuela was placed in hand restraints, Officer Martinez stated he started calming down. Officer Martinez stated he only used the force necessary to gain the Inmate's compliance to stop trying to harm himself or others. Once the Inmate stopped resisting he no long utilized any force. Officer Martinez stated Inmate Valenzuela was assisted to his feet and he refused orders to walk out of the cell. Officer Martinez stated the Inmate stiffened his body at the cell doorway and he lifted his body up to keep him standing due to no room in the area to be assisted by other team members. He and Officer Enriquez lifted him up and carried him to the shower area. The door was secured. Inmate Valenzuela became compliant and no further force was utilized.

Officer Greg Bostic COIII stated he was four man on the extraction team and when the team was utilized, he was trying to assist in placing leg restraints on Inmate Valenzuela. Officer Bostic stated Inmate Valenzuela was resisting by fighting the team, attempting to pull himself toward the toilet and trying to bite staff. Officer Bostic stated when he would take control of the Inmate's leg, he would resist. Once the leg restraints were applied, Officer Bostic stated he held on to the Inmate's legs due to him still resisting the placement of hand restraints. Officer Bostic stated so much was going on during the use of force but his did notice Inmate Valenzuela trying to bite staff and continuously holding on to the toilet. He could not tell who was doing what because he was concentrating on the Inmate's legs. Once the Inmate became compliant, he let go of his legs so that the team members could assist him to his feet. Officer Bostic stated he never hit the Inmate and utilized force needed to hold the Inmate's legs.

Captain Darrell Frith stated he utilized chemical agents and a five man extraction team in attempt to gain Inmate Valenzuela's compliance to stop hurting himself and submit to hand restraints. Capt. Frith stated when the team entered the cell, Inmate Valenzuela was resisting by trying to fight the team. The Inmate attempted to bite staff and continued to try to pull himself toward the toilet so he could put his head in it. Capt. Frith stated he continued to give the Inmate orders to comply and he continued to refuse. Capt. Frith stated once the team was able to restraint the Inmate, the team did not use any unnecessary force. The team used appropriate force to be able to stop him from seriously hurting himself and any team member.

**Findings:**

After review of video footage and statements and interviews the following was noted:

Officer McGuire did strike Inmate Valenzuela several times throughout the Use of Force. He utilized four strikes to get the Inmate to let go of the toilet when pulling his arms did not work. Officer McGuire did strike the Inmate three time to the facial area and used a pressure point to prevent from getting bit by the Inmate. Officer McGuire utilized the force necessary needed to gain the compliance of the Inmate. Officer McGuire stopped force once the Inmate complied and was no longer needed. Team members did receive minor injuries but did what was necessary in preventing serious injuries to themselves and the inmate. There were no findings of misconduct or excessive force used by Officer McGuire during the Use of Force. Formal Employee Disciplinary will not be recommended.

Officer Enriquez did strike Inmate Valenzuela with an open hand to the back throughout the Use of Force. He utilized strike in order for the Inmate to stop attempting to bite him. Officer Enriquez utilized the force necessary needed to gain the compliance of the Inmate. Officer Enriquez stopped force once the Inmate complied and was no longer needed. Team members did receive minor injuries but did what was necessary in preventing serious injuries to themselves and the inmate. There were no findings of excessive force used by Officer Enriquez during the Use of Force. Officer Enriquez did violate the proper procedures in lifting an Inmate refusing to cooperate during an escort procedure in accordance to the Use of Force Plan. This was an unintentional act by the Officer but in accordance to the progressive disciplinary and guidance from the agency's Use of Force Office, a Letter of Instruction will be sufficient to prevent future acts of possible violations by the Officer.

Officer Harp did strike Inmate Valenzuela several times throughout the Use of Force. He utilized two strikes to get the Inmate to let go of the toilet when pulling his arms did not work. Officer Harp did strike the Inmate in the rib area after missing his arm when the Inmate moved it. Officer Harp utilized the force necessary needed to gain the compliance of the Inmate. Officer Harp stopped force once the Inmate complied and was no longer needed. Team members did receive minor injuries but did what was necessary in preventing serious injuries to themselves and the inmate. There were no findings of misconduct or excessive force used by Officer Harp during the Use of Force. Formal Employee Disciplinary will not be recommended.

Officer Martinez did strike Inmate Valenzuela twice with closed fist to the upper body during the Use of Force. He utilized strikes in order for the Inmate to stop attempting to bite. Officer Martinez utilized the force necessary needed to gain the compliance of the Inmate. Officer Martinez stopped force once the Inmate complied and was no longer needed. Team members did receive minor injuries but did what was necessary in preventing serious injuries to themselves and the inmate. There were no findings of excessive force used by Officer Martinez during the Use of Force. Officer Martinez did violate the proper procedures in lifting an Inmate refusing to cooperate during an escort

procedure in accordance to the Use of Force Plan. This was an unintentional act by the Officer but in accordance to the progressive disciplinary and guidance from the agency's Use of Force Office, a Letter of Instruction will be sufficient to prevent future acts of possible violations by the Officer.

Once the Use of Force packet and video documentation was reviewed, it was found that Captain Frith took digital photo of the Inmate with no clothes on or anything covering him. Capt. Frith should have taken all reasonable steps to avoid nude photographs, for example placing a towel in front of offender's private body parts. Capt. Frith failed to cover the Inmate before taking the photos. Capt. Frith will receive a Letter of Instruction for the Use of Force Plan violation.

**Investigation Conducted by:**

Major Oliver Vasquez

TEXAS DEPARTMENT OF CRIMINAL JUSTICE
CORRECTIONAL INSTITUTIONS DIVISION

## INTER-OFFICE COMMUNICATION

TO: Major Vasquez

Date: 1/13/21

FROM: Greg Bostic

Subject: As stated

I was 4 man on the team, and when we went in on the inmate all I did was first help get the leg restraints on. officer martinez had the leg restraints and was trying to put them on but the inmate was resisting by not staying still. the inmate was going as far as trying to bite staff's hand's. I held the inmates legs that way martinez could get the leg restraints. once they were put on I helped get the hand restraints on by getting the inmates arm to his back. The inmate was still making hard by fighting to keep his arm infront of him. I never had to strike the inmate due to me being by his feet, The inmate did not attempt to bite my hand.

TEXAS DEPARTMENT OF CRIMINAL JUSTICE
CORRECTIONAL INSTITUTIONS DIVISION

## INTER-OFFICE COMMUNICATION

TO: Major ~~Vat~~ Vasquez
FROM: McGuire COIV

Date: 1-25-21
Subject: Valenzuela, Ruben

On 1-13-21 at 148pm I officer Robert. McGuire COIV during the use of force on offender Valenzuela, Ruben did strike the offender on each hand 2times because the offender Was holding onto the Toilet and would not Release. upon the 2nd strike to each hand the offender did release The toilet. upon Releasing the toilet The offender began Trying to head but ~~at~~ [RM] and bite Me in the Thighs I did Strike the offender in the face 3times. upon my 3rd strike the offender did stop Attempting to bite Me or head but me. However the offender did continue to Resist staff and ~~Att~~ [RM] Pull himself back up on the Toilet.

There was insuficient space for myself to Assist in carrying The offender out of the cell.

R McGuire COIV

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## CORRECTIONAL INSTITUTIONS DIVISION

## INTER-OFFICE COMMUNICATION

TO: Major Vasquez

Date: 1-25-21

FROM: Enriquez CO 4

Subject: Valenzuela / Fact Finding

On 1-13-21 at 1:45 pm i was working overtime in the Afternoon and I responded to the incident command System. I was told by captain Frith that he needed me in the 5 man team as 2 man. we then were ordered to enter the cell and inmate Valenzuela was in his cell attemp to drown himself. officer Mcguire CO4 was 1 man and we both stopped inmate from his actions and attempted to place hand restraints, offender Valenzuela then attempted to bite us and Strike us with his arms so we had to use Force to contain his actions. I struck the offende in his upper body to gain compliance and we were able to place offender in hand restraints. we were then ordered by captain Frith to escort the offender to the Shower cell to proceed in the decontamination proce. and the offender ~~walked with us on his own will we contained~~ refused to walk to the Shower so myself and officer Martinez CO 5 assisted said offender to. the Shower Area. He was evaluated by medical and the offender stated he had no injuries. The next process was to take pictures and the offender was being aggresive again, i then asked captain Frith if i can attempt to translate his orders in Spanish and we were then very succesfull. offender valenzuela was then calm and the process was continued. we then escorted valenzuela back to the cell and ICS was terminated

M. Enriquez

1-25-21

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
# CORRECTIONAL INSTITUTIONS DIVISION

## INTER-OFFICE COMMUNICATION

TO: Major Vasquez

Date: 1-25-21

FROM: J. Harp CO IV

Subject: ~~A# Valenzuela SHORT~~ Fact Finding

On 1-13-21, I responded to Restrictive Housing for an ICS at approx. 1:48 pm. When I arrived I was the video camera operator until I was relieved by Sgt. Jose Valdez so I could participate on the Five Man team. On the team I was the #3 man, so my job was to apply the hand restraints to the inmate. Once we entered the cell, I attempted to apply the restraints but Inmate Valenzuela had a firm grip on the toilet, I tried to pull his hands off, but couldn't so I struck his arm to get him to release. I had struck his arm twice and went to strike again in order for him to let go. When I was trying to strike the arm, he moved it quickly and I ended up striking his rib cage. Once he released the toilet I stopped my attempts and focused on getting the restraints on him. I assisted Inmate Valenzuela to his feet but was unaware that he was not walking on his own.

[signature]
1-25-21

TEXAS DEPARTMENT OF CRIMINAL JUSTICE
CORRECTIONAL INSTITUTIONS DIVISION

## INTER-OFFICE COMMUNICATION

**TO:** MAJOR VASQUEZ **Date:** 1-25-2021

**FROM:** officer H. marthen **Subject:** As stated

On 1-13-2021 I officer Harry Marthen was assigned to Restrictive Housing. I was assigned to the five man team because offender valenzuela, Ruben refused to submit to Hand Restraints. I was assigned to flve man. while trying to restrain the offender when we went in offender was trying to bite and hit the five man team to put his head back in the toilet to drown himself. I struck the offender two times In the upper body to turn offenders body away from me wear I didnt get bit. offender quit biting in my direction so I had no need to strike the offender anymore. hand and leg restraints were finally applied to the offender after several attempts due to him trying to bite and assault staff - offender was then helped by officer enriquez and I to the shower because he refused to walk. Due to there not being enough room we were not able to assist him properly to the shower. So we held his upper body to keep him in the standing position

H [signature] 1-25-2021

TEXAS DEPARTMENT OF CRIMINAL JUSTICE

CORRECTIONAL INSTITUTIONS DIVISION

Inter-office Communications

---

To: Warden Edmundo Cueto

From: CPT. D. Frith

Date: 1/25/2021

Subject: As Stated

---

On 1/13/2021 I, Captain Darrell Frith was in my office which is attached to Restrictive Housing. Officer James Skipworth CO V was assigned as the Constant and Direct Observation Officer in Restrictive Housing, he knocked on my door and asked me to come into Restrictive Housing. I entered Restrictive Housing and observed Inmate Valenzuela attempting to cut his wrist on a metal plate that he had bent out on the wall. Myself and Officer Skipworth ordered the Inmate to stop trying to cut his wrist and he complied, he then wrapped his arms around the bottom of the toilet, placed his face in the water and shifted his body weight so that all of his body weight was over his upper torso and face and continued to hold his face in the water sucking in the water until he fell over. He coughed up water and was choking, he immediately got up and started doing it again. To prevent the Inmate from causing harm to himself Officer Skipworth administered a burst of chemical agents towards the inmate. I initiated ICS and requested medical, additional staff and video camera to Restrictive Housing. The chemical agents had no effect on the inmate and he continued to attempt to drown himself. I continued to order the Inmate to stop trying to harm himself and he continued to refuse. LVN Castillo arrived to Restrictive Housing and I asked her if she wanted to see him cell side and she said no that he needed to be seen in medical for further assessment. I ordered the Inmate several more times to submit to hand restraints and he continued to refuse. I gained authorization for the use of a 5 man cell extraction team and additional chemical agents by Senior Warden Hefner. I ordered the Inmate several times to come to the cell door and to submit to hand restraints and warned him that additional chemical agents would be used to gain compliance and he stated "no, sir." I administered a burst of MK9 LE 10 chemical agents towards the inmate hitting him in the upper torso. The chemical agents had no effect on the inmate and he continued to refuse to come to the cell door to submit to hand restraints. Inmate Valenzuela continued to stick his face in the water in attempt to drown himself. I ordered the Inmate several more times to stop trying to harm himself and come to his cell door and submit to hand restraints and he continued to

refuse. I administered a second burst of chemical agents towards the inmate and gave ordered him to come to the cell door again and he refused. The chemical agents had no effect on the inmate and he continued to attempt to drown himself and refusing orders. I gave a final order to the inmate and warned him that a 5 man team would be used to gain compliance, the inmate stated "no, sir" once again. I opened the cell door and the 5 man team entered the cell, I stood at the cell door and was walking back and forth to the camera to update the camera. The Inmate was fighting with the team, trying to push them off I witnessed the inmate attempt to bite the team members and while he was struggling with the staff I saw him hit his head on the toilet. I saw the inmate grabbing at staff and refusing to submit to hand restraints, I never saw any staff members hit the inmate but heard what appeared to be strikes while going back and forth to the camera. The inmate was placed in restraints and the inmate was picked up and taken to the shower. While this occurred I was talking to LVN Castillo and when I turned around I noticed that the Officers were dragging the inmate. I went to address this, however it was too late and the inmate was already in the shower area. I ordered the inmate to allow medical to conduct an assessment on him and if he tried to assault her additional force would be used. The inmate stated "yes, sir" and LVN Castillo conducted an assessment on the Inmate and noted no injuries. She then asked the inmate if he had any injuries and he stated "no, ma'am." I entered the cell and removed the UOF equipment that had fell off of the 5-man team and pushed the metal plate back in. The inmate was then escorted from the shower and placed back into 3 cell were the 5 man team assisted him into the prone position. I ordered the inmate to remain in the prone position until the restraints were removed and the cell door was secured. The inmate stated "yes, sir" The 5 man team then removed the restraints and exited the cell. I closed the cell door, read the UOF-2 to the inmate and instructed him on in cell decontamination. I then terminated the UOF.

Cpt. [signature]

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report

### *Employee Use of Force Fact Finding Inquiry*

Unit *(Name and Alpha Code)*: Wallace Unit WL

Report Number: M-00338-01-21 Incident Number (*if applicable*): I-00721-01-21

***Instructions to Assistant Warden (or designee):***

- *Complete Sections I and II;*
- *If employees or offenders were interviewed, list them in Section II. There is no requirement to call all those, or limit yourself to just those, named in the Report.*
  - *➢New or additional information must be supported by written statements on an interoffice communication (IOC).*
- *If facts are evident you may determine there is no necessity to conduct interviews; if so, proceed to Section III; and*
- *Provide a summary of findings and recommendations in Section III for the Reprimanding Authority to review.*

***Instructions to Reprimanding Authority:***

- *Note your evaluation of the employee's conduct and action taken, if any, in Section IV.*

**I. EMPLOYEE PARTICIPANT OR WITNESS**

| Printed Last | First | MI | Rank or Title |
|---|---|---|---|
| McGuire | Robert | | COIV |

**II. FACT FINDING INQUIRY**

a. Fact Finding Inquiry began on *(date)*: 1/25/2021 and ended on *(date)*: 2/19/2021

b. **EMPLOYEE(S)** interviewed *(please print)*:

| Last | First | MI | Rank |
|---|---|---|---|
| Enriquez | Manuel | | COIV |
| Harp | Joe | | COIV |
| Martinez | Harry | | COIV |

c. **OFFENDER(S)** interviewed *(please print)*:

| Last | First | MI | TDCJ# | Custody |
|---|---|---|---|---|
| | | | | |
| | | | | |

**III. SUMMARY AND FINDINGS**

a. Summary of inquiry:

See attached Summary.

b. Findings: Based on interviews , it appears the employee's actions were:

☒ Appropriate; ☐ Inappropriate *(➢ **Determined to be 'aggravated'?*** ☐ YES ☐ NO),

... as evidenced by: ☐ Alleged violation of departmental rules/regulations *(Specify)*:

☐ Other *(Specify)*:

c. Recommendations: ☒ No action taken ☐ Refer to the OIG for investigation ☐ Employee Hearing pursuant to PD-22

☐ Other *(Specify)*:

d. Assistant Warden *(or designee)* conducting inquiry: Oliver Vasquez Major [signature] 2/18/21

Printed Name/Rank or Title Signature/Date

**IV. FINAL OUTCOME**

a. Evaluation: I have found the employee's actions were: ☒ Appropriate ☐ Inappropriate *(**Determined to be 'aggravated'?*** ☐ YES ☐ NO) -or-

☐ I am unable to determine based on evidence presented

b. Action: ☒ No action taken ☐ Refer to the OIG for investigation *(UOF-OIG Referral Attached)* ☐ Other *(Specify)*:

☐ Employee Hearing to be scheduled *Attach copy of employee's UOF statement ONLY to a PERS 325 and a copy of this UOF-9 and forward to the unit human resources representative to notify the employee of hearing.*

➢ ***Once hearing is held pursuant to PD-22, attach copy of PERS 185 to original UOF-9.***

c. Reprimanding Authority: Jody Hefner Warden [signature] 2-23-21

Printed Name/Rank or Title Signature/Date

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report

### *Employee Use of Force Fact Finding Inquiry*

Unit *(Name and Alpha Code)*: Wallace Unit WL

Report Number: M-00338-01-21 Incident Number *(if applicable)*: I-00721-01-21

***Instructions to Assistant Warden (or designee):***

- *Complete Sections I and II;*
- *If employees or offenders were interviewed, list them in Section II. There is no requirement to call all those, or limit yourself to just those, named in the Report.*
  - *➢New or additional information must be supported by written statements on an interoffice communication (IOC).*
- *If facts are evident you may determine there is no necessity to conduct interviews; if so, proceed to Section III; and*
- *Provide a summary of findings and recommendations in Section III for the Reprimanding Authority to review.*

***Instructions to Reprimanding Authority:***

- *Note your evaluation of the employee's conduct and action taken, if any, in Section IV.*

**I. EMPLOYEE PARTICIPANT OR WITNESS**

| Printed Last | First | MI | Rank or Title |
|---|---|---|---|
| McGuire | Robert | | COIV |

**II. FACT FINDING INQUIRY**

a. Fact Finding Inquiry began on *(date)*: 1/25/2021 and ended on *(date)*: 2/19/2021

b. **EMPLOYEE(S)** interviewed *(please print)*:

| Last | First | MI | Rank |
|---|---|---|---|
| Bostic | Greg | | COIII |
| Frith | Darrell | | Captain |
| | | | |

c. **OFFENDER(S)** interviewed *(please print)*:

| Last | First | MI | TDCJ# | Custody |
|---|---|---|---|---|
| | | | | |
| | | | | |

**III. SUMMARY AND FINDINGS**

a. Summary of inquiry:

See attached Summary.

b. Findings: Based on interviews , it appears the employee's actions were:

☒ Appropriate; ☐ Inappropriate *(➢ **Determined to be 'aggravated'?*** ☐ YES ☐ NO),
... as evidenced by: ☐ Alleged violation of departmental rules/regulations *(Specify)*:
☐ Other *(Specify)*:

c. Recommendations: ☒ No action taken ☐ Refer to the OIG for investigation ☐ Employee Hearing pursuant to PD-22
☐ Other *(Specify)*:

d. Assistant Warden *(or designee)* conducting inquiry: Oliver Vasquez Major [signature] 2/18/21
Printed Name/Rank or Title Signature/Date

**IV. FINAL OUTCOME**

a. Evaluation: I have found the employee's actions were: ☒ Appropriate ☐ Inappropriate ***(Determined to be 'aggravated'?*** ☐ YES ☐ NO) - **or-**
☐ I am unable to determine based on evidence presented

b. Action: ☒ No action taken ☐ Refer to the OIG for investigation *(UOF-OIG Referral Attached)* ☐ Other *(Specify)*:
☐ Employee Hearing to be scheduled *Attach copy of employee's UOF statement ONLY to a PERS 325 and a copy of this UOF-9 and forward to the unit human resources representative to notify the employee of hearing.*
➢ ***Once hearing is held pursuant to PD-22, attach copy of PERS 185 to original UOF-9.***

c. Reprimanding Authority: Jody Hefner Warden [signature] 2-23-21
Printed Name/Rank or Title Signature/Date

# OFFICIAL INVESTIGATION

**Subject:** Fact Finding Use of Force (M-00338-01-21/I-00721-01-21)

**Allegation:**

On January 13, 2021 a Use of Force (M-00338-01-21/I-00721-01-21) involving the utilization of a five man extraction team concerning Inmate Valenzuela, Ruben #1785292 (H/M/26/G4/L3) due to procedural violations involving staff and Inmate Valenzuela. Fact Finding was initiated on January 25, 2021 involving McGuire, Robert CO IV, Officer Enriquez, Manuel CO IV, Officer Harp, Joe CO IV, Officer Martinez, Harry CO V, Officer Bostic CO III, Greg and Captain Frith, Darrell.

**Summary:**

On January 13, 2021 Inmate Valenzuela (Restrictive Housing #3) was in Constant Direct Observation (CDO) awaiting to be transferred to the Montford Unit. Correctional Officer (CO) V Skipworth, James was the CDO Officer assigned. Office Skipworth noticed Inmate Valenzuela stick his head in his toilet in the assigned housing area attempting to drown himself. Officer Skipworth gave orders to Inmate Valenzuela to stop. Officer Skipworth then knocked on Captain (Capt.) Frith, Darrell office door located which is located within the restrictive housing area. Capt. Frith entered the area and observed the inmate sticking his head in the toilet attempting to drown himself. Capt. Frith ordered the inmate to stop which he complied. Inmate Valenzuela then went to rubbing his wrist on a piece of metal plate (top corner bent) located inside the cell by the wall/toilet area. Officer Skipworth ordered the inmate to stop or chemical agents would be used. Inmate Stopped attempting to himself on his wrist and then went to attempt to drown himself in the toilet. Orders were then given by Capt. Frith and Officer Skipworth to stop and explained chemical agents would be used. Inmate Valenzuela refused orders and chemical agents was administered by Officer Skipworth. Chemical agents had no effect. Capt. Frith initiated the Incident Command System (ICS) requesting additional staff, medical staff and a video camera operator. Officer Harp, Joe, CO IV, arrived with video camera. Capt. Frith conducted a narration, the inmate was not in view due to the layout and design of the cell in Restrictive Housing. Officer Harp was at the entrance of Capt. Frith office door opened. Licensed Vocational Nurse (LVN) Castillo, Sandy arrived and was briefed by Capt. Frith. LVN Castillo stated the inmate would need to be taken to the unit infirmary. Officer McGuire and ordered the inmate to comply with application of hand restraints so he could be escorted to the unit infirmary and explained if he refused chemical agents could be used. Officer Bostic, Greg was on scene and was going to be the escort officer with Officer McGuire. Inmate Valenzuela refused to comply with orders and attempted to drown himself in the toilet. Capt. Frith then ordered Inmate Valenzuela to comply with application of hand restraints and explained chemical agents

would be administered to no avail. Capt. Frith then contacted Senior Warden Hefner, Jody for authorization for a use of force cell move team. During gaining authorization Officer McGuire is giving orders to inmate Valenzuela to comply with applications of hand restraints. Capt. Frith receives authorization to utilize a cell force move team and chemical agents. Officer McGuire notifies Capt. Frith the inmate has placed his head in the toilet. Capt. Frith orders Inmate Valenzuela to submit to hand restraints, be assessed by medical staff and explained the use of chemical agents. Capt. Frith then administers a burst of chemical agents to Inmate Valenzuela to gain compliance. Inmate Valenzuela refused. Capt. Frith orders Inmate Valenzuela to comply with hand restrains so he can be seen by medical and explained consequence sf chemical agents to gain compliance. Inmate Valenzuela refused. Capt. Frith briefed camera that Sergeant (SGT) Valdez, Jose was going to relieve Officer Harp as video camera operator. Capt. Frith orders the inmate to comply to hand restraints and Inmate Valenzuela refuses. Capt. Frith orders the inmate to submit to a hand restraint or chemical agents would be used. Inmate Valenzuela refuses and Capt. Frith administers another burst of chemical agents to gain compliance to no avail. Capt. Frith gives several orders to submit to hand restraints and consequences that chemical agents would be used to gain compliance. Inmate Valenzuela refuses to comply. Capt. Frith identified team members: 1 man) Officer McGuire, COIV, 2 man) Officer Enriquez, Manuel CO IV, 3 man) Officer Harp CO IV, 4 man) Officer Bostic, CO III and 5 man) Officer Martinez, Harry CO V. Capt. Frith orders Inmate Valenzuela to comply with application of hand restraints and explains consequences that chemical agents and the force move team will be utilized to gain compliance. Inmate Valenzuela refuses. Capt. Frith repeats orders and consequences to inmate Valenzuela and refuses. Capt. Frith opens the cell door and the team enter the cell. Inmate is instructed to not resist. Officer McGuire and Officer Enriquez observe the inmate by the toilet area and pull him away. In doing so Inmate Valenzuela is attempting to bite staff and strike and headbutt Officer McGuire and Officer Enriquez as he is trying to go back to the toilet area. Officer McGuire punches Inmate Valenzuela in both hand for a total of four punches due to the inmate attempting to go back to the toilet area and grabbing and not allowing hand restraints to be placed. Inmate Valenzuela attempted to bite Officer McGuire; Officer McGuire then punches Inmate Valenzuela in his face three times and inmate stops attempting to bite him. Inmate Valenzuela continues to grab toilet area and resist application of hand restraints and resisting staff. Officer Enriquez strike Inmate Valenzuela twice in the upper body due to his actions of trying to bite and strike staff this is noted when the leg restraints are being repositioned. Officer Harp observes Inmate Valenzuela trying to bit staff, Officer Harp attempts to place hand restraints but cannot due to Inmate Valenzuela's actions of biting staff, resting and grabbing the toilet area. Officer Harp then strikes Inmate Valenzuela in the rib area 3-4 times due to his actions of resisting staff and not complying. Officer Bostic entered the cell and sees the inmate attempting to bit staff as they were trying to place Inmate Valenzuela in hand restraints. Officer Bostic holds inmate's legs so Officer Martinez can place the leg restraints. Officer Bostic holds inmates legs as staff is still trying to place hand restraints on Inmate Valenzuela. Officer Martinez applies leg restraints on Inmate Valenzuela. Officer Martinez then assist Officer Harp and Officer Enriquez in securing the inmate in hand restraints. Inmate Valenzuela is seen attempting to bite staff and still not refusing to submit to hand restraints. Office Martinez then strikes Inmate Valenzuela twice in the

upper body (shoulder area) from where he is positioned for inmate to stop biting staff and himself as he is trying to grab his arms and turn him away from him. Inmate Valenzuela is being instructed to not resist staff and place his hands behind his back to no avail. Capt. Frith observed Officer Bostic leg get caught in Inmate Valenzuela legs along with the leg restraints. Capt. Frith instructed for the leg restraints to be removed so Officer Bostic could untangle his leg and prevent any injuries to Officer Bostic as they are attempting to turn Inmate Valenzuela to his stomach. . Leg restraints were re-applied by Officer Bostic. Staff was able to secure him with minimum amount needed to get the inmate secured. Capt. Frith then calls for a gurney and states inmate is in restraints. LVN Castillo conducted a cell side physical due to inmate behavior and actions. LVN Castillo asked the inmate if he had any injuries. Inmate Valenzuela did not respond to LVN Castillo, she noted no injuries. Capt. Frith informed Inmate Valenzuela he would be assisted to his feet by the force cell move team and taken to the shower. Inmate Valenzuela was then rolled to his side by force cell move team members so he could be assisted to his feet. Officer Martinez and Officer Enriquez were the team members who took Inmate Valenzuela to the shower and dragged him into the shower and secured the shower door. Capt. Frith tells Inmate Valenzuela that medical will do an assessment of him and if he attempt to assault her additional force would be used. LVN Castillo asked the inmate if he has any injuries from the use of force. Inmate replies "No Ma'am." LVN Castillo states the inmate is reporting no injuries to the use of force. Capt. Frith take photos of Inmate Valenzuela. Inmate Valenzuela does not comply to have photos taken of him. Inmate Valenzuela then walks into the shower, and asks for water and then starts speaking in Spanish asking for water. Officer Enriquez (Qualified Spanish interpreter) then talks to him in Spanish and tell him to come and have the hand restraints removed so he could shower and photos be taken of him. Inmate Valenzuela complies. Inmate Valenzuela states he does not want to take photos and does not want to shower. Officer Enriquez then attempts to get him to take photos and Inmate is refusing. Capt. Frith instructs Officer Enriquez to tell Inmate Valenzuela he will be escorted back to the cell and if he does not comply chemical agents will be utilized. Officer Enriquez explains he will be escorted to his cell. Capt. Frith orders Inmate Valenzuela to be escorted to the cell and use of chemical agents will be used. Capt. Frith informs Officer Enrique to instruct Inmate Valenzuela he will go to his cell, will receive water and explains if he does not chemical agents will be used. Inmate Valenzuela then complies with orders and instructions. While waiting to be escorted the cell is being cleared and cleaned. The metal piece is placed back in position. Team members then escort the inmate and assist Inmate Valenzuela to a prone position. Hand/Leg restraints are removed, team members exit the cell and cell door is secured. Capt. Frith then reads inmate participation report. Capt. Frith then gives decontamination procedures to Inmate Valenzuela and terminates use of force.

