UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

MARIA CONCEPCION VALENZUELA
CERVANTEZ, individually and as
representative of the ESTATE OF RUBEN
ARTURO VALENZUELA,

       Plaintiff,

v.                                  No. 1:22-CV-150-H

DARRELL FRITH, et al.,

       Defendants.

**MEMORANDUM OPINION AND ORDER ON SUMMARY JUDGMENT**

    Maria Concepcion Valenzuela Cervantez (Cervantez) brings this case individually and on behalf of her deceased son Ruben Arturo Valenzuela (Valenzuela). Cervantez asserts that while her son was incarcerated, correctional officers responded to her son's mental-health crisis with excessive force, resulting in his death. Although Cervantez brought claims against many more defendants, the only remaining defendants are five correctional officers—Darrell Frith, Greg McGuire, Manuel Enriquez, Joe Harp, and Greg Bastic—who were involved in the use-of-force incident.

    Before the Court is the remaining defendants' motion for summary judgment. Dkt. No. 94. The defendants assert that they are entitled to qualified immunity, that their use of force is not excessive, and that Cervantez's requests for survivorship and wrongful-death damages fail based on the undisputed facts. The plaintiff did not respond to the motion for summary judgment. The Court grants the motion for summary judgment (Dkt. No. 94) and the defendants' motion for leave to file certain portions of their summary-judgment appendix under seal (Dkt. No. 97).

1.    **Factual and Procedural Background**

    A.    **Factual Background**

Valenzuela began serving a prison sentence in the Texas Department of Criminal Justice in 2012 and was moved to the Wallace Unit in Colorado City, Texas in 2019. Dkt. No. 98-1 at 1–2. Valenzuela had previously suffered seizures and was prescribed seizure medication, although his compliance with taking the medication was poor. *Id.* at 2. In February 2020, Valenzuela was yelling and threatening staff and told a nurse that he was going to kill himself. *Id.* Valenzuela was moved to a crisis-management unit and seen by a psychologist. *Id.* He told the psychologist that he was not having suicidal thoughts and that his behavior was due to an officer threatening him with a disciplinary case. *Id.* Valenzuela returned to his usual housing. *Id.* at 3. Valenzuela had two follow-up appointments, during which Valenzuela denied any mental-health problems. *Id.* In October 2020, Valenzuela had a chronic-care visit in which his provider again prescribed seizure medication, which had previously been discontinued due to Valenzuela's noncompliance. *Id.*

On January 5, 2021, Valenzuela got into a fight with his cellmate and was seen by a medical provider. *Id.* The nurse noted no medical concerns or suicidal or homicidal thoughts. *Id.* A mental-health counselor saw Valenzuela again on January 7, 2021, who denied any suicidal or homicidal thoughts. *Id.* at 4. But on January 8, 2021, Valenzuela presented to the medical department reporting that he had felt homicidal for three days. *Id.* The nurse recorded that Valenzuela had been in an altercation with two inmates the preceding night and had drunk alcohol. *Id.* However, because no mental-health beds were

available, security officers placed Valenzuela on constant and direct observation and issued a suicide blanket.  *Id.*