Officer McGuire was interviewed and he stated he was assigned as one-man on a five man extraction team due to Offender Valenzuela not wanting to comply with orders to submit hand restraints and stop attempting to harm himself. Chemical agents had been utilized and the usage did not work. Captain Frith gave orders and warnings to Inmate Valenzuela. He refused and Capt. Frith unsecured the door. Officer McGuire stated Inmate Valenzuela was at the toilet with his head submerged in the water. He used the

shield to push him away from the toilet and onto the floor. Inmate Valenzuela began fighting the team and keep grabbing at the toilet. Once he grabbed the toilet, Officer McGuire stated he could not pull his arms to get him to let go, so he struck the inmate four times to his hands to get him to let go. Once Inmate Valenzuela let go of the toilet, he did not hit his hands anymore. Officer McGuire stated he continue to attempt to get Inmates Valenzuela's hands behind his back but he kept resisting. He stated Inmate Valenzuela began attempting to bite staff. When Inmate Valenzuela attempted to bite him, he punched him three times in the facial area to prevent him from biting him. Inmate Valenzuela would not stop trying to bite him and other staff members, so he used a pressure point to his temple area to get him to stop. Inmate Valenzuela stopped attempting to bite but continued to resist staff by not allowing them to place hand restraints on him. He stated the team was able to put him in hand and leg restraints. He was escorted out of the cell and place in the shower area. Officer McGuire stated he did receive minor injuries due to the Use of force and stated he only punched the Inmate to prevent from receiving anymore or serious injuries.

Officer Manuel Enriquez COIV stated he was assigned as two-man on a five man extraction team. He stated when the team was utilized, went in behind Officer McGuire and the Inmate was pushed to the floor. He stated the Inmate kept fighting, trying to hold on to the toilet and attempting to bite staff. He stated he could not really tell what everyone was doing. He stated he kept grabbing the Inmates arms in an attempt to place them behind his back for placement of hand restraints. He stated the Inmate kept resisting and causing him to lose grip. Officer Enriquez stated he noticed Inmate Valenzuela was attempting to bite him and other staff. Officer Enriquez then struck him with an open hand to the back to gain his compliance and to stop him from biting him. He stated he did not need to strike the Inmate anymore but the Inmate did continue to resist. The team was able to place hand and leg restraints on the Inmate. Officer Enriquez stated he assisted Inmate Valenzuela in standing up but refused to walk. Inmate Valenzuela refused orders to walk, he and Officer Martinez held up Inmate Valenzuela. Officer Enriquez stated the area was small, so he and Officer Martinez lifted him up by his arms and carried him to the shower area. Inmate Valenzuela was secured in the shower area as they cleared out his cell. Officer Enriquez stated Inmate Valenzuela complied with the rest of the procedures and no more force was needed.

Officer Joe Harp COIV stated he was assigned as three-man on a five man extraction team. He stated when he went into the cell with the team, Inmate Valenzuela was resisting and fighting the team. Officer Harp was trying to gain control of the Inmate's arms to place hand restraints on him but he kept resisting. Officer Harp stated Inmate Valenzuela grabbed ahold of the toilet and would not let go. Officer Harp stated he struck his arm with a closed fist twice to attempt to gain his compliance to release the toilet. When the Inmate did not let go, he attempted to strike his arm again but he let go and Officer Harp stated he hit the Inmate's rib area. Officer Harp stated he stopped the strikes when he let go. Officer Harp stated Inmate Valenzuela kept resisting and trying to bite the team. He concentrated on trying to restrain his hands, he could not see what the other staff was doing. Officer Harp stated the team was finally able to place hand and leg restraints on the Inmate.

Officer Harry Martinez COV stated Inmate Valenzuela began fighting the team when the team entered the cell. Inmate Valenzuela would comply with orders and resisted the team. Officer Martinez attempted to gain control of the Inmate's legs to assist in placement of leg restraints but he was resisting by using his legs to push himself towards the toilet. Officer Martinez stated he kept losing his grip of his legs. He noticed Inmate Valenzuela was trying to bite staff. Officer Martinez stated he gave two strikes to the inmate's upper body to get him to stop trying to bite. Inmate Valenzuela stopped temporally trying to bite. He stated he then grabbed his left leg again. Officer Martinez was able to straighten out his legs with assistants and Officer Martinez applied the leg restraints as Inmate Valenzuela continued to resist staff. Officer Martinez stated he assisted in holding down the Inmate's upper body. Inmate Valenzuela continued fighting staff. Once Inmate Valenzuela was placed in hand restraints, Officer Martinez stated he started calming down. Officer Martinez stated he only used the force necessary to gain the Inmate's compliance to stop trying to harm himself or others. Once the Inmate stopped resisting he no long utilized any force. Officer Martinez stated Inmate Valenzuela was assisted to his feet and he refused orders to walk out of the cell. Officer Martinez stated the Inmate stiffened his body at the cell doorway and he lifted his body up to keep him standing due to no room in the area to be assisted by other team members. He and Officer Enriquez lifted him up and carried him to the shower area. The door was secured. Inmate Valenzuela became compliant and no further force was utilized.

Officer Greg Bostic COIII stated he was four man on the extraction team and when the team was utilized, he was trying to assist in placing leg restraints on Inmate Valenzuela. Officer Bostic stated Inmate Valenzuela was resisting by fighting the team, attempting to pull himself toward the toilet and trying to bite staff. Officer Bostic stated when he would take control of the Inmate's leg, he would resist. Once the leg restraints were applied, Officer Bostic stated he held on to the Inmate's legs due to him still resisting the placement of hand restraints. Officer Bostic stated so much was going on during the use of force but his did notice Inmate Valenzuela trying to bite staff and continuously holding on to the toilet. He could not tell who was doing what because he was concentrating on the Inmate's legs. Once the Inmate became compliant, he let go of his legs so that the team members could assist him to his feet. Officer Bostic stated he never hit the Inmate and utilized force needed to hold the Inmate's legs.

Captain Darrell Frith stated he utilized chemical agents and a five man extraction team in attempt to gain Inmate Valenzuela's compliance to stop hurting himself and submit to hand restraints. Capt. Frith stated when the team entered the cell, Inmate Valenzuela was resisting by trying to fight the team. The Inmate attempted to bite staff and continued to try to pull himself toward the toilet so he could put his head in it. Capt. Frith stated he continued to give the Inmate orders to comply and he continued to refuse. Capt. Frith stated once the team was able to restraint the Inmate, the team did not use any unnecessary force. The team used appropriate force to be able to stop him from seriously hurting himself and any team member.

**Findings:**

After review of video footage and statements and interviews the following was noted:

Officer McGuire did strike Inmate Valenzuela several times throughout the Use of Force. He utilized four strikes to get the Inmate to let go of the toilet when pulling his arms did not work. Officer McGuire did strike the Inmate three time to the facial area and used a pressure point to prevent from getting bit by the Inmate. Officer McGuire utilized the force necessary needed to gain the compliance of the Inmate. Officer McGuire stopped force once the Inmate complied and was no longer needed. Team members did receive minor injuries but did what was necessary in preventing serious injuries to themselves and the inmate. There were no findings of misconduct or excessive force used by Officer McGuire during the Use of Force. Formal Employee Disciplinary will not be recommended.

Officer Enriquez did strike Inmate Valenzuela with an open hand to the back throughout the Use of Force. He utilized strike in order for the Inmate to stop attempting to bite him. Officer Enriquez utilized the force necessary needed to gain the compliance of the Inmate. Officer Enriquez stopped force once the Inmate complied and was no longer needed. Team members did receive minor injuries but did what was necessary in preventing serious injuries to themselves and the inmate. There were no findings of excessive force used by Officer Enriquez during the Use of Force. Officer Enriquez did violate the proper procedures in lifting an Inmate refusing to cooperate during an escort procedure in accordance to the Use of Force Plan. This was an unintentional act by the Officer but in accordance to the progressive disciplinary and guidance from the agency's Use of Force Office, a Letter of Instruction will be sufficient to prevent future acts of possible violations by the Officer.

Officer Harp did strike Inmate Valenzuela several times throughout the Use of Force. He utilized two strikes to get the Inmate to let go of the toilet when pulling his arms did not work. Officer Harp did strike the Inmate in the rib area after missing his arm when the Inmate moved it. Officer Harp utilized the force necessary needed to gain the compliance of the Inmate. Officer Harp stopped force once the Inmate complied and was no longer needed. Team members did receive minor injuries but did what was necessary in preventing serious injuries to themselves and the inmate. There were no findings of misconduct or excessive force used by Officer Harp during the Use of Force. Formal Employee Disciplinary will not be recommended.

Officer Martinez did strike Inmate Valenzuela twice with closed fist to the upper body during the Use of Force. He utilized strikes in order for the Inmate to stop attempting to bite. Officer Martinez utilized the force necessary needed to gain the compliance of the Inmate. Officer Martinez stopped force once the Inmate complied and was no longer needed. Team members did receive minor injuries but did what was necessary in preventing serious injuries to themselves and the inmate. There were no findings of excessive force used by Officer Martinez during the Use of Force. Officer Martinez did violate the proper procedures in lifting an Inmate refusing to cooperate during an escort

procedure in accordance to the Use of Force Plan. This was an unintentional act by the Officer but in accordance to the progressive disciplinary and guidance from the agency's Use of Force Office, a Letter of Instruction will be sufficient to prevent future acts of possible violations by the Officer.

Once the Use of Force packet and video documentation was reviewed, it was found that Captain Frith took digital photo of the Inmate with no clothes on or anything covering him. Capt. Frith should have taken all reasonable steps to avoid nude photographs, for example placing a towel in front of offender's private body parts. Capt. Frith failed to cover the Inmate before taking the photos. Capt. Frith will receive a Letter of Instruction for the Use of Force Plan violation.

**Investigation Conducted by:**

Major Oliver Vasquez

TEXAS DEPARTMENT OF CRIMINAL JUSTICE
CORRECTIONAL INSTITUTIONS DIVISION

## INTER-OFFICE COMMUNICATION

TO: Major Vasquez

Date: 1/13/21

FROM: Greg Bostic

Subject: As States

I was 4 man on the team, and when we went in on the inmate all I did was first help get the leg restraints on. officer Martinez had the leg restraints and was trying to put them on but the inmate was resisting by not staying still, The inmate was going as far as trying to bite staff's hand's. I held the inmates legs that way Martinez could get the leg restraints. once they were put on I helped get the hand restraints on by getting the inmates arm to his back. The inmate was still making hard by fighting to keep his arm infront of him. I never had to strike the inmate due to me being by his feet, The inmate did not attempt to bite my hand.

TEXAS DEPARTMENT OF CRIMINAL JUSTICE
CORRECTIONAL INSTITUTIONS DIVISION

## INTER-OFFICE COMMUNICATION

TO: Major ~~Hat~~ Vasquez

Date: 1-25-21

FROM: McGuire COIV

Subject: Valenzuela, Ruben

---

On 1-13-21 at 148pm I officer Robert. McGuire COIV during the use of force on offender Valenzuela, Ruben did strike the offender on each hand 2times because the offender Was holding onto the Toilet and would not Release. upon the 2nd strike to each hand the offender did release The toilet upon Releasing the toilet The offender began Trying to head but ~~at~~ [RM] and bite Me in the Thighs I did Strike the offender in the face 3times. upon my 3rd strike the offender did stop Attempting to bite me or head but me. However the offender did continue to Resist staff and ~~Att~~ [RM] Pull himself back up on the Toilet.

There was insuficient space for myself to Assist in carrying The offender out of the cell.

R McGuire COIV

TEXAS DEPARTMENT OF CRIMINAL JUSTICE
CORRECTIONAL INSTITUTIONS DIVISION

# INTER-OFFICE COMMUNICATION

TO: Major Vasquez

Date: 1-25-21

FROM: Enriquez CO 4

Subject: Valenzuela / Fact Finding

On 1-13-21 at 1:45 pm i was working overtime in the Afternoon and I responded to the incident command System. I was told by captain Frith that he needed me in the 5 man team as 2 man. we then were ordered to enter the cell and inmate Valenzuela was in his cell attemp to drown himself. officer Mcguire CO4 was 1 man and we both stopped inmate from his actions and attempted to place hand restraints. offender Valenzuela then attempted to bite us and strike us with his arms so we had to use force to contain his actions. I struck the offende in his upper body to gain compliance and we were able to place offender in hand restraints. we were then ordered by captain Frith to escort the offender to the shower cell to proceed in the decontamination proce. and the offender ~~walked with us on his own will we contained~~ refused to walk to the shower so myself and officer Martinez CO 5 assisted said offender to the shower Area. He was evaluated by medical and the offender stated he had no injuries. The next process was to take pictures and the offender was being aggresive again, i then asked captain Frith if i can attempt to translate his orders in Spanish and we were then very succesfull. offender valenzuela was then calm and the process was continued. we then escorted valenzuela back to the cell and ICS was terminated

M. Enriquez 1-25-21

DEFS' MSJ APPX. 135

CERVANTEZ_00135

TEXAS DEPARTMENT OF CRIMINAL JUSTICE
CORRECTIONAL INSTITUTIONS DIVISION

## INTER-OFFICE COMMUNICATION

TO: Major Vasquez

FROM: J. Haro COIV

Date: 1-25-21

Subject: ~~A# Valenzuela started~~ Fact Finding

On 1-13-21, I responded to Restrictive Housing for an ICS at approx. 1:48 pm. When I arrived I was the video camera operator until I was relieved by Sgt. Jose Valdez so I could participate on the Five Man team. On the team I was the #3 man, so my job was to apply the hand restraints to the inmate. Once we entered the cell, I attempted to apply the restraints but Inmate Valenzuela had a firm grip on the toilet, I tried to pull his hands off, but couldn't so I struck his arm to get him to release. I had struck his arm twice and went to strike again in order for him to let go. When I was trying to strike the arm, he moved it quickly and I ended up striking his rib cage. Once he released the toilet I stopped my attempts and focused on getting the restraints on him. I assisted Inmate Valenzuela to his feet but was unaware that he was not walking on his own.

[signature]
1-25-21

TEXAS DEPARTMENT OF CRIMINAL JUSTICE
CORRECTIONAL INSTITUTIONS DIVISION

## INTER-OFFICE COMMUNICATION

TO: MAJOR VASQUEZ

Date: 1-25-2021

FROM: officer H. marthen

Subject: As stated

On 1-13-2021 I officer Harry Marthen was assigned to Restrictive Housing. I was assigned to the five man team because offender valenzuela, Ruben refused to submit to Hand Restraints. I was assigned to five man. while trying to restrain the offender when we went in offender was trying to bite ~~the~~ and hit the five man team to put his head back in the toilet to drown himself. I struck the offender two times in the upper body to turn offenders body away from me wear I didnt get bit. offender quit biting in my direction so I had no need to strike the offender anymore. hand and leg restraints were finally applied to the offender after several attempts due to him trying to bite and assault staff - offender was then ~~[illegible]~~ helped by officer enriquez and I to the shower because he refused to walk. Due to there not being enough room we were not able to assist him properly to the shower. So we held his upper body to keep him in the standing position

H [signature] 1-25-2021

TEXAS DEPARTMENT OF CRIMINAL JUSTICE

CORRECTIONAL INSTITUTIONS DIVISION

Inter-office Communications

---

To: Warden Edmundo Cueto

From: CPT. D. Frith

Date: 1/25/2021

Subject: As Stated

---

On 1/13/2021 I, Captain Darrell Frith was in my office which is attached to Restrictive Housing. Officer James Skipworth CO V was assigned as the Constant and Direct Observation Officer in Restrictive Housing, he knocked on my door and asked me to come into Restrictive Housing. I entered Restrictive Housing and observed Inmate Valenzuela attempting to cut his wrist on a metal plate that he had bent out on the wall. Myself and Officer Skipworth ordered the Inmate to stop trying to cut his wrist and he complied, he then wrapped his arms around the bottom of the toilet, placed his face in the water and shifted his body weight so that all of his body weight was over his upper torso and face and continued to hold his face in the water sucking in the water until he fell over. He coughed up water and was choking, he immediately got up and started doing it again. To prevent the Inmate from causing harm to himself Officer Skipworth administered a burst of chemical agents towards the inmate. I initiated ICS and requested medical, additional staff and video camera to Restrictive Housing. The chemical agents had no effect on the inmate and he continued to attempt to drown himself. I continued to order the Inmate to stop trying to harm himself and he continued to refuse. LVN Castillo arrived to Restrictive Housing and I asked her if she wanted to see him cell side and she said no that he needed to be seen in medical for further assessment. I ordered the Inmate several more times to submit to hand restraints and he continued to refuse. I gained authorization for the use of a 5 man cell extraction team and additional chemical agents by Senior Warden Hefner. I ordered the Inmate several times to come to the cell door and to submit to hand restraints and warned him that additional chemical agents would be used to gain compliance and he stated "no, sir." I administered a burst of MK9 LE 10 chemical agents towards the inmate hitting him in the upper torso. The chemical agents had no effect on the inmate and he continued to refuse to come to the cell door to submit to hand restraints. Inmate Valenzuela continued to stick his face in the water in attempt to drown himself. I ordered the Inmate several more times to stop trying to harm himself and come to his cell door and submit to hand restraints and he continued to

refuse. I administered a second burst of chemical agents towards the inmate and gave ordered him to come to the cell door again and he refused. The chemical agents had no effect on the inmate and he continued to attempt to drown himself and refusing orders. I gave a final order to the inmate and warned him that a 5 man team would be used to gain compliance, the inmate stated "no, sir" once again. I opened the cell door and the 5 man team entered the cell, I stood at the cell door and was walking back and forth to the camera to update the camera. The Inmate was fighting with the team, trying to push them off I witnessed the inmate attempt to bite the team members and while he was struggling with the staff I saw him hit his head on the toilet. I saw the inmate grabbing at staff and refusing to submit to hand restraints, I never saw any staff members hit the inmate but heard what appeared to be strikes while going back and forth to the camera. The inmate was placed in restraints and the inmate was picked up and taken to the shower. While this occurred I was talking to LVN Castillo and when I turned around I noticed that the Officers were dragging the inmate. I went to address this, however it was too late and the inmate was already in the shower area. I ordered the inmate to allow medical to conduct an assessment on him and if he tried to assault her additional force would be used. The inmate stated "yes, sir" and LVN Castillo conducted an assessment on the Inmate and noted no injuries. She then asked the inmate if he had any injuries and he stated "no, ma'am." I entered the cell and removed the UOF equipment that had fell off of the 5-man team and pushed the metal plate back in. The inmate was then escorted from the shower and placed back into 3 cell were the 5 man team assisted him into the prone position. I ordered the inmate to remain in the prone position until the restraints were removed and the cell door was secured. The inmate stated "yes, sir" The 5 man team then removed the restraints and exited the cell. I closed the cell door, read the UOF-2 to the inmate and instructed him on in cell decontamination. I then terminated the UOF.

Cpt. [signature]

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report
### *Supervisor Summary*

Unit *(Name and Alpha Code)*: Wallace WL

Report Number: M-00338-01-21 Incident Number (*if applicable*): I-00721-01-21

## I. USE OF FORCE OCCURRED

a. Use of force was used: Date 1/13/2021 Time 1346

b. Location where use of force occurred: Restrictive Housing 3 Cell

## II. PARTICIPANTS

a. Does report information indicate excessive or unnecessary force was used against an offender who is:

Under 18 yrs of age? ☐ YES ☒ NO
Age 65 or older? ☐ YES ☒ NO
Disabled? ☐ YES ☒ NO

**If 'YES' to any of the above, provide required contact information below:**

Law Enforcement Agency: NA (Printed name of person contacted) NA (Agency name) NA (Contact made by) (Date)

Dept. Family & Prot. Svcs.: ➢ 800/252-5400 NA (Printed name of person contacted) NA (DFPS Call I. D. #) NA (Contact made by) (Date)

b. Were all employee and offender participants immediately screened by medical staff? ☒ YES ☐ NO

If 'NO,' why not? NA

c. If licensed medical staff was not on site, who contacted the "on-call" medical staff? NA (Printed Name) NA (Rank or Title)

Medical Staff Member Contacted: NA (Printed Name) NA (Title) (Date/Time Contacted)

## III. CHEMICAL AGENTS

a. Who authorized usage? Printed Name: Skipworth, James/ Frith, Darre Rank or Title: CO V & Captain

b. **Delivery System and Type of Agent** ***(✓ all that apply)***

| | Agent | | Amount Issued | | Amount Used | |
|---|---|---|---|---|---|---|
| ☒ | **OC** Aerosol *[Carry on Person]* | ➢ | 5.00 | ounces | 3.50 | ounces |
| ☒ | **OC** Aerosol | ➢ | 22.70 | ounces | 6.40 | ounces |
| ☐ | **CS** Aerosol | ➢ | | ounces | | ounces |
| ☐ | **OC** Launcher | ➢ | | rounds | | rounds |
| ☐ | **CS** Launcher | ➢ | | rounds | | rounds |
| ☐ | **OC** Grenade | ➢ | | how many | | how many |
| ☐ | **CS** Grenade | ➢ | | how many | | how many |
| ☐ | **OC** Pepper Fog Generator | ➢ | — *N/A* — | | — *N/A* — | |
| ☐ | **CS** Pepper Fog Generator | ➢ | — *N/A* — | | — *N/A* — | |

c. Was medical staff contacted prior to usage? ☐ YES ☒ NO If 'YES,' who? NA (Printed Name) NA (Title)

If medical staff was not on-site, did the offender participant's name(s) appear on the Use of Force Contraindications List? ☐ YES ☒ NO

➢ If 'YES,' who contacted the "on-call" medical staff? NA (Printed Name) NA (Rank)

Medical Staff Member Contacted: NA (Printed Name) NA (Title) (Date) (Time)

d. Was medical staff present during usage? ☒ YES ☐ NO If 'YES,' who? Castillo, Sandy (Printed Name) LVN (Title)

e. Who administered the chemical agent(s)?