Then, on January 13, 2021, a nurse made rounds early in the morning and saw Valenzuela, who told the nurse he was feeling better.  *Id.* at 5.  Early that afternoon, a nurse was called to Valenzuela's cell because Valenzuela was submerging his head in the toilet in an apparent attempt to drown himself.  *Id.*  Defendant Frith came to the cell and ordered Valenzuela to stop.  Dkt. No. 96 at 42.  Valenzuela complied, but then began rubbing his wrist on a piece of bent metal.  *Id.*  Frith and another officer, Skipworth, ordered Valenzuela to stop and warned that they would otherwise use chemical agents.  *Id.*  Valenzuela stopped attempting to cut himself, but again began attempting to drown himself.  *Id.*  Officers again ordered Valenzuela to stop and warned they would otherwise use chemical agents.  *Id.*  Valenzuela refused orders, and Skipworth administered chemical agents.  *Id.*  Frith requested a video-camera operator to the scene.  *Id.*  Officer Harp arrived with a video camera and began recording.  *Id.*  A nurse and several other officers also came to Valenzuela's cell.  *Id.*  Officer McGuire ordered Valenzuela to comply and submit to hand restraints and explained officers would otherwise again deploy chemical agents.  *Id.*  Valenzuela continued noncompliance and again began attempting to drown himself in the toilet.  *Id.*  After many warnings and requests to comply, officers again sprayed a chemical agent into Valenzuela's cell.  *Id.* at 42–43.  After officers continued their requests for Valenzuela to comply to no avail, a five-man team consisting of officers McGuire, Enriquez, Harp, Bostic, and Martinez entered Valenzuela's cell.  *Id.* at 43.  The five-man team attempted to put Valenzuela in restraints, but Valenzuela attempted to bite and headbutt the officers and stick his head back into the toilet.  *Id.*  The officers struck

– 3 –

Valenzuela after he attempted to bite and hit the officers. *Id.* at 43–44. After officers finally put Valenzuela in restraints, a nurse conducted a cell-side physical. *Id.* at 44. The nurse asked Valenzuela whether he had any injuries, to which Valenzuela responded he did not. *Id.* Valenzuela had slight orange discoloration around his nostrils from the chemical spray and blood around his nostrils, but there were no other recorded injuries, and Valenzuela did not require medical treatment. *Id.* at 189–90, 206 at 26:46–27:08.

After the use-of-force incident, Valenzuela refused a shower, and officers returned him to his cell and removed his restraints. *Id.* at 44. An officer was continuously observing Valenzuela. Dkt. No. 98 at 55. That officer observed Valenzuela exercising vigorously in his cell moving from sit-ups to push-ups. *Id.* The officer observed Valenzuela alert and coherent at 8:00 p.m. *Id.* However, five minutes later, the officer observed Valenzuela slip on water on his cell floor as he was moving into a push-up. Dkt. No. 96 at 13. Valenzuela hit his face on the concrete floor. *Id.* Another officer also came to the cell and requested emergency responders. *Id.* The two officers administered CPR until the emergency responders arrived. *Id.* The responders determined that Valenzuela was not breathing and had no heartbeat or pulse. *Id.*

Valenzuela was pronounced deceased at 9:45 p.m. *Id.* The coroner determined Valenzuela's cause of death was "sudden death associated with intramyocardial small vessel disease, hyponatremic dehydration, and exertion." Dkt. No. 98 at 11. The coroner also determined that Valenzuela's death was "natural" and explicitly stated that the defendants' use of force "do[es] not explain [Valenzuela's] sudden death." *Id.*

B.      **Procedural Background**

In August 2022, Cervantez filed a complaint in Texas state court on behalf of herself and as the representative of Valenzuela's estate. *See* Dkt. No. 1-5 at 3–17. A defendant removed the case to federal court in October 2022. Dkt. No. 1. Cervantez amended her complaint twice in response to motions to dismiss. *See* Dkt. Nos. 2; 5; 14; 16; 50. The second amended complaint named 25 different defendants. Dkt. No. 50. Eight defendants were dismissed either by voluntary dismissals or due to the plaintiff's failure to timely serve them. Dkt. Nos. 69; 77. All defendants except the five remaining defendants (Frith, McGuire, Bostic, Harp, and Enriquez) sought dismissal of all claims against them. Dkt. Nos. 55; 56; 73. The Court granted the motions and dismissed all claims against the defendants who had moved for dismissal. Dkt. No. 81. The remaining five defendants filed an answer asserting, among other defenses, qualified immunity. Dkt. No. 71. Cervantez's remaining claim is a Section 1983 claim for excessive force under the Eighth Amendment brought against Frith, McGuire, Enriquez, Harp, and Bastic. *See id.*; *see also* Dkt. No. 84 at 1. The plaintiff also seeks emotional and mental damages on a survivorship theory and damages for wrongful death. *See* Dkt. Nos. 50 at 32; 81 at 13–14; 84 at 1.