Printed Name Skipworth, James Rank CO V Trained Applicator? ☒ YES ☐ NO

Printed Name Frith, Darrell Rank Captain Trained Applicator? ☒ YES ☐ NO

f. Decontamination: ➢ Explain how offender was decontaminated: Copious amounts of water

➢ Explain how area was decontaminated: Soap and water

**DEFS' MSJ APPX. 140**

Unit *(Name and Alpha Code)*: Wallace WL

Report Number: M-00338-01-21 Incident Number (*if applicable*): I-00721-01-21

## IV. SUMMARY

***Instructions:** After reading all statements and reviewing videotape footage, explain what happened __before__, __during__, and __after__ the use of force; describe efforts made to defuse situation; if there are no offender witnesses, explain why.*

| Inmate Participant(s) | Employee Participant | Employee Witness | Inmate Witness |
|---|---|---|---|
| Valenzuela, Ruben # 1785292 | Skipworth, James CO V<br>Frith, Darrell CPT.<br>McGuire, Robert CO IV (1 man)<br>Enriquez, Manuel CO IV (2 man)<br>Harp, Joe CO IV (3 man)<br>Bostic, Greg CO III (4 man)<br>Martinez, Harry CO V (5 man) | Valdez, Jose SGT. | See Group Refusal |

On 1/13/2021 at approximately 1346 hours, Officer James Skipworth CO V was assigned to Constant Direct Observation (CDO) in Restrictive Housing 3 cell. Officer Skipworth heard Inmate Valenzuela, Ruben # 1785292 yell that he wanted to die. Inmate Valenzuela started to wrap his hands around the bottom of the toilet and place his face in the toilet then shifting all of his weight towards the upper half of his and sucking in water in an attempt to drown himself. Inmate Valenzuela held his face in the water until he fell over gasping for air and coughing up water, Inmate Valenzuela immediately got up and did it again. Officer Skipworth ordered the inmate several times to stop and knocked on Captain Darrell Frith's office door which is attached to Restrictive Housing and asked him to come into Restrictive Housing. Captain Frith entered Restrictive Housing and observed the inmate attempting to drown himself and ordered him to stop and the inmate stopped. Inmate Valenzuela then began rubbing his wrist back and forth on a metal plate that he had pulled a corner out from the wall. Officer Skipworth ordered the inmate to stop trying to harm himself and explained that chemical agents would be administered if he refused. Inmate Valenzuela stopped trying to cut his wrist and began trying to drown himself, Cpt. Frith and Officer Skipworth ordered the inmate several times to stop trying to drown himself and warned the inmate that chemical agents would be administered if he failed to comply. Inmate Valenzuela refused all the orders given and as a trained chemical agent applicator Officer Skipworth administered a burst totaling 3.5 ounces of his Carry on Person (COP) in the inmates direction hitting him in the upper torso area. The chemical agents had no effect on the inmate and he continued to attempt to drown himself and refusing orders to stop trying to harm himself. Cpt. Frith initiated the Incident Command System via hand held radio and requested additional staff, video camera and medical to Restrictive Housing for an inmate trying to harm himself and chemical agents being administered.

Officer Robert McGuire CO IV and Officer Greg Bostic CO III arrived to the scene, Officer McGuire approached the cell door and ordered the inmate to come to the door and to submit to hand restraints and the inmate refused and continued to attempt to drown himself. Officer Joe Harp CO IV arrived with the video camera and turned it on, Cpt. Frith conducted a brief narration for the camera. Due to the layout of the cell and the close confines of Restrictive Housing Officer Harp could not a visual of the inmate, with the exception of the breif moment the inmate is seen standing at his toilet through the cell window. Officer Harp stood in the doorway of Cpt. Frith's office in an attempt to maintain video footage of the cell. Liscensed Vocational Nurse (LVN) Sandy Castillo arrived to the scene and Cpt. Frith briefed her of the incident and asked if she wanted to conduct a cell side physical. LVN Castillo stated the Inmate would needed to be seen in medical for further evaluation and to attempt to get him transported to the Montford Unit quicker. Cpt. Frith instructed Officer McGuire and Officer Bostic to escort the inmate to medical, Officer McGuire gave the Inmate two additional orders to come to the cell door and to submit to hand restraints and warned chemical agents would be administered if he failed to comply. Inmate Valenzuela refused the orders given and stated "No,sir." Cpt. Frith approached the cell door and ordered the inmate to submit to hand restraints and warned that additional chemical agents and 5 man cell extraction team would be used if he failed to comply. The inmate refused again and continued to attempt to drown himself in the water. Cpt. Frith briefed the camera that the inmate was refusing to comply with orders and was still attempting to harm himself and that he was going to get authorization for the use of additional chemical agents and 5 man team.

Cpt. Frith contacted Senior Warden Jody Hefner and briefed him of the situation and gained authorization for the use of additional chemical agents and 5 man cell extraction team if needed. While Cpt. Frith was gaining authorization for the 5-man team Officer McGuire continued to order the inmate to stop attempting to harm himself and to come to the cell door and to submit to hand restraints and the inmate continued to refuse and continued to attempt to drown

☒ *Continuation page(s) attached*

## V. ACKNOWLEDGEMENT

To the best of my knowledge, the information submitted is complete and accurate.

Oliver Vasquez Major [signature] 1/19/2021

Supervisor (Printed Name/Rank or Title) Signature/Date

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report

### *Continuation Page*

Unit *(Name and Alpha Code)*: Wallace WL

Report Number: M-00338-01-21 Incident Number (*if applicable*): I-00721-01-21

**I. INFORMATION PROVIDED BY**

Oliver Vasquez — Printed Employee or Offender Name

Major — Rank or Title or TDCJ No.

**II. ADDITIONAL INFORMATION**

This is a continuation of information which I began to provide on the *(Enter form number)* UOF-__6____

himself. Officer Harp walked up to the cell door attempting to gain video evidence of the Inmate's actions but due to the structure of the cell the Inmate could not be seen by video. Cpt. Frith approached the cell door and ordered Inmate Valenzuela to come to the cell door and to submit to hand restraints, so he could be escorted to medical and transported to the Montford Unit. Inmate Valenzuela stated "no, sir," Cpt. Frith warned the Inmate failure to comply would result in the use of additional chemical agents and/ or 5 man cell extraction team. Cpt. Frith gave another order for the Inmate to come to the cell door and to submit to hand restraints and warned him of the consequences, Inmate Valenzuela responded again with "no,sir," Cpt. Frith briefed the camera that the inmate was failing to comply with orders and walked back to the cell door and as a trained chemical agents applicator administered two burst of Sabre Red MK9 chemical agents in the direction of Inmate Valenzuela hitting him the back and head area. Cpt. Frith briefed that chemical agents initially had no effect on the inmate and he continued to attempt to drown himself and that he would give it a couple of minutes for the chemical agents to take effect. Inmate Valenzuela could not be viewed while he stayed in the corner at the toilet and continued to attempt to drown himself. Cpt. Frith continued to order the inmate to stop trying to harm himself and to come to the cell door and to submit to hand restraints and continously warned him that additional chemical agents and 5 man team would be used to gain compliance. Cpt. Frith instructed Officer Harry Martinez CO V, Officer McGuire and Officer Bostic to suite up to be part of the 5 man team. Officer Manuel Enriquez CO IV arrived to the scene and Cpt. Frith instructed him to suite up as well, Sergeant Jose Valdez arrived to the scene and instructed him to releive Officer Harp as the video camera operator and he did. Cpt. Frith instructed Officer Harp to suite up as the last member of the 5 man team. Cpt. Frith goes back to the cell door and gives several more orders for the Inmate to step to the cell door and to submit to hand restraints, the Inmate refuses and contiues to place his face in the toilet in an attempt to drown himself. Inmate Valenzuela is seen on camera falling backwards to the cell floor and gasping for air, the Inmate gets back up and goes back to the toilet. Cpt. Frith briefs the camera that the Inmate is still refusing orders. Cpt. Frith orders the Inmate another order to come to the cell door and to submit to hand restraints and warns chemical agents will be utilized if he fails to comply. Inmate Valenzuela ignores the orders given and Cpt. Frith administers another burst of MK9 chemical agents in his direction. The chemical agents had no immediate effect on Inmate Valenzuela and Cpt. Frith gives time for the chemical agents to take effect. Cpt. Frith ordered the Inmate several more times to come to the cell door and to submit to hand restraints and warned that the use of the 5 man team would be utilized to gain compliance. Inmate Valenzuela refused all the orders given and continued to stick

☒ *Continuation page(s) attached*

**III. ACKNOWLEDGMENT**

To the best of my knowledge, the information submitted is complete and accurate.

Signature: [signature] Date: 1/19/2021

**IV. TRANSLATED BY *(If applicable)***

To the best of my knowledge, the foregoing information is an accurate account of information provided by:

Offender: ____________ Printed Name ____________ TDCJ No.

Employee Translator: ____________ Printed Name ____________ Rank or Title

____________ Signature ____________ Date

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report

### *Continuation Page*

Unit *(Name and Alpha Code)*: Wallace WL

Report Number: M-00338-01-21 Incident Number (*if applicable*): I-00721-01-21

**I. INFORMATION PROVIDED BY**

Oliver Vasquez — Printed Employee or Offender Name

Major — Rank or Title or TDCJ No.

**II. ADDITIONAL INFORMATION**

This is a continuation of information which I began to provide on the *(Enter form number)* UOF-__8____

his face in the toilet trying to drown himself. When the 5 man cell extraction team was assembled and arrived to Restrictive Housing 3 cell Cpt. Frith introduced the team to the camera. One man Officer Robert McGuire CO IV, two man Officer Manuel Enriquez CO IV, 3 man Officer Joe Harp CO IV, 4 man Officer Greg Bostic CO III and 5 man Officer Harry Martinez CO V. Cpt. Frith went back to the cell door and ordered the inmate to come to the cell door and to submit to hand restraints and warned him the 5 man team would be used to gain compliance. Cpt. Frith gave the orders again and the inmate refused stating by yelling "no, sir. No! NO." Cpt. Frith briefed the camera and went to the cell door and opened it and sent the team into the cell.

When the team entered the cell Inmate Valenzuela was at the toilet with his face submerged in the water, Officer McGuire utilized the sheild to forecefully phsh the inmate away from the toilet. Inmate Valenzuela fell to the floor and began pushing away from staff in attempt to get back to the toilet. He grabbed the toilet lip and tried to pull himself up to the toilet. Officer McGuire struck the inmate's hands four times with closed fist in an attempt to get him to let go of the toilet. Officer McGuire immediately stopped when Inmate Valenzuela let go of the toilet. Inmate Valenzuela then began to grab the team members and was attempting to bite them to get them off of him. Officer Mcguire hit Inmate Valenzuela three times in the mouth area to prevent him from biting him and the other staff members. Officer McGuire then utilized pressure points to attempt to stop the inmate from biting and in an attempt to get him to submit to hand restraints. Officer Enriquez was attempting to get the inmate's hands behind his back so he could apply hand restraints, however, due to the inmate being covered in water and chemical agents he was able to pull his arms away from Officer Enriquez's grip. Officer Enriquez noticed the inmate trying to bite him and the other team members, Officer Enriquez then struck the inmate with an open hand to the back to keep him from biting them. Officer Harp was pulling the inmate's arms in an attempt to get him to let go of the toilet. Officer Harp noticed the inmate trying to grab and bite other team members, Officer Harp then struck the inmate four times in the rib area in attempt to get him to stop biting and grabbing staff. Officer Harp stopped striking the inmate when he let go of the toilet and stopped trying to bite the hands and arms of staff. Officer then grabbed the inmate's arms in attempt to get them behind his back. Officer Martinez grabbed the Inmate's left leg and Officer Bostic grabbed the inmate's right leg. Officer Martinez and Officer Bostic attempted to pull the inmates legs out from under him to apply leg restraints. However, the inmate continued to pull his legs away from them to get them under himself to push himself towards the toilet. Officer Martinez lost his grip and noticed the inmate trying to bite other team members. Officer Martinez struck the inmate's upper torso to get him to stop he then grabbed the inmates left leg again. Officers

☒ *Continuation page(s) attached*

**III. ACKNOWLEDGMENT**

To the best of my knowledge, the information submitted is complete and accurate.

Signature: [signature] Date: 1/19/2021

**IV. TRANSLATED BY *(If applicable)***

To the best of my knowledge, the foregoing information is an accurate account of information provided by:

Offender: ________ Printed Name ________ TDCJ No.

Employee Translator: ________ Printed Name ________ Rank or Title

________ Signature ________ Date

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report

*Continuation Page*

Unit *(Name and Alpha Code)*: Wallace WL

Report Number: M-00338-01-21 Incident Number (*if applicable*): I-00721-01-21

**I. INFORMATION PROVIDED BY**

Oliver Vasquez — Printed Employee or Offender Name

Major — Rank or Title or TDCJ No.

**II. ADDITIONAL INFORMATION**

This is a continuation of information which I began to provide on the *(Enter form number)* UOF-__8____

Martinez and Bostic were able to straighten the inmate's legs out and Officer Martinez applied the leg restraints. Officer Bostic maintained control of the inmates legs as Officer Martinez assisted in attempting to maintain control of the Inmate's upper body. Inmate Valenzuela continued to resist staff and began turning over, while turning over Officer Bostic lost control of the inmate's legs and the leg restraints got twisted around Officer Enriquez's left leg. To prevent injury to Officer Enriquez, Cpt. Frith instructed Officer Bostic to remove one of the leg restraints and gave him a restraint key. Officer Bostic removed the right leg restraints and freed Officer Enriquez's leg and then reapplied the leg restraint. Officers Enriquez, Harp, McGuire and Martinez were able to place the inmate's hands behind his back and Officer Harp applied the hand restraints. Inmate Valenzuela continued to resist staff and continued to attempt to pull away from the team members. Cpt. Frith called for a gurney to be utilized in escorting the inmate to medical. Throughout the UOF Cpt. Frith and team members continuously ordered the inmate to stop resisting and to submit to hand restraints. Inmate refused all the orders during the UOF and continuously yelled throughout the UOF. While waiting for the gurney LVN Castillo stated to Cpt. Frith that they would do a cell side UOF physical due to the inmate's actions and behavior. Inmate Valenzuela began to move around on the ground in an attempt to get away from the team, LVN Castillo walked into the cell and asked Inmate Valenzuela if he was ok and the Inmate stated "yes." LVN Castillo then asked if he had any injuries due to the UOF and the inmate stated "no, ma'am." LVN Castillo stated to the camera no injuries were noted and she walked to the end of the Restrictive Housing hallway.

Due to the Inmate resisting and fighting staff durning the 5 man cell extraction, some of the equipment the team was wearing fell of in the cell. Cpt. Frith also wanted to check the cell for anything else the inmate had that he could harm himself with. Cpt. Frith instructed the team to roll the Inmate to his side and assist him to his feet. Cpt. Frith was breifing the camera and then went to speak with LVN Castillo. While talking with LVN Castillo Officer Martinez and Officer Enriquez attempted to lift the inmate to his feet. Inmate refused to cooperate with being assisted to his feet and the officers carried the inmate by his arms into the shower area and laid him on the shower floor. The shower door was secured and Cpt. Frith told the Inmate that he was going to be evaluated by medical and if he atempted to assault her, additional force would be used on him. Inmate Valenzuela replied "yes, sir" the inmate rolled over into a seated position. LVN Castillo asked the inmate again if he had any injuries due to the UOF and he stated "no, ma'am." LVN Castillo briefed the camera that she was noting no injuries to the inmate from the UOF. Cpt. Frith entered the cell and cleared out the UOF equipment and pushed the metal plate that the inmate was trying to cut his wrist back in to where it belonged. Inmate

☒ *Continuation page(s) attached*

**III. ACKNOWLEDGMENT**

To the best of my knowledge, the information submitted is complete and accurate.

Signature: [signature] Date: 1/19/2021

**IV. TRANSLATED BY *(If applicable)***

To the best of my knowledge, the foregoing information is an accurate account of information provided by:

Offender: ______ Printed Name ______ TDCJ No.

Employee Translator: ______ Printed Name ______ Rank or Title

______ Signature ______ Date

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report

### *Continuation Page*

Unit *(Name and Alpha Code)*: Wallace WL

Report Number: M-00338-01-21 Incident Number (*if applicable*): I-00721-01-21

**I. INFORMATION PROVIDED BY**

Oliver Vasquez — Printed Employee or Offender Name

Major — Rank or Title or **TDCJ** No.

**II. ADDITIONAL INFORMATION**

This is a continuation of information which I began to provide on the *(Enter form number)* UOF-__8____

Valenzuela stood up in the shower and began walking around the shower. Cpt. Frith attempted to take the required digital photos of the inmate 2 front and 2 back and see if there were any injuries due to the UOF. Cpt. Frith ordered the inmate to stand still for the photos however, Inmate Valenzuela continued to pace back and fourth stepping into the shower area nd refusing to come out for the photos. Inmate Valenzuela continued to ask for water and was attempting to push the shower button. Inmate Valenzuela would not comply with the orders to stand at the shower door for photos and kept yelling for water. Cpt. Frith and Officer Enriquez notified the Inmate he could get water in his cell and that he needed to comply with orders. Cpt. Frith ordered the Inmate to come to the shower door so he could be escorted back into his assigned cell. Inmate Valenzuela stated "yes, sir," Cpt. Frith opened the shower door and Officer Enriquez and Officer Bostic escorted the inmate into his assigned cell. Once, inside of the cell the inmate was assisted into the prone position, Cpt. Frith ordered the inmate to remain in the prone position until all of the restraints were removed and the cell door was secured and warned additional force would be used if he failed to comply. Inmate Valenzuela stated "yes,sir." Officer Martinez removed the leg restraints and Officer Harp removed the hand restraints, the team backed out of the cell and Cpt. Frith secured the cell door. Cpt. Frith read the Inmate Participant Statement (UOF-2) but did not give him a copy due to his status in CDO. Cpt. Frith instructed the inmate on in cell decontamination procedures, Cpt. Frith conducted a closing narration for the camera and terminated the UOF.

Once the UOF was complete all the staff participants were scene at the Wallace Unit Medical Department for a UOF physical. Cpt. Frith, Officer Skipworth and Officer Martinez were noted with no injuries. Officer McGuire was noted with swelling and bruising to his right hand, redness to both arms and soreness in his left knee. Officer Enriquez was noted with redness and swelling to his right elbow, multiple abrasions to both arms and swelling to his left elbow. Officer Harp was noted with a .5 cm scratch to his right first knuckle. Officer Bostic was noted with two superficial scratches to the top of his right hand. All the Officers with injuries received treatment at the medical department and did not require any treatment above first aide.

☐ *Continuation page(s) attached*

**III. ACKNOWLEDGMENT**

To the best of my knowledge, the information submitted is complete and accurate.

Signature: [signature] Date: 1/19/2021

**IV. TRANSLATED BY *(If applicable)***

To the best of my knowledge, the foregoing information is an accurate account of information provided by:

Offender: ______ Printed Name ______ TDCJ No.

Employee Translator: ______ Printed Name ______ Rank or Title

______ Signature ______ Date

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report

### *Employee Participant Statement*

Unit *(Name and Alpha Code)*: Wallace WL

Report Number: MA-00338-01-21 Incident Number *(if applicable)*: I-00721-01-21

**I. INSTRUCTIONS**

- ***Complete Section II.a, through II.e, checking and completing all that apply in each section;***
- ***At Section II.f, in as much detail as possible, describe what happened <u>before</u>, <u>during</u>, and <u>after</u> the use of force occurred, including:***
  - ***Time or approximate time of use of force;***
  - ***Name of each offender involved;***
  - ***Name and rank or title of each employee involved; and***
  - ***Description of employee and offender injuries, if any.***

**II. STATEMENT**

a. Printed Name: James P. Skipworth Date/time force was used: 01-13-2021 1346

b. Location where use of force occurred: Restrictive Housing Cell #3

c. **PRIOR TO** implementing force, did you do any of the following:

| YES | NO | | If 'NO,' explain why: |
|---|---|---|---|
| ☑ | ☐ | * **Listen to the offender?** | |
| ☑ | ☐ | * **Attempt to calm or reason with the offender?** | |
| ☑ | ☐ | * **Explain the consequences?** | |
| ☑ | ☐ | Notify the supervisor? | |
| ☐ | ☑ | Request a video camera and operator? | Time did not Allow |
| ☐ | ☑ | Secure the area? | Inmate was already in secure area |
| ☐ | ☑ | Request additional staff to make a visible show of force? | Time did not Allow |
| ☐ | ☑ | Use restraining devices? | was in a secured cell |

* **If answer is 'YES' to any of these, describe in detail, at Section f, how this was accomplished.**

d. In describing offender behavior, specify which offender(s) and whether it occurred <u>before</u> or <u>during</u> the use of force.

| Before | During | | Offender Name(s) / TDCJ Number(s): |
|---|---|---|---|
| ☐ | ☐ | Assaulted another offender with weapon | |
| ☐ | ☐ | Assaulted another offender without weapon, such as by kicking, shoving, pushing, slapping, hitting, or grabbing | |
| ☐ | ☐ | Assaulted staff or another person, not an offender, with weapon | |
| ☐ | ☐ | Assaulted staff or another person, not an offender, without weapon | |
| ☐ | ☐ | Attempted escape | |
| ☑ | ☑ | Attempted suicide or self-mutilation | Valenzuela, Ruben 1785292 |
| ☐ | ☐ | Attempted to assault staff or another person, not an offender, with weapon | |
| ☐ | ☐ | Attempted to assault staff or another person, not an offender, without weapon | |
| ☐ | ☐ | Created a disturbance or riot | |
| ☐ | ☐ | Damaged or destroyed state property | |
| ☑ | ☑ | Displayed abnormal behavior | Valenzuela, Ruben 1785292 |
| ☐ | ☐ | Obstructed tray slot or cell door | |
| ☐ | ☐ | Pulled away from staff | |
| ☐ | ☐ | Refused to accept a housing assignment | |
| ☐ | ☐ | Refused medically ordered treatment | |
| ☐ | ☐ | Refused photo I.D. or fingerprinting, during intake or update | |
| ☐ | ☐ | Refused strip search or restraint procedures | |
| ☐ | ☐ | Refused to leave or enter a housing area | |
| ☐ | ☐ | Refused to submit to forensic or DNA collection | |
| ☐ | ☐ | Swore at or verbally threatened staff | |

Unit (*Name and Alpha Code*): Wallace WL

Report Number: MA-00338-01-21 Incident Number (*if applicable*): I-00721-01-21

e. Describe your actions. *If more than one offender noted in Section II.d, identify against which offender your action was taken:*

☐ Shoved or pushed offender: ______

☐ Used restraining holds on: ______

☐ Used restraining device(s) on: ______

**If so, what type & why?** *Type:* ______ *Reason:* ______

**Date/time used:** *Date:* ______ *Time:* ______ *Date/time of relief:* *Date:* ______ *Time:* ______

☐ Struck offender with fist or open hand: ______

**If so, how many times?** ______ *What part of the body was struck?* ______

☐ Kicked offender: ______

**If so, how many times?** ______ *What part of the body was struck?* ______

☐ Used riot baton on: ______

**If so, how many times was the offender struck?** ______ *What part of the body was struck?* ______

☑ Used chemical agents on: Inmate Valenzuela, Ruben 1785292

**If so, what type?** COP *How much?* 3.5 ounces

☐ Used deadly force against: ______

**If so, describe firearm and ammunition used; give manufacturer's serial number; how many rounds fired?** ______

☐ Other (*Explain*): ______

f. Written Statement: On 01-13-2021 and at 1346 hrs I officer James P Skipworth COⅡ was assigned to constant Direct observation when said Inmate Valenzuela, Ruben 1785292 stated he wanted to die. Inmate Valenzuela, Ruben 1785292 started moving his wrist back and forth over a metal plate on the wall. I officer James Skipworth attempted to calm Inmate Valenzuela by talking to him. Inmate Valenzuela, Ruben 1785292 stopped moving his wrist back and forth on the metal plate, and began putting his head inside the toilet. I officer Skipworth did explain to Inmate Valenzuela, Ruben 1785292 the consequences that COP would be utilized if his actions did not stop. Inmate Valenzuela, Ruben 1785292 then state that he wanted to die. At this time I officer Skipworth knocked on Captain Frith, Darrell door which is connected to Restrictive Housing and told him to observe Inmate Valenzuela, Ruben 1785292. At this time Inmate Valenzuela, Ruben 1785292 put his head in the toilet trying to harm or drown himself. I officer Skipworth told Inmate Valenzuela, Ruben 1785292 to stop. Inmate Valenzuela then fell from toilet and then attempted to put his head back inside the toilet. At this time is when I officer Skipworth COⅡ Administered 3.5 ounces of COP. Captain Darrell Frith then initiated ICS. Inmate Valenzuela, Ruben 1785292 was then not complying with orders

☑ Continuation page(s) attached

## III. ACKNOWLEDGEMENT

To the best of my knowledge, the information submitted in this participant statement is complete and accurate.

James P. Skipworth — Printed Name

CO Ⅱ [redacted] — Rank or Title and Social Security No.

James P. Skipworth — Signature

01-13-2021 — Date

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report

*Continuation Page*

Unit *(Name and Alpha Code)*: Wallace WL

Report Number: MA-00339-01-21 Incident Number (*if applicable*): I-00721-01-21

**I. INFORMATION PROVIDED BY**

James Skipworth CH — Printed Employee or Offender Name

CO-V — Rank or Title or TDCJ No.

**II. ADDITIONAL INFORMATION**

This is a continuation of information which I began to provide on the *(Enter form number)* UOF-1 CW

From Captain Frith. At This Time Additional Staff started arriving and I officer James Skipworth CoV was Removed from The area.

☐ *Continuation page(s) attached*

**III. ACKNOWLEDGMENT**

To the best of my knowledge, the information submitted is complete and accurate.

Signature: James R Skipworth

Date: 01-13-2021

**IV. TRANSLATED BY *(If applicable)***

To the best of my knowledge, the foregoing information is an accurate account of information provided by:

Offender: ______ Printed Name ______ TDCJ No.