The remaining defendants moved for summary judgment on February 12, 2025. Dkt. No. 94. Under the Local Rules, the plaintiff had until March 5, 2025, to respond to the motion for summary judgment. *See* Local Civ. R. 7.1(e). The plaintiff did not respond to the motion for summary judgment. Accordingly, the motion for summary judgment is unopposed and ripe for review.

The defendants also filed an unopposed motion for leave to seal certain portions of their summary-judgment appendix (Dkt. No. 97), which is also ripe for review.

– 5 –

2.    **Legal Standards**

A.    **Motion for Summary Judgment**

Summary judgment is appropriate when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  The substantive law determines which facts are material.  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"A genuine dispute of material fact exists if a reasonable jury could enter a verdict

for the non-moving party."  *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 358 (5th Cir.

2020).  The moving party "bears the initial responsibility of . . . demonstrat[ing] the absence

of a genuine issue of material fact," *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019),

and "identifying those portions of [the record] which it believes demonstrate [that]

absence," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In evaluating a

summary-judgment motion, the Court draws all reasonable inferences in the light most

favorable to the nonmoving party.  *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir.

2018).  The Court must consider materials cited by the parties, but it may also consider

other materials in the record.  Fed. R. Civ. P. 56(c)(3).

However, "the mere existence of *some* alleged factual dispute between the parties

will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no *genuine* issue of *material* fact."  *Anderson*, 477 U.S. at 247–48

(emphasis in original).  When the nonmoving party fails to offer proof concerning an

essential element of its case, it "necessarily renders all other facts immaterial and mandates

a finding that no genuine issue of fact exists."  *Adams v. Travelers Indem. Co. of Conn.*, 465

F.3d 156, 164 (5th Cir. 2006).  When the nonmoving party fails to respond to a

summary-judgment motion, the court must determine "whether the facts [in the record] presented by the [movant] create an appropriate basis to enter summary judgment against the [nonmovant]." *Id.* And when that record "could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (cleaned up).

### B.      Section 1938 and Qualified Immunity

"Section 1983 provides a claim against anyone who 'under color of any statute, ordinance, regulation, custom, or usage, of any State' violates another's constitutional rights." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quoting 42 U.S.C. § 1983). "A plaintiff makes out a [Section] 1983 claim if he 'show[s] a violation of the Constitution or of federal law, and then show[s] that the violation was committed by someone acting under color of state law.'" *Rich v. Palko*, 920 F.3d 288, 293–94 (5th Cir. 2019) (quoting *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008) (brackets original)).

Defendants who perform discretionary duties—such as detention officers and jailers—are entitled to invoke qualified immunity in response to a plaintiff's Section 1983 suit. *See, e.g.*, *id.* Qualified immunity applies "when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, 580 U.S. 73, 78–79 (2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)).

To prevail against a qualified-immunity defense, the plaintiff must show that the right she claims was violated was "clearly established" at the time of the alleged misconduct. *Batyukova v. Doege*, 994 F.3d 717, 726 (5th Cir. 2021). "To be clearly established, a right must be sufficiently clear that every reasonable official would have

understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (cleaned up) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "There are two ways to demonstrate clearly established law." *Batyukova*, 994 F.3d at 726. In the typical case, the plaintiff "identif[ies] a case or body of relevant case law in which an officer acting under similar circumstances . . . was held to have violated the [Constitution]." *Id.* (quotation marks and citations omitted) (quoting *Joseph ex rel. Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020)). This approach "do[es] not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. In rare cases, however, "the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *District of Columbia v. Wesby*, 583 U.S. 48, 64 (2018).

The Supreme Court has repeatedly instructed lower courts "not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (quoting *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 613 (2015)). Likewise, the Supreme Court has stated that the purpose of the doctrine is to "give[] government officials breathing room to make reasonable but mistaken judgments." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (quoting *al-Kidd*, 563 U.S. at 743). "Accordingly, 'qualified immunity represents the norm,' and courts should deny a defendant immunity only in rare circumstances." *Angulo v. Brown*, 978 F.3d 942, 949 (5th Cir. 2020) (quoting *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018)).