Employee Translator: ______ Printed Name ______ Rank or Title

______ Signature ______ Date

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report
### *Employee Participant Statement*

Unit (*Name and Alpha Code*): Wallace WL

Report Number: M-00338-01-21 Incident Number (*if applicable*): I-00721-01-21

## I. INSTRUCTIONS

- ***Complete Section II.a, through II.e, checking and completing all that apply in each section;***
- ***At Section II.f, in as much detail as possible, describe what happened before, during, and after the use of force occurred, including:***
  - ***Time or approximate time of use of force;***
  - ***Name of each offender involved;***
  - ***Name and rank or title of each employee involved; and***
  - ***Description of employee and offender injuries, if any.***

## II. STATEMENT

a. Printed Name: Frith, Darrell/ Captain Date/time force was used: 1/13/21 1346

b. Location where use of force occurred: Restrictive Housing 3 cell

c. **PRIOR TO** implementing force, did you do any of the following:

| YES | NO | | If 'NO,' explain why: |
|---|---|---|---|
| ☐ | ☒ | * **Listen to the offender?** | Inmate would not respond to staff |
| ☒ | ☐ | * **Attempt to calm or reason with the offender?** | |
| ☒ | ☐ | * **Explain the consequences?** | |
| ☐ | ☒ | Notify the supervisor? | Already on scene |
| ☒ | ☐ | Request a video camera and operator? | |
| ☐ | ☒ | Secure the area? | Already secure |
| ☒ | ☐ | Request additional staff to make a visible show of force? | |
| ☐ | ☒ | Use restraining devices? | Would not submit to restraints |

* **If answer is 'YES' to any of these, describe in detail, at Section f, how this was accomplished.**

d. In describing offender behavior, specify which offender(s) and whether it occurred before or during the use of force.

| Before | During | | Offender Name(s) / TDCJ Number(s): |
|---|---|---|---|
| ☐ | ☐ | Assaulted another offender with weapon | |
| ☐ | ☐ | Assaulted another offender without weapon, such as by kicking, shoving, pushing, slapping, hitting, or grabbing | |
| ☐ | ☐ | Assaulted staff or another person, not an offender, with weapon | |
| ☐ | ☐ | Assaulted staff or another person, not an offender, without weapon | |
| ☐ | ☐ | Attempted escape | |
| ☒ | ☐ | Attempted suicide or self-mutilation | Valenzuela, Ruben 1785292 |
| ☐ | ☐ | Attempted to assault staff or another person, not an offender, with weapon | |
| ☐ | ☐ | Attempted to assault staff or another person, not an offender, without weapon | |
| ☐ | ☐ | Created a disturbance or riot | |
| ☐ | ☐ | Damaged or destroyed state property | |
| ☒ | ☒ | Displayed abnormal behavior | Valenzuela, Ruben 1785292 |
| ☐ | ☐ | Obstructed tray slot or cell door | |
| ☐ | ☐ | Pulled away from staff | |
| ☐ | ☐ | Refused to accept a housing assignment | |
| ☐ | ☐ | Refused medically ordered treatment | |
| ☐ | ☐ | Refused photo I.D. or fingerprinting, during intake or update | |
| ☒ | ☒ | Refused strip search or restraint procedures | Valenzuela, Ruben 1785292 |
| ☐ | ☐ | Refused to leave or enter a housing area | |
| ☐ | ☐ | Refused to submit to forensic or DNA collection | |
| ☐ | ☐ | Swore at or verbally threatened staff | |

Unit (*Name and Alpha Code*): Wallace WL

Report Number: M-00338-01-21 Incident Number (*if applicable*): I-00721-01-21

e. Describe your actions. *If more than one offender noted in Section II.d, identify against which offender your action was taken:*

☐ Shoved or pushed offender:

☐ Used restraining holds on:

☐ Used restraining device(s) on:

**If so, what type & why?** *Type:* *Reason:*

**Date/time used:** *Date:* *Time:* *Date/time of relief:* *Date:* *Time:*

☐ Struck offender with fist or open hand:

**If so, how many times?** *What part of the body was struck?*

☐ Kicked offender:

**If so, how many times?** *What part of the body was struck?*

☐ Used riot baton on:

**If so, how many times was the offender struck?** *What part of the body was struck?*

☒ Used chemical agents on: Valenzuela, Ruben 1785292

**If so, what type?** MK( *How much?* 6.4 ounces

☐ Used deadly force against:

**If so, describe firearm and ammunition used; give manufacturer's serial number; how many rounds fired?**

☐ Other (*Explain*):

f. Written Statement:

On 1/13/2021 at approximately 1346 hours, Officer James Skipworth CO V knocked on my office door which is attached to Restrictive Housing and asked me to come look at what Inmate Valenzuela, Ruben # 1785292. I entered Restrictive Housing and observed Inmate Valenzuela wrapping his arms around the toilet, placing his face under the water and standing on his tip toes putting all of his weight on his face in the water. I ordered the Inmate to stop what he was doing and he refused to comply and kept his face under the water until he fell over gasping for air and coughing up water. When he fell he got up and did the samething again by placing his face under the water until he fell over gasping for air and coughing up water. Inmate Valenzuela had pulled out a metal plate and began to rub his wrist on it and appeared to be attempting to cut his wrist. Officer Skipworth ordered the Inmate to stop attempting to harm himself and warned the Inmate chemical agents would be administered if he refused to comply. The inmate continued and he administered a burst of chemical agents towards the inmate. I initiated the Incident Command System via hand held radio and requested additional staff, video camera and medical to Restrictive Housing. I continued to monitor Inmate Valenzuela and waited for additional staff and medical to arrive, Inmate Valenzuela continued to attempt to drown himself and I gave him several orders to stop. Sergeant Jose Valdez, Officer Joe Harp CO IV, Officer Robert Mcguire CO IV and Officer Greg Bostic CO III arrived to the scene along with Licensed Vocational Nurse Sandy Castillo. I instructed Sgt. Valdez to turn on the camera, once the

☒ *Continuation page(s) attached*

## III. ACKNOWLEDGEMENT

To the best of my knowledge, the information submitted in this participant statement is complete and accurate.

Frith, Darrell — Printed Name

Captain [redacted] — Rank or Title and Social Security No.

Darrell Frith — Signature

1/13/2021 — Date

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report

***Continuation Page***

Unit *(Name and Alpha Code)*: Wallace WL

Report Number: M-00338-01-21 Incident Number (*if applicable*): I-00721-01-21

**I. INFORMATION PROVIDED BY**

Frith, Darrell — Captain

Printed Employee or Offender Name — Rank or Title or TDCJ No.

**II. ADDITIONAL INFORMATION**

This is a continuation of information which I began to provide on the *(Enter form number)* UOF-__1____

video camera was turned on I conducted a brief narration for the camera. I told LVN Castillio what Inmate Valenzuela was doing and asked her if she wanted to do a cell side physical. She stated that they needed the Inmate to medical for futher evaluation. I went back to RH 3 cell and ordered Inmate Valenzuela several times to come to the cell door and to submit to hand restriants so he could be taken to medical for evaluation and transport to the Montford Unit. Inmate Valenzuela refused the orders given and stated yelled "No, I'm not going." Inmate Valenzuela continued to place his face in the toilet and sucking in water in an attempt to drown himself and continued until he would fall cough up water and then did it again. I gave the Inmate a final order to come to the cell door to submit to hand restraints and warned that additional chemical agents and the use of a 5 man cell extraction team would be used to gain compliance. I called Senior Warden Jody Hefner and briefed him on the situation and obtained authorization for the use of additional chemical agents and a 5 man team. Once, authorization was obtained I returned to the cell and ordered Inmate Valenzuela to come to the cell door two more times and warned additional chemical agents would be administered. The inmate refused again and stated "No" and continued to place his face in the water. I administered a burst of MK9 COP towards the inmate in an attempt to gain compliance. I stated to the camera that we would give it a minute for chemical agents to take effect, the chemical agents had no effect on the inmate and he continued to attempt to drown himself. I instructed the 5 man team to suite up as they were putting on their equipment I continued to monitor Inmate Valenzuela and continued to order him to stop trying to drown himself and to come to the cell door and submit to hand restraints and continued to warn him of the consequences if he continued to refuse. I gave a final order to the inmate to submit to restraints and warned chemical agents would be used again, the inmate refused and stuck his face under the water again. I administered a second burst of chemical agents towards the inmate, the inmate did not move and stuck his face in the water again. Once the 5 man team was suited up I introduced the 5 man team as 1 man Officer McGuire, 2 man Officer Enriquez, Manuel CO IV, 3 man Officer Harp CO IV, 4 man Officer Bostic and 5 man Officer Martinez, Harry CO V. I went back to the cell an ordered the inmate again 2 come to the cell door and to submit to hand restraints to go to medical. Inmate Valenzuela refused again and continued to stick his face in the water in an attempt to drown himself. I opened the cell door and the 5 man team entered the cell. Once in the cell I looked in the cell and saw inmate Valenzuela yelling at the 5 man team and attempting to bite them, push them off and grabbing them. Inmate Valenzuela's head was next to the toilet and I saw him hit it on the toilet while trying to fight the staff. I heard the team members yelling at the inmate to stop resisting and to place his hands behind his back. I continued to yell at the inmate to stop

☒ *Continuation page(s) attached*

**III. ACKNOWLEDGMENT**

To the best of my knowledge, the information submitted is complete and accurate.

[signature] — 1/13/2021

Signature — Date

**IV. TRANSLATED BY *(If applicable)***

To the best of my knowledge, the foregoing information is an accurate account of information provided by:

Offender: ________ Printed Name ________ TDCJ No.

Employee Translator: ________ Printed Name ________ Rank or Title

________ Signature ________ Date

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report

***Continuation Page***

Unit *(Name and Alpha Code)*: Wallace WL

Report Number: M-00338-01-21 Incident Number (*if applicable*): I-00721-01-21

**I. INFORMATION PROVIDED BY**

Frith, Darrell — Captain

Printed Employee or Offender Name — Rank or Title or **TDCJ** No.

**II. ADDITIONAL INFORMATION**

This is a continuation of information which I began to provide on the *(Enter form number)* UOF-8

resisting and to submit to hand restraints. Officer Martinez and Officer Bostic managed to apply the leg restraints, I noticed while the inmate was flipping over Officer Bostic leg got twisted in the chain for the leg restraints, I instructed Officer Martinez to take off one of the restraints to get his leg out of the twist before he was injuried. Inmate Valenzuela continued to resist staff by pulling his arms under him and grabbing staff and attempting to bite them. I called for a gurney for the inmate to be taken to medical in which LVN Castillo stated due to his behavior and aggression towards staff that she would conduct the physical cell side. Staff contined to struggle with the inmate, staff managed to get the inmates hands behind his back and the restraints were placed on. Due to UOF equipment coming off while the inmate was fighting with the team and to fix the metal piece in the cell the team was instructed to place the inmate in the shower. I turned around to talk to medical, when I turned back around I noticed the team was dragging the inmate into the shower, instead of him walking or being carried before I could get it fixed they had already placed the inmate in the shower and secured the door. LVN Castillo came to the shower to talk with the Inmate and to conduct a UOF physical on the inmate. The inmate stood up and began talking to LVN Castillo, she asked the inmate if he had any injuries due to the UOF and he stated "no, ma'am." I went into 3 cell and was able to get the plate pushed back in, I checked the cell to ensure there was nothing else the inmate could use to harm himself. I then returned to the shower area and instructed the inmate on him going back to his assigned cell, the inmate began speaking in spanish and Officer Enriquez talked to the inmate in spanish. I took the required digital photos of the inmate, but the inmate continued to move in the shower so I could not get clear pictures or see any injuries he ma not of voiced. Officer Enriquez told me all the inmate was wanting was a drink of water. The inmate complied with the orders at which time the shower door was open and the inmate was escorted to his cell by the 3 and 5 man. Once inside the cell the inmate was assisted to a prone position, I ordered the inmate to remain in the prone position until the restraints were removed and the cell door was secured. Inmate Valenzuela stated "yes, sir," Officer Martinez removed the leg restraints, Officer Harp then removed the hand restraints and the 5 man team backed out of the cell door. I secured the cell door and read the UOF-2 form to the inmate, however due to his status in CDO I did not give him a copy. I instructed the inmate on in cell decontamination procedures and ordered the inmate not to attempt to harm himself any more. I conducted a closing narration for the camera and terminated the UOF. I then returned to my assigned duties as Captain.

☐ *Continuation page(s) attached*

**III. ACKNOWLEDGMENT**

To the best of my knowledge, the information submitted is complete and accurate.

[signature] — 1/13/2021

Signature — Date

**IV. TRANSLATED BY *(If applicable)***

To the best of my knowledge, the foregoing information is an accurate account of information provided by:

Offender: ______ Printed Name ______ TDCJ No.

Employee Translator: ______ Printed Name ______ Rank or Title

______ Signature ______ Date

UOF-8 (2017)

**DEFS' MSJ APPX. 152**

**CERVANTEZ_00152**

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report

### *Employee Participant Statement*

Unit (*Name and Alpha Code*): Wallace WL

Report Number: MA-00338-01-21 Incident Number (*if applicable*): I-00721-01-21

**I. INSTRUCTIONS**

- ***Complete Section II.a, through II.e, checking and completing all that apply in each section;***
- ***At Section II.f, in as much detail as possible, describe what happened before, during, and after the use of force occurred, including:***
  - *Time or approximate time of use of force;*
  - *Name of each offender involved;*
  - *Name and rank or title of each employee involved; and*
  - *Description of employee and offender injuries, if any.*

**II. STATEMENT**

a. Printed Name: Robert McGuire COIV Date/time force was used: 1-13-21 1346

b. Location where use of force occurred: Restrictive Housing PHD3

c. PRIOR TO implementing force, did you do any of the following:

| YES | NO | | If 'NO,' explain why: |
|---|---|---|---|
| ☐ | ☑ | * **Listen to the offender?** | completed by other staff |
| ☐ | ☑ | * **Attempt to calm or reason with the offender?** | Completed by other staff |
| ☐ | ☑ | * **Explain the consequences?** | ~~Already on scene~~ completed by other staff (RM) |
| ☐ | ☑ | Notify the supervisor? | Already on scene. |
| ☐ | ☑ | Request a video camera and operator? | Already on scene |
| ☐ | ☑ | Secure the area? | Already secured. |
| ☐ | ☑ | Request additional staff to make a visible show of force? | Already on scene. |
| ☐ | ☑ | Use restraining devices? | Refused restraints. |

* **If answer is 'YES' to any of these, describe in detail, at Section f, how this was accomplished.**

d. In describing offender behavior, specify which offender(s) and whether it occurred before or during the use of force.

| Before | During | | Offender Name(s) / TDCJ Number(s): |
|---|---|---|---|
| ☐ | ☐ | Assaulted another offender with weapon | |
| ☐ | ☐ | Assaulted another offender without weapon, such as by kicking, shoving, pushing, slapping, hitting, or grabbing | |
| ☐ | ☐ | Assaulted staff or another person, not an offender, with weapon | |
| ☐ | ☐ | Assaulted staff or another person, not an offender, without weapon | |
| ☐ | ☐ | Attempted escape | |
| ☑ | ☑ | Attempted suicide or self-mutilation | Valenzuela Ruben 1785292 |
| ☐ | ~~☑~~ RM | Attempted to assault staff or another person, not an offender, with weapon | |
| ☐ | ☑ | Attempted to assault staff or another person, not an offender, without weapon | Valenzuela, Ruben 1785292 |
| ☐ | ☐ | Created a disturbance or riot | |
| ☐ | ☐ | Damaged or destroyed state property | |
| ☑ | ☑ | Displayed abnormal behavior | Valenzuela, Ruben 1785292 |
| ☐ | ☐ | Obstructed tray slot or cell door | |
| ☐ | ☑ | Pulled away from staff | Valenzuela, Ruben 1785292 |
| ☐ | ☐ | Refused to accept a housing assignment | |
| ☐ | ☐ | Refused medically ordered treatment | |
| ☐ | ☐ | Refused photo I.D. or fingerprinting, during intake or update | |
| ☐ | ☐ | Refused strip search or restraint procedures | |
| ☐ | ☑ | Refused to leave or enter a housing area | Valenzuela, Ruben 1785292 |
| ☐ | ☐ | Refused to submit to forensic or DNA collection | |
| ☐ | ☐ | Swore at or verbally threatened staff | |



DEFS' MSJ APPX. 153

CERVANTEZ_00153

Unit (Name and Alpha Code): Wallace WL

Report Number: MA-00338-01-21

Incident Number (if applicable): I-00721-01-21

e. Describe your actions. *If more than one offender noted in Section II.d, identify against which offender your action was taken:*

- [ ] Shoved or pushed offender:
- [x] Used restraining holds on: Valenzuela Ruben 1785292
- [x] Used restraining device(s) on: Valenzuela Ruben 1785292

**If so, what type & why?** Type: Hand/leg Reason: offender Assaulted staff

**Date/time used:** Date: 1-13-21 Time: 1406 Date/time of relief: Date: 1-13-21 Time: 1425 1424

- [x] Struck offender with fist or open hand: Valenzuela Ruben 1785292

**If so, how many times?** 7 *What part of the body was struck?* Head and hands

- [ ] Kicked offender:

**If so, how many times?** *What part of the body was struck?*

- [ ] Used riot baton on:

**If so, how many times was the offender struck?** *What part of the body was struck?*

- [ ] Used chemical agents on:

**If so, what type?** *How much?*

- [ ] Used deadly force against:

**If so, describe firearm and ammunition used; give manufacturer's serial number; how many rounds fired?**

- [ ] Other (*Explain*):

f. Written Statement: On The date and time listed above I officer Robert McGuire COIV did Respond to an Incident command System Initiated by Captian Derrell Frith upon Ariving on Scene at PHd 3 cell officer James Skipworth had Already utilized ~~chemical~~ his carry on Pearson chemical Agents. Sergeant Jose Valdez did arrive on Scene with the video camera Captian Frith did conduct the narrivation for the use of Force I officer McGuire did give inmate Ruben Valenzuela 1785292 Multiple orders to submit to hand Restraints wich he Refused Multiple times Captian Frith Then instructed Myself to Report and Ready For a Five Men Team. upon my arrival back at the cell site I officer R. McGuire was 1 man officer Manuel Enriquez COIV was 2 men officer Joe Harp COIV was 3 men officer Grey bostic COIII was 4 men officer Henry Martinez was 5 Men. Captian Derrell Frith Then continued with orders stating "Submit to hand Restraints or chemical agents and a Five Man team will be utilized. ~~offender~~ Inmate Refused to submit to Restraints after Multiple

- [x] Continuation page(s) attached

### III. ACKNOWLEDGEMENT

To the best of my knowledge, the information submitted in this participant statement is complete and accurate.

McGuire, Robert — Printed Name

COIV [redacted] — Rank or Title and Social Security No.

[signature] — Signature

1-13-21 — Date



DEFS' MSJ APPX. 154

CERVANTEZ_00154

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report

### *Continuation Page*

Unit *(Name and Alpha Code)*: Wallace WL

Report Number: MA-00338-01-21 Incident Number *(if applicable)*: I-00721-01-21

**I. INFORMATION PROVIDED BY:**

Robert McGuire — Printed Employee or Offender Name

COIV — Rank or Title or TDCJ No.

**II. ADDITIONAL INFORMATION**

This is a continuation of information which I began to provide on the *(Enter form number)* UOF- 1

Orders. Captain Frith Then unsecured the cell door
Myself and The Remainder of the Team Then entered the
Cell. upon entering the cell ~~offender~~ Inmate # Valenzuela
did Attempt to bite staff and Resisted Restraints pulling
himself to The toilet placing his face in the water.
~~offender~~ Inmate continued to Resist staff by pulling on the toilet.
I did strike the ~~offender~~ Inmate 4 times with closed
Fist on The hands to get him to Release The Toilet
The ~~offender~~ Inmate used his mouth to Attempt to bite myself
and other staff. I officer McGuire did utilize 3 strikes
to The ~~offenders~~ Inmates face when he Attempted to bite
me Multiple Times. I officer Mcguire did utilize pressure
Points on The offender neck to Attempt to gain compliance
and to hold the ~~offender~~ Inmate head still The ~~offender~~ Inmate continued
to Resist staff. offender pulled arms away from staff and
grabbed the Toilet multiple times. Finally officer Herp was
able to get hand Restraints on The inmate. we then assisted ~~offender~~ Inmate
to his Feet and escorted him to the shower cell. before
Assisting the ~~offender~~ Inmate to his Feet Sandra Castillo LVN
did Attempt to conduct a Medical evaluation. upon placing
The ~~offender~~ Inmate inside the shower cell Medical was
Able to evaluate the ~~offender~~ Inmate officer Enriquez did
Talk to The ~~offender~~ Inmate and ~~Relayed~~ Translated the orders in Spanish
to The ~~offender~~ Inmate, ~~offender~~ Inmate Then Allowed

☑ Continuation page(s) attached

**III. ACKNOWLEDGMENT**

To the best of my knowledge, the information submitted is complete and accurate.

Signature: [signature] Date: 1-13-~~20~~ 21

**IV. TRANSLATED BY *(If applicable)*.**

To the best of my knowledge, the foregoing information is an accurate account of information provided by:

Offender: ____________ Printed Name ____________ TDCJ No.

Employee Translator: ____________ Printed Name ____________ Rank or Title

____________ Signature ____________ Date

DEFS' MSJ APPX. 155

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report

*Continuation Page*

Unit *(Name and Alpha Code)*: Wallace WL

Report Number: MA-00338-01-21 Incident Number *(if applicable)*: I-00721-01-21

**I. INFORMATION PROVIDED BY**

Robert McGuire — COIV

Printed Employee or Offender Name — Rank or Title or TDCJ No.

**II. ADDITIONAL INFORMATION**

This is a continuation of information which I began to provide on the *(Enter form number)* UOF-8

ccPtion Frith to Take still photos The ~~offender~~ Inmate did Allow Staff to Escort him back to his cell and Assist him to The Floor where myself and Martinez did Remove the leg Restraints and officer Harp Removed hand Restraints and we exited the cell. I Then Returned to my normal duties.

☐ *Continuation page(s) attached*

**III. ACKNOWLEDGMENT**

To the best of my knowledge, the information submitted is complete and accurate.

[signature] — 1-13-21

Signature — Date

**IV. TRANSLATED BY *(If applicable)***

To the best of my knowledge, the foregoing information is an accurate account of information provided by:

Offender: ____________ Printed Name ____________ TDCJ No.

Employee Translator: ____________ Printed Name ____________ Rank or Title

____________ Signature ____________ Date

UOF-8 (2017)

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE

## Use of Force Report

### Employee Participant Statement

Unit (Name and Alpha Code): Wallace WL

Report Number: MA-00338-01-21 Incident Number (if applicable): I-00721-01-21

**I. INSTRUCTIONS**

- *Complete Section II.a, through II.e, checking and completing all that apply in each section;*
- *At Section II.f, in as much detail as possible, describe what happened before, during, and after the use of force occurred, including:*
  - *Time or approximate time of use of force;*
  - *Name of each offender involved;*
  - *Name and rank or title of each employee involved; and*
  - *Description of employee and offender injuries, if any.*

**II. STATEMENT**

a. Printed Name: Manuel Enriquez Date/time force was used: 1-13-21 / 1346

b. Location where use of force occurred: Restrictive Housing cell 3.

c. PRIOR TO implementing force, did you do any of the following:

| YES | NO | | If 'NO,' explain why: |
|---|---|---|---|
| ☐ | ☑ | * Listen to the offender? | completed by other staff |
| ☐ | ☑ | * Attempt to calm or reason with the offender? | completed by other staff |
| ☐ | ☑ | * Explain the consequences? | completed by other staff |
| ☐ | ☑ | Notify the supervisor? | Already on scene |
| ☐ | ☑ | Request a video camera and operator? | already on scene |
| ☐ | ☑ | Secure the area? | already secure |
| ☐ | ☑ | Request additional staff to make a visible show of force? | already on scene |
| ☐ | ☑ | Use restraining devices? | Refused restraints |

* **If answer is 'YES' to any of these, describe in detail, at Section f, how this was accomplished.**

d. In describing offender behavior, specify which offender(s) and whether it occurred before or during the use of force.

| Before | During | | Offender Name(s) / TDCJ Number(s): |
|---|---|---|---|
| ☐ | ☐ | Assaulted another offender with weapon | |
| ☐ | ☐ | Assaulted another offender without weapon, such as by kicking, shoving, pushing, slapping, hitting, or grabbing | |
| ☐ | ☐ | Assaulted staff or another person, not an offender, with weapon | |
| ☐ | ☐ | Assaulted staff or another person, not an offender, without weapon | |
| ☐ | ☐ | Attempted escape | |
| ☑ | ☑ | Attempted suicide or self-mutilation | Valenzuela, Ruben - 1785292 |
| ☐ | ☐ | Attempted to assault staff or another person, not an offender, with weapon | |
| ☐ | ☐ | Attempted to assault staff or another person, not an offender, without weapon | |
| ☐ | ☐ | Created a disturbance or riot | |
| ☐ | ☐ | Damaged or destroyed state property | |
| ☑ | ☑ | Displayed abnormal behavior | Valenzuela, Ruben-1785292 |
| ☐ | ☐ | Obstructed tray slot or cell door | |
| ☐ | ☐ | Pulled away from staff | |
| ☐ | ☐ | Refused to accept a housing assignment | |
| ☐ | ☐ | Refused medically ordered treatment | |
| ☐ | ☐ | Refused photo I.D. or fingerprinting, during intake or update | |
| ☐ | ☐ | Refused strip search or restraint procedures | |
| ☐ | ☐ | Refused to leave or enter a housing area | |
| ☐ | ☐ | Refused to submit to forensic or DNA collection | |
| ☐ | ☐ | Swore at or verbally threatened staff | |

Unit (Name and Alpha Code): Wallace WL

Report Number: MA-00338-01-21 Incident Number (if applicable): I-00721-01-21

e. Describe your actions. *If more than one offender noted in Section II.d, identify against which offender your action was taken:*

☐ Shoved or pushed offender:

☐ Used restraining holds on:

☐ Used restraining device(s) on:

**If so, what type & why?** *Type:* *Reason:*

**Date/time used:** *Date:* *Time:* *Date/time of relief:* *Date:* *Time:*

☑ Struck offender with fist or open hand: open hand on the upper body

**If so, how many times?** 2 *What part of the body was struck?* upper body

☐ Kicked offender:

**If so, how many times?** *What part of the body was struck?*

☐ Used riot baton on:

**If so, how many times was the offender struck?** *What part of the body was struck?*

☐ Used chemical agents on:

**If so, what type?** *How much?*

☐ Used deadly force against:

**If so, describe firearm and ammunition used; give manufacturer's serial number; how many rounds fired?**

☐ Other (*Explain*):

f. Written Statement: On 1·13·21 I officer EnriQuez, Manuel CO IV responded to the incident command System. ~~offender~~ inmate Valenzuela, Ruben 1785292 was inflicting harm to himself and officer Skipworth James IV administered chemical agents to gain compliance. By the time i arrived to the incident captain Frith was in command and received authorization to utilize the 5 man team. Officer Robert Mcguire CO IV was 1 man, myself officer EnriQuez, Manuel CO IV was 2 man, officer Joe Harp CO IV was 3 man, officer greg Bostic CO III was 4 man, officer Harry Martinez CO IV was 5 man and Sgt. Jose Vardez was the camera operator. Captain Frith then ordered said ~~offender~~ inmate to submit to hand restraints and said ~~offender~~ inmate failed to obey the order. captain Frith then utilized chemical to gain compliance and the 5 man team was assembled. My duty was to place hand restraints on the ~~offender~~ inmate but he was resisting and attempting to bite us. I then struck the ~~offender~~ inmate with my open hand in the upper body to gain compliance and we were able to submit hand restraints and leg restraints. The 5 man team was then ordered by captain Frith to escorth said ~~offender~~ inmate to the restrictive housing shower

☑ Continuation page(s) attached

## III. ACKNOWLEDGEMENT

To the best of my knowledge, the information submitted in this participant statement is complete and accurate.