When a defendant invokes qualified immunity in his answer, the burden shifts to the plaintiff to demonstrate that the defense is unavailable. *Valderas v. City of Lubbock*, 937 F.3d 384, 389 (5th Cir. 2019). Defeating an invocation of qualified immunity requires that the

– 8 –

plaintiff "point to summary judgment evidence (1) that the official violated a federal statutory or constitutional right and (2) that the unlawfulness of the conduct was clearly established at the time." *Cloud v. Stone*, 993 F.3d 379, 383 (5th Cir. 2021) (cleaned up) (quoting *Rich*, 920 F.3d at 294). Even if defendants are alleged to have acted in unison, the court must address the actions of each individually to determine whether qualified immunity applies. *Meadours v. Ermel*, 483 F.3d 417, 421–22 (5th Cir. 2007); *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999).

**3.    Analysis**

> **A.    The defendants succeed on their qualified-immunity defense because the plaintiff has not shown that the defendants violated a clearly established right.**

At the summary-judgment stage, when a defendant plead the defense of qualified immunity, the burden shifts to the plaintiff. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citing *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005)). The plaintiff must then "rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id.*

Even assuming that the defendants' "conduct violated a constitutional right of" Valenzuela, the plaintiff has failed to meet her burden to establish a fact issue as to "whether the right was clearly established at the time of the violation." *Id.* (citing *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009)). The defendants filed their motion for summary judgment on February 12, 2025. Dkt. No. 94. In their briefing, the defendants invoked their qualified-immunity defense. *See* Dkt. No. 95. First, the defendants argue that they did not violate any constitutional right of Valenzuela because their use of force was not excessive. *See id.* at 15–22. Specifically, the defendants argue that their use of force was a

good-faith, necessary, and proportional effort to prevent Valenzuela from committing self-harm and to restore discipline, that any injuries resulting from the use of force was de minimis, and that the defendants employed all possible efforts to temper their use of force. *See id.* Next, the defendants argue that, even if the defendants violated Valenzuela's constitutional rights, the plaintiff cannot show that those rights were clearly established at the time of the incident. *See id.* at 23–24. Instead, the defendants argue, it is clearly established that officers may use force to prevent inmate self-harm. *Id.* at 24. In addition, officers may use chemical agents and punch inmates who are resisting authority and pose an immediate threat of harm. *Id.*

The plaintiff had until March 5, 2025, to file a response. *See* Loc. Civ. R. 7.1(e). As of the date of this memo, the plaintiff has not filed a response to the defendants' motion for summary judgment or offered any evidence to create a genuine dispute of fact as to the defendants' invocation of qualified immunity. Moreover, the allegations in the plaintiff's complaint (*see* Dkt. No. 50) are not competent summary judgment evidence. *See Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) ("[P]leadings are not summary judgment evidence."). As a result, the plaintiff has done nothing to carry her burden establish a genuine fact issue regarding whether the defendants' allegedly wrongful conduct violated clearly established law. *Brown*, 623 F.3d at 253. Because the defendants have raised a qualified-immunity defense and the plaintiff has not carried her burden to rebut the defense, the Court grants the defendants summary judgment on the ground of qualified immunity.

**B.    The Eighth Amendment excessive-force claim also fails because the use of force was not excessive.**

Even setting aside the plaintiff's failure to carry her burden on qualified immunity, the Eighth Amendment claim also fails because the defendants' use of force was not

excessive.  For a use of force to be excessive, it must be objectively unreasonable.  *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2017).  Objective reasonableness turns on the facts and circumstances of each particular scenario and must be determined by considering the perspective of a reasonable officer acting in the moment, not with the benefit of hindsight.  *Graham v. Connor*, 490 U.S. 386, 396 (1989); *see also Kingsley*, 576 U.S. at 396–97.