Manuel EnriQuez — Printed Name

CO IV [redacted] — Rank or Title and Social Security No.

[signature] — Signature

1·13·21 — Date

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report

*Continuation Page*

Unit (*Name and Alpha Code*): WL Wallace

Report Number: MA-00338-01-21 Incident Number (*if applicable*): I-00721-01-21

I. INFORMATION PROVIDED BY:

Manuel Enriquez — Printed Employee or Offender Name

CO III — Rank or Title or TDCJ No.

II. ADDITIONAL INFORMATION

This is a continuation of information which I began to provide on the (*Enter form number*) UOF- 1

So that the decontamination process can be utilized. once the decontamination process was done Said ~~offender~~ inmate then refused to be escorted back to his assigned cell. I then attempted to calm the ~~offender~~ inmate and i was able to translate captain Friths orders in Spanish and Said ~~offender~~ inmate then complied with all orders. The 5 man team then escorted the ~~offender~~ inmate back to his cell and assisted him to the floor. Restraints were then removed and the use of force was terminated.

☐ Continuation page(s) attached

III. ACKNOWLEDGMENT

To the best of my knowledge, the information submitted is complete and accurate.

Signature: M. Enriquez Date: 1-13-21

IV. TRANSLATED BY (*If applicable*)

To the best of my knowledge, the foregoing information is an accurate account of information provided by:

Offender: ______ Printed Name ______ TDCJ No.

Employee Translator: ______ Printed Name ______ Rank or Title

______ Signature ______ Date

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report

### Employee Participant Statement

Unit (Name and Alpha Code): Wallace WL

Report Number: MA-00338-01-21 Incident Number (if applicable): I-00721-01-21

**I. INSTRUCTIONS**

- *Complete Section II.a, through II.e, checking and completing all that apply in each section;*
- *At Section II.f, in as much detail as possible, describe what happened before, during, and after the use of force occurred, including:*
  - *Time or approximate time of use of force;*
  - *Name of each offender involved;*
  - *Name and rank or title of each employee involved; and*
  - *Description of employee and offender injuries, if any.*

**II. STATEMENT**

a. Printed Name: Joe Harp Date/time force was used: 1-13-21 13:48

b. Location where use of force occurred: Restrictive housing 3cell

c. PRIOR TO implementing force, did you do any of the following:

| YES | NO | | If 'NO,' explain why: |
|---|---|---|---|
| ☐ | ☑ | * Listen to the offender? | completed by other staff |
| ☐ | ☑ | * Attempt to calm or reason with the offender? | completed by other staff |
| ☐ | ☑ | * Explain the consequences? | completed by other staff |
| ☐ | ☑ | Notify the supervisor? | already on scene |
| ☐ | ☑ | Request a video camera and operator? | already on scene |
| ☐ | ☑ | Secure the area? | already secured |
| ☐ | ☑ | Request additional staff to make a visible show of force? | already on scene |
| ☐ | ☑ | Use restraining devices? | Refused. |

* If answer is 'YES' to any of these, describe in detail, at Section f, how this was accomplished.

d. In describing offender behavior, specify which offender(s) and whether it occurred before or during the use of force.

| Before | During | | Offender Name(s) / TDCJ Number(s): |
|---|---|---|---|
| ☐ | ☐ | Assaulted another offender with weapon | |
| ☐ | ☐ | Assaulted another offender without weapon, such as by kicking, shoving, pushing, slapping, hitting, or grabbing | |
| ☐ | ☐ | Assaulted staff or another person, not an offender, with weapon | |
| ☐ | ☐ | Assaulted staff or another person, not an offender, without weapon | |
| ☐ | ☐ | Attempted escape | |
| ☒ | ☒ | Attempted suicide or self-mutilation | Valenzuela, Ruben 1785292 |
| ☐ | ☒ | Attempted to assault staff or another person, not an offender, with weapon | Valenzuela, Ruben 1785292 |
| ☐ | ☒ | Attempted to assault staff or another person, not an offender, without weapon | Valenzuela, Ruben 1785292 |
| ☐ | ☐ | Created a disturbance or riot | |
| ☐ | ☐ | Damaged or destroyed state property | |
| ☒ | ☒ | Displayed abnormal behavior | Valenzuela, Ruben 1785292 |
| ☐ | ☐ | Obstructed tray slot or cell door | |
| ☐ | ☒ | Pulled away from staff | Valenzuela, Ruben 1785292 |
| ☐ | ☐ | Refused to accept a housing assignment | |
| ☐ | ☐ | Refused medically ordered treatment | |
| ☐ | ☐ | Refused photo I.D. or fingerprinting, during intake or update | |
| ☒ | ☒ | Refused strip search or restraint procedures | Valenzuela, Ruben 1785292 |
| ☐ | ☒ | Refused to leave or enter a housing area | Valenzuela, Ruben 1785292 |
| ☐ | ☐ | Refused to submit to forensic or DNA collection | |
| ☐ | ☐ | Swore at or verbally threatened staff | |

Unit (*Name and Alpha Code*): Wallace WL

Report Number: MA-00338-01-21

Incident Number (*if applicable*): I-00721-01-21

e. Describe your actions. *If more than one offender noted in Section II.d, identify against which offender your action was taken:*

☐ Shoved or pushed offender:

☐ Used restraining holds on:

☑ Used restraining device(s) on: Valenzuela, Ruben # 1785292

If so, what type & why? *Type:* Hand Restraints *Reason:* medical, cell check

Date/time used: *Date:* 1-13-21 *Time:* 1408 *Date/time of relief:* *Date:* 1-13-21 *Time:* 1425

☑ Struck offender with fist or open hand: Multiple times in the ribs w/ closed fist

If so, how many times? 3-4 *What part of the body was struck?* Ribs

☐ Kicked offender:

If so, how many times? *What part of the body was struck?*

☐ Used riot baton on:

If so, how many times was the offender struck? *What part of the body was struck?*

☐ Used chemical agents on:

If so, what type? *How much?*

☐ Used deadly force against:

If so, describe firearm and ammunition used; give manufacturer's serial number; how many rounds fired?

☐ Other (*Explain*):

f. Written Statement: On 1-13-2021, I Officer Joe Harp COIV, responded to line control, restrictive housing for the Incident Command System being initiated by Captain Darrell Frith, for ~~an~~ upon arrival I took control of being the video camera operator. At that point, Officer James Skipworth COV had already utilized his carry-on person chemical agents on Inmate Valenzuela, Ruben # 1785292 for attempting to harm himself. Captain Frith gave Inmate Valenzuela multiple orders to come to the cell door and comply with submitting to hand restraints to which said offender did refuse to comply. Let it be known that Captain Frith was giving the initial brief narration on camera. Captain Frith then instructed Officer McGuire, Robert COIV to give orders and consequences to said offender for submitting to hand restraints. Said inmate still refused. Captain Frith then was given authorization to assemble a five man cell extraction team. Sergeant Jose Valdez took over video camera operation.

☑ *Continuation page(s) attached*

## III. ACKNOWLEDGEMENT

To the best of my knowledge, the information submitted in this participant statement is complete and accurate.

Joe Harp
Printed Name

CO IV [redacted]
Rank or Title and Social Security No.

[signature]
Signature

1-13-2021
Date



DEFS' MSJ APPX. 161

CERVANTEZ_00161

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report

*Continuation Page*

Unit *(Name and Alpha Code)*: Wallace WL

Report Number: MA-00338-01-21 Incident Number *(if applicable)*: I-00721-01-21

**I. INFORMATION PROVIDED BY**

Joe Harp — Printed Employee or Offender Name

CO IV — Rank or Title or TDCJ No.

**II. ADDITIONAL INFORMATION**

This is a continuation of information which I began to provide on the *(Enter form number)* UOF-1

AT THAT POINT, I WENT AND STARTED TO GET READY ON THE FIVE MAN TEAM. 1 MAN WAS ROBERT MCGUIRE CO IV 2 MAN WAS MANUEL ENRIQUEZ CO IV, 3 MAN WAS MYSELF JOE HARP CO IV, 4 MAN GREG BOSTIC CO III, 5 MAN HARRY MARTINEZ CO V. WE THEN WENT CELL-SIDE AND CAPTAIN FEITH GAVE ONE MORE ORDERS AND CONSEQUENCES TO WHICH INMATE VALENZUELA AGAIN REFUSED. THE CELL DOOR WAS OPENED AND WE ENTERED CELL 3 OF RESTRICTIVE HOUSING. SAID OFFENDER IMMEDIATELY BEGAN RESISTING AND ATTEMPTED TO BITE THE OFFICERS. I BEGAN ATTEMPTING TO GAIN CONTROL OF HIS ARMS & HANDS TO PLACE THE RESTRAINTS ON HIM. INMATE VALENZUELA GRABBED THE LIP OF THE TOILET TO MAKE IT WHERE WE COULDN'T APPLY THE RESTRAINTS AS STATED ABOVE HE ATTEMPTED TO BITE THE HANDS AND ARMS OF THE OFFICERS AND STRIKES WERE LANDED TO HIS RIB AREA WITH A CLOSED FIST FOUR TIMES TO GAIN COMPLIANCE. AFTER MULTIPLE ATTEMPTS, I WAS ABLE TO PLACE THE HAND RESTRAINTS ON THE INMATE. HE WAS ASSISTED TO HIS FEET AND ESCORTED TO THE SHOWER CELL FOR EVALUATION FROM SANDRA CASTILLO LVN. AFTER LVN CASTILLO WAS FINISHED, OFFICER ENRIQUES, TRANSLATED TO THE OFFENDER TO COMPLY WITH ORDERS FOR STILL PHOTOS AND TO BE MOVED BACK INTO THE CELL.

☒ *Continuation page(s) attached*

**III. ACKNOWLEDGMENT**

To the best of my knowledge, the information submitted is complete and accurate.

Signature: [signature] Date: 1-13-2021

**IV. TRANSLATED BY** *(If applicable)*

To the best of my knowledge, the foregoing information is an accurate account of information provided by:

Offender: ______ Printed Name ______ TDCJ No.

Employee Translator: Joe Harp — Printed Name CO IV — Rank or Title

[signature] — Signature 1-13-2021 — Date

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report

*Continuation Page*

Unit *(Name and Alpha Code)*: Wallace WL

Report Number: MA-00338-01-21 Incident Number *(if applicable)*: I-00721-01-21

### I. INFORMATION PROVIDED BY

Joe Harp — Printed Employee or Offender Name

CO IV — Rank or Title or TDCJ No.

### II. ADDITIONAL INFORMATION

This is a continuation of information which I began to provide on the *(Enter form number)* UOF-8

LET IT BE KNOWN THAT I, OFFICER HARP, WAS THE ONE THAT SECURED THE SHOWER CELL DOOR. INMATE VALENZUELA WAS ESCORTED BACK INTO PHD-3 AND SECURED IN THE CELL. I THEN RESUMED MY NORMAL DUTIES.

☐ *Continuation page(s) attached*

### III. ACKNOWLEDGMENT

To the best of my knowledge, the information submitted is complete and accurate.

Signature: [signature] Date: 1-13-2021

### IV. TRANSLATED BY *(If applicable)*

To the best of my knowledge, the foregoing information is an accurate account of information provided by:

Offender: ________ Printed Name ________ TDCJ No.

Employee Translator: Joe Harp — Printed Name; CO IV — Rank or Title

[signature] — Signature; 1-13-21 — Date

UOF-8 (2017)

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report

### Employee Participant Statement

Unit *(Name and Alpha Code)*: Wallace WL

Report Number: MA-00338-01-21 Incident Number *(if applicable)*: I-00721-01-21

**I. INSTRUCTIONS**

- ***Complete Section II.a, through II.e, checking and completing all that apply in each section;***
- ***At Section II.f, in as much detail as possible, describe what happened before, during, and after the use of force occurred, including:***
  - ***Time or approximate time of use of force;***
  - ***Name of each offender involved;***
  - ***Name and rank or title of each employee involved; and***
  - ***Description of employee and offender injuries, if any.***

**II. STATEMENT**

a. Printed Name: G. Bostic Date/time force was used: 1/13/21 13:48

b. Location where use of force occurred: Restrictive Housing 3

c. PRIOR TO implementing force, did you do any of the following:

| YES | NO | | If 'NO,' explain why: |
|---|---|---|---|
| ☐ | ☑ | * **Listen to the offender?** | Time did not allow |
| ☐ | ☑ | * **Attempt to calm or reason with the offender?** | Time did not allow |
| ☐ | ☑ | * **Explain the consequences?** | Time did not allow |
| ☐ | ☑ | Notify the supervisor? | Time did not allow |
| ☐ | ☑ | Request a video camera and operator? | Time did not allow |
| ☐ | ☑ | Secure the area? | Time did not allow |
| ☐ | ☑ | Request additional staff to make a visible show of force? | Time did not allow |
| ☐ | ☑ | Use restraining devices? | Time did not allow |

* **If answer is 'YES' to any of these, describe in detail, at Section f, how this was accomplished.**

d. In describing offender behavior, specify which offender(s) and whether it occurred before or during the use of force.

| Before | During | | Offender Name(s) / TDCJ Number(s): |
|---|---|---|---|
| ☐ | ☐ | Assaulted another offender with weapon | |
| ☐ | ☐ | Assaulted another offender without weapon, such as by kicking, shoving, pushing, slapping, hitting, or grabbing | |
| ☐ | ☐ | Assaulted staff or another person, not an offender, with weapon | |
| ☐ | ☐ | Assaulted staff or another person, not an offender, without weapon | |
| ☐ | ☐ | Attempted escape | |
| ☑ | ☑ | Attempted suicide or self-mutilation | Valenzuela, Ruben 1785292 |
| ☐ | ☐ | Attempted to assault staff or another person, not an offender, with weapon | |
| ☐ | ☐ | Attempted to assault staff or another person, not an offender, without weapon | |
| ☐ | ☐ | Created a disturbance or riot | |
| ☐ | ☐ | Damaged or destroyed state property | |
| ☑ | ☑ | Displayed abnormal behavior | Valenzuela, Ruben 1785292 |
| ☐ | ☐ | Obstructed tray slot or cell door | |
| ☐ | ☑ | Pulled away from staff | Valenzuela, Ruben 1785292 |
| ☐ | ☐ | Refused to accept a housing assignment | |
| ☐ | ☐ | Refused medically ordered treatment | |
| ☐ | ☐ | Refused photo I.D. or fingerprinting, during intake or update | |
| ☑ | ☑ | Refused strip search or restraint procedures | Valenzuela, Ruben 1785292 |
| ☐ | ☐ | Refused to leave or enter a housing area | |
| ☐ | ☐ | Refused to submit to forensic or DNA collection | |
| ☐ | ☐ | Swore at or verbally threatened staff | |

Unit (Name and Alpha Code): Wallace
Report Number: MA-00338-01-21
Incident Number (if applicable): I-00721-01-21

e. Describe your actions. *If more than one offender noted in Section II.d, identify against which offender your action was taken:*

- [x] Shoved or pushed offender: Valenzuela, Ruben 1785292
- [ ] Used restraining holds on:
- [x] Used restraining device(s) on: helped put restraints on offender
  **If so, what type & why?** *Type:* hands/legs *Reason:* offender was resisting
  **Date/time used:** *Date:* 1-13-21 *Time:* 1408/1406 *Date/time of relief:* *Date:* 1-13-21 *Time:* 1425/1424
- [ ] Struck offender with fist or open hand:
  **If so, how many times?** *What part of the body was struck?*
- [ ] Kicked offender:
  **If so, how many times?** *What part of the body was struck?*
- [ ] Used riot baton on:
  **If so, how many times was the offender struck?** *What part of the body was struck?*
- [ ] Used chemical agents on:
  **If so, what type?** *How much?*
- [ ] Used deadly force against:
  **If so, describe firearm and ammunition used; give manufacturer's serial number; how many rounds fired?**
- [ ] Other (*Explain*):

f. Written Statement: On 1/13/21 at 13:48 hrs I responded to an ICS called for an inmate attempting self harm. When I arrived on scene captin Darell Frith had command of the incident Sgt Jose Valdez was the video camera operator officer Robert Mcguire CO III, Manuel Enriquez CO II, Joe Happ CO IV, Harry Martinez CO V, James Skipworth CO V, license vocational nurse were already on scene. Captin Frith gave the inmate an order to come to the door and submit to hand restraints and the inmate refused the order. Captin Frith gave an additional order to come to the door and submit to hand restraints and the inmate failed to obey the order. At this time captin Frith obtained authorization from warden Fehner to utilize chemical agents and a 5 man team. At this time started suiting up as 4 man along with officer Mcguire 1 man, officer Enriquez 2 man, officer Happ 3 man and officer Martinez 5 man. Then captin Frith gave the inmate additional orders to comply and come to the door to submit to hand restraints or the use of a 5 man team will be utilized and the inmate failed to comply with the order. Captin Frith gave an additional order to come to the door and submit to hand restraints and the inmate refused to obey the order. At this time the team entered the cell in order to gain compliance of the inmate offender

- [x] Continuation page(s) attached

## III. ACKNOWLEDGEMENT

To the best of my knowledge, the information submitted in this participant statement is complete and accurate.

Printed Name: A. Bostic, Goes
Rank or Title and Social Security No.: CO III [redacted]
Signature: [signature]
Date: 1/13/21

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report

***Continuation Page***

Unit *(Name and Alpha Code)*: Wallace WL

Report Number: MA-00338-01-21 Incident Number *(if applicable)*: I-00721-01-21

**I. INFORMATION PROVIDED BY**

Grey Bostic — Printed Employee or Offender Name

CO III — Rank or Title or TDCJ No.

**II. ADDITIONAL INFORMATION**

This is a continuation of information which I began to provide on the *(Enter form number)* UOF-

and Place him in hand and leg restraints. At this time the inmate did not comply with orders to stop resisting staff and allow staff to place him in hand and leg restraints. The 5 man team were able to Place the inmate in hand restraints At this time LVN castillo attempted to complete a use of force screening on the inmate and the inmate refused to comply with the order. The 5 man team assited the inmate to the shower and the shower door was secured by captin Frith. LVN castillo completed a use of force screening. LVN castillo asked if the inmate had any injuries due to the use of force, The inmate stated no injuries due to the use of force. captin Frith asked the inmate if he had any injuries due to the use of force and the inmate stated that he did not recieve any injuries due to the use of force, at this time the inmate was escorted back to TRA 3 cell. captin frith read the use of force 2 statement, due to the inmate being in CDO status the use of force statement was not given to the inmate. captin Frith gave the inmate instructions about decontamination instructions to include rinsing with cool water and soap and instructed not to use oils, loations or creams. At this time captin Frith gave a closing narration on the video camera and the use of force was terminated.

☐ *Continuation page(s) attached*

**III. ACKNOWLEDGMENT**

To the best of my knowledge, the information submitted is complete and accurate.

Signature: [signature] Date: 1/13/21

**IV. TRANSLATED BY *(If applicable)***

To the best of my knowledge, the foregoing information is an accurate account of information provided by:

Offender: ______ Printed Name ______ TDCJ No.

Employee Translator: ______ Printed Name ______ Rank or Title

______ Signature ______ Date

UOF-8 (2017)

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report

### *Employee Participant Statement*

Unit *(Name and Alpha Code)*: Wallace ~~Robertson~~ WL ~~RB~~

Report Number: MA-00338-01-21 Incident Number *(if applicable)*: I-00721-01-21

**I. INSTRUCTIONS**

- *Complete Section II.a, through II.e, checking and completing all that apply in each section;*
- *At Section II.f, in as much detail as possible, describe what happened before, during, and after the use of force occurred, including:*
  - *Time or approximate time of use of force;*
  - *Name of each offender involved;*
  - *Name and rank or title of each employee involved; and*
  - *Description of employee and offender injuries, if any.*

**II. STATEMENT**

a. Printed Name: Harry Marthez Date/time force was used: 1-13-2021 13:46 p.m.

b. Location where use of force occurred: Restrictive Housing 3 cell

c. **PRIOR TO** implementing force, did you do any of the following:

| YES | NO | | If 'NO,' explain why: |
|---|---|---|---|
| ☐ | ☑ | * Listen to the offender? | Time did not allow |
| ☐ | ☑ | * Attempt to calm or reason with the offender? | Time did not allow |
| ☐ | ☑ | * Explain the consequences? | Time did not allow |
| ☐ | ☑ | Notify the supervisor? | Time did not allow |
| ☐ | ☑ | Request a video camera and operator? | Time did not allow |
| ☐ | ☑ | Secure the area? | Time did not allow |
| ☐ | ☑ | Request additional staff to make a visible show of force? | Time did not allow |
| ☐ | ☑ | Use restraining devices? | Time did not allow |

* **If answer is 'YES' to any of these, describe in detail, at Section f, how this was accomplished.**

d. In describing offender behavior, specify which offender(s) and whether it occurred before or during the use of force.

| Before | During | | Offender Name(s) / TDCJ Number(s): |
|---|---|---|---|
| ☐ | ☐ | Assaulted another offender with weapon | |
| ☐ | ☐ | Assaulted another offender without weapon, such as by kicking, shoving, pushing, slapping, hitting, or grabbing | |
| ☐ | ☐ | Assaulted staff or another person, not an offender, with weapon | |
| ☐ | ☐ | Assaulted staff or another person, not an offender, without weapon | |
| ☐ | ☐ | Attempted escape | |
| ☑ | ☑ | Attempted suicide or self-mutilation | Valenzuela, Ruben 1785292 |
| ☐ | ☐ | Attempted to assault staff or another person, not an offender, with weapon | |
| ☐ | ☐ | Attempted to assault staff or another person, not an offender, without weapon | |
| ☐ | ☐ | Created a disturbance or riot | |
| ☐ | ☐ | Damaged or destroyed state property | |
| ☑ | ☑ | Displayed abnormal behavior | Valenzuela, Ruben 1785292 |
| ☐ | ☐ | Obstructed tray slot or cell door | |
| ☐ | ☐ | Pulled away from staff | |
| ☐ | ☐ | Refused to accept a housing assignment | |
| ☐ | ☐ | Refused medically ordered treatment | |
| ☐ | ☐ | Refused photo I.D. or fingerprinting during intake or update | |
| ☐ | ☑ | Refused strip search or restraint procedures | Valenzuela, Ruben 1785292 |
| ☐ | ☐ | Refused to leave or enter a housing area | |
| ☐ | ☐ | Refused to submit to forensic or DNA collection | |
| ☐ | ☐ | Swore at or verbally threatened staff | |

Unit *(Name and Alpha Code)*: ~~Wallace~~ ~~Robertson~~ WL ~~RB~~

Report Number: MA-00338-01-21 Incident Number *(if applicable)*: I-00721-01-21

e. Describe your actions. *If more than one offender noted in Section II.d, identify against which offender your action was taken:*

- [ ] Shoved or pushed offender:
- [ ] Used restraining holds on:
- [x] Used restraining device(s) on: Valenzuela, Ruben 1785292
  - If so, what type & why? *Type:* Hand & Leg Restraints *Reason:* Five man team
  - Date/time used: *Date:* 1-13-2021 *Time:* 1408/1406 *Date/time of relief:* *Date:* 1-13-2021 *Time:* 1425/1424
- [x] Struck offender with fist or open hand: Valenzuela, Ruben 1785292 open hand
  - If so, how many times? 2 times *What part of the body was struck?* upper body
- [ ] Kicked offender:
  - If so, how many times? *What part of the body was struck?*
- [ ] Used riot baton on:
  - If so, how many times was the offender struck? *What part of the body was struck?*
- [ ] Used chemical agents on:
  - If so, what type? *How much?*
- [ ] Used deadly force against:
  - If so, describe firearm and ammunition used; give manufacturer's serial number; how many rounds fired?
- [ ] Other *(Explain)*:

f. Written Statement: On 1-13-2021 at approximately 13:46 p.m I officer Harry Martner CO II was assigned to Restrictive Housing. officer James Skipworth CO II was C.D.O watching ~~offender~~ Inmate Valenzuela, Ruben 1785292 in TRA 3 cell. officer Skipworth notified Captain Darrell Frith of the ~~offenders~~ Inmates behavior. Upon arrival ~~offender~~ Inmate was moving his wrist back and forth against a metal plate attached to the wall. Skipworth warned ~~offender~~ Inmate of his actions and to stop ~~offender~~ Inmate then stuck his head in the toilet trying to drown himself. officer Skipworth ordered the ~~offender~~ Inmate again to stop and he did it again. officer Skipworth then administered his C.O.P. I.C.S was called and additional staff showed up. Sergeant Jose Valdez turned on the video camera and ~~Lt~~ Darrell Frith did the narration for the camera. Lt Frith gave ~~offender~~ Inmate several orders to submit to hand restraints and taken to medical and he refused. Frith did then administered the LE10 to gain compliance. After several more orders and several more minutes ~~offender~~ Inmate still did not comply. Frith then administered another burst of the LE10. A five man team was assembled one man was officer Robert McGuire CO III, two man Manuel Enriquez CO III, three man Joe Harp CO III, four man Greg Bostic CO III, five man Harry Martner CO II. After the ~~1st~~ second burst of the LE10 the ~~offender~~ Inmate still refused so the five man team entered the cell.

- [x] Continuation page(s) attached

## III. ACKNOWLEDGEMENT

To the best of my knowledge, the information submitted in this participant statement is complete and accurate.

Harry Martner — Printed Name

CO II [redacted] — Rank or Title and Social Security No.

Harry Martner — Signature

1-13-2021 — Date

DEFS' MSJ APPX. 168



CERVANTEZ_00168

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report

### Continuation Page

Unit (Name and Alpha Code): Wallace WL

Report Number: MA-00338-01-21 Incident Number (If applicable): I-00 221-01-21

I. INFORMATION PROVIDED BY

Harry martinez — Printed Employee or Offender Name

COII — Rank or Title or TDCJ No.