The Supreme Court has identified six factors that are particularly relevant to a determination of the reasonability of a use of force: (1) the extent of the plaintiff's injury; (2) the need for the use of force; (3) the relationship between the need for the use of force and the amount of force used; (4) the threat reasonably perceived by the officer; and (5) whether there were any efforts to temper the severity of the use of force.  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  The Court must further consider the legitimate need to manage detention facilities and defer to those policies and practices that are, in the judgment of jail officials, necessary to ensure order and security.  *Id.* at 6.

Here, the plaintiff alleged two instances of the use of force.  For the first incident, the plaintiff alleges that in the early hours of January 13, 2021, the defendant Frith "repeatedly entered [Valenzuela]'s cell and beat him uncontestably" "[i]n a sadistic attempt to quiet him."  Dkt. No. 50 ¶ 45.  As to this alleged incident, the defendants assert that "[t]here is no evidence whatsoever that [this] alleged use of force by Frith took place at all."  Dkt. No. 95 at 15; *see also* Dkt. No. 96 at 207 (presenting affidavit of TDCJ records custodian attesting to the lack of business records pertaining to a use-of-force report for this alleged incident).  Moreover, the defendants present medical records from just hours after the incident allegedly took place that include no suggestion that Valenzuela had been attacked or injured.  *See* Dkt. No. 98-1 at 55.  Instead, the medical record states that Valenzuela

"remains in [crisis-management observation] . . . . [Valenzuela] tells this nurse he feels better, doesn't need to go anywhere . . . no . . . acute distress noted at this time." *Id.* As there is no evidence to the contrary presented by the plaintiff to support that this incident took place, the Court concludes that there was no excessive use of force with respect to this purported incident.

As to the second incident, the plaintiff alleges that the documented use of force on the afternoon of January 13, 2021, was excessive. *See* Dkt. No. 50 ¶ 64. Here, the defendants present evidence relevant to the *Hudson* factors showing that the use of force was reasonable and not excessive. First, Valenzuela denied, on video, having any injuries as a result of the use of force. Dkt. No. 96 at 206, 26:46–27:08. Moreover, the video footage shows Valenzuela with orange discoloration around his nose from chemical agents and blood around his nostrils, for which no medical intervention was necessary. *Id.*; Dkt. No. 98-1 at 7. These injuries are de minimis. *Bradshaw v. Unknown Lieutenant*, 2002 WL 31017404 (5th Cir. Aug. 21, 2002) (stating that "burning eyes and skin for approximately 24 hours, twitching of his eyes, blurred vision, irritation of his nose and throat, blistering of his skin, rapid heartbeat, mental anguish, shock and fear as a result of the use of mace" were de minimis injuries).

Second, the defendants present evidence that the use of force was necessary to protect Valenzuela from self-harm or suicide. Before the use of force began, Valenzuela was attempting to injure himself by submerging his head in the toilet and cutting his wrist. *See* Dkt. Nos. 96 at 42–44, 54–55, 143–45; 98 at 54. After ordering Valenzuela to stop and trying twice to subdue him using chemical agents, officers entered the cell and attempted to restrain Valenzuela. *Id.* Valenzuela resisted by biting, hitting, and headbutting the officers.

*Id.* Under these circumstances, Fifth Circuit precedent confirms there was a need for the use of force. *See Martin v. Harrison Cnty. Jail*, 975 F.2d 192, 193 (5th Cir. 1992) ("Appellant was attempting suicide and the guards had an obligation to prevent this. Some force was called for.").

Third, the defendants present evidence that the force used was proportionate to the need for force. The defendant Frith initially used only chemical agents to attempt to subdue Valenzuela. *See* Dkt. Nos. 96 at 42–44, 54–55, 143–45; 98 at 54. After those attempts failed, officers entered the cell and punched Valenzuela several times after Valenzuela began biting and hitting officers. *Id.* Under the circumstances of dealing with a suicidal and recalcitrant inmate, the defendants' use of force was objectively reasonable. *See Williams v. Valenti*, 432 F. App'x 298, 302 (5th Cir. 2011) (determining that punching an inmate in the face six times was objectively reasonable when the inmate was "belligerent" and "resist[ing] restraint"); *Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000) (stating that the use of a chemical spray "to control a recalcitrant inmate constitutes a 'tempered response by prison officials' when compared to other forms of force") (quoting *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996)).