II. ADDITIONAL INFORMATION

This is a continuation of information which I began to provide on the (Enter form number) UOF-1

The ~~offender~~ Inmate was aggressive fighting and trying to bite us. ~~offender~~ Inmate tried to bite my left hand so I struck ~~offender~~ Inmate in the upper body to get him to stop. ~~Offender~~ Inmate then still continued to try to bite us and assault us and still refused to submit to hand restraints and leg restraints. I finally was able to apply the leg restraints on the ~~offender~~ Inmate. I then applied the hand restraints after he continued to not comply. ~~offender~~ Inmate was then helped to his feet by the five man team and escorted to the shower for decontamination procedures. ~~offender~~ Inmate refused to come to the slot for us to remove the hand restraints. LVN Sandra Castillo then conducted a medical screening on the ~~offender~~ Inmate and ~~offender~~ Inmate stated he had no injuries due to the use of force. Captain Frith then took front and back still photos of the ~~offender~~ Inmate. ~~offender~~ Inmate was then escorted back to the tra 3 cell. ~~offender~~ Inmate was helped placed on the floor. I removed the leg restraints while officer Harp removed the hand restraints. The five man team then exited the cell. Captain Frith the read the decontamination procedures and the U.O.F. 2. The video camera was then turned off and the use of force was terminated. I then went back to making my security rounds in Restrictive Housing.

☐ Continuation page(s) attached

III. ACKNOWLEDGMENT

To the best of my knowledge, the information submitted is complete and accurate.

Signature: Harry Martinez — Date: 1-13-2021

IV. TRANSLATED BY (If applicable)

To the best of my knowledge, the foregoing information is an accurate account of information provided by:

Offender: ______ Printed Name ______ TDCJ No.

Employee Translator: ______ Printed Name ______ Rank or Title

______ Signature ______ Date

DEFS' MSJ APPX. 169

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report

### *Offender Participant Statement*

| | |
|---|---|
| Unit *(Name and Alpha Code)*: Wallace WL | |
| Report Number: M-00338-01-21 | Incident Number (*if applicable*): I-00721-01-21 |

**I. NOTICE TO OFFENDER**

You were subjected to a use of force by staff. Staff will write statements about what happened. You may also write a statement so that your side of the story is part of the official Use of Force Report. If you do not write it down, the officials reviewing this use of force will not know your version of the use of force. This form is for your statement.

**II. STATEMENT**

***Instructions:***
- *Answer the questions below, then write a detailed statement in Section h, telling what happened **before**, **during**, and **after** the use of force occurred.*
- *When you write your statement, be sure to include the name and title or rank of each staff member involved in the use of force against you.*

a. Your name *(print)*: Valenzuela, Ruben TDCJ#: 1785292

b. What date was the force used on you? _____

c. What happened **before** the use of force that may have caused the officers to use force? *(For example: Did you refuse to obey an order? Did you threaten someone? Were you fighting?)*

_____

d. Where were you when the force was used on you? _____

e. What kind of force did staff use on you? *(For example, an employee used chemical agents on you or held, slapped, or hit you)*

_____

f. If you think staff should not have used force on you, or they used too much force, explain why:

_____

g. Did the force used on you leave marks on you or cause you injury? *(Answer YES or NO)* _____
If 'YES,' what are the marks or injuries? *(For example: bruises, scrapes, broken bones)*

_____

h. Written Statement: Inmate Valenzuela was in CDO status during the UOF and was given the opportunity to make a verabal statement in which he refused.

Brown, Kelly CT. ~~[illegible]~~ [signature] 1/13/21

Brown, Larry Sgt. [signature] 1/13/21

☐ *Continuation page(s) attached*

**III. ACKNOWLEDGEMENT**

To the best of my knowledge, the information submitted in this offender participant statement is complete and accurate.

Signature Date

UOF-2 (2017)

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report

### *Witness Statement*

Unit *(Name and Alpha Code)*: Wallace WL

Report Number: MA-00338-01-21 Incident Number (*if applicable*): I-00721-01-21

## I. INSTRUCTIONS

- ***Complete Section II.a, then at Section II.b, in as much detail as possible, describe what you witnessed before, during, and after the use of force occurred, including:***
  - *Time or approximate time of use of force;*
  - *Name of each offender involved;*
  - *Name and rank or title of each employee involved; and*
  - *Description of employee and offender injuries, if any.*

## II. STATEMENT

a. Date/time force was used: 01/13/21 1348 Location where use of force occurred: Restrictive Housing Trans 03

b. Written Statement:

On the date and time stated above, I Sergeant Jose Valdez responded to an incident command system initiated by Captain Darrell Frith due to an offender trying to inflict harm on himself in restrictive housing.

After arriving on scene I Sgt. Valdez replaced Officer Joe Harp CO IV as the video camera operator. At this time Cpt. Frith narrated the use of force and ordered Offender Ruben Valenzuela #1785292 to approach the cell door and submit to hand restraints or chemical agents would be utilized to gain compliance. Offender Valenzuela refused to comply with orders and chemical agents were utilized to gain compliance. At this time Cpt. Frith ordered offender Valenzuela a second time to approach the cell door and submit to hand restraints or chemical agents would be utilized to gain compliance. Offender Valenzuela refused to comply with orders and chemical agents were utilized a second time to gain compliance. At this time Cpt. Frith ordered offender Valenzuela to approach the cell door and submit to hand restraints or a five man extraction team would be utilized to gain compliance. Offender Valenzuela refused to comply with orders and a five man extraction team was utilized to gain compliance.

Five man extraction team consisted of 1 man Robert McGuire CO IV, 2 man Manuel Enriquez CO IV, 3 man Joe Harp CO IV, 4 man Greg Bostic CO III, 5 man Harry Martinez CO V. At this time Officer Mcquire,Officer Bostic ,Officer Enriquez and Officer Harp held down offender Valezuela while Officer Martinez applied hand and leg restraints on offender Valenzuela. After restraining offender Valenzuela, License Vocational Nurse Sandra Castillo performed a medical examination on offender Valenzuela. LVN Castillo cleared said offender of any injuries. At this time offender was carried to a shower cell for decontamination by the five man cell extraction team.. After securing offender Valenzuela in the shower cell, offender was instructed by Cpt. Frith on decontamination procedures. At this time Officer Enriquez ordered offender Valenzuela to stand up and face the camera for digital photos. Four digital photos were taken by Cpt. Frith. At this time offender Valenzuela was escorted to Trans cell 3 and placed on the floor. After placing offender on the floor Officer Harp removed the hand restraints and Officer Martinez removed the leg restraints. At this time the five man extraction team exited the cell and offender was secured in the cell. At this time Cpt. Frith informed offender of his offender participant statement. Cpt. Frith then stated his closing statement and terminated the use of force at 1428.

☐ *Continuation page(s) attached*

## III. ACKNOWLEDGEMENT

To the best of my knowledge, the information submitted is complete and accurate.

Jose Valdez
Printed Name

[signature]
Signature

SGT
Rank or Title or TDCJ # and Custody

1-13-21
Date

UOF-3 (2017)

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report

### *Offender Group Refusal*

Unit *(Name and Alpha Code)*: Wallace WL

Report Number: M-00338-01-21 Incident Number (*if applicable*): I-00721-01-21

**I. INSTRUCTIONS**

- *Make an assertive effort to secure participant and witness statements from all offenders who were in the vicinity of the above-referenced use of force.*
- *List below those who declined to submit a statement, starting with participants and then witnesses, as applicable.*

**II. LIST OF OFFENDERS**

| PARTICIPANT | WITNESS | OFFENDER NAME *(Last, First)* | | TDCJ NUMBER and CUSTODY | |
|---|---|---|---|---|---|
| ☒ | ☐ | Valenzuela | Ruben | 1785292 | G4 |
| ☐ | ☒ | Hall | Peter | 2227277 | G4 |
| ☐ | ☒ | Holmes-Brown | Dashaun | 2161404 | 1A |
| ☐ | ☒ | Noguera | Andy | 2239270 | G2 |
| ☐ | ☒ | Porter | Cade | 2052438 | 1A |
| ☐ | ☒ | Vela | Daniel | 1691599 | 3A |
| ☐ | ☒ | Grayson | Sheldon | 2149874 | G2 |
| ☐ | ☐ | | | | |
| ☐ | ☐ | | | | |
| ☐ | ☐ | | | | |
| ☐ | ☐ | | | | |
| ☐ | ☐ | | | | |
| ☐ | ☐ | | | | |
| ☐ | ☐ | | | | |
| ☐ | ☐ | | | | |
| ☐ | ☐ | | | | |
| ☐ | ☐ | | | | |
| ☐ | ☐ | | | | |
| ☐ | ☐ | | | | |
| ☐ | ☐ | | | | |
| ☐ | ☐ | | | | |

**III. ACKNOWLEDGED and WITNESSED BY**

*To the best of my knowledge, the information submitted is complete and accurate.*

➢ Employee completing the UOF-4:

Brown, Kelly LT. — Printed Name/Rank or Title

[signature] — Signature/Date

➢ Witnessed by:

Brown, Larry SGT. — Printed Name/Rank or Title

[signature] — Signature/Date

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report
### *Employee and Offender Use of Force Injury Report*

*This is not part of the offender's or employee's medical record. This report is confidential and shall be used for administrative purposes only.*

Unit (*Name and Alpha Code*): Wallace WL

Report Number: MA-00338-01-21 | Incident Number (*if applicable*): I-00721-01-21

## I. EMPLOYEE OR OFFENDER PATIENT

☒ Employee (Printed Name): Frith, Darrell Rank or Title: Cpt

☐ Offender (Printed Name): _____ TDCJ No.: _____

## II. PHYSICAL SCREENING

a. Did the employee or offender complain of injury? ☐ YES ☒ NO
If 'YES,' describe: _____

b. Was the employee or offender screened at the unit? ☒ YES ☐ NO
If 'YES,' provide date/time: 1/13/21 1443
If 'NO,' explain: _____

c. Was an injury to the employee or offender present at the time of the screening? ☐ YES ☒ NO
If 'YES,' place a ✓ by each area of the body that was injured

| | | | | | |
|---|---|---|---|---|---|
| ☐ Abdomen/Stomach | ☐ Buttocks | ☐ Face | ☐ Hand(s) | ☐ Leg(s) | ☐ Shoulder |
| ☐ Ankle(s) | ☐ Chest | ☐ Foot/Feet | ☐ Head | ☐ Neck | ☐ Wrist(s) |
| ☐ Arm(s) | ☐ Ear(s) | ☐ Genital Area | ☐ Hip(s) | ☐ Pelvis | |
| ☐ Back | ☐ Eye(s) | ☐ Groin | ☐ Knee(s) | | |

d. Was the offender classified as 'medically or mentally impaired' prior to the use of force? ☐ YES ☐ NO

e. Licensed medical staff who performed screening (Printed Name/Title): Sandy Castillo, LVN

f. I administered the screening (Signature/Date): Sandy Castillo, LVN 1/13/21

## III. MEDICAL ACTIVITY FOR OFFENDERS WHO REFUSE PHYSICAL SCREENING OR ARE A THREAT TO STAFF

a. Licensed medical staff unable to complete physical screening because:
☐ Offender refused screening
☐ Unable to screen because offender was a threat to staff

b. Was the offender ambulatory? ☐ YES ☐ NO

c. ~~Was the offender complaining of pain or injury? ☐ YES ☐ NO~~
If 'YES,' give location on the body where offender indicates pain or injury is present _____

d. Was an injury to the offender visible at the time of the screening? ☐ YES ☐ NO
If 'YES,' place a ✓ by each area of the body that was injured

| | | | | | |
|---|---|---|---|---|---|
| ☐ Abdomen/Stomach | ☐ Buttocks | ☐ Face | ☐ Hand(s) | ☐ Leg(s) | ☐ Shoulder |
| ☐ Ankle(s) | ☐ Chest | ☐ Foot/Feet | ☐ Head | ☐ Neck | ☐ Wrist(s) |
| ☐ Arm(s) | ☐ Ear(s) | ☐ Genital Area | ☐ Hip(s) | ☐ Pelvis | |
| ☐ Back | ☐ Eye(s) | ☐ Groin | ☐ Knee(s) | | |

e. Was the offender classified as 'medically or mentally impaired' prior to the UOF? ☐ YES ☐ NO

f. Licensed medical staff who observed offender (Printed Name/Title): __________

g. I observed the offender and was unable to complete a full screening (Signature/Date): __________

**DEFS' MSJ APPX. 173**

**CERVANTEZ 00173**

Unit *(Name and Alpha Code)*: Wallace WL

Report Number: MA-00338-01-21 Incident Number (*if applicable*): I-06721-01-21

Patient's Name: Frith, Darrell, Cpt

## IV. TREATMENT

Complete this section ONLY if employee or offender was observed with injury:

a. Was the employee or offender treated for injuries? ☐ YES ☐ NO

If 'NO,' explain why: ☐ Refused ☐ Other (*explain*):

If 'YES,' provide description of treatment:

______, which occurred at:

☐ Offender's assigned living area ☐ Hospital *(Name)*: ______

☐ Unit Infirmary ☐ Other *(Specify)*: ______

b. Licensed medical staff who administered, or attempted to administer, treatment (Printed Name/Title): ______

c. I administered, or attempted to administer, the treatment (Signature/Date): ______

## V. DIAGRAM(S) AND DESCRIPTION OF INJURY

*Instructions to Licensed Medical Staff:*

- *Indicate injuries present at the time of the screening by marking body diagrams and provide brief description below:*
- *Each injury should be noted only once on the appropriate figure.*



Brief Description: None

Brief Description: None

(Printed Name/Title) Sandy Castillo, LVN

(Signature/Date) Sandy Castillo 1/13/21

## VI. ACKNOWLEDGEMENTS

a. I was physically screened or treated by licensed medical staff (Employee Signature/Date): [signature] 1/13/2021

Licensed medical staff conducting screening or providing treatment (Printed Name): Sandy Castillo 1/13/21

b. The answer to II.c on page 1 is 'YES,' and I have provided a photocopy of this UOF-5 to the unit risk management coordinator, as evidenced by our signatures:

Unit Risk Management Coordinator (Printed Name/Signature/Date): Richard Godfrey, CO / Rich Godfrey [signature] 1/13/21

Supervisor (Printed Name/Signature/Date): Brown, Kelly [signature] 1/13/21

DEFS' MSJ APPX. 174



CERVANTEZ_00174

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report
### *Employee and Offender Use of Force Injury Report*

*This is not part of the offender's or employee's medical record. This report is confidential and shall be used for administrative purposes only.*

Unit (*Name and Alpha Code*): Wallace WL

Report Number: MA-00338-01-21 | Incident Number (*if applicable*): I-00721-01-21

## I. EMPLOYEE OR OFFENDER PATIENT

☑ Employee (Printed Name): Skipworth, James Rank or Title: CO-V

☐ Offender (Printed Name): _____ TDCJ No.: _____

## II. PHYSICAL SCREENING

a. Did the employee or offender complain of injury? ☐ YES ☑ NO
If 'YES,' describe: _____

b. Was the employee or offender screened at the unit? ☑ YES ☐ NO
If 'YES,' provide date/time: 1-13-21
If 'NO,' explain: _____

c. Was an injury to the employee or offender present at the time of the screening? ☐ YES ☑ NO
If 'YES,' place a ✓ by each area of the body that was injured

| | | | | | |
|---|---|---|---|---|---|
| ☐ Abdomen/Stomach | ☐ Buttocks | ☐ Face | ☐ Hand(s) | ☐ Leg(s) | ☐ Shoulder |
| ☐ Ankle(s) | ☐ Chest | ☐ Foot/Feet | ☐ Head | ☐ Neck | ☐ Wrist(s) |
| ☐ Arm(s) | ☐ Ear(s) | ☐ Genital Area | ☐ Hip(s) | ☐ Pelvis | |
| ☐ Back | ☐ Eye(s) | ☐ Groin | ☐ Knee(s) | | |

d. Was the offender classified as 'medically or mentally impaired' prior to the use of force? ☐ YES ☑ NO (NA CW)

e. Licensed medical staff who performed screening (Printed Name/Title): Susan Boedeker LVN

f. I administered the screening (Signature/Date): [signature] LVN 1-13-2021

## III. MEDICAL ACTIVITY FOR OFFENDERS WHO REFUSE PHYSICAL SCREENING OR ARE A THREAT TO STAFF

a. Licensed medical staff unable to complete physical screening because:
☐ Offender refused screening
☐ Unable to screen because offender was a threat to staff

b. Was the offender ambulatory? ☐ YES ☐ NO

c. Was the offender complaining of pain or injury? ☐ YES ☐ NO
If 'YES,' give location on the body where offender indicates pain or injury is present _____

d. Was an injury to the offender visible at the time of the screening? ☐ YES ☐ NO
If 'YES,' place a ✓ by each area of the body that was injured

| | | | | | |
|---|---|---|---|---|---|
| ☐ Abdomen/Stomach | ☐ Buttocks | ☐ Face | ☐ Hand(s) | ☐ Leg(s) | ☐ Shoulder |
| ☐ Ankle(s) | ☐ Chest | ☐ Foot/Feet | ☐ Head | ☐ Neck | ☐ Wrist(s) |
| ☐ Arm(s) | ☐ Ear(s) | ☐ Genital Area | ☐ Hip(s) | ☐ Pelvis | |
| ☐ Back | ☐ Eye(s) | ☐ Groin | ☐ Knee(s) | | |

e. Was the offender classified as 'medically or mentally impaired' prior to the UOF? ☐ YES ☐ NO

f. Licensed medical staff who observed offender (Printed Name/Title): ___________

g. I observed the offender and was unable to complete a full screening (Signature/Date): ___________

Unit *(Name and Alpha Code)*: Wallace WL

Report Number: MA-00338-01-21 Incident Number (*if applicable*): I-00721-01-21

Patient's Name: Skipworth, James CO-V

## IV. TREATMENT

**Complete this section ONLY if employee or offender was observed with injury:**

a. Was the employee or offender treated for injuries? ☐ YES ☐ NO

If 'NO,' explain why: ☐ Refused ☐ Other (*explain*):

If 'YES,' provide description of treatment:

_____, which occurred at:

☐ Offender's assigned living area ☐ Hospital *(Name)*: _____

☐ Unit Infirmary ☐ Other *(Specify)*: _____

b. Licensed medical staff who administered, or attempted to administer, treatment (Printed Name/Title): _____

c. I administered, or attempted to administer, the treatment (Signature/Date): ______________________

## V. DIAGRAM(S) AND DESCRIPTION OF INJURY

***Instructions to Licensed Medical Staff:***

- ***Indicate injuries present at the time of the screening by marking body diagrams and provide brief description below:***
- ***Each injury should be noted only once on the appropriate figure.***



Brief Description: no injuries

Brief Description: no injuries

Susan Boedeker LVN
(Printed Name/Title)

[signature] LVN 1-13-2021
(Signature/Date)

## VI. ACKNOWLEDGEMENTS

a. I was physically screened or treated by licensed medical staff (Employee Signature/Date): James P. Skipworth 01-13-2021
Licensed medical staff conducting screening or providing treatment (Printed Name): Susan Boedeker LVN

b. The answer to II.c on page 1 is 'YES,' and I have provided a photocopy of this UOF-5 to the unit risk management coordinator, as evidenced by our signatures:

Unit Risk Management Coordinator (Printed Name/Signature/Date): [signature] [signature] 1/13/21
Supervisor (Printed Name/Signature/Date): Brown, Kelly / [signature] 1/13/21

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report
### *Employee and Offender Use of Force Injury Report*

*This is not part of the offender's or employee's medical record. This report is confidential and shall be used for administrative purposes only.*

Unit *(Name and Alpha Code)*: Wallace WL

Report Number: MA-00338-01-21 | Incident Number (*if applicable*): I-00721-01-21

**I. EMPLOYEE OR OFFENDER PATIENT**

☐ Employee (Printed Name): McGuire, Robert    Rank or Title: COIV

☐ Offender (Printed Name): _____    TDCJ No.: _____

**II. PHYSICAL SCREENING**

a. Did the employee or offender complain of injury? ☑ YES ☐ NO
If 'YES,' describe: _____

b. Was the employee or offender screened at the unit? ☑ YES ☐ NO
If 'YES,' provide date/time: 1/13/21 1444
If 'NO,' explain: _____

c. Was an injury to the employee or offender present at the time of the screening? ☑ YES ☐ NO
If 'YES,' place a ✓ by each area of the body that was injured

| | | | | | |
|---|---|---|---|---|---|
| ☐ Abdomen/Stomach | ☐ Buttocks | ☐ Face | ☑ Hand(s) | ☐ Leg(s) | ☐ Shoulder |
| ☐ Ankle(s) | ☐ Chest | ☐ Foot/Feet | ☐ Head | ☐ Neck | ☐ Wrist(s) |
| ☑ Arm(s) | ☐ Ear(s) | ☐ Genital Area | ☐ Hip(s) | ☐ Pelvis | |
| ☐ Back | ☐ Eye(s) | ☐ Groin | ☑ Knee(s) | | |

d. Was the offender classified as 'medically or mentally impaired' prior to the use of force? ☐ YES ☐ NO

e. Licensed medical staff who performed screening (Printed Name/Title): Sandy Castillo, LVN

f. I administered the screening (Signature/Date): Sandy Castillo LVN 1/13/21

**III. MEDICAL ACTIVITY FOR OFFENDERS WHO REFUSE PHYSICAL SCREENING OR ARE A THREAT TO STAFF**

a. Licensed medical staff unable to complete physical screening because:
☐ Offender refused screening
☐ Unable to screen because offender was a threat to staff

b. Was the offender ambulatory? ☐ YES ☐ NO

c. ~~Was the offender complaining of pain or injury? ☐ YES ☐ NO~~
If 'YES,' give location on the body where offender indicates pain or injury is present _____

d. Was an injury to the offender visible at the time of the screening? ☐ YES ☐ NO
If 'YES,' place a ✓ by each area of the body that was injured

| | | | | | |
|---|---|---|---|---|---|
| ☐ Abdomen/Stomach | ☐ Buttocks | ☐ Face | ☐ Hand(s) | ☐ Leg(s) | ☐ Shoulder |
| ☐ Ankle(s) | ☐ Chest | ☐ Foot/Feet | ☐ Head | ☐ Neck | ☐ Wrist(s) |
| ☐ Arm(s) | ☐ Ear(s) | ☐ Genital Area | ☐ Hip(s) | ☐ Pelvis | |
| ☐ Back | ☐ Eye(s) | ☐ Groin | ☐ Knee(s) | | |

e. Was the offender classified as 'medically or mentally impaired' prior to the UOF? ☐ YES ☐ NO

f. Licensed medical staff who observed offender (Printed Name/Title): _____

g. I observed the offender and was unable to complete a full screening (Signature/Date): _____

**DEFS' MSJ APPX. 177**

**CERVANTEZ_00177**

Unit (*Name and Alpha Code*): Wallace WL

Report Number: MA-00338-01-21 | Incident Number (*if applicable*): I-00721-01-21

Patient's Name: McGuire, Robert COIV

## IV. TREATMENT

**Complete this section ONLY if employee or offender was observed with injury:**

a. Was the employee or offender treated for injuries? ☑ YES ☐ NO

If 'NO,' explain why: ☐ Refused ☐ Other (*explain*):

If 'YES,' provide description of treatment: washed with soap and water

_____, which occurred at: Wallace Unit medical department

☐ Offender's assigned living area ☐ Hospital (*Name*): _____

☑ Unit Infirmary ☐ Other (*Specify*): _____

b. Licensed medical staff who administered, or attempted to administer, treatment (Printed Name/Title): Sandy Castillo LVN

c. I administered, or attempted to administer, the treatment (Signature/Date): [signature] 1/13/21

## V. DIAGRAM(S) AND DESCRIPTION OF INJURY

*Instructions to Licensed Medical Staff:*

- *Indicate injuries present at the time of the screening by marking body diagrams and provide brief description below:*
- *Each injury should be noted only once on the appropriate figure.*



Brief Description: left knee soreness Redness to bilateral arms

Brief Description: Right hand swelling / bruising Redness to bilateral arms

(Printed Name/Title) Sandy Castillo, LVN

(Signature/Date) [signature] 1/13/21

## VI. ACKNOWLEDGEMENTS

a. I was physically screened or treated by licensed medical staff (Employee Signature/Date): R McGuire COIV 1/13/21

Licensed medical staff conducting screening or providing treatment (Printed Name): Sandy Castillo, LVN

b. The answer to II.c on page 1 is 'YES,' and I have provided a photocopy of this UOF-5 to the unit risk management coordinator, as evidenced by our signatures:

Unit Risk Management Coordinator (Printed Name/Signature/Date): Richard Goodney cx [signature] 1/13/21

Supervisor (Printed Name/Signature/Date): Brown, Kelly LT. [signature] 1/13/21

**DEFS' MSJ APPX. 178**

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report
### *Employee and Offender Use of Force Injury Report*

*This is not part of the offender's or employee's medical record. This report is confidential and shall be used for administrative purposes only.*

Unit *(Name and Alpha Code)*: Wallace WL

Report Number: MA-00338-01-21 | Incident Number (*if applicable*): I-00721-01-21

## I. EMPLOYEE OR OFFENDER PATIENT

☑ Employee (Printed Name): Enriquez, Manuel    Rank or Title: CO IV

☐ Offender (Printed Name): _____    TDCJ No.: _____

## II. PHYSICAL SCREENING

a. Did the employee or offender complain of injury? ☑ YES ☐ NO
If 'YES,' describe: _____

b. Was the employee or offender screened at the unit? ☑ YES ☐ NO
If 'YES,' provide date/time: 1/13/21 1452
If 'NO,' explain: _____

c. Was an injury to the employee or offender present at the time of the screening? ☑ YES ☐ NO
If 'YES,' place a ✓ by each area of the body that was injured

| | | | | | |
|---|---|---|---|---|---|
| ☐ Abdomen/Stomach | ☐ Buttocks | ☐ Face | ☐ Hand(s) | ☐ Leg(s) | ☐ Shoulder |
| ☐ Ankle(s) | ☐ Chest | ☐ Foot/Feet | ☐ Head | ☐ Neck | ☐ Wrist(s) |
| ☑ Arm(s) | ☐ Ear(s) | ☐ Genital Area | ☐ Hip(s) | ☐ Pelvis | |
| ☐ Back | ☐ Eye(s) | ☐ Groin | ☐ Knee(s) | | |

d. Was the offender classified as 'medically or mentally impaired' prior to the use of force? ☐ YES ☐ NO

e. Licensed medical staff who performed screening (Printed Name/Title): Sandy Castillo, LVN

f. I administered the screening (Signature/Date): Sandy Castillo, LVN

## III. MEDICAL ACTIVITY FOR OFFENDERS WHO REFUSE PHYSICAL SCREENING OR ARE A THREAT TO STAFF

a. Licensed medical staff unable to complete physical screening because:
☐ Offender refused screening
☐ Unable to screen because offender was a threat to staff

b. Was the offender ambulatory? ☐ YES ☐ NO

c. Was the offender complaining of pain or injury? ☐ YES ☐ NO
If 'YES,' give location on the body where offender indicates pain or injury is present _____

d. Was an injury to the offender visible at the time of the screening? ☐ YES ☐ NO
If 'YES,' place a ✓ by each area of the body that was injured

| | | | | | |
|---|---|---|---|---|---|
| ☐ Abdomen/Stomach | ☐ Buttocks | ☐ Face | ☐ Hand(s) | ☐ Leg(s) | ☐ Shoulder |
| ☐ Ankle(s) | ☐ Chest | ☐ Foot/Feet | ☐ Head | ☐ Neck | ☐ Wrist(s) |
| ☐ Arm(s) | ☐ Ear(s) | ☐ Genital Area | ☐ Hip(s) | ☐ Pelvis | |
| ☐ Back | ☐ Eye(s) | ☐ Groin | ☐ Knee(s) | | |

e. Was the offender classified as 'medically or mentally impaired' prior to the UOF? ☐ YES ☐ NO

f. Licensed medical staff who observed offender (Printed Name/Title): __________

g. I observed the offender and was unable to complete a full screening (Signature/Date): __________