Fourth, the defendants present evidence that they reasonably perceived a significant threat. The defendants faced a serious threat to Valenzuela's own safety while he was attempting self-harm. *See* Dkt. Nos. 96 at 42–44, 54–55, 143–45; 98 at 54. In addition, the defendants faced a substantial threat to their own safety when Valenzuela resisted restraint by biting and headbutting the officers. *See Waddleton v. Rodriguez*, 750 F. App'x 248, 254–55 (5th Cir. 2018) (agreeing that officers reasonably perceived a threat requiring use of force

when inmate had previously "kicked open a door, been verbally belligerent, and stated he
was 'pissed off'").

    Finally, the defendants present evidence that they attempted to temper the severity of
their response prior to using force. Prior to the use of force, the defendants verbally ordered
Valenzuela to stop self-harming and to submit to restraints. *See* Dkt. No. 96 at 42–44, 54–
55, 143–45, 206 at 00:00–17:11. Officers warned Valenzuela that failure to comply would
result in use of chemical spray. *See id.* at 42–44, 54–55, 143–45, 206 at 00:00–17:11. Then
the officers twice tried to subdue Valenzuela using the chemical agent while continuing to
give Valenzuela additional verbal warnings. *See id.* at 42–44, 54–55, 143–45, 206 at 00:00–
17:11. After using the spray twice, officers gave Valenzuela additional opportunities to
submit to restraints. *See id.* at 42–44, 54–55, 143–45, 206 at 10:25–17:11. After officers
finally entered the cell, they used force against Valenzuela after he initiated attacks on the
officers. *See id.* at 42–44, 54–55, 143–45, 206 at 17:11–25:18; *see also* Dkt. No. 98 at 54. In
sum, the defendants took repeated steps to warn the defendant of the consequences of
failing to comply and to attempt to reduce the need to use force. *See, e.g.*, *Martin v. Seal*, 510
F. App'x 309, 313 (5th Cir. 2013) (noting that warning an inmate that chemical spray would
be used if the inmate did not stop "disruptive behavior" shows an effort to temper the
severity of force).

    The defendants' summary-judgment evidence, even when viewed in the light most
favorable to the plaintiff, shows that the defendants' use of force—far from being objectively
unreasonable—was reasonable. The plaintiff has not responded, and thus has failed to
submit any competent summary-judgment evidence that would show that there is a genuine
dispute regarding the reasonableness of the defendants' use of force. Thus, in addition to

the success of the defendants' qualified-immunity defense, summary judgment in the

defendants' favor on the Eighth Amendment claim is merited because the defendants' use of

force was not excessive.

> **C.    The Texas Wrongful Death Act claim fails because the defendants did not cause Valenzuela's death.**

The Texas Wrongful Death Act permits certain survivors of a deceased tort victim to

"recover damages for their losses from the victim's death. *In re Labatt Food Serv., L.P.*, 279

S.W.3d 640, 644 (Tex. 2009).[1]  The Act authorizes recovery "solely for injuries that cause

*death*, not injuries that cause the less-than-even chance of avoiding death," and further

"authorizes claims only for actions that actually *cause* death." *Kramer v. Lewisville Mem'l*

*Hosp.*, 858 S.W.2d 397, 404 (Tex. 1993) (emphasis original).  To demonstrate causation, the

plaintiff must show that the defendants' actions were "a substantial factor leading to [the

decedent's] death, without which his death would not have occurred." *Montano v. Orange*

*County*, 842 F.3d 865, 882 (5th Cir. 2016).