**DEFS' MSJ APPX. 179**

**CERVANTEZ_00179**

Unit *(Name and Alpha Code)*: Wallace WL

Report Number: MA-00338-01-21 Incident Number *(if applicable)*: I-00721-01-21

Patient's Name: Enriquez, Manuel OOTV

## IV. TREATMENT

Complete this section ONLY if employee or offender was observed with injury:

a. Was the employee or offender treated for injuries? ☑ YES ☐ NO

If 'NO,' explain why: ☐ Refused ☐ Other *(explain)*:

If 'YES,' provide description of treatment: Washed with soap and water

____, which occurred at: Wallace Medical Department

☐ Offender's assigned living area ☐ Hospital *(Name)*: ____

☑ Unit Infirmary ☐ Other *(Specify)*: ____

b. Licensed medical staff who administered, or attempted to administer, treatment (Printed Name/Title): Sandy Castillo, LVN

c. I administered, or attempted to administer, the treatment (Signature/Date): [signature] 1/13/21

## V. DIAGRAM(S) AND DESCRIPTION OF INJURY

*Instructions to Licensed Medical Staff:*

- *Indicate injuries present at the time of the screening by marking body diagrams and provide brief description below:*
- *Each injury should be noted only once on the appropriate figure.*



Brief Description: Redness / minimal swelling to right elbow, multiple abrasions to both arms

Brief Description: abrasions to both, swelling to elbow

(Printed Name/Title): Sandy Castillo, LVN

(Signature/Date): [signature] 1/13/21

## VI. ACKNOWLEDGEMENTS

a. I was physically screened or treated by licensed medical staff (Employee Signature/Date): [signature] 1-13-21

Licensed medical staff conducting screening or providing treatment (Printed Name): Sandy Castillo, LVN 1/13/21

b. The answer to II.c on page 1 is 'YES,' and I have provided a photocopy of this UOF-5 to the unit risk management coordinator, as evidenced by our signatures:

Unit Risk Management Coordinator (Printed Name/Signature/Date): Richard Gudney / [signature] 1/13/21

Supervisor (Printed Name/Signature/Date): Brown, Kelly [signature] 1/13/21

DEFS' MSJ APPX. 180



CERVANTEZ_00180

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report
### *Employee and Offender Use of Force Injury Report*

*This is not part of the offender's or employee's medical record. This report is confidential and shall be used for administrative purposes only.*

Unit (*Name and Alpha Code*): Wallace WL

Report Number: MA-00338-01-21 | Incident Number (*if applicable*): I-00721-01-21

## I. EMPLOYEE OR OFFENDER PATIENT

☑ Employee (Printed Name): Harp, Joe Rank or Title: CO-IV

☐ Offender (Printed Name): ______ TDCJ No.: ______

## II. PHYSICAL SCREENING

a. Did the employee or offender complain of injury? ☑ YES ☐ NO
If 'YES,' describe: 0.5cm scratch to right hand, top of knuckle of 2nd digit

b. Was the employee or offender screened at the unit? ☑ YES ☐ NO
If 'YES,' provide date/time: 1-13-21 @ 1445
If 'NO,' explain: ______

c. Was an injury to the employee or offender present at the time of the screening? ☑ YES ☐ NO
If 'YES,' place a ✓ by each area of the body that was injured

| | | | | | |
|---|---|---|---|---|---|
| ☐ Abdomen/Stomach | ☐ Buttocks | ☐ Face | ☑ Hand(s) | ☐ Leg(s) | ☐ Shoulder |
| ☐ Ankle(s) | ☐ Chest | ☐ Foot/Feet | ☐ Head | ☐ Neck | ☐ Wrist(s) |
| ☐ Arm(s) | ☐ Ear(s) | ☐ Genital Area | ☐ Hip(s) | ☐ Pelvis | |
| ☐ Back | ☐ Eye(s) | ☐ Groin | ☐ Knee(s) | | |

d. Was the offender classified as 'medically or mentally impaired' prior to the use of force? ☐ YES ☒ NO (CW)

e. Licensed medical staff who performed screening (Printed Name/Title): Susan Boedeker LVN

f. I administered the screening (Signature/Date): [signature] LVN 1-13-20

## III. MEDICAL ACTIVITY FOR OFFENDERS WHO REFUSE PHYSICAL SCREENING OR ARE A THREAT TO STAFF

a. Licensed medical staff unable to complete physical screening because:
☐ Offender refused screening
☐ Unable to screen because offender was a threat to staff

b. Was the offender ambulatory? ☐ YES ☐ NO

c. ~~Was the offender complaining of pain or injury? ☐ YES ☐ NO~~
If 'YES,' give location on the body where offender indicates pain or injury is present ______

d. Was an injury to the offender visible at the time of the screening? ☐ YES ☐ NO
If 'YES,' place a ✓ by each area of the body that was injured

| | | | | | |
|---|---|---|---|---|---|
| ☐ Abdomen/Stomach | ☐ Buttocks | ☐ Face | ☐ Hand(s) | ☐ Leg(s) | ☐ Shoulder |
| ☐ Ankle(s) | ☐ Chest | ☐ Foot/Feet | ☐ Head | ☐ Neck | ☐ Wrist(s) |
| ☐ Arm(s) | ☐ Ear(s) | ☐ Genital Area | ☐ Hip(s) | ☐ Pelvis | |
| ☐ Back | ☐ Eye(s) | ☐ Groin | ☐ Knee(s) | | |

e. Was the offender classified as 'medically or mentally impaired' prior to the UOF? ☐ YES ☐ NO

f. Licensed medical staff who observed offender (Printed Name/Title): ______

g. I observed the offender and was unable to complete a full screening (Signature/Date): ______

**DEFS' MSJ APPX. 181**

**CERVANTEZ_00181**

Unit (*Name and Alpha Code*): Wallace WL

Report Number: MA-00338-01-21 Incident Number (*if applicable*): I-00721-01-21

Patient's Name: Harp, Joe CO-IV

## IV. TREATMENT

**Complete this section ONLY if employee or offender was observed with injury:**

a. Was the employee or offender treated for injuries? ☑ YES ☐ NO

If 'NO,' explain why: ☐ Refused ☐ Other (*explain*):

If 'YES,' provide description of treatment: cleaned wound with hibiclens, applied TAO and covered with band-aid

_____, which occurred at: Wallace Medical Department

☐ Offender's assigned living area ☐ Hospital (*Name*): ____

☐ Unit Infirmary ☐ Other (*Specify*): ____

b. Licensed medical staff who administered, or attempted to administer, treatment (Printed Name/Title): Susan Boedeker LVN

c. I administered, or attempted to administer, the treatment (Signature/Date): S Boed LVN 1-13-2021

## V. DIAGRAM(S) AND DESCRIPTION OF INJURY

*Instructions to Licensed Medical Staff:*

- *Indicate injuries present at the time of the screening by marking body diagrams and provide brief description below:*
- *Each injury should be noted only once on the appropriate figure.*



Brief Description: 0.5cm scratch to right 1st knuckle above the 2nd digit

Susan Boedeker LVN
(Printed Name/Title)

Brief Description: 0.5cm scratch to right 1st knuckle above the 2nd digit

S Boed LVN 1-13-2021
(Signature/Date)

## VI. ACKNOWLEDGEMENTS

a. I was physically screened or treated by licensed medical staff (Employee Signature/Date): [signature]
Licensed medical staff conducting screening or providing treatment (Printed Name): Susan Boedeker LVN

b. The answer to II.c on page 1 is 'YES,' and I have provided a photocopy of this UOF-5 to the unit risk management coordinator, as evidenced by our signatures:

Unit Risk Management Coordinator (Printed Name/Signature/Date): [signature] 1/13/21
Supervisor (Printed Name/Signature/Date): Brown, Kelly, [signature] 1/13/21

DEFS' MSJ APPX. 182



CERVANTEZ_00182

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report
### *Employee and Offender Use of Force Injury Report*

*This is not part of the offender's or employee's medical record. This report is confidential and shall be used for administrative purposes only.*

Unit *(Name and Alpha Code)*: Wallace WL

Report Number: MA-00338-01-21 | Incident Number *(if applicable)*: I-00721-01-21

## I. EMPLOYEE OR OFFENDER PATIENT

☑ Employee (Printed Name): Bostic, Greg    Rank or Title: CO III

☐ Offender (Printed Name): ____    TDCJ No.: ____

## II. PHYSICAL SCREENING

a. Did the employee or offender complain of injury? ☑ YES ☐ NO
If 'YES,' describe: ____

b. Was the employee or offender screened at the unit? ☑ YES ☐ NO
If 'YES,' provide date/time: 1/13/21 1500
If 'NO,' explain: ____

c. Was an injury to the employee or offender present at the time of the screening? ☑ YES ☐ NO
If 'YES,' place a ✓ by each area of the body that was injured

| | | | | | |
|---|---|---|---|---|---|
| ☐ Abdomen/Stomach | ☐ Buttocks | ☐ Face | ☑ Hand(s) | ☐ Leg(s) | ☐ Shoulder |
| ☐ Ankle(s) | ☐ Chest | ☐ Foot/Feet | ☐ Head | ☐ Neck | ☐ Wrist(s) |
| ☐ Arm(s) | ☐ Ear(s) | ☐ Genital Area | ☐ Hip(s) | ☐ Pelvis | |
| ☐ Back | ☐ Eye(s) | ☐ Groin | ☐ Knee(s) | | |

d. Was the offender classified as 'medically or mentally impaired' prior to the use of force? ☐ YES ☐ NO

e. Licensed medical staff who performed screening (Printed Name/Title): Sandy Castillo, LVN

f. I administered the screening (Signature/Date): Sandy Castillo LVN 1/13/21

## III. MEDICAL ACTIVITY FOR OFFENDERS WHO REFUSE PHYSICAL SCREENING OR ARE A THREAT TO STAFF

a. Licensed medical staff unable to complete physical screening because:
☐ Offender refused screening
☐ Unable to screen because offender was a threat to staff

b. Was the offender ambulatory? ☐ YES ☐ NO

c. Was the offender complaining of pain or injury? ☐ YES ☐ NO
If 'YES,' give location on the body where offender indicates pain or injury is present ____

d. Was an injury to the offender visible at the time of the screening? ☐ YES ☐ NO
If 'YES,' place a ✓ by each area of the body that was injured

| | | | | | |
|---|---|---|---|---|---|
| ☐ Abdomen/Stomach | ☐ Buttocks | ☐ Face | ☐ Hand(s) | ☐ Leg(s) | ☐ Shoulder |
| ☐ Ankle(s) | ☐ Chest | ☐ Foot/Feet | ☐ Head | ☐ Neck | ☐ Wrist(s) |
| ☐ Arm(s) | ☐ Ear(s) | ☐ Genital Area | ☐ Hip(s) | ☐ Pelvis | |
| ☐ Back | ☐ Eye(s) | ☐ Groin | ☐ Knee(s) | | |

e. Was the offender classified as 'medically or mentally impaired' prior to the UOF? ☐ YES ☐ NO

f. Licensed medical staff who observed offender (Printed Name/Title): ____

g. I observed the offender and was unable to complete a full screening (Signature/Date): ____

DEFS' MSJ APPX. 183

CERVANTEZ_00183

Unit *(Name and Alpha Code)*: Wallace WL

Report Number: MA-00338-01-21 Incident Number (*if applicable*): I-00721-01-21

Patient's Name: Bostic, Greg CO III

## IV. TREATMENT

**Complete this section ONLY if employee or offender was observed with injury:**

a. Was the employee or offender treated for injuries? ☑ YES ☐ NO

If 'NO,' explain why: ☐ Refused ☐ Other *(explain)*:

If 'YES,' provide description of treatment: wash with soap and water

_____, which occurred at: Wallace Unit medical

☐ Offender's assigned living area ☐ Hospital *(Name)*: ____

☑ Unit Infirmary ☐ Other *(Specify)*: ____

b. Licensed medical staff who administered, or attempted to administer, treatment (Printed Name/Title): Sandy Castillo, LVN

c. I administered, or attempted to administer, the treatment (Signature/Date): Sandy Castillo 1/13/21

## V. DIAGRAM(S) AND DESCRIPTION OF INJURY

***Instructions to Licensed Medical Staff:***

- ***Indicate injuries present at the time of the screening by marking body diagrams and provide brief description below:***
- ***Each injury should be noted only once on the appropriate figure.***



Brief Description: superficial scratch x 2 top Right hand

Brief Description: superficial scratch x 2 to top Right hand

(Printed Name/Title) Sandy Castillo

(Signature/Date) Sandy Castillo 1/13/21

## VI. ACKNOWLEDGEMENTS

a. I was physically screened or treated by licensed medical staff (Employee Signature/Date): [signature] 1/13/21
Licensed medical staff conducting screening or providing treatment (Printed Name): [signature]

b. The answer to II.c on page 1 is 'YES,' and I have provided a photocopy of this UOF-5 to the unit risk management coordinator, as evidenced by our signatures: CO Richard Goodney

Unit Risk Management Coordinator (Printed Name/Signature/Date): [signature] 1/13/21

Supervisor (Printed Name/Signature/Date): Brown, Kelly [signature] 1/13/21

**DEFS' MSJ APPX. 184**

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report
### *Employee and Offender Use of Force Injury Report*

*This is not part of the offender's or employee's medical record. This report is confidential and shall be used for administrative purposes only.*

Unit *(Name and Alpha Code)*: Wallace WL

Report Number: MA-00338-01-21 | Incident Number (*if applicable*): I-00721-01-21

## I. EMPLOYEE OR OFFENDER PATIENT

☑ Employee (Printed Name): Martinez Harry COI    Rank or Title: _____

☐ Offender (Printed Name): _____    TDCJ No.: _____

## II. PHYSICAL SCREENING

a. Did the employee or offender complain of injury? ☐ YES ☑ NO
If 'YES,' describe: _____

b. Was the employee or offender screened at the unit? ☑ YES ☐ NO
If 'YES,' provide date/time: 1/13/21 1510
If 'NO,' explain: _____

c. Was an injury to the employee or offender present at the time of the screening? ☐ YES ☑ NO
If 'YES,' place a ✓ by each area of the body that was injured

| | | | | | |
|---|---|---|---|---|---|
| ☐ Abdomen/Stomach | ☐ Buttocks | ☐ Face | ☐ Hand(s) | ☐ Leg(s) | ☐ Shoulder |
| ☐ Ankle(s) | ☐ Chest | ☐ Foot/Feet | ☐ Head | ☐ Neck | ☐ Wrist(s) |
| ☐ Arm(s) | ☐ Ear(s) | ☐ Genital Area | ☐ Hip(s) | ☐ Pelvis | |
| ☐ Back | ☐ Eye(s) | ☐ Groin | ☐ Knee(s) | | |

d. Was the offender classified as 'medically or mentally impaired' prior to the use of force? ☐ YES ☐ NO

e. Licensed medical staff who performed screening (Printed Name/Title): Sandy Castillo, LVN

f. I administered the screening (Signature/Date): Sandy Castillo, LVN 1/13/21

## III. MEDICAL ACTIVITY FOR OFFENDERS WHO REFUSE PHYSICAL SCREENING OR ARE A THREAT TO STAFF

a. Licensed medical staff unable to complete physical screening because:
☐ Offender refused screening
☐ Unable to screen because offender was a threat to staff

b. Was the offender ambulatory? ☐ YES ☐ NO

c. Was the offender complaining of pain or injury? ☐ YES ☐ NO
If 'YES,' give location on the body where offender indicates pain or injury is present _____

d. Was an injury to the offender visible at the time of the screening? ☐ YES ☐ NO
If 'YES,' place a ✓ by each area of the body that was injured

| | | | | | |
|---|---|---|---|---|---|
| ☐ Abdomen/Stomach | ☐ Buttocks | ☐ Face | ☐ Hand(s) | ☐ Leg(s) | ☐ Shoulder |
| ☐ Ankle(s) | ☐ Chest | ☐ Foot/Feet | ☐ Head | ☐ Neck | ☐ Wrist(s) |
| ☐ Arm(s) | ☐ Ear(s) | ☐ Genital Area | ☐ Hip(s) | ☐ Pelvis | |
| ☐ Back | ☐ Eye(s) | ☐ Groin | ☐ Knee(s) | | |

e. Was the offender classified as 'medically or mentally impaired' prior to the UOF? ☐ YES ☐ NO

f. Licensed medical staff who observed offender (Printed Name/Title): ___________

g. I observed the offender and was unable to complete a full screening (Signature/Date): ___________

**DEFS' MSJ APPX. 185**

Unit (Name and Alpha Code): Wallace WL

Report Number: MA-00338-01-21 Incident Number (if applicable): I-00721-01-21

Patient's Name: Martinez, Harry

## IV. TREATMENT

**Complete this section ONLY if employee or offender was observed with injury:**

a. Was the employee or offender treated for injuries? ☐ YES ☐ NO

If 'NO,' explain why: ☐ Refused ☐ Other (explain):

If 'YES,' provide description of treatment:

______, which occurred at:

☐ Offender's assigned living area ☐ Hospital (Name): ______

☐ Unit Infirmary ☐ Other (Specify): ______

b. Licensed medical staff who administered, or attempted to administer, treatment (Printed Name/Title): ______

c. I administered, or attempted to administer, the treatment (Signature/Date): ______

## V. DIAGRAM(S) AND DESCRIPTION OF INJURY

*Instructions to Licensed Medical Staff:*

- *Indicate injuries present at the time of the screening by marking body diagrams and provide brief description below:*
- *Each injury should be noted only once on the appropriate figure.*



Brief Description: none

Brief Description: none

(Printed Name/Title) Sandy Castillo, LVN

(Signature/Date) Sandy Castillo 1/13/21

## VI. ACKNOWLEDGEMENTS

a. I was physically screened or treated by licensed medical staff (Employee Signature/Date): Harry Martinez 1-13-2021

Licensed medical staff conducting screening or providing treatment (Printed Name): Sandy Castillo 1/13/21

b. The answer to II.c on page 1 is 'YES,' and I have provided a photocopy of this UOF-5 to the unit risk management coordinator, as evidenced by our signatures:

Unit Risk Management Coordinator (Printed Name/Signature/Date): [signature] 1/13/21

Supervisor (Printed Name/Signature/Date): ______

DEFS' MSJ APPX. 186



CERVANTEZ_00186

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Use of Force Report
### *Employee and Offender Use of Force Injury Report*

*This is not part of the offender's or employee's medical record. This report is confidential and shall be used for administrative purposes only.*

Unit (*Name and Alpha Code*): Wallace WL

Report Number: MA-00338-01-21 | Incident Number (*if applicable*): I-00721-01-21

**I. EMPLOYEE OR OFFENDER PATIENT**

☐ Employee (Printed Name): ____ Rank or Title: ____

☒ Offender (Printed Name): Valenzuela, Ruben #1785292

**II. PHYSICAL SCREENING**

a. Did the employee or offender complain of injury? ☐ YES ☑ NO
If 'YES,' describe: ____

b. Was the employee or offender screened at the unit? ☑ YES ☐ NO
If 'YES,' provide date/time: 1/13/21 1450
If 'NO,' explain: ____

c. Was an injury to the employee or offender present at the time of the screening? ☐ YES ☑ NO
If 'YES,' place a ✓ by each area of the body that was injured

| | | | | | |
|---|---|---|---|---|---|
| ☐ Abdomen/Stomach | ☐ Buttocks | ☐ Face | ☐ Hand(s) | ☐ Leg(s) | ☐ Shoulder |
| ☐ Ankle(s) | ☐ Chest | ☐ Foot/Feet | ☐ Head | ☐ Neck | ☐ Wrist(s) |
| ☐ Arm(s) | ☐ Ear(s) | ☐ Genital Area | ☐ Hip(s) | ☐ Pelvis | |
| ☐ Back | ☐ Eye(s) | ☐ Groin | ☐ Knee(s) | | |

d. Was the offender classified as 'medically or mentally impaired' prior to the use of force? ☐ YES ☑ NO

e. Licensed medical staff who performed screening (Printed Name/Title): Sandy Castillo, LVN

f. I administered the screening (Signature/Date): Sandy Castillo LVN 1/13/21

**III. MEDICAL ACTIVITY FOR OFFENDERS WHO REFUSE PHYSICAL SCREENING OR ARE A THREAT TO STAFF**

a. Licensed medical staff unable to complete physical screening because:
☐ Offender refused screening
☐ Unable to screen because offender was a threat to staff

b. Was the offender ambulatory? ☐ YES ☐ NO

c. Was the offender complaining of pain or injury? ☐ YES ☐ NO
If 'YES,' give location on the body where offender indicates pain or injury is present ____

d. Was an injury to the offender visible at the time of the screening? ☐ YES ☐ NO
If 'YES,' place a ✓ by each area of the body that was injured

| | | | | | |
|---|---|---|---|---|---|
| ☐ Abdomen/Stomach | ☐ Buttocks | ☐ Face | ☐ Hand(s) | ☐ Leg(s) | ☐ Shoulder |
| ☐ Ankle(s) | ☐ Chest | ☐ Foot/Feet | ☐ Head | ☐ Neck | ☐ Wrist(s) |
| ☐ Arm(s) | ☐ Ear(s) | ☐ Genital Area | ☐ Hip(s) | ☐ Pelvis | |
| ☐ Back | ☐ Eye(s) | ☐ Groin | ☐ Knee(s) | | |

e. Was the offender classified as 'medically or mentally impaired' prior to the UOF? ☐ YES ☐ NO

f. Licensed medical staff who observed offender (Printed Name/Title): ____

g. I observed the offender and was unable to complete a full screening (Signature/Date): ____

Unit (*Name and Alpha Code*): Wallace WL

Report Number: MA-00338-01-21 Incident Number (*if applicable*): I-00721-01-21

Patient's Name: Valenzuela, Ruben # 1785292

## IV. TREATMENT

**Complete this section ONLY if employee or offender was observed with injury:**

a. Was the employee or offender treated for injuries? ☐ YES ☐ NO

If 'NO,' explain why: ☐ Refused ☐ Other (*explain*):

If 'YES,' provide description of treatment:

______, which occurred at:

☐ Offender's assigned living area ☐ Hospital (*Name*): ______

☐ Unit Infirmary ☐ Other (*Specify*): ______

b. Licensed medical staff who administered, or attempted to administer, treatment (Printed Name/Title): ______

c. I administered, or attempted to administer, the treatment (Signature/Date): ______

## V. DIAGRAM(S) AND DESCRIPTION OF INJURY

***Instructions to Licensed Medical Staff:***

- ***Indicate injuries present at the time of the screening by marking body diagrams and provide brief description below:***
- ***Each injury should be noted only once on the appropriate figure.***



Brief Description: ______ none

Brief Description: ______ none

(Printed Name/Title) Sandy Castillo, LVN

(Signature/Date) Sandy Castillo 01/13/21

## VI. ACKNOWLEDGEMENTS

a. I was physically screened or treated by licensed medical staff (Employee Signature/Date): Sandy Castillo 1/13/21
Licensed medical staff conducting screening or providing treatment (Printed Name):

b. The answer to II.c on page 1 is 'YES,' and I have provided a photocopy of this UOF-5 to the unit risk management coordinator, as evidenced by our signatures:

Unit Risk Management Coordinator (Printed Name/Signature/Date): [signature] ______
Supervisor (Printed Name/Signature/Date): ______

MA-00338-01-21
I-00721-01-21

RM-31
Attachment A

# Injury Treatment Report

To: Unit Risk Manager

From: Unit Medical Department

Officer Name: ______ SS# ______

Offender Name: Valenzuela, Ruben TDCJ# 1785292

Work Assignment: — Housing Assignment: TRA-3

Date and Time of Accident: 1/13/21 1341

Date and Time Reported to Medical: 1/13/21 1415

Type of Injury:
(__) Work Related
(__) Non-Work Related
(__) Recreational
(__) Altercation
(__) Self-Mutilation
(✓) Use of Force

Severity of Injury
(__) Minor (one time treatment or follow-up visits the purpose of treatment/observations of minor scratches cuts or 1st degree burns.)
(__) Serious (requires treatment e.g. Sutures, fractures, Splints, 2nd degree burns, x-rays, crutches)

How injury occurred: Cell-Side Use of Force Physical - Chemical Agents Used

Extent of Injury: denies injury related to use of force

Treatment of Injury: none

Y (__) N (__) Was Dermabond or steri-strips used in place of sutures?

Health Care Employee's Signature: [signature] 1/13/21



RM-04

MAINTENANCE LOG:

| DATE | USER | TRANSACTION |
|---|---|---|
| 2021-01-13 | FD00056 | REPORT CREATION |

DATE FORCE WAS USED: 01/13/2021
TIME FORCE WAS USED: 13:46
LOCATION ON UNIT WHERE FORCE OCCURRED: CELL(RESTRICTIVE HOUSING)
REASON FOR USING FORCE:
ATTEMPTED SUICIDE/SELF-MUTILATION
IF FORCE WAS NOT REPORTED WITHIN 24 HOURS, INDICATE REASON WHY:

FIREARM INTENTIONALLY DISCHARGED: N
CHEM AGENTS USED: Y
DELIVERY SYSTEM USED:
AEROSOL COP CONE OC(OUNCES) OC 03.50 OUNCES
AEROSOL MK-9/FOGGER OC (OUNCES) OC 06.40 OUNCES
OFFENDER PARTICIPANTS INJURED DURING USE OF FORCE: Y
EMPLOYEE PARTICIPANTS INJURED DURING USE OF FORCE: Y
VOID REPORT: N REASON:

NAME OF OFFENDER(S) WHO PARTICIPATED:

| TDCJID | NAME | CUSTODY | SEX | RACE | AGE | MED-EVAL |
|---|---|---|---|---|---|---|
| 01785292 | VALENZUELA,RUBEN ARTURO | G4 | M | H | 26 | 01 |

NAME OF EMPLOYEE(S) WHO PARTICIPATED:

| SS# | NAME | RANK | SEX | RACE | AGE | MED |
|---|---|---|---|---|---|---|
| [redacted] | BOSTIC, GREG A | CORR OFF III | M | H | 20 | 01 |
| | ENRIQUEZ JR, MANUEL | CORR OFFICER IV | M | H | 24 | |
| | FRITH II, DARRELL H | CAPT OF CORR OFF | M | W | 40 | |
| | HARP, JOE B | CORR OFFICER IV | M | W | 36 | 01 |
| | MARTINEZ, HARRY W | CORR OFFICER V | M | H | 29 | |
| | MCGUIRE, ROBERT L | CORR OFFICER IV | M | W | 32 | 01 |
| | SKIPWORTH, JAMES P | CORR OFFICER V | M | W | 51 | |

CSEA0200/EA02 TEXAS DEPARTMENT OF CRIMINAL JUSTICE 2021/01/13
FD00056 /1N0S/INMTCICS EMERGENCY ACTION CENTER SYSTEM 19:12:44
I-00721-01-21 INCIDENT REPORT PAGE 1

PREPARED BY (USERID/NAME/DATE/TIME):
FD00056 DARRELL FRITH WL 01/13/2021 19:09
AUTHORIZED BY(TITLE/LAST, FIRST MI)
SENIOR WARDEN HEFNER, JODY
INCIDENT OCCURRED: 01/13/2021 TIME: 13:46 AT: WL SECUR LVL: 002 RGN: 5
DATE UN/FA AWARE: 01/13/2021 TIME: 14:28
REPORTED ON: 01/13/2021 TIME: 16:24 BY: WL SECUR LVL: 002 RGN: 5
UOF: MA003380121 TYPE OF INCIDENT: USE OF COP AND CHEMICAL AGENTS
LOCALE: CELL (SECURITY DETENTION)
SPECIFIC LOCATION: RESTRICTIVE HOUSING 3 CELL
INITIAL INCIDENT COMMANDER (TITLE/LAST, FIRST MI): (IF APPLICABLE)
CAPTAIN FRITH, DARRELL
FINAL INCIDENT COMMANDER (TITLE/LAST, FIRST MI): (IF COMMAND TRANSFERRED)

RESPONSE TEAM: X A X B C D E N/A RACIAL: N
OIG NOTIFIED:
OIG PERSONNEL NOTIFIED:

================ LIST OFFENDER(S) INVOLVED: Y ================

TDCJ: 01785292 SID: 08395782 NAME: VALENZUELA, RUBEN ARTURO
CUST: G4 RACE: H GENDER: M AGE: 26 HGT: 503 WGT: 199
STG: MX SUSPECTED: CONFIRMED: Y EX:
ROLE: A INJURY: N CHEM INJURY: N DECONTAMINATED: Y MEDICAL EXAM: Y
TREATMENT: N
TRANSFER BY: TO:
ALLEDGED SEX ASSAULT: N EVIDENCE KIT: REP PROVIDED:
REP:
PRONOUNCED DECEASED: NO

================ LIST EMP(S)/OTH(S) INVOLVED: Y ================

PERSON TYPE:TDC SSN:[redacted] LIT:N
TITLE/NAME (LAST, FIRST MI):
CAPT OF CORR OFF FRITH, DARRELL H
RACE: W GENDER: M AGE: 40 INJURED: N MEDICAL EXAM: Y ROLE: O
C.R.I.S.P. OFFERED: Y
ALLEDGED SEX ASSAULT: N EVIDENCE KIT: REP PROVIDED:
REP:
PERSON TYPE:TDC SSN:[redacted] LIT:N
TITLE/NAME (LAST, FIRST MI):
CORR OFFICER IV HARP, JOE B
RACE: W GENDER: M AGE: 36 INJURED: Y MEDICAL EXAM: Y ROLE: O
C.R.I.S.P. OFFERED: Y
ALLEDGED SEX ASSAULT: N EVIDENCE KIT: REP PROVIDED:
REP:
PERSON TYPE:TDC SSN:[redacted] LIT:N
TITLE/NAME (LAST, FIRST MI):
CORR OFFICER V SKIPWORTH, JAMES P
RACE: W GENDER: M AGE: 51 INJURED: N MEDICAL EXAM: Y ROLE: O
C.R.I.S.P. OFFERED: Y

---------------------------- CONTINUED ON NEXT PAGE ----------------------------

ALLEDGED SEX ASSAULT: N EVIDENCE KIT: REP PROVIDED:
REP:
PERSON TYPE:TDC SSN:[redacted] LIT:N
TITLE/NAME (LAST, FIRST MI):
CORR OFF III BOSTIC,GREG A
RACE: H GENDER: M AGE: 20 INJURED: Y MEDICAL EXAM: Y ROLE: O
C.R.I.S.P. OFFERED: Y
ALLEDGED SEX ASSAULT: N EVIDENCE KIT: REP PROVIDED:
REP:
PERSON TYPE:TDC SSN:[redacted] LIT:N
TITLE/NAME (LAST, FIRST MI):
CORR OFFICER IV MCGUIRE,ROBERT L
RACE: W GENDER: M AGE: 32 INJURED: Y MEDICAL EXAM: Y ROLE: O
C.R.I.S.P. OFFERED: Y
ALLEDGED SEX ASSAULT: N EVIDENCE KIT: REP PROVIDED:
REP:
PERSON TYPE:TDC SSN:[redacted] LIT:N
TITLE/NAME (LAST, FIRST MI):
CORR OFFICER IV ENRIQUEZ,MANUEL
RACE: H GENDER: M AGE: 24 INJURED: Y MEDICAL EXAM: Y ROLE: O
C.R.I.S.P. OFFERED: Y
ALLEDGED SEX ASSAULT: N EVIDENCE KIT: REP PROVIDED:
REP:
PERSON TYPE:TDC SSN:[redacted] LIT:N
TITLE/NAME (LAST, FIRST MI):
CORR OFFICER V MARTINEZ,HARRY W
RACE: H GENDER: M AGE: 29 INJURED: N MEDICAL EXAM: Y ROLE: O
C.R.I.S.P. OFFERED: Y
ALLEDGED SEX ASSAULT: N EVIDENCE KIT: REP PROVIDED:
REP:

================= CHEMICAL AGENTS USED: Y =================

| TYPE | AMOUNT | DESCRIPTION (OF CHEMICAL AGENTS) |
|---|---|---|
| 23 | 03.50 | AEROSOL COP CONE OC(OUNCES) |
| 02 | 06.40 | AEROSOL MK-9/FOGGER OC (OUNCES) |

REASON FOR USE: I ATTEMPTING SUICIDE OR SELF-MUTILATION
EXTRACTION TEAM AUTHORIZED (Y/N): Y
CHEMICAL AGENTS AUTHORIZED BY (TITLE/LAST, FIRST MI):
SENIOR WARDEN HEFNER,JODY

================= WEAPONS/CONTRABAND FOUND: N =================

================= SECURITY RESOURCES USED: N =================

================= DID A LOCKDOWN OCCUR: N =================

================= NARRATIVE: =================

--------------------------- CONTINUED ON NEXT PAGE ---------------------------

ON 1/13/2021 AT APPROXIMATELY 1348 HOURS INMATE VALENZUELA, RUBEN # 1785292 WAS ON CDO STATUS WAITING FOR A BED TO OPEN AT THE MONTFORD UNIT. OFFICER SKIPWORTH, JAMES WAS OBSERVING THE INMATE WHEN THE INMATE WRAPPED HIS HANDS AROUND THE TOILET AND PLACED HIS FACE IN THE TOILET IN AN ATTEMPT TO DROWN HIMSELF. OFFICER SKIPWORTH ORDERED THE INMATE TO STOP WHAT HE WAS DOING AND THE INMATE REFUSED. INMATE VALENZUELA COLLAPSED TO HIS CELL FLOOR AND BEGAN COUGHING UP WATER, INMATE VALENZUELA IMMEDIATELY STUCK HIS FACE BACK INTO THE WATER AND COLLAPSED COUGHED UP WATER AND THEN DID IT AGAIN. OFFICER SKIPWORTH ORDERED THE INMATE SEVERAL TIMES TO STOP TRYING TO HARM HIMSELF AND WARNED HIM CHEMICAL AGENTS WOULD BE ADMINISTERED. OFFICER SKIPWORTH CALLED CAPTAIN FRITH INTO RESTRICTIVE HOUSING AND CAPTAIN FRITH OBSERVED THE INMATE ATTEMPTING TO DROWN HIMSELF IN THE TOILET. THE INMATE BREIFLY STOPPED PUTTING HIS FACE IN THE TOILET AND BEGAN RUBBING HIS WRIST ON A PEICE OF METAL ON THE ELECTRICAL BOX THAT HE HAD PULLED OUT IN AN ATTEMPT TO CUT HIS WRIST. OFFICER SKIPWORTH ORDERED THE INMATE TO STOP ATTEMPTING TO HARM HIMSELF AND THE INMATE REFUSED, OFFICER SKIPWORTH ADMINISTERED A BURST OF COP CHEMICAL AGENTS TOWARDS THE INMATE IN AN ATTEMPT TO GAIN COMPLIANCE FROM THE INMATE. LVN CASTILLIO STATED SHE NEEDED TO SEE THE INMATE IN MEDICAL TO FURTHER ASSESS THE INMATE. CAPTAIN FRITH ORDERED THE INMATE TO COME TO THE CELL DOOR AND TO SUBMIT TO HAND RESTRAINTS AND THE INMATE REFUSED STATING "NO, I'M NOT GOING." THE INMATE BEGAN TO ATTEMPT TO DROWN HIMSELF AGAIN BY STICKING HIS FACE IN TOILET AND SUCKING IN WATER UNTIL HE PASSED OUT. HE GOT UP COUGHING WATER AND THEN DID IT AGAIN AND CONTINUED TO DO SO. CAPTAIN FRITH GAINED CLEARANCE FROM SENIOR WARDEN HEFNER FOR THE USE OF 5 MAN TEAM AND ADDITIONAL CHEMICAL AGENTS. CAPTAIN FRITH ORDERED THE INMATE 2 MORE TIMES TO COME TO THE CELL DOOR AND TO SUBMIT TO HAND RESTRAINTS SO HE COULD BE ESCORTED TO MEDICAL FOR A FURTHER MENTAL HEALTH ASSESSMENT AND WARNED ADDITIONAL CHEMICAL AGENTS WOULD BE USED IF HE FAILED TO COMPLY. THE INMATE REFUSED ALL ORDERS GIVEN AND CAPTAIN FRITH ADMINISTERED A BURST OF MK9 COP TOWARDS THE INMATE IN AN ATTEMPT TO GAIN COMPLIANCE. THE CHEMICAL AGENTS HAD NO EFFECT ON THE INMATE AND HE CONTINUED TO REFUSE ALL ORDERS GIVEN AND CONTINUED TO PLACE HIS FACE IN THE TOILET UNTIL HE PASSED OUT OVER AND OVER AGAIN. CAPTAIN FRITH ORDERED THE INMATE AGAIN TO SUBMIT TO RESTRAINTS AND WARNED CHEMICAL AGENTS WOULD BE USED IF HE FAILED TO COMPLY. THE INMATE REFUSED ORDERS AGAIN AND YELLED "NO, I'M NOT GOING, " CPT. FRITH ADMINISTERED A SECOND BURST OF MK9 TOWARDS THE INMATE AND WAITED FOR THE CHEMICAL AGENTS TO TAKE EFFECT. THE CHEMICAL AGENTS HAD NO EFFECT ON THE INMATE, CAPTAIN FRITH ORDERED THE INMATE TO SUBMIT TO RESTRAINTS AGAIN AND WARNED THAT A 5 MAN FOCED CELL MOVE TEAM WOULD BE USED TO GAIN COMPLIANCE. THE INMATE REFUSED AGAIN, CPT. FRITH OPENED THE CELL DOOR AND THE 5 MAN TEAM ENTERED THE CELL. THE INMATE BEGAN TO FIGHT WITH THE TEAM BY HITTING, KICKING AND ATTEMPTING TO BITE THEM WHILE THEY ATTEMPTED TO PUT HAND RESTRAINTS ON THE INMATE. THE INMATE WAS ESCORTED TO THE RESTRICTIVE HOUSING SHOWER AREA DUE TO HIS AGGRESSIVE BEHAVIOR AND LVN CASTILLO CONDUCTED A CELL SIDE PHYSICAL AND NOTED NO INJURIES DUE TO THE UOF. THE INMATE REFUSED TO ANSWER HER QUESTIONS AND WOULD NOT LET HER CONDUCT A PHYSICAL ASSESSMENT AND DENIED ANY INJURIES DUE TO THE UOF. CPT. FRITH ATTEMPTED TO TAKE PHOTOS OF THE INMATE HOWEVER HE CONTINUED TO MOVE AROUND NOT ALLOWING

---------------------------- CONTINUED ON NEXT PAGE ----------------------------

THE PHOTOS TO BE TAKEN. THE INMATES CELL WAS CLEANED AND THE METAL PEICE ON THE WALL WAS FIXED, INMATE WAS ESCORTED BACK INTO HIS CELL AND WAS GIVEN ORDERS NOT TO HARM HIMSELF. ONCE BACK IN THE CELL CPT FRITH INSTRUCTED THE INMATE ON IN CELL DECONTAMINATION PROCEDURES AND READ THE UOF 2 TO THE INMATE. DUE TO THE INMATES STATUS ON CDO HE DID NOT RECEIVE A COPY OF THE UOF 2. CPT. FRITH TERMINATED THE UOF, MEDICAL STAFF DID STATE IF HE BEGAN TO ACT OUT AGAIN A SEDATIVE COULD BE USED, AT THIS TIME THE INMATE IS BEING COMPLIANT AND A SEDATIVE IS NOT NEEDED.

ALL STAFF WERE SEEN AT THE WALLACE UNIT MEDICAL DEPARTMENT OFFICER HARP WAS NOTED WITH A .5 CM SCRATCH TO HIS RIGHT 1ST KNUCKLE ABOVE THE 2ND DIGIT. OFFICER BOSTIC WAS NOTED WITH 2 SUPERFICIAL SCRATCHS TO THE TOP OF HIS RIGHT. OFFICER MCGUIRE HAD RIGHT HAND SWELLING AND BRUISING, REDNESS TO BOTH ARMS AND LEFT KNEE SORENESS. OFFICER ENRIQUEZ WAS NOTED WITH REDNESS, MINIMAL SWELLING TO HIS RIGHT ELBOW, MULTIPLE ABRASIONS TO BOTH ARMS AND SWELLING TO HIS RIGHT ELBOW. THE INMATE WILL REMAIN IN CDO UNTIL A BED IS MADE AVAILABLE AT THE MONTFORD UNIT CRISIS MANGEMENT. CPT FRITH CONTACTED THE EMERGENCY ACTION CENTER AND WAS ISSUED INCIDENT NUMBER I-00721-01-21 FOR THE USE OF COP AND CHEMICAL AGENTS BY AMANDA ROBBINS. ANY UPDATES WILL BE FORWARDED TO THE EMERGENCY ACTION CENTER.

CSUF0200/UF02/OPT:2 TEXAS DEPARTMENT OF CRIMINAL JUSTICE 2021/01/13 16:22:01
FD00056 /1N0S/INM2CICS MAJOR USE OF FORCE-INFORMATION ON PARTICIPANTS PAGE 1
REPORT NUMBER: MA-00338-01-21 UNIT: WALLACE R5P1/R5P1/OPT:2

C O N F I D E N T I A L

I-00721-01-21
(2) 0055

MAINTENANCE LOG:

| DATE | USER | TRANSACTION |
|---|---|---|
| 2021-01-13 | FD00056 | REPORT CREATION |

DATE FORCE WAS USED: 01/13/2021
TIME FORCE WAS USED: 13:46
LOCATION ON UNIT WHERE FORCE OCCURRED: CELL(RESTRICTIVE HOUSING)
REASON FOR USING FORCE:
ATTEMPTED SUICIDE/SELF-MUTILATION
IF FORCE WAS NOT REPORTED WITHIN 24 HOURS, INDICATE REASON WHY:

FIREARM INTENTIONALLY DISCHARGED: N
CHEM AGENTS USED: Y
DELIVERY SYSTEM USED:
AEROSOL COP CONE OC(OUNCES) OC 03.50 OUNCES
AEROSOL MK-9/FOGGER OC (OUNCES) OC 06.40 OUNCES
OFFENDER PARTICIPANTS INJURED DURING USE OF FORCE: Y
EMPLOYEE PARTICIPANTS INJURED DURING USE OF FORCE: Y
VOID REPORT: N REASON:

NAME OF OFFENDER(S) WHO PARTICIPATED:

| TDCJID | NAME | CUSTODY | SEX | RACE | AGE | MED-EVAL |
|---|---|---|---|---|---|---|
| 01785292 | VALENZUELA,RUBEN ARTURO | G4 | M | H | 26 | 01 |

NAME OF EMPLOYEE(S) WHO PARTICIPATED:

| SS# | NAME | RANK | SEX | RACE | AGE | MED |
|---|---|---|---|---|---|---|
| [redacted] | BOSTIC, GREG A | CORR OFF III | M | H | 20 | 01 |
| | ENRIQUEZ JR, MANUEL | CORR OFFICER IV | M | H | 24 | |
| | FRITH II, DARRELL H | CAPT OF CORR OFF | M | W | 40 | |
| | HARP, JOE B | CORR OFFICER IV | M | W | 36 | 01 |
| | MARTINEZ, HARRY W | CORR OFFICER V | M | H | 29 | |
| | MCGUIRE, ROBERT L | CORR OFFICER IV | M | W | 32 | 01 |
| | SKIPWORTH, JAMES P | CORR OFFICER V | M | W | 51 | |


1/25

CSUF0200/UF02/OPT:2 TEXAS DEPARTMENT OF CRIMINAL JUSTICE 2021/01/13 16:22:01
FD00056 /1N0S/INM2CICS MAJOR USE OF FORCE-INFORMATION ON PARTICIPANTS PAGE 1
REPORT NUMBER: MA-00338-01-21 UNIT: WALLACE R5P1/UFP1/OPT:2

C O N F I D E N T I A L

MAINTENANCE LOG:

| DATE | USER | TRANSACTION |
|---|---|---|
| 2021-01-13 | FD00056 | REPORT CREATION |

DATE FORCE WAS USED: 01/13/2021
TIME FORCE WAS USED: 13:46
LOCATION ON UNIT WHERE FORCE OCCURRED: CELL(RESTRICTIVE HOUSING)
REASON FOR USING FORCE:
ATTEMPTED SUICIDE/SELF-MUTILATION
IF FORCE WAS NOT REPORTED WITHIN 24 HOURS, INDICATE REASON WHY:

FIREARM INTENTIONALLY DISCHARGED: N
CHEM AGENTS USED: Y
DELIVERY SYSTEM USED:
AEROSOL COP CONE OC(OUNCES) OC 03.50 OUNCES
AEROSOL MK-9/FOGGER OC (OUNCES) OC 06.40 OUNCES
OFFENDER PARTICIPANTS INJURED DURING USE OF FORCE: Y
EMPLOYEE PARTICIPANTS INJURED DURING USE OF FORCE: Y
VOID REPORT: N REASON:

NAME OF OFFENDER(S) WHO PARTICIPATED:

| TDCJID | NAME | CUSTODY | SEX | RACE | AGE | MED-EVAL |
|---|---|---|---|---|---|---|
| 01785292 | VALENZUELA,RUBEN ARTURO | G4 | M | H | 26 | 01 |

NAME OF EMPLOYEE(S) WHO PARTICIPATED:

| # | NAME | RANK | SEX | RACE | AGE | MED |
|---|---|---|---|---|---|---|
| [redacted] | BOSTIC, GREG A | CORR OFF III | M | H | 20 | 01 |
| | ENRIQUEZ JR, MANUEL | CORR OFFICER IV | M | H | 24 | |
| | FRITH II, DARRELL H | CAPT OF CORR OFF | M | W | 40 | |
| | HARP, JOE B | CORR OFFICER IV | M | W | 36 | 01 |
| | MARTINEZ, HARRY W | CORR OFFICER V | M | H | 29 | |
| | MCGUIRE, ROBERT L | CORR OFFICER IV | M | W | 32 | 01 |
| | SKIPWORTH, JAMES P | CORR OFFICER V | M | W | 51 | |

CSUF0200/UF02/OPT:4 TEXAS DEPARTMENT OF CRIMINAL JUSTICE 2021/04/10 14:26:41
FCO0938 /1FCX/INM2CICS MAJOR USE OF FORCE-INFORMATION ON PARTICIPANTS PAGE 1
REPORT NUMBER: MA-00338-01-21 UNIT: WALLACE /UFP1/OPT:4

C O N F I D E N T I A L

MAINTENANCE LOG:

| DATE | USER | TRANSACTION |
|---|---|---|
| 2021-01-13 | FD00056 | REPORT CREATION |
| 2021-01-26 | MJ00437 | TIME LINE REVISION |
| 2021-02-02 | MJ00437 | TIME LINE REVISION |
| 2021-02-10 | JE00035 | TIME LINE REVISION |
| 2021-04-10 | FCO0938 | REPORT MODIFICATION |
| 2021-04-10 | FCO0938 | EMPLOYEE REVISION |

DATE FORCE WAS USED: 01/13/2021
TIME FORCE WAS USED: 13:46
LOCATION ON UNIT WHERE FORCE OCCURRED: CELL(RESTRICTIVE HOUSING)
REASON FOR USING FORCE:
ATTEMPTED SUICIDE/SELF-MUTILATION
IF FORCE WAS NOT REPORTED WITHIN 24 HOURS, INDICATE REASON WHY:

FIREARM INTENTIONALLY DISCHARGED: N
CHEM AGENTS USED: Y
DELIVERY SYSTEM USED:
AEROSOL COP CONE OC(OUNCES) OC 03.50 OUNCES
AEROSOL MK-9/FOGGER OC (OUNCES) OC 06.40 OUNCES
OFFENDER PARTICIPANTS INJURED DURING USE OF FORCE: Y
EMPLOYEE PARTICIPANTS INJURED DURING USE OF FORCE: Y
VOID REPORT: N REASON:

NAME OF OFFENDER(S) WHO PARTICIPATED:

| TDCJID | NAME | CUSTODY | SEX | RACE | AGE | MED-EVAL |
|---|---|---|---|---|---|---|
| 01785292 | VALENZUELA,RUBEN ARTURO | G4 | M | H | 26 | 01 |

NAME OF EMPLOYEE(S) WHO PARTICIPATED:

| SS# | NAME | RANK | SEX | RACE | AGE | MED |
|---|---|---|---|---|---|---|
| [redacted] | BOSTIC, GREG A | CORR OFF III | M | H | 20 | 01 |
| | ENRIQUEZ JR, MANUEL | CORR OFFICER IV | M | H | 24 | 01 |
| | FRITH II, DARRELL H | CAPT OF CORR OFF | M | W | 40 | |
| | HARP, JOE B | LIEUTENANT OF CORR OF | M | W | 36 | 01 |
| | MARTINEZ, HARRY W | CORR OFFICER V | M | H | 29 | |
| | MCGUIRE,ROBERT | CORR OFFICER | M | W | 32 | |
| | SKIPWORTH, JAMES P | CORR OFFICER V | M | W | 51 | |

MA-00338-01-21

Kenneth Eatinger <Kenneth.Eatinger@tdcj.texas.gov>
Tue 2/2/2021 3:55 PM
To: Edmundo Cueto <Edmundo.Cueto@tdcj.texas.gov>; Oliver Vasquez <Oliver.Vasquez@tdcj.texas.gov>
Cc: Joe Milbern <Joe.Milbern@tdcj.texas.gov>

MA- 0038-01-21

While reviewing the above referenced use of force, the following discrepancies were noted that require correction(s) or additional documentation. Please address the following issues so that the use of force packet can be completed when forwarded to Huntsville. Please send all corrections to region by February 10, 2021

- UOF 9s are missing
- I-210 is missing
- Please address why the inmate was dragged from the cell to the shower

Thank You
Region V
Sergeant Kenneth Eatinger

DEFS' MSJ APPX. 198

CERVANTEZ_00198











DEFS' MSJ APPX. 203
CERVANTEZ_00495

Office of the
Attorney General of Texas
P.O. Box 12548
Austin, Tx 78711-2548
LEDD - 012
ATTN: MJCD

District Clerk's Office
United States District Court
Northern District of Texas – Abilene Division
341 Pine Street, Room 2008
Abilene, TX 79601

DECLARATION

THE STATE OF **TEXAS** §

COUNTY OF WALKER §

My name is Gina Grice and I am an employee of the Texas Department of Criminal Justice (TDCJ), a governmental agency. I am over 21 years of age, of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated.

I am the custodian of records for the Administrative Monitor for the Behavioral Intervention / Use of Force Department, a part of the TDCJ located in Huntsville, Texas. I have been asked to provide documentation regarding a **Use of Force report(s)** related to **Ruben Valenzuela TDCJ #01785292 for the time period of on the morning of January 13, 2021**, which would be kept by the TDCJ in the regular course of its business activity. **A Use of Force report was identified for inmate Valenzuela, which occurred in the afternoon of January 13, 2021.** I have searched and was unable to locate any documents for the time period requested.

**Gina Grice**
Administrative Monitor
Behavioral Intervention Department
Texas Department of Criminal Justice