A plaintiff seeking recovery under Section 1983 on a wrongful-death claim "must

prove both the alleged constitutional deprivation . . . and the causal link between the

defendant's unconstitutional acts or omissions and the death of the victim." *Id.*  Here, the

plaintiff has failed to create a dispute regarding whether the defendants' acts were

unconstitutional.  However, the plaintiff also fails as to causation.  The undisputed evidence

presented by the defendants shows that Valenzuela's cause of death was "sudden death

associated with intramyocardial small vessel disease, hyponatremic dehydration, and

---

[1] 42 U.S.C. § 1988(a) extends the scope of federal-question jurisdiction "by incorporating state wrongful-death statutes." *Rogers v. Lancaster Police & Fire Dep't*, 819 F.3d 205, 208 (5th Cir. 2016). "Thus, an individual may bring a claim under federal civil-rights laws through Texas's wrongful-death statute." *Id.* at 208–09.  The same is true of survival statutes.  *Id.* at 209 n.10.

exertion." Dkt. No. 98 at 11. The coroner deemed Valenzuela's death to be "natural" and explicitly stated that the defendants' use of force "do[es] not explain [Valenzuela's] sudden death." *Id.*

The plaintiff has offered no evidence in response that might create a genuine dispute as to whether the defendants' use of force was a substantial factor leading to Valenzuela's death and without which his death would not have occurred. *See Montano*, 842 F.3d at 882. Accordingly, the Court grants summary judgment in the defendants' favor on the Texas Wrongful Death Act claim.

**D.    The plaintiff's claim for emotional and mental damages fails because the defendants caused, at most, de minimis injuries.**

A prisoner may not bring a federal civil action "for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). To satisfy the requirement for a physical injury, the injury "must be more than de minim[is] . . . but need not be significant." *Alexander v. Tippah County*, 351 F.3d 626, 631 (5th Cir. 2003) (quoting *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999)).

For the reasons explained *supra* Analysis § 3.B, the undisputed evidence shows that the defendants caused at most de minimis injuries. In addition, the undisputed video evidence shows that after the defendants' use of force, Valenzuela denied that he had suffered any injuries. Dkt. No. 96 at 206, at 26:46–27:08. Accordingly, the Court grants summary judgment in the defendants' favor on the claim for emotional and mental damages. *See Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) ("Without an allegation of a more than *de minimis* physical injury, th[e claim for emotion suffering] lacks any merit."); *Buffington v. Valdez*, No. 3:07-CV-260-P, 2007 WL 2609388, at *3 (N.D. Tex. Sept.

10, 2007) (noting that scrapes, bruises, and a twisted wrist were de minimis injuries that could not support a claim for mental pain and suffering.").

> ### E.    The Court grants the defendants' motion for leave to seal portions of their summary-judgment appendix.

The defendants filed certain portions of their summary-judgment appendix under seal (Dkt. No. 98), which the defendants have moved for leave to file under seal (Dkt. No. 97). The plaintiff is unopposed to sealing those portions of the appendix. Dkt. No. 97 at 2. The defendants argue that those portions of the appendix include or discuss "medical records and other documents [that] are confidential under the Health Insurance Portability and Accountability Act (HIPAA) . . . and [that] are exempted from public filing." *Id.* at 1. The Fifth Circuit has recognized that "HIPAA generally provides for confidentiality of medical records." *Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006) (citing 42 U.S.C. § 1320d-1 to d-7).

Having reviewed the materials, the sealed portion of the appendix does contain confidential medical records and discussions of the contents of the decedent's medical records. *See* Dkt. No. 98. The defendants' request to seal the filing is narrowly tailored to protect the privacy of the decedent and his family. The Court thus finds that the interest in protecting the decedent's private health information outweighs the public's interest in access to judicial records and instruct the Clerk to maintain Dkt. No. 98 under seal.

## 4.    Conclusion

The Court grants the defendants' motion for summary judgment (Dkt. No. 94) in full and dismisses the plaintiff's claims with prejudice. The Court also grants the defendants' motion for leave to seal certain confidential portions of their summary-judgment appendix (Dkt. No. 97).

The Court will enter final judgment in accordance with Federal Rule of Civil

Procedure 58 in a separate document.

So ordered on May 2, 2025.

JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